Bradford Newman (Bar No. 178902)
bradfordnewman@eversheds-sutherland.com
**EVERSHEDS SUTHERLAND (US) LLP**
101 California Street, Suite 4750
San Francisco, California 94111-5872
Telephone: 415.521.1701
Facsimile:  415.506.4859

John V. Coghlan (*pro hac* admission pending*)*
jcoghlan@torridonlaw.com
John M. McNichols (*pro hac* admission pending*)*
jmcnichols@torridonlaw.com
**TORRIDON LAW PLLC**
801 17th Street NW, Suite 1100
Washington, DC 20006
Telephone: 202.249.6900

*Attorneys for Defendant George Kivork*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| Joby Aero, Inc., | Case No.: 5:25-cv-10703-SVK |
| Plaintiff, | **DEFENDANT GEORGE KIVORK'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| Archer Aviation Inc., and George Kivork, | Date:    March 24, 2026 |
| Defendants. | Time:    10:00 a.m. |
| | Ctrm:    6 – 4th Floor |
| | Judge:  Hon. Susan van Keulen |
| | Action Filed:  Nov. 18, 2025 |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 2

I.      INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ........................ 2

II.     FACTUAL AND PROCEDURAL HISTORY ............................................................... 2

III.    LEGAL STANDARD ................................................................................................... 4

IV.     ARGUMENT ............................................................................................................... 5

    A.     Joby's Claim for Violation of the Defend Trade Secrets Act (Count 3)
        Should Be Dismissed for Failure to State a Claim. .................................................. 5

    B.     Joby's Claim for Breach of Contract (Count 1) Should Be Dismissed
        Because the Contract on Which Joby Relies Is Not Enforceable. ........................... 7

    C.     Joby's Remaining Claims Against Mr. Kivork Should Be Dismissed
        Because They Are Preempted by the California Uniform Trade Secrets Act. ........ 9

        1.     Joby's Claim Against Mr. Kivork For Violation of California Penal
            Code § 502 (Count 4) Is Preempted. .......................................................... 10

        2.     Joby's Claims Against Mr. Kivork for Breach of Fiduciary Duty
            (Count 5) and Breach of the Duty of Loyalty (Count 7) Are
            Preempted. .................................................................................................... 11

        3.     Joby's Claims for Tortious Interference with Contract (Count 9) and
            Tortious Interference with Prospective Economic Advantage (Count
            10) Are Preempted. ..................................................................................... 12

    D.     Joby's Remaining Claims Against Mr. Kivork Should Be Dismissed For
        Failure to State a Claim. ....................................................................................... 13

        1.     Joby Fails to State a Claim for Violation of California Penal Code
            § 502 (Count 4) ........................................................................................... 13

            a)     Joby does not allege that Mr. Kivork "knowingly" acted
                "without permission." ....................................................................14

            b)     Joby does not adequately allege damages. ...................................15

            2.     Joby Fails to State Claims for Breach of Fiduciary Duty and Breach
            of the Duty of Loyalty (Counts 5 and 7). .................................................. 16

            3.     Joby Fails to State a Claim for Tortious Interference with Contract
            (Count 9). .................................................................................................... 18

            a)     Joby fails to plead the existence of a valid contract. ....................18

i

b)    Joby fails to plead breach or disruption. ...........................................19

c)    Joby fails to plead resulting damages................................................20

4.    Joby Fails to State a Claim for Tortious Interference with a
Prospective Economic Advantage (Count 10). ..........................................21

V.    CONCLUSION ...............................................................................................22

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*7EDU Impact Acad. Inc. v. You*,
  760 F. Supp. 3d 981 (N.D. Cal. 2024) ............................................................................ 6, 16

5

6

*Agfa Corp. v. Richard*,
  2018 WL 3078585 (C.D. Cal. June 1, 2018) ...................................................................... 17

7

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
  28 Cal. App. 5th 923 (2018) ................................................................................................ 9

8

9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................. 5

10

11

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
  2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ...................................................................... 10

12

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1988) ............................................................................................... 5

13

14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 4, 5, 20

15

16

*Beluca Ventures LLC v. Einridge Aktiebolag*,
  660 F. Supp. 3d 898 (N.D. Cal. 2023) ........................................................................ 10, 11

17

*Brown v. TGS Mgmt. Co.*,
  57 Cal. App. 5th 303 (2020) ................................................................................................ 9

18

19

*Calsoft Labs, Inc. v. Panchumarthi*,
  2020 WL 512123 (N.D. Cal. Jan. 31, 2020) ...................................................................... 11

20

21

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*,
  602 F. Supp. 3d 663 (S.D.N.Y. 2022) ................................................................................. 6

22

*Cedar Fair, L.P. v. City of Santa Clara*,
  194 Cal. App. 4th 1150 (2011) .......................................................................................... 19

23

24

*CleanFish, LLC v. Sims*,
  2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) .................................................................... 7

25

26

*Copeland v. Baskin Robbins U.S.A.*,
  96 Cal. App. 4th 1251 (2002) ............................................................................................ 20

27

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*,
  11 Cal. 4th 376 (1995) ....................................................................................................... 21

28

iii

*Doe I v. Google LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024) ............................................................ 16

*Dowell v. Biosense Webster, Inc.*,
   179 Cal. App. 4th 564 (2009) ....................................................................... 9

*Edwards v. Arthur Anderson LLP*,
   44 Cal. 4th 937 (2008) ............................................................................. 8

*Enreach Tech., Inc. v. Embedded Internet Sols., Inc.*,
   403 F. Supp. 2d 968 (N.D. Cal. 2005) ........................................................... 16

*In re Facebook Priv. Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014) ............. 10, 13

*Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
   525 F.3d 822 (9th Cir. 2008) ...................................................................... 18

*Fields v. QSP, Inc.*,
   2011 WL 1375286 (C.D. Cal. Apr. 8, 2011) ................................................... 16

*First-Citizens Bank & Trust Co. v. HSBC Holdings PLC*,
   2024 WL 115933 (N.D. Cal. Jan. 10, 2024) ................................................... 12

*In re Google Android Consumer Priv. Litig.*,
   2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ................................................. 15

*Huong Que, Inc. v. Luu*,
   150 Cal. App. 4th 400 (2007) .................................................................... 16

*Invisible Dot, Inc. v. DeDecker*,
   2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) .................................................... 5

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130 (2020) ............................................................................ 19

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009) .................................................................... 12

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................... 21

*Mackintosh v. Lyft, Inc.*,
   2019 WL 5682826 (E.D. Cal. Nov. 1, 2019), *report and recommendation*
   *adopted*, 2019 WL 6528953 (E.D. Cal. Dec. 4, 2019) ....................................... 13

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) ..................................................... 15, 17

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

*Movement Mortg., LLC v. Scrima*,
  2024 WL 3011202 (E.D. Cal. June 11, 2024) .................................................. 10

*Name.Space, Inc. v. Internet Corp. for Assigned Names and Nos.*,
  795 F.3d 1124 (9th Cir. 2015) ........................................................................ 21

*Nestle USA, Inc. v. Best Foods LLC*,
  562 F. Supp. 3d 626 (C.D. Cal. 2021) ........................................................... 18

*People v. Hawkins*,
  98 Cal. App. 4th 1428 (2002) ......................................................................... 14

*PQ Labs, Inc. v. Yang Qi*,
  2012 WL 2061527 (N.D. Cal. June 7, 2012) .................................................. 12

*Race Winning Brands, Inc. v. Gearhart*,
  2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ................................................... 5

*Rambus Inc v. Hynix Semiconductor Inc.*,
  629 F. Supp. 2d 979 (N.D. Cal. 2009) ........................................................... 20

*Rubang v. United Airlines, Inc.*,
  2019 WL 3425500 (E.D. Cal. July 30, 2019) ................................................. 13

*SASCO v. Rosendin Elec., Inc.*,
  207 Cal. App. 4th 837 (2012) ........................................................................... 7

*Skye Orthobiologics, LLC v. CTM Biomedical, LLC*,
  2021 WL 6104163 (C.D. Cal. Aug. 30, 2021) ................................................ 17

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
  521 F. Supp. 3d 929 (S.D. Cal. 2021) ................................................. 6, 21, 22

*Song v. Drenberg*,
  2019 WL 1998944 (N.D. Cal. May 6, 2019) .................................................. 21

*Sullivan v. Mass. Mut. Life Ins. Co.*,
  611 F.2d 261 (9th Cir. 1979) .......................................................................... 19

*Sun Hong Foods, Inc. v. Future Best Trading, Inc.*,
  2023 WL 11197084 (C.D. Cal. Sept. 29, 2023) ........................................ 5, 19

*In re Tamen*,
  22 F.3d 199 (9th Cir. 1994) ............................................................................ 20

*Tesla, Inc. v. Proception, Inc.*,
  2025 WL 3187569 (N.D. Cal. Nov. 14, 2025) .................................................. 6

*UCAR Tech. (USA) Inc. v. Yan Li*,
  2017 WL 6405620 (N.D. Cal. Dec. 15, 2017) ............................................... 17

v

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

*United Auto Credit Corp. v. Stewart*,
　2025 WL 2428466 (C.D. Cal. June 23, 2025) ............................................................ 10

*W. Air Charter, Inc. v. Schembari*,
　2017 WL 10638759 (C.D. Cal. Oct. 6, 2017) ..................................................... 11, 13

*Wisk Aero LLC v. Archer Aviation Inc.*,
　2023 WL 3919469 (N.D. Cal. June 9, 2023) ............................................................. 7

*Zarif v. Hwareh.com, Inc.*,
　789 F. Supp. 3d 880 (S.D. Cal. 2025) ..................................................................... 16

**Statutes**

18 U.S.C. § 1836 ........................................................................................................... 2

18 U.S.C. § 1839(5) ...................................................................................................... 6

Cal. Bus. & Prof. Code § 16600(a) ........................................................................... 7, 8

Cal. Bus. & Prof. Code § 16601 .................................................................................. 7

Cal. Civ. Code § 3426 ............................................................................................... 2, 9

Cal. Penal Code § 496 ................................................................................................ 10

Cal. Penal Code § 502 ......................................................................................... *passim*

Cal. Penal Code § 502(c)(1)-(14) ............................................................................... 14

Cal. Penal Code § 502(e)(1) ................................................................................. 15, 16

**Other Authorities**

Fed. R. Civ. P. 8(a) ....................................................................................................... 6

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 1, 4

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 24, 2026 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6 of the above-entitled court, located at the Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant George Kivork will and hereby does respectfully move this Court to dismiss the Complaint filed by Plaintiff Joby Aero, Inc. ("Joby") as to all claims asserted against Mr. Kivork.

The basis for Mr. Kivork's motion to dismiss is as follows:

- The claim for breach of contract (Count 1) is based on an unenforceable contract and therefore fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

- The claim for violation of the Defend Trade Secrets Act (Count 3) fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6);

- The claims for violation of Penal Code § 502, breach of fiduciary duty, breach of the duty of loyalty, tortious interference with contract, and tortious interference with prospective economic advantage (Counts 4, 5, 7, 9, and 10) are preempted by the California Uniform Trade Secrets Act and also fail to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion and Motion to Dismiss, Memorandum of Points and Authorities, the pleadings, papers, and records on file in this action, and such oral argument as may be presented at the time of the hearing.

DATED:  January 23, 2026

EVERSHEDS SUTHERLAND (US) LLP

By:     */s/ Bradford Newman*
      Bradford Newman

Torridon Law PLLC
John V. Coghlan (*pro hac* admission pending*)*
John M. McNichols (*pro hac* admission pending*)*

*Attorney for Defendant George Kivork*

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

This case is an anti-competitive gambit by Plaintiff Joby Aero Inc. ("Joby") to slow down a more successful competitor in the emerging industry of electric vertical takeoff and landing (eVTOL) commercial aircraft.  Rather than grounding its allegations in specific facts that would establish a legally cognizable wrong, the Complaint offers legal conclusions, overheated rhetoric, and broad assertions of wrongdoing by a respected former employee whom Joby seeks to punish for going to work for its main competitor.  The Court should dismiss the Complaint in full.

George Kivork is a former employee of Joby.  He decided to accept a job with Joby's more innovative competitor, Archer Aviation Inc. ("Archer").  Mr. Kivork exited Joby lawfully.  He has not misappropriated any Joby information, confidential or otherwise.  The Complaint in this case, and its allegations against Mr. Kivork, are baseless and devoid of any specific factual support.  Joby's ill-advised Complaint is designed to damage Mr. Kivork's and Archer's reputations—and chill the lawful rights of Joby employees to work for a Joby competitor—in violation of both well-settled California law and fair competition principles.

Of the seven claims Joby asserts against Mr. Kivork, five are preempted, and all fail to state a claim.  Joby has failed to properly plead a claim for trade secret misappropriation under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*  Joby's breach of contract claim fails because its contract with Mr. Kivork is unenforceable due to its anti-competitive terms that violate Section 16600 of California's Business and Professions Code.  And Joby's other statutory and common-law causes of action are preempted by the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* ("CUTSA"), and, separately, also fail to plead the requisite elements to state viable claims.  Because no amendment can cure the fatal flaws in Joby's Complaint, Mr. Kivork's motion to dismiss should be granted without leave to amend.

### II.    FACTUAL AND PROCEDURAL HISTORY

Mr. Kivork worked for Joby for nearly four years, ending on August 3, 2025.  (Compl. ¶ 5.)  His role involved representing Joby in discussions with third parties and advising its leadership on regulatory strategy.  (*Id.* ¶ 29.)  On July 20, 2025, Mr. Kivork informed Joby that he

2

intended to resign and take a position at its competitor, Archer.  (*Id.* ¶ 36.)  Joby alleges that, two

days prior, Mr. Kivork downloaded "dozens" of files from a Joby SharePoint repository, including

files that purportedly relate to negotiations between Joby and a real estate developer (whom Joby

refuses to identify, and simply refers to as "the Developer").  (*Id.* ¶¶ 41-45.)  Joby asserts that

"there was no legitimate business purpose for which Kivork would have needed any of these

documents," (*id.* ¶ 42), but provides no detail about their contents or whether they related to

projects in Mr. Kivork's portfolio (including the project concerning the unnamed Developer).  The

only file that Joby specifically identifies is a "Counter Proposal," which, according to the

Complaint, allegedly contains general information regarding agreements to continue negotiations

with the unnamed Developer.  (*Id.* ¶ 43.)

Joby does not allege that Mr. Kivork ever took or transmitted these documents outside of

Joby, but instead alleges that, while still employed by Joby, he emailed himself (*i.e.*, to his

personal email account) "other" documents that purportedly contained unspecified confidential

technical and strategic information.  (*Id.* ¶ 46.)  Joby does not allege that these documents related

to negotiations with the Developer, nor does it state whether they related to projects in Mr.

Kivork's portfolio.  (*Id.* ¶¶ 46-47.)  Joby also alleges that—at unspecified times over the course of

his four-year career at the company—Mr. Kivork registered his personal email account as an

"owner" of documents in a Google Drive repository.  (*Id.* ¶¶ 49-54.)  Joby does not allege that Mr.

Kivork ever (i) discussed the contents of any of the documents referenced in the Complaint

outside of the course of his Joby employment, (ii) accessed those documents after leaving Joby,

(iii) shared them with Archer, his new employer, or (iv) otherwise used Joby's confidential

information in any way.

According to the Complaint, after Mr. Kivork left Joby, the third-party Developer with

whom Joby had been negotiating purportedly told Joby that Archer—not Mr. Kivork—had

approached the Developer about a business relationship and offered a "more lucrative deal."  (*Id.*

¶¶ 60-61.)  Joby claims "on information and belief" that Archer was able to do so only because of

information received from Mr. Kivork, but alleges no specific facts to support this assertion.  (*Id.* ¶

61.)  Instead, Joby merely (i) asserts that the "timing" of Archer's offer was "highly suspicious,"

(*id.*); (ii) claims that the Developer "presum[ed]" the information had come from Mr. Kivork, (*id.* ¶ 60); and (iii) offers the conclusion—again, on "information and belief"—that Archer was able to offer a more lucrative deal "only" because it allegedly possessed "illicit knowledge" of Joby's negotiations, (*id.* ¶ 61).

Thereafter, the Developer terminated an alleged exclusive-bargaining "Agreement" with Joby.  (*Id.* ¶ 62.)  According to Joby, that alleged Agreement was signed in March 2025 and was purportedly a contract whereby Joby and the Developer agreed to "work together" for eighteen months to negotiate an agreement relating to the construction and operation of eVTOL skydecks at certain of the Developer's properties.  (*Id.* ¶¶ 24-25.)  But the Agreement, which is neither attached to nor quoted verbatim in the Complaint, is not alleged to have contained any *final* deal terms that would allow Joby to build skydecks or pay it to do so.  On those points, the Agreement stated that the parties would "negotiate a more comprehensive partnership agreement."  (*Id.* ¶ 25.) In other words, the Agreement was simply a deal to continue negotiating—allegedly on an exclusive basis—to see whether a strategic partnership could be struck.  And despite the assertion that Archer offered the Developer a "more lucrative deal," the Complaint never suggests that, at any point before or after the Developer terminated the Agreement with Joby, the Developer entered into a separate agreement with Archer instead.

Joby sued Archer and Mr. Kivork in the Superior Court for Santa Cruz County, and the case was then timely removed to this Court.  Joby asserts seven claims against Mr. Kivork: (i) breach of contract (Count 1), (ii) trade secret misappropriation in violation of the Defend Trade Secrets Act (Count 3), (iii) violation of California Penal Code § 502 (Count 4), (iv) breach of fiduciary duty (Count 5), (v) breach of the duty of loyalty (Count 7), (vi) tortious interference with contract (Count 9), and (vii) tortious interference with prospective economic advantage (Count 10).  Each should be dismissed.

## III.    LEGAL STANDARD

A complaint must be dismissed where, as here, the plaintiff's factual allegations do not state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Rather, it requires that a complaint "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562.  Although courts assume on a motion to dismiss that all facts alleged in the complaint are true, they do not accept mere labels or legal conclusions couched as factual allegations.  *Id.* at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## IV.    ARGUMENT

### A.    Joby's Claim for Violation of the Defend Trade Secrets Act (Count 3) Should Be Dismissed for Failure to State a Claim.

For the reasons stated in Section IV.A.1 of Archer's Memorandum of Points and Authorities, which Mr. Kivork hereby incorporates and joins, Joby's claim for misappropriation in violation of the DTSA should be dismissed for failure to identify any cognizable trade secret. Simply put, a DTSA plaintiff must describe his purported trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade or special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *4 (C.D. Cal. Feb. 6, 2019) (quotation marks omitted).  But as Archer observes, Joby has not done that, instead relying on "catchall phrases" and "general areas of information" of the type that courts have routinely held insufficient. *See, e.g.*, *Sun Hong Foods, Inc. v. Future Best Trading, Inc.*, 2023 WL 11197084, at *2 (C.D. Cal. Sept. 29, 2023); *Race Winning Brands, Inc. v.*

1  *Gearhart*, 2023 WL 4681539, at *5 (C.D. Cal. Apr. 21, 2023).  That is not enough to comply with

2  Federal Rule of Civil Procedure 8(a).[1]

3  In addition—and wholly separate from Joby's failure to allege the existence of a trade

4  secret—Joby's claim fails as to Mr. Kivork specifically for failure to plead misappropriation.

5  "Misappropriation" means (1) "acquisition of a trade secret of another by a person who knows or

6  has reason to know that the trade secret was acquired by improper means," or (2) "disclosure or

7  use of a trade secret of another without express or implied consent."  18 U.S.C. § 1839(5).  Here,

8  Joby's factual allegations establish, at most, that Mr. Kivork accessed certain files *during his*

9  *employment* with Joby, whether by downloading them from SharePoint, (Compl. ¶ 42), emailing

10  them to himself, (*id.* ¶ 46), or adding his personal email account to access them, (*id.* ¶ 52).

11  Despite its rhetorical use of labels like "theft," (*id.* ¶ 49), Joby nowhere alleges that Mr. Kivork

12  was not *permitted*, as an employee of Joby, to access the files at issue.  And while the Complaint

13  generally avers that Mr. Kivork accessed the files "for the benefit of both himself and Archer,"

14  while "preparing to compete with Joby . . . in an illicit manner," (*id.* ¶ 54), Joby curiously never

15  alleges that Mr. Kivork disclosed the files without permission or used them at any time after

16  leaving Joby.  This is not sufficient to plead misappropriation.  *See, e.g.*, *Soil Retention Prods.,*

17  *Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 966 (S.D. Cal. 2021) ("[M]ere possession of

18  trade secrets is not enough." (internal citations and quotation marks omitted)).

19  At bottom, therefore, Joby's claim boils down to its purely speculative theory that Mr.

20  Kivork *must* have passed information to Archer because (i) Archer later presented the Developer

21  with a "more lucrative deal," (*id.* ¶ 61), (ii) the Developer "presum[ed]" that the offer had come

22  from Mr. Kivork, (*id.* ¶ 60), and—in Joby's view—(iii) no explanation could possibly exist for

---

23

24  [1] *See Tesla, Inc. v. Proception, Inc.*, 2025 WL 3187569, at *6 (N.D. Cal. Nov. 14, 2025) (DTSA
plaintiff still must "identif[y] the alleged trade secrets with *sufficient* particularity at [the pleading]

25  stage." (emphasis added)); *7EDU Impact Acad. Inc. v. You*, 760 F. Supp. 3d 981, 996 (N.D. Cal.
2024) ("sufficient particularity" required at pleading stage); *accord Catalyst Advisors, L.P. v.*

26  *Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 672 (S.D.N.Y. 2022) ("[A]lthough there
is no heightened pleading requirement on actions brought under the DTSA, . . . district courts in

27  this circuit routinely require that plaintiffs plead their trade secrets with sufficient specificity to
inform the defendants of what they are alleged to have misappropriated." (quotation omitted)).

28

Archer's better offer besides illicitly acquired information, (*id.* ¶ 61).  This, too, is insufficient.

"Speculation that the individual employees *must* have taken trade secrets . . . does not constitute

evidence of misappropriation.  Nor does speculation that [a competitor's] success in obtaining the

. . . contract was based on the theft of trade secrets constitute evidence of misappropriation."

*SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848-49 (2012) (emphasis added); *cf. Wisk*

*Aero LLC v. Archer Aviation Inc.*, 2023 WL 3919469, at *17 (N.D. Cal. June 9, 2023) (plaintiff

cannot merely "point[ ] out several pieces of data and analysis used by [defendant] that are similar

or identical to those used by [plaintiff] and say[ ] that [defendant]'s use of that data means it must

have stolen the data and knowledge from [plaintiff]").  Indeed, Joby's misappropriation allegations

are even weaker than those held "objectively specious" in *SASCO*, as Joby makes no assertion that

Archer *obtained* the skydeck contract for which it supposedly offered the better deal, nor does it

plead any objective evidence to show the content of that proposed deal, much less that it was

informed by files that Mr. Kivork had accessed.  At this stage, Joby bears the burden to allege

facts sufficient to show that Mr. Kivork improperly disclosed protected information to his new

employer.  It cannot carry that burden merely by alleging that a third party—who Joby does not

allege actually contracted with the new employer—walked away from an as-yet-unconsummated

deal.  The law requires more.  *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *10 (N.D. Cal. Mar.

17, 2020) (allegations supporting DTSA claim cannot be "merely consistent with"

misappropriation and must "tend to exclude an innocent explanation" (quotations omitted)).

**B.**   **Joby's Claim for Breach of Contract (Count 1) Should Be Dismissed Because the Contract on Which Joby Relies Is Not Enforceable.**

Joby's contract claim fails as a matter of law because its Proprietary Information and

Inventions Agreement ("PIIA") with Mr. Kivork is an illegal contract in restraint of trade.

(Compl. ¶¶ 18, 31, 68 & Ex. A.)  The PIIA is subject to Section 16600(a) of the California

Business and Professions Code, which provides, with limited exceptions not applicable here,[2] that

---

[2]  Cal. Bus. & Prof. Code § 16601 (allowing sellers of business, its goodwill, or substantial assets
to agree with buyer not to compete); *id.* § 16602 (permitting partners to agree to non-compete
(footnote continued)

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

"every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600(a); *see also Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937, 949 (2008) (Section 16600 "represents a strong public policy of the state").  As the California Supreme Court noted in *Edwards*, the California legislature long ago rejected the common law's allowance for "reasonable" restraints on the practice of one's profession, deciding that "[n]oncompetition agreements are invalid under section 16600 in California, even if narrowly drawn."  44 Cal. 4th at 955.  By these standards, the PIIA is unenforceable because it restricts Mr. Kivork's right to use, in his post-Joby career, *any* knowledge of eVTOL aviation acquired during his employment with Joby, regardless of whether the information is a Joby trade secret or even Joby-specific.  As courts have recognized, such terms convert a valid contract of employment into a *de facto* non-compete agreement—an illegal restraint of trade—rendering it unenforceable under California law.

The PIIA defines Joby's "Proprietary Information" to encompass "*all* business, technical and financial information" that Mr. Kivork "developed, learned, or obtained" during his time at Joby, so long as it "relate[s] to Joby or its business," and it prohibits him from using such information at *any* time after leaving Joby.[3]  (Compl. ¶¶ 69-70 & Ex. A ¶ 4 (emphasis added)).  While the PIIA does not define the phrase "its business," Joby's business is eVTOL aviation.  (*See id.* ¶¶ 2-3.)  There is no language limiting the "business, technical and financial information" that this clause captures—indeed, it expressly captures "all" such information—which means that the "Proprietary Information" that Mr. Kivork is purportedly prohibited from using is *not* limited to trade secrets or other competitively sensitive or valuable information.  Indeed, it is not even limited to "confidential information" (whatever that undefined term might encompass), or to

---

clauses when partnership dissolves); § 16602.5 (allowing LLC to restrict departing member from offering competing services within specific geographic area for defined period of time).

[3] The PIIA states that Mr. Kivork may use Proprietary Information only "within the scope of [his Joby] employment" (Compl. Ex. A ¶ 4), which obligation continues even after that employment ends, (*id.* ¶ 8), ostensibly in perpetuity.

information relating to Joby.  In short, under the PIIA, all that is necessary for the information to be off-limits to Mr. Kivork—for the remainder of his business career, however long that might last—is that he have learned it during his tenure at Joby and that it "relate" in any manner to the eVTOL industry generally.  Such terms are indistinguishable from restrictions that California courts have previously held void and invalid.  *See, e.g.*, *Brown v. TGS Mgmt. Co.*, 57 Cal. App. 5th 303, 316-19 (2020) (clause prohibiting post-employment use of "all information that is 'usable in' or that 'relates to'" employer's business is non-compete agreement); *accord AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 940 (2018).

It is no answer for Joby to say that it is not seeking to enforce the full extent of its confidentiality clause, and that it is claiming breach only because of (for example) Mr. Kivork's alleged disclosure of purported trade secrets.  In the first place, Joby's claim is not so limited. (*See, e.g.*, Compl. ¶ 69 ("The PIIA obligated Kivork to . . . not disclose or use any of Joby's Proprietary Information, which the PIIA defined to include 'all business, technical and financial information' that Kivork . . . obtained during his employment that related to Joby or its business . . . .").)  But even more fundamentally, it is well established that California courts will not conduct an "as applied" analysis to confidentiality restrictions that—like Joby's—amount, on their face, to a prohibited restraint on trade.  *See, e.g.*, *Brown*, 57 Cal. App. 5th at 317-18 (employee's "facial challenge was a sufficient basis for determining whether the confidentiality provisions violated section 16600"); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 579 (2009) ("Having properly determined that the clauses were facially void under section 16600, the trial court was not required to undertake any further analysis.").

### C.  Joby's Remaining Claims Against Mr. Kivork Should Be Dismissed Because They Are Preempted by the California Uniform Trade Secrets Act.

For the reasons stated in Section IV.B of Archer's Memorandum of Points and Authorities, which Mr. Kivork hereby incorporates and joins, the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*, preempts state law claims premised on purported misappropriation of trade secrets or confidential information.  (*See* Def. Archer Aviation, Inc.'s Mem. Supp. Mot. To Dismiss 14–17.)  As discussed below, the CUTSA preemption arguments made by Archer apply

equally to the claims asserted against Mr. Kivork in Counts 4, 5, 7, 9 and 10, because those claims, like those asserted against Archer, are premised on the same "nucleus of facts" as Joby's misappropriation claim under the Defend Trade Secrets Act. *Beluca Ventures LLC v. Einridge Aktiebolag*, 660 F. Supp. 3d 898, 912 (N.D. Cal. 2023) (CUTSA "preempts common law claims that are based on the same nucleus of facts as the misappropriation of trade secrets claim"). Joby's claims against Mr. Kivork must therefore be dismissed.

### 1.    Joby's Claim Against Mr. Kivork For Violation of California Penal Code § 502 (Count 4) Is Preempted.

Section 502 of the California Penal Code, enacted in 1989 as part of the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), creates a private right of action for persons harmed by various forms of computer hacking. *See, e.g.*, *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014). Although claims under Section 502 are statutory in origin, they are subject to the same CUTSA preemption principles as common-law claims, and thus courts have consistently held that Section 502 claims based on improperly accessing proprietary information—*i.e.*, claims sharing the same underlying "nucleus of facts" as a misappropriation claim—are preempted and must be dismissed. *United Auto Credit Corp. v. Stewart*, 2025 WL 2428466, at *4 (C.D. Cal. June 23, 2025); *Movement Mortg., LLC v. Scrima*, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024) ("[N]either the [Unfair Competition Law] nor [Section] 502 are outside of [CUTSA's] preemptive reach."); *see also ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 224815, at *2 (N.D. Cal. Jan. 15, 2015) (applying same reasoning and preempting claim brought under Penal Code § 496).

Here, as the basis for its Section 502 claim, Joby alleges that—at unspecified times over the course of his four-year term of employment—Mr. Kivork "added his own personal email address as an 'owner' to hundreds of files stored on Drive," which would have allowed him "to access those files even after he left Joby's employ in circumvention of Joby's security measures."

10

(Compl. ¶ 102.)[4]  Joby further alleges that those purported actions violated Section 502 because they were taken "in order to wrongfully control Joby information."  (*Id.* ¶ 104.)  In other words, Mr. Kivork allegedly accessed and took control of Joby's confidential information for his own personal benefit and that of his new employer, Archer.  That is *exactly* the crux of Joby's claim for misappropriation in Count 3.  Joby's Section 502 claim is therefore preempted by CUTSA and must be dismissed.  *See W. Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *6 (C.D. Cal. Oct. 6, 2017) ("[Defendant's] alleged 'use' of the email system to misappropriate confidential information is one of the factual allegations underlying Plaintiff's misappropriation claim, therefore any claim under [Section 502] would be preempted by CUTSA." (citation omitted)).

### 2.    Joby's Claims Against Mr. Kivork for Breach of Fiduciary Duty (Count 5) and Breach of the Duty of Loyalty (Count 7) Are Preempted.

CUTSA preempts claims for breach of fiduciary duty and breach of the duty of loyalty when those claims are based on the same operative facts as trade secret misappropriation.  *See Beluca Ventures*, 660 F. Supp. 3d at 914 (finding fiduciary duty claim preempted where alleged breach of fiduciary duty was "exclusively based on [defendant's] alleged wrongful disclosure of 'confidential information'"); *Calsoft Labs, Inc. v. Panchumarthi*, 2020 WL 512123, at *3 (N.D. Cal. Jan. 31, 2020) (dismissing fiduciary duty claim as preempted where factual allegations stemmed from defendant's "alleged misappropriation of confidential information"); *W. Air Charter*, 2017 WL 10638759, at *3 (holding that breach of duty of loyalty claim was preempted to the extent based on trade secret misappropriation).

The allegations supporting Joby's claims against Mr. Kivork for breach of fiduciary duty (Count 5) and breach of the duty of loyalty (Count 7) are identical.  Joby alleges that Mr. Kivork downloaded, shared, and retained Joby's confidential information via SharePoint and email, (Compl. ¶¶ 110, 123), and added his personal email address to access certain Joby documents stored on Google Drive, such that he "would be able to access those documents even after leaving

---

[4] Joby does not base its Section 502 claim on Mr. Kivork's alleged download of materials from SharePoint or any documents he purportedly e-mailed to himself.  (Compl. ¶ 98-105 (addressing only "Google Drive" documents).)

Joby's employ . . . so that he could assist his future employer . . . in competing against Joby." (*Id.* ¶¶ 111, 124.)  Because those are the same allegations underlying Joby's claim for trade secret misappropriation, the claims for breach of fiduciary duty and breach of the duty of loyalty are preempted by CUTSA and should be dismissed.

### 3. Joby's Claims for Tortious Interference with Contract (Count 9) and Tortious Interference with Prospective Economic Advantage (Count 10) Are Preempted.

CUTSA also preempts claims for tortious interference with third-party arrangements, whether actual contracts or merely potential future deals.  *First-Citizens Bank & Trust Co. v. HSBC Holdings PLC*, 2024 WL 115933, at *12 (N.D. Cal. Jan. 10, 2024) (dismissing claims for tortious interference with contract and prospective economic advantage as preempted); *PQ Labs, Inc. v. Yang Qi*, 2012 WL 2061527, at *6 (N.D. Cal. June 7, 2012) (same).  As with other instances of CUTSA preemption, the only question with respect to a tortious interference claim is whether the claim is ultimately based on alleged misappropriation.  *See, e.g., K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 961 (2009) (dismissal of tortious interference claim proper where "gravamen of the wrongful conduct asserted" was "misappropriation of trade secrets"); *First-Citizens Bank & Trust Co.*, 2024 WL 115933, at *12 (tortious interference claim "predicated on allegations about unlawful use of confidential and trade-secrets information to poach an entire business" was preempted).  Where it is, the claim is preempted and must be dismissed.

Here, Joby's claims for tortious interference are based on its relationship with the third-party Developer, both its alleged exclusive-bargaining "Agreement" (Count 9) and also its potential future "strategic partnership" for the building of eVTOL skydecks (Count 10).  As to both claims, Joby alleges that co-Defendant Archer learned of the Joby-Developer relationship "through information obtained from Kivork" (Compl. ¶¶ 136, 146), which it then used "to offer the Developer more favorable terms," (*id.* ¶ 137), in turn causing the Developer to terminate the exclusive-bargaining Agreement and break off negotiations.  According to Joby, this sequence of events depended on Mr. Kivork's alleged misappropriation:  The "only" way for Archer to offer "a more lucrative deal" was by using "illicit knowledge" obtained from Mr. Kivork.  (*Id.* ¶ 61; *see*

12

*also id.* ¶ 148 (Archer "knowingly us[ed] confidential information obtained through improper means").)  In other words, Joby *could not* allege interference with any Developer deal—existing or merely prospective—*without* the alleged misappropriation by Mr. Kivork.  In these circumstances, the claim is preempted and must be dismissed.  *See W. Air Charter*, 2017 WL 10638759, at *4 (tortious interference claim preempted because defendant's "utiliz[ation]" of confidential information "provides the affirmative act necessary" to establish interference claim).

> **D.**    **Joby's Remaining Claims Against Mr. Kivork Should Be Dismissed For Failure to State a Claim.**
>
> **1.**    **Joby Fails to State a Claim for Violation of California Penal Code § 502 (Count 4)**

As noted above, Penal Code Section 502 is part of California's Computer Data Access and Fraud Act ("CDAFA"), the anti-hacking statute enacted "to expand the degree of protection . . . from 'tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems.'"  *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd*, 572 F. App'x 494 (9th Cir. 2014).  "[T]o properly state a [CDAFA] claim, a plaintiff must plead facts indicating how a defendant violated one of the fourteen rights provided by Section 502(c)."  *Mackintosh v. Lyft, Inc.*, 2019 WL 5682826, at *6 (E.D. Cal. Nov. 1, 2019), *report and recommendation adopted*, 2019 WL 6528953 (E.D. Cal. Dec. 4, 2019)).  "As with each cause of action pleaded in federal court, the complaint should clearly indicate which defendant allegedly violated which particular section of sub[section] (c)."  *Id.*

Here, Joby bases its Section 502 claim on Mr. Kivork's alleged changing of the access settings on certain Google Drive documents to register his personal email address as an "owner," which it claims violated company policy.[5]  (Compl. ¶ 102.)  Joby does not, however, identify which of the fourteen different subparts of Section 502(c) were purportedly violated.  In and of itself, this lack of specificity is grounds for dismissal.  *Cf. Rubang v. United Airlines, Inc.*, 2019

---

[5] As discussed *supra* n.4, Joby does not allege that Mr. Kivork's other purportedly wrongful acts, *i.e.*, downloading of materials from SharePoint or emailing documents to himself, are at issue in this claim.  (Compl. ¶ 98-105.)

WL 3425500, at *2 (E.D. Cal. July 30, 2019) (dismissing claim under the Fair Labor Standards Act where "[p]laintiff . . . fail[ed] to clarify what specific provision or provisions of the FLSA plaintiff is alleging defendant violated").  But even if one overlooks this pleading failure, the CDAFA claim should still be dismissed.

### a) Joby does not allege that Mr. Kivork "knowingly" acted "without permission."

Under any subpart of Section 502(c), a plaintiff seeking to state a claim must allege that the defendant committed a prohibited act—*e.g.*, accessing and altering computer files—and that he did so both "without permission" and "knowingly."  Cal. Penal Code § 502(c)(1)-(14).[6]  That is, a defendant must have "an awareness of the facts" that bring his acts "within the terms of the statute."  *People v. Hawkins*, 98 Cal. App. 4th 1428, 1438 (2002).  This principle is fatal to Joby's claim, because even if it were true that Mr. Kivork did not have permission to change the access settings on the Google Drive files—something Mr. Kivork disputes[7]—Joby nowhere alleges that Mr. Kivork *knew* that he was not permitted to change those settings.  *Id.* at 1439 (the "knowing" mental-state requirement applies to each element in CDAFA claim).  That is, Joby never alleges that it *told* Mr. Kivork he could not change the settings on Google Drive, nor does it set forth facts from which his awareness could be inferred.

Review of the Complaint confirms that this is no mere oversight.  Joby takes great pains to identify its confidentiality protections and the ways in which they were either express or obvious, quoting from and attaching the PIIA that Mr. Kivork signed, (Compl. ¶¶ 31-34), and detailing its login requirements (e.g., two-factor authentication) and physical security measures (e.g., badge swiping), (*id.* ¶¶ 55-58).  But in all of that discussion, Joby curiously omits any mention of the

---

[6] The only exceptions are subparts (c)(8) and (c)(14), which do not require pleading that the defendant acted "without permission" when the defendant introduced a "computer contaminant" into a computer system.  Although Joby fails to specify which subparts form the basis for its Section 502 claim, these subparts do not appear to have any relevance.

[7] Indeed, if this claim were to survive the Motion to Dismiss stage, Mr. Kivork will demonstrate it was common practice at Joby for employees to add their personal e-mail addresses to Google Drive in order to access documents and that there was a specific reason—dictated by and fully known to Joby—as to why he and others took this action.

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

Joby Google Drive and its permission settings.  On that point, in fact, Joby's own allegations suggest a conspicuous *lack* of security concern—and, hence, the *opposite* of a knowing violation—as Joby admits that the Drive was "occasionally" used "to share information with third parties," and that this was done by adding the third party as an "owner" of certain files such that "[t]he third party can then access the shared information using the third party's own login credentials."  (*Id.* ¶ 100.)  That is *exactly* what Mr. Kivork is alleged to have done to give access to *himself*, a bona fide employee.  (*Id.* ¶ 102.)  There is no reason—and certainly none that Joby has pleaded—for Mr. Kivork to believe that, as an employee, he could not have *at least* the same access rights as outsiders.  That Mr. Kivork is alleged to have given himself ownership rights through his personal email address "hundreds" of times over his four-year term of employment, (*id.* ¶ 102), without any allegation that he was instructed not to do so (or ever admonished for doing so), or any allegation of apparent concern by Joby, only drives this point home.

### b)    Joby does not adequately allege damages.

Joby also fails to state a Section 502(c) claim because it does not allege a cognizable injury.  Damage or loss is a necessary element of a CDAFA claim, and facts supporting both the claim of loss *and* the causal link to the statutory violation must be plausibly alleged.  Cal. Penal Code § 502(e)(1) (civil remedy available only to those "who suffer[ ] damage or loss by reason of a violation"); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *11 (N.D. Cal. Mar. 26, 2013) ("In order to state a claim under the CDAFA, Plaintiffs must allege they suffered damage or loss by reason of a violation of Section 502(c).").

Here, Joby has not alleged that Mr. Kivork ever accessed Joby's data after departing, let alone that he damaged or destroyed any such data.  *Cf. Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1040 (C.D. Cal. 2012) (granting summary judgment under Section 502 because of "absence of evidence showing that [party] was damaged by the email forwarding").  In fact, Joby's *only* allegation on this subject is that, because of Mr. Kivork's changing of the Google Drive permission settings, Joby was purportedly required "to expend resources investigating those actions and re-setting the security settings that Kivork had altered."  (Compl. ¶ 105.)  That asserted injury is illusory, as it reflects nothing more than the ordinary costs of offboarding a departing

employee by revoking his permissions and terminating his access.  *See, e.g., Doe I v. Google LLC*, 741 F. Supp. 3d 828, 847 (N.D. Cal. 2024) (dismissing CDAFA claim based on "expended time and resources to investigate [defendant's] conduct" where "there is no allegation that the investigation was undertaken to verify that [plaintiffs'] 'data was or was not altered, damaged, or deleted'").  No causal link to any CDAFA violation can exist on such facts, as the claimed "harm" would have been incurred even absent the alleged violation.  Cal. Penal Code § 502(e)(1) (one "who suffers damage or loss *by reason of* a violation" has statutory standing to sue (emphasis added)).  This is a fatal failing.  *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880, 900 (S.D. Cal. 2025) (dismissing CDAFA claim because plaintiff did not allege "loss due to the alleged CDAFA violation").

       **2.**      **Joby Fails to State Claims for Breach of Fiduciary Duty and Breach of the Duty of Loyalty (Counts 5 and 7).**

Joby's overlapping breach-of-duty claims in Counts 5 and 7 both fail as a matter of law. Although breach of fiduciary duty and breach of the duty of loyalty are recognized as distinct claims, their elements are essentially the same.  *Fields v. QSP, Inc.*, 2011 WL 1375286, at *3 (C.D. Cal. Apr. 8, 2011).  Each requires (1) a relationship giving rise to a duty, (2) breach of that duty, and (3) resulting damage.  *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 410 (2007).  The chief difference between the two claims lies in the first element: While a duty of loyalty generally exists between employers and employees, a fiduciary duty exists only in particular employees, namely officers who exercise discretionary authority.  *Enreach Tech., Inc. v. Embedded Internet Sols., Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005).

Under these principles, both of Joby's claims fail.  First, and common to both claims, the Complaint fails to allege that Mr. Kivork breached any purported duty.  While it is true that an employee has "a duty to refrain from competing with [the principal] and from taking action on behalf of or otherwise assisting [the principal's] competitors," *7EDU Impact Academy v. You*, 760 F. Supp. 3d 981, 1003 (N.D. Cal. 2024), that duty arises directly out of the principal–agent relationship and lasts only as long as the relationship lasts.  Here, Joby does not allege that Mr. Kivork took any actions to compete with Joby *during* his employment (*i.e.*, at the time when he

was obligated not to).  That is, the Complaint makes no direct allegation that Mr. Kivork disclosed proprietary information to Archer, much less that he did so *while a Joby employee*.  Although Joby does allege that Mr. Kivork took possession of allegedly proprietary files before he left the company, absent allegations that he actually shared the information or used it for his own purposes while still employed by Joby—and there are none—the mere possession of files does not amount to breach of any duty, however the duty is styled.  *See, e.g.*, *Mintz*, 906 F. Supp. 2d at 1037-38.

Second, and specific to the claim for breach of fiduciary duty, the Complaint lacks any allegation establishing that Mr. Kivork owed Joby any fiduciary duty in the first place.  Joby alleges that Mr. Kivork, as "U.S. State and Local Policy Lead," was a fiduciary "[b]ecause of [his] position of trust and responsibility," which "included the exercise of discretion."  (Compl. ¶ 107.) But the "'mere placing of trust in another' does not create a fiduciary relationship." *UCAR Tech. (USA) Inc. v. Yan Li*, 2017 WL 6405620, at *7 (N.D. Cal. Dec. 15, 2017) (citation omitted).  Only "officers of a company" owe fiduciary duties, and only where their "role requires participation in the management of the company and the exercise of some discretionary authority." *Skye Orthobiologics, LLC v. CTM Biomedical, LLC*, 2021 WL 6104163, at *5 (C.D. Cal. Aug. 30, 2021).  By contrast, mere "'nominal' officers with no management role do not have fiduciary duties." *Id.*  Joby does not allege that Mr. Kivork was an officer of the company or had any management role.  Instead, it alleges only that he exercised discretion in "representing Joby" to "key stakeholders," including "government officials" and "high-level executive employees for strategic business partners," and "advising Joby's leadership on regulatory strategy."  (Compl. ¶ 107.)  The conclusory assertion that one "exercised discretionary authority" in such roles does not plausibly allege "discretion in managing [Joby's] corporate affairs" sufficient to give rise to a fiduciary duty.  *Agfa Corp. v. Richard*, 2018 WL 3078585, at *3 (C.D. Cal. June 1, 2018) (dismissing on these grounds); *see also Skye Orthobiologics*, 2021 WL 6104163, at *5 (dismissing where plaintiff failed to plead facts showing "Senior Vice President" "managed [company's] day-to-day operations").

---

17

### 3.    Joby Fails to State a Claim for Tortious Interference with Contract (Count 9).

To state a claim for tortious interference with contract, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage." *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021) (quoting *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 825 (9th Cir. 2008)).  Joby's claim for tortious interference with contract in Count 9 fails as a matter of law as to several of these requisite elements.

### a)    Joby fails to plead the existence of a valid contract.

Joby's claim for tortious interference with contract is premised on "the Agreement," which was (according to Joby) a March 2025 contract whereby Joby and the Developer agreed to "work together" for eighteen months "to negotiate a more comprehensive partnership agreement" relating to the construction and operation of eVTOL skydecks at certain of the Developer's properties. (Compl. ¶¶ 24-25.)  The Complaint describes this contract as "a legally binding agreement," noting that during the eighteen-month "exclusivity period," the Developer was obligated "not to enter into any similar agreements" with other industry players.  (*Id.*)  But while the Complaint avers that the Agreement "contained the key economic terms for the parties' planned project," (*id.*), it does not say what those terms were—Joby notably fails to include the Agreement as an exhibit, quote from it, or describe any of its material terms in sufficient detail—and indeed, given the plan "to negotiate a more comprehensive partnership agreement" over the next year and a half, it appears those terms were still being worked out.  Hence, the Agreement appears not to have been "legally binding" as to any term *except* exclusivity, a limitation that the Complaint subtly acknowledges.  (*Id.* ¶ 25 ("[T]he Agreement also states that the exclusivity term constitutes a legally binding agreement").)

On these facts—and there are no others to go on, given that Joby did not attach the Agreement—Joby has no claim for tortious interference with contract.  Regardless of how "the Agreement" was styled, and despite any express assertions of its "binding" nature, California law

is clear that where a contract provides only an *expectation* of future business relations, rather than legal *assurance* of such relations, the contract cannot support a claim for tortious interference with contract. *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1147 (2020). That is clearly the case here. The purported "Agreement" on which Joby bases its claim was merely an agreement *to negotiate further* and, perhaps, arrive at a real agreement in the future. This is nothing more than an *expectation* of *potential* contractual relations in the *future*, which cannot support a tortious interference claim.

### b) Joby fails to plead breach or disruption.

Even if Joby had pleaded the existence of a binding strategic partnership agreement—as opposed to a mere agreement to attempt to negotiate one in eighteen months' time—its tortious interference claim would still fail for lack of allegations of any breach by the Developer.

In the first place, no claim of breach arises from the fact that Joby and the Developer did not consummate their contemplated strategic partnership. It is well settled that an agreement to negotiate can be fully performed even if no binding contract results. *See Cedar Fair, L.P. v. City of Santa Clara*, 194 Cal. App. 4th 1150, 1171 (2011) (agreement to negotiate deemed performed if parties negotiate in good faith but fail to reach agreement). Nor does any breach lie in the fact that the Developer purported to terminate the Agreement, given that, according to Joby, it appeared to do so in accordance with its express contractual rights. (Compl. ¶ 62 (Developer "purported to exercise its right to terminate the Agreement" based on Joby's alleged breach of confidentiality).) *See Sullivan v. Mass. Mut. Life Ins. Co.*, 611 F.2d 261, 266 (9th Cir. 1979) (party cannot be liable for breach-by-termination when it has contractual right to terminate). All that Joby is left with, therefore, is the "exclusivity term," which Joby argues was breached by the fact that the Developer was "negotiating with Archer." (Compl. ¶ 138.) But even assuming that the Developer's mere receipt of a "more lucrative offer" from Archer amounts to "negotiating"—and Joby notably fails to allege what this alleged offer from Archer consisted of, or how, if at all, the Developer responded to it—such conduct was not prohibited by the Agreement. As described by Joby, the Agreement's exclusivity term barred the Developer from "enter[ing] into any similar agreement or

19

arrangements" with a competitor of Joby, (*id.* ¶ 25), but the Complaint makes no mention of a prohibition on the Developer merely *talking* to one, which is the most that the Complaint alleges.

### c)    Joby fails to plead resulting damages.

Finally, the Complaint also fails to allege any damages resulting from the alleged interference.

In a breach-of-contract action arising from an agreement to negotiate, the plaintiff's damages are not his "lost expectations under the prospective contract"—*i.e.*, the one that the parties are trying to negotiate—but rather the "damages caused by reliance on the agreement to negotiate." *See Rambus Inc v. Hynix Semiconductor Inc.*, 629 F. Supp. 2d 979, 1016 (N.D. Cal. 2009). This principle exists to avoid conflating an agreement that exists (the agreement-to-negotiate) with one that does not (the contemplated future contract). It follows that, on a claim of tortious interference with an agreement to negotiate, the damages resulting from the interference must similarly arise out of reliance on the existing agreement, not the expectations under the potential one. *See In re Tamen*, 22 F.3d 199, 205 (9th Cir. 1994) (same rule for damages applies to breach of contract claim and tortious interference claim). Any other rule would make the tortious interference claim more valuable than a breach claim under the contract interfered with.

Here, however, the Complaint lacks any allegations of reliance or harm therefrom. Although the Complaint alleges (in entirely conclusory fashion) that Joby was damaged by the alleged interference, (Compl. ¶¶ 143, 153), it offers no supporting facts to show how it relied to its detriment on the agreement to negotiate. There is no allegation, for example, that Joby incurred any out-of-pocket costs conducting the negotiations, or that it passed on any opportunities to negotiate with other parties in the belief that negotiations with the Developer would bear fruit. *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1262-63 (2002). Lacking such, the Complaint does not "contain . . . allegations respecting all the material elements necessary to sustain recovery" on this claim, *Twombly*, 550 U.S. at 562, which should thus be dismissed.

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS

### 4.    Joby Fails to State a Claim for Tortious Interference with a Prospective Economic Advantage (Count 10).

To state a claim for tortious interference with prospective economic advantage, a plaintiff must establish the same elements as for tortious interference with contract, "focusing instead on the existence and knowledge of a prospective economic relationship" rather than an actual contract.  In addition, he must establish that the defendant's conduct was "wrongful by some legal measure other than the fact of interference itself."  *Name.Space, Inc. v. Internet Corp. for Assigned Names and Nos.*, 795 F.3d 1124, 1133 (9th Cir. 2015) (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003)); *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 392-93 (1995).  A plaintiff must also show that it was "reasonably probable" that the prospective economic advantage "would have been realized but for defendant's interference."  *Soil Retention Prods.*, 521 F. Supp. 3d at 961 (quoting *Song v. Drenberg*, 2019 WL 1998944, at *7-8 (N.D. Cal. May 6, 2019)).  On both points, *i.e.*, (i) an independently actionable act, and (ii) a reasonable probability of realizing the would-be strategic partnership, Joby's allegations fall well short.

As to the requirement of an independently wrongful act, Joby revisits its aforementioned allegations of Mr. Kivork's alleged breach of contract, breach of fiduciary duty, and breach of duty of loyalty grounded in the same nucleus of fact as Joby's trade secret misappropriation allegations.  (Compl. ¶ 147.)  Regardless, none of these acts are independently actionable as a matter of law for the same reasons discussed above:  The confidentiality obligations of the PIAA are unenforceable as restraints on trade, and Mr. Kivork is not alleged to have taken any actions in competition with Joby at a time when he was actually subject to the common-law duties that Joby invokes.  Joby has thus alleged no "independently actionable" act that is "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard."  *Korea Supply*, 29 Cal. 4th at 1158-59.

And as to the requirement of a reasonably probable realization, Joby provides no factual support whatsoever regarding the probability or expectations of future benefits arising from a hypothetical comprehensive strategic partnership with Developer.  No financial terms or other

21

potential economic benefits are mentioned at all, presumably because the parties had no idea what they were.  This failure precludes any inference that the agreement to negotiate offered Joby a reasonably probable prospective economic advantage.  *See Soil Retention Prods.*, 521 F. Supp. 3d at 961.  Joby's claim for tortious interference with prospective economic advantage should therefore be dismissed.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss each of the claims against Mr. Kivork without leave to amend.

DATED:  January 23, 2026

EVERSHEDS SUTHERLAND (US) LLP

By:     */s/ Bradford Newman*
        Bradford Newman

Torridon Law PLLC
John V. Coghlan (*pro hac* admission pending*)*
John M. McNichols (*pro hac* admission pending*)*

*Attorneys for Defendant George Kivork*

DEFENDANT GEORGE KIVORK'S MOTION TO DISMISS