1   JOSH A. KREVITT, SBN 208552                ORIN SNYDER (*admitted pro hac vice*)
      jkrevitt@gibsondunn.com                    osnyder@gibsondunn.com
2   GIBSON, DUNN & CRUTCHER LLP                GIBSON, DUNN & CRUTCHER LLP
    310 University Avenue                       200 Park Avenue
3   Palo Alto, California 94301-1744            New York, New York 10166-0193
    Telephone:   650.849.5300                   Telephone:   212.351.4000
4   Facsimile:   650.849.5333                   Facsimile:   212.351.4035

5   JAMES L. ZELENAY JR., SBN 237339
      jzelenay@gibsondunn.com
6   GIBSON, DUNN & CRUTCHER LLP
    333 South Grand Avenue
7   Los Angeles, California 90071-3197
    Telephone:   213.229.7000
8   Facsimile:   213.229.7520

9   ELIZABETH K. MCCLOSKEY, SBN 268184
      emccloskey@gibsondunn.com
10  GIBSON, DUNN & CRUTCHER LLP
    One Embarcadero Center, Suite 2600
11  San Francisco, California 94111-3715
    Telephone:   415.393.8200
12  Facsimile:   415.393.8306

13  *Attorneys for Defendant Archer Aviation Inc.*

14

15

16                      **UNITED STATES DISTRICT COURT**
17                    **NORTHERN DISTRICT OF CALIFORNIA**
                          **SAN JOSE DIVISION**
18

19                                          |  Case No.: 5:25-CV-10703-SVK

20  Joby Aero, Inc.,                        |  **DEFENDANT ARCHER AVIATION
                                            |  INC.'S NOTICE OF MOTION AND
21              Plaintiff,                   |  MOTION TO DISMISS; MEMORANDUM
                                            |  OF POINTS AND AUTHORITIES IN
22         v.                               |  SUPPORT THEREOF**

23  Archer Aviation Inc. and George Kivork, |
                                            |  Hearing:      March 24, 2026
24              Defendants.                  |  Time:         10:00 a.m.
                                            |  Judge:        Hon. Susan van Keulen
25                                          |  Trial Date:   None Set
                                            |  Action Filed: Nov. 18, 2025
26

27

28

## NOTICE OF MOTION TO DISMISS PURSUANT TO RULES 8 AND 12(b)(6)

PLEASE TAKE NOTICE that, on March 24, 2026, at 10:00 a.m., or as soon as the parties may be heard before the Honorable Susan van Keulen of the United States District Court for the Northern District of California, Courtroom 6 on the 4th Floor of the Robert F. Peckham Federal Building and United States Courthouse located at 280 South 1st Street, San Jose, CA 95113, Defendant Archer Aviation Inc. ("Archer") will, and hereby does, move this Court, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Counts 2, 3, 6, 8, 9, 10, and 11 of Plaintiff Joby Aero, Inc.'s Complaint.

This Motion is based upon this notice of motion; the memorandum of points and authorities in support thereof; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters of which the Court may take judicial notice.

DATED: January 23, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ James L. Zelenay Jr.
James L. Zelenay Jr.
Josh A. Krevitt
Orin Snyder (*admitted pro hac vice*)
Elizabeth K. McCloskey

*Attorneys for Defendant Archer Aviation Inc.*

1

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................................. 1

II.     BACKGROUND ................................................................................................................ 3

A.      Joby's Allegations Regarding Kivork's Actions While Employed by Joby.......................... 3

B.      Joby's Allegations Regarding Events Following Kivork's Employment With Joby. ............... 5

C.      Joby's Complaint Against Kivork and Archer.................................................................. 6

III.    LEGAL STANDARD ....................................................................................................... 6

IV.     ARGUMENT .................................................................................................................... 7

A.      Joby Fails to State a Claim for Trade-Secret Misappropriation....................................... 7

    1.      Joby Fails to Plead Any Trade Secret With Sufficient Particularity............................ 7

    2.      Joby Fails to Plead Any Misappropriation By Archer of a Particular Trade Secret or Damages From Any Such Misappropriation. ................................................ 11

B.      Joby's State-Law Claims Are Preempted by CUTSA and Should Be Dismissed. ................. 14

    1.      CUTSA Preempts Common-Law Claims Based on Misappropriation of Trade Secrets or Other "Confidential and Proprietary Information." ..................................... 14

    2.      Joby's State-Law Claims All Arise From the Allegations Underlying Its Trade-Secret Misappropriation Claim. ................................................................................. 15

C.      Joby's State-Law Claims Fail for Additional Reasons. ................................................... 17

    1.      Joby Fails to State a Claim for Inducement of Breach of Contract. ........................... 17

    2.      Joby Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty. ........ 18

    3.      Joby Fails to State a Claim for Aiding and Abetting Breach of Duty of Loyalty........ 20

    4.      Joby Fails to State a Claim for Tortious Interference with Contract. ......................... 21

    5.      Joby Fails to State a Claim for Tortious Interference with Prospective Economic Advantage. ............................................................................................... 23

    6.      Joby Fails to State a Claim for Violations of California's UCL. ............................... 25

V.      CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*1-800 Contacts, Inc. v. Steinberg*,
107 Cal. App. 4th 568 (2003)................................................................15, 17

*Aavid Thermalloy LLC v. Cooler Master Co., Ltd.*,
2018 WL 11348438 (N.D. Cal. June 15, 2018) ......................................3, 14

*Acres Bonusing, Inc. v. Ramsey*,
2022 WL 17170856 (N.D. Cal. Nov. 22, 2022).............................................19

*Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*,
2019 WL 4137618 (C.D. Cal. Mar. 27, 2019)...........................................9, 10

*Agile Sourcing Partners, Inc. v. Dempsey*,
2021 WL 4860693 (C.D. Cal. July 15, 2021) ...............................................14

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ..........................................8, 10, 25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................6, 7

*Barker v. Insight Glob., LLC*,
2017 WL 10504692 (N.D. Cal. Nov. 21, 2017).......................................14, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................6

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) .................................................9

*Brown v. Adidas Int.*,
938 F. Supp. 628 (S.D. Cal. 1996) ...............................................................14

*Calsoft Labs, Inc. v. Panchumarthi*,
2020 WL 512123 (N.D. Cal. Jan. 31, 2020) .......................................14, 15, 16

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
16 F. Supp. 3d 1141 (S.D. Cal. 2014).............................................................24

*Cisco Systems, Inc. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) .........................................................15

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)..........................................................................23

*Elias v. Spotify USA Inc.*,
2020 WL 11884714 (C.D. Cal. Nov. 24, 2020)........................................12, 18

*Erhart v. BofI Holdings*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020) ...........................................3, 14, 15

Gibson, Dunn &
Crutcher LLP

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS - CASE NO.: 5:25-CV-10703-SVK

*Fields v. QSP, Inc.*,
  2011 WL 1375286 (C.D. Cal. Apr. 8, 2011) ................................................................20

*First-Citizens Bank & Tr. Co. v. HSBC Holdings PLC*,
  2024 WL 3364016 (N.D. Cal. July 9, 2024) ..............................................................20

*Genasys Inc. v. Vector Acoustics, LLC*,
  638 F. Supp. 3d 1135 (S.D. Cal. 2022) ..........................................................8, 9, 10

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) .......................................................................................7

*Green Crush LLC v. Paradise Splash I, Inc.*,
  2018 WL 4940825 (C.D. Cal. May 3, 2018) ...............................................................25

*Hill Phoenix, Inc. v. Classical Refrigeration SoCal, Inc.*,
  2020 WL 1244354 (C.D. Cal. Mar. 15, 2020) ..............................................................7

*HomeLight, Inc. v. Shkipin*,
  2024 WL 940089 (N.D. Cal. Mar. 5, 2024) ................................................................25

*Honey Bum, LLC v. Fashion Nova, Inc.*,
  63 F.4th 813 (9th Cir. 2023) ........................................................................................22

*Invisible Dot, Inc. v. DeDecker*,
  2019 WL 1718621 (C.D. Cal. Feb. 6, 2019) ............................................................1, 7

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) .................................................................................................21

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
  171 Cal. App. 4th 939 (2009) ......................................................................................14

*Laborers' Local v. Intersil*,
  868 F. Supp. 2d 838 (N.D. Cal. 2012) ........................................................................19

*M/A-COM Tech. Sols. Inc. v. Litrinium, Inc.*,
  2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) ..............................................2, 11, 12

*Mariano v. U.S. Bank Nat'l Ass'n*,
  2013 WL 12138730 (C.D. Cal. Sep. 11, 2013) ...........................................................23

*Mattel, Inc. v. MGA Entm't, Inc.*,
  782 F. Supp. 2d 911 (C.D. Cal. 2010) .........................................................................14

*MedioStream, Inc. v. Microsoft Corp.*,
  869 F. Supp. 2d 1095 (N.D. Cal. 2012) .....................................................................8, 9

*Menzel v. Scholastic, Inc.*,
  2018 WL 1400386 (N.D. Cal. Mar. 19, 2018) .............................................................17

*Metricolor LLC v. L'Oreal S.A.*,
  2018 WL 5099496 (C.D. Cal. Aug. 15, 2018) .............................................................25

Gibson, Dunn &
Crutcher LLP

*Mosier v. Stonefield Josephson, Inc.*,
    815 F.3d 1161 (9th Cir. 2016)............................................................................................20

*Movement Mortg., LLC v. Scrima*,
    2024 WL 3011202 (E.D. Cal. June 11, 2024).....................................................................16

*Mula v. Mula-Stouky*,
    2022 WL 1188867 (N.D. Cal. Apr. 21, 2022) ....................................................................19

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
    2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) ......................................................................18

*Namer v. Bank of Am.*,
    2017 WL 1180193 (S.D. Cal. 2017) ...................................................................................19

*Pech v. Doniger*,
    75 Cal. App. 5th 443 (2022)...............................................................................................21

*Philips v. Ford Motor Co.*,
    2015 WL 4111448 (N.D. Cal. July 7, 2015) .......................................................................25

*Quiñonez v. United States*,
    667 F. Supp. 3d 1015 (N.D. Cal. 2023) ..............................................................................17

*Race Winning Brands, Inc. v. Gearhart*,
    2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ...................................................................8, 9

*Rambus Inc. v. Hynix Semiconductor Inc.*,
    629 F. Supp. 2d 979 (N.D. Cal. 2009) ................................................................................23

*Republican Nat'l Comm. v. Google LLC*,
    742 F. Supp. 3d 1099 (E.D. Cal. 2024)...............................................................................24

*Silicon Knights, Inc. v. Crystal Dynamics, Inc.*,
    983 F. Supp. 1303 (N.D. Cal. 1997) ...................................................................................24

*Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*,
    521 F. Supp. 3d 929 (S.D. Cal. 2021) .............................................................................21, 24

*Sun Hong Foods, Inc. v. Future Best Trading Inc.*,
    2023 WL 11197084 (C.D. Cal. Sep. 29, 2023)..................................................................7, 8

*SunPower Corp. v. SolarCity Corp.*,
    2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) (Koh, J.).....................................................15

*Swipe & Bite, Inc. v. Chow*,
    147 F. Supp. 3d 924 (N.D. Cal. 2015) ................................................................................17

*Symphony Risk Sols. Ins. Servs., Inc. v. Perlite*,
    2024 WL 5112479 (N.D. Cal. 2024)...................................................................................16

*In re Tamen*,
    22 F.3d 199 (9th Cir. 1994)................................................................................................23

*Teva Pharms. USA, Inc. v. Health IQ, LLC*,
  2013 WL 12132029 (C.D. Cal. Apr. 29, 2013) ..................................................3, 14

*TRIGO ADR Americas, LLC v. OEM Logistics, LLC*,
  2025 WL 276149 (S.D. Cal. Jan. 23, 2025)..............................................................16

*Vendavo, Inc. v. Price*
  *f(x) AG*, 2018 WL 1456697(N.D. Cal. Mar. 23, 2018) ......................................1, 8

*Vested Hous. Grp., LLC v. Principal Real Est. Invs., LLC*,
  648 F. App'x 646 (9th Cir. 2016) .............................................................................23

*Vox Network Sols., Inc. v. Gage Techs., Inc.*,
  2025 WL 929939 (N.D. Cal. Mar. 27, 2025) ...........................................................20

*W. Air Charter, Inc. v. Schembari*,
  2017 WL 10638759 (C.D. Cal. Oct. 6, 2017) ...........................................15, 16, 24

*Warner v. Tinder Inc.*,
  105 F. Supp. 3d 1083 (C.D. Cal. 2015).....................................................................25

*Whiteslate, LLP v. Dahlin*,
  2021 WL 2826088 (S.D. Cal. July 7, 2021) .............................................................16

*X Corp. v. Ctr. for Countering Digit. Hate, Inc.*,
  724 F. Supp. 3d 948 (N.D. Cal. 2024) ......................................................................17

*Xsolla (USA), Inc. v. Aghanim Inc.*,
  2024 WL 4139615 (C.D. Cal. Sep. 10, 2024)...........................................................13

**Statutes**

18 U.S.C. 1836(b)(3)(B) ....................................................................................................7

18 U.S.C. § 1836 ...........................................................................................................1, 6

18 U.S.C. §§ 1839(3) .........................................................................................................7

18 U.S.C. § 1839(5) .....................................................................................................7, 11

Cal. Bus. & Prof. Code § 17200 ........................................................................................6

## I.    INTRODUCTION

This lawsuit is legally deficient from top to bottom.  It fails to plead a viable trade secret, fails to plead misappropriation by Archer Aviation Inc. ("Archer"), and rests on speculation and innuendo rather than plausible factual allegations.  As a result, Joby Aero, Inc.'s ("Joby") claims fail as a matter of law and should be dismissed in their entirety.

Joby's own filing makes unmistakably clear that this action was not brought to vindicate any legitimate legal right.  Instead, it is a transparent attempt to slow its most formidable competitor—Archer—who is repeatedly winning the race to commercialize air taxis across the world.  Archer is succeeding through lawful competition, realistic innovation, disciplined execution, and by building a credible brand that sophisticated partners affirmatively choose to work with.  Joby, unable to keep pace in the marketplace, has turned instead to litigation and misinformation as a competitive weapon.

Joby and Archer are competitors seeking to develop and bring to market electric vertical takeoff and landing ("eVTOL") aircraft for use as air taxis in major cities worldwide.  Joby asserts claims against Archer and a former Joby employee, George Kivork, for misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq., and a collection of derivative state-law claims.  According to the Complaint, while still employed at Joby—and while authorized to access its internal systems—Kivork downloaded broad, undefined categories of information and, "in concert with Archer," misappropriated Joby's trade secrets.  Dkt. 1-1 ("Compl.") ¶ 54.  Joby also speculates, without factual support, that Kivork must have shared with Archer unidentified "key terms" of a purported agreement between Joby and an unidentified "major real estate developer" (the "Developer") in order to "undercut" Joby's relationship with that unnamed developer.  *Id.* ¶¶ 6, 61, 146.

These opaque allegations are legally insufficient and lack any plausible—or good-faith—basis.  To state a claim under the DTSA, a plaintiff must identify the alleged trade secrets "with sufficient particularity to separate [them] from matters of general knowledge in the trade" and to allow the defendant "to ascertain at least the boundaries within which the secret lies."  *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *4 (C.D. Cal. Feb. 6, 2019).  Courts routinely dismiss complaints that, like Joby's, rely on sweeping descriptions of information rather than concrete, identifiable trade secrets.  *See Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

Gibson, Dunn & Crutcher LLP

Joby does exactly what the DTSA forbids. Rather than plead any specific trade secret, the Complaint recites amorphous categories of information that could apply to virtually any company in the eVTOL industry—such as unspecified "commercial and regulatory strategy" or "business and regulatory strateg[y]" materials (Compl. ¶¶ 1, 89), undefined "technical specifications, analysis, and know-how" regarding "Joby's aircraft and operations" (*id.* ¶¶ 1, 8, 45), and undescribed "infrastructure strategy" materials (*id.* ¶¶ 8, 45). These are not trade secrets pleaded with particularity. They are generic labels—content-free placeholders that fail to identify what is supposedly secret, where the secrecy lies, or why the information is protectable at all.

Joby's allegations fare no better with respect to its purported "agreement" with a "Developer." The Complaint does not clearly identify who the other party to the agreement is, leaving Archer guessing. Nor does the Complaint identify any actual "key terms" of that agreement, let alone plead facts showing that those terms were secret. Instead, Joby relies on vague generalities, such as a supposed requirement that the parties "work together exclusively for 18 months to negotiate a more comprehensive partnership agreement." Compl. ¶¶ 24, 60. Such conclusory descriptions do not plausibly allege the existence of a trade secret under the DTSA. An unidentified agreement with an unnamed party that supposedly contains a generic exclusivity concept—untethered to any factual allegations of secrecy—cannot sustain a federal trade secret claim.

Even if Joby had adequately pleaded the existence of specific trade secrets—which it has not— the Complaint independently fails because it does not allege facts showing that Archer misappropriated any Joby trade secret. There are no factual allegations describing what Archer supposedly received, when it received it, how it used it, or how any alleged use was improper. Instead, Joby relies on speculation pleaded "on information and belief," asserting that Archer must have misappropriated Joby's information simply because Archer supposedly proposed a deal that was better than Joby's proposed deal. *See, e.g.*, Compl. ¶¶ 88–96. Courts consistently reject this type of pleading by conjecture, holding that plaintiffs must allege "how the misappropriation occurred, when it occurred, and what was misappropriated." *M/A-COM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *10 (C.D. Cal. Sept. 23, 2019). Joby does none of that here.

Because Joby's DTSA claim fails, all of its derivative state-law claims necessarily fail as well.

Those claims are independently barred by California's Uniform Trade Secrets Act ("CUTSA"), which "provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon [trade secret] misappropriation." *Aavid Thermalloy LLC v. Cooler Master Co., Ltd.*, 2018 WL 11348438, at *2 (N.D. Cal. June 15, 2018). Where, as here, "the gravamen" of the plaintiff's claims is that a defendant wrongfully accessed or used confidential or proprietary information, CUTSA preempts all overlapping state-law causes of action—regardless of how they are labeled. *Erhart v. BofI Holdings*, 612 F. Supp. 3d 1062, 1118 (S.D. Cal. 2020).

Every one of Joby's state-law claims is premised on the same alleged misconduct: the supposed taking and use of confidential information. CUTSA therefore preempts those claims in their entirety. *See Teva Pharms. USA, Inc. v. Health IQ, LLC*, 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013).

Dismissal is independently warranted because the state-law claims also fail on their own elements. Joby relies on boilerplate, conclusory assertions that Archer "induced" Kivork to breach confidentiality obligations through unspecified "encouragement" or "direction," provided unidentified "substantial assistance" in alleged breaches of fiduciary duty, or caused an unnamed developer to breach an "exclusivity provision" that is never quoted and never meaningfully described. Compl. ¶¶ 6, 81, 116. These allegations are devoid of factual support and insufficient to plausibly plead inducement, causation, breach, or damages under any applicable standard.

In short, this case is not about protecting legitimate trade secrets. It is about attempting to weaponize litigation to generate marketplace noise and cast unwarranted suspicion on a competitor that is outcompeting Joby fairly and lawfully. The courts are not a substitute for competition, and the law does not permit their misuse for that purpose.

For these reasons, the Court should dismiss Counts 2, 3, 6, 8, 9, 10, and 11 of Joby's Complaint.

## II.    BACKGROUND

### A.    Joby's Allegations Regarding Kivork's Actions While Employed by Joby.

Joby is a company trying to develop eVTOL aircraft. Compl. ¶ 2. Joby alleges that it employed Kivork as its U.S. State and Local Policy Lead for roughly four years. *Id.* ¶ 28. According to Joby, Kivork signed employment agreements with the company on August 19, 2021, including a Proprietary Information and Inventions Agreement ("PIIA"), which required Kivork to keep certain "Proprietary

Information" at Joby confidential, and to return such information upon termination of his employment. *Id.* ¶¶ 31–34.

Joby alleges that on July 18, 2025, Kivork—while still a Joby employee—downloaded "dozens of Joby's files from Joby's electronic Microsoft SharePoint ('SharePoint') repository." Compl. ¶ 41. Joby does not allege that Kivork ever transmitted these documents to himself or to anyone else. Nor does Joby allege that Kivork downloaded these documents to anything other than his Joby-issued laptop, returned to Joby upon as part of his exit process. Joby identifies only one specific file in its Complaint—"20250116 – [Developer] – Strategic Partnership Counter Proposal"—that Joby alleges contained details of the negotiation between Joby and the Developer, as well as the deal terms between Joby and the Developer, supposedly related—in some unspecified way—to a purported March 2025 agreement between them (the "Developer Agreement"). *Id.* ¶¶ 24–25, 42–43.

Joby never provides any language from the purported deal terms or Developer Agreement, relying instead on vague characterizations of purported provisions. For example, Joby alleges that the Agreement provided that Joby and the Developer "shall work together exclusively for 18 months to negotiate a more comprehensive partnership agreement," and that the Developer "shall not enter into any similar agreements or arrangements with other participants in the eVTOL market without Joby's consent" during that 18-month window. Compl. ¶¶ 24–26. Joby further alleges that the Agreement "contained the key economic terms for the parties' planned projects," but offers no details about those purportedly key terms and planned projects, which apparently involved designing or operating skydecks at undisclosed properties in undisclosed locations. *Id.* ¶ 24. Joby says the Agreement "was kept confidential," which was "economically beneficial to Joby," *id.* ¶ 26, but only briefly alludes to a confidentiality provision within the Developer Agreement without further explaining it, *id.* ¶ 62.

Joby also generally alleges that Kivork downloaded on the same date (i) "other [unspecified] files related directly to Joby's strategic partnership with the Developer, including technical analyses of the projected impact of Joby aircraft operations on the Developer's properties and an internal Joby business and regulatory strategy document related to aircraft operational acoustics at the Developer's properties"; and (ii) additional unspecified files that included "highly confidential technical specifications, analysis, and know-how developed by Joby, commercial strategy development,

Gibson, Dunn & Crutcher LLP

regulatory strategies, and infrastructure strategy for vertiports and airport access, as well as information about joint activities with high-value Joby partners." *Id.* ¶¶ 44–45.

Joby also alleges that Kivork "emailed other confidential Joby files to his personal email account," which purportedly "included confidential and proprietary site analysis for potential vertiports and airport access, high-level land use development strategy, and high-level commercial launch strategies for sites in California." Compl. ¶ 46. Joby also alleges that Kivork "altered the security settings" for unspecified "Joby files in a manner that could have allowed Kivork to access those files after leaving Joby" through his personal email address, but Joby never alleges that Kivork or Archer accessed those files after Kivork left Joby. *Id.* ¶¶ 49–54.

Joby further alleges that on July 20, 2025, Kivork informed Joby that he intended to resign to join Archer—a leading company in the eVTOL market over the last seven years.[1] Compl. ¶ 36. Joby maintained Kivork's access to its systems until July 23 and employed him until August 3. *Id.* ¶ 37.

**B.    Joby's Allegations Regarding Events Following Kivork's Employment With Joby.**

Joby alleges that on August 5, 2025, the unnamed Developer emailed Joby and "reported to Joby that Archer had approached the Developer about a business relationship." Compl. ¶¶ 6, 59–60. Joby maintains the Developer "expressed concern" because Archer's "pitch" indicated Archer knew of the "existence" and purportedly confidential "key terms" of the agreement between Joby and the Developer, although Joby never alleges what any such terms were about, let alone provide any specifics. *Id.* ¶ 60. According to Joby, the Developer then, following the email it had sent, told Joby that it presumed that Archer learned "information about the deal" from Kivork, but Joby fails to cite any evidence to support the Developer's alleged assumption. *Id.* ¶¶ 6, 61. The Developer also supposedly indicated to Joby, either in the email or subsequent conversation, that Archer "had offered a more lucrative deal," which Joby maintains could "only" be possible if "Archer, acting through Kivork, gained illicit knowledge of the Agreement's terms and leveraged those terms in its own negotiations." *Id.* ¶ 61. According to Joby's version of events, then, several weeks after this supposed

---

[1] Archer disputes any suggestion that it encourages or facilitates violations of prior employment obligations. As part of its ordinary onboarding practices, Archer arranges for outside counsel and third-party forensic consultants to independently represent and advise new hires regarding compliance with obligations owed to former employers, and Archer followed that practice in connection with Kivork.

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS - CASE NO.: 5:25-CV-10703-SVK

Gibson, Dunn & Crutcher LLP

email to Joby on August 5, 2025 (and subsequent conversation) the Developer "purported to exercise its right to terminate the [Developer] Agreement" on August 21, 2025, supposedly because the Developer claimed the "disclosure attributed to Kivork" meant Joby had breached the Developer Agreement's confidentiality provision. *Id.* ¶ 62.

Joby further alleges that it "quickly" acted to demand that Kivork and Archer "cease using and return Joby's proprietary information." Compl. ¶ 63. That demand came on August 11, 2025, in the form of a letter from Joby's counsel; Joby does not allege that this letter referenced any concern with an unnamed developer. Further correspondence between counsel for the parties followed over the next two-and-a-half months, including on August 14, 2025, August 23, 2025, and September 5, 2025, and not once during this correspondence did Joby raise any concerns regarding this issue with an unnamed developer.

**C.    Joby's Complaint Against Kivork and Archer.**

On November 18, 2025, Joby filed an 11-count Complaint against Kivork and Archer in the Superior Court of the State of California for the County of Santa Cruz. Archer removed the case to this Court on December 16, 2025. Dkt. 1. Seven counts are brought against Archer (either on its own or along with Kivork), and are the subject of this motion: Inducement of Breach of Contract (Count 2); Trade Secret Misappropriation in Violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* (Count 3); Aiding & Abetting Breach of Fiduciary Duty (Count 6); Aiding & Abetting Breach of Duty of Loyalty (Count 8); Tortious Interference With Contract (Count 9); Tortious Interference With Prospective Economic Advantage (Count 10); and Violation of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.* (Count 11). The four remaining counts in Joby's Complaint (Counts 1, 4, 5, 7) are brought only against Kivork and are the subject of Kivork's concurrently filed motion to dismiss. Joby seeks damages, disgorgement, restitution, and injunctive relief. *See* Compl. ¶ 162.

**III.    LEGAL STANDARD**

To survive a motion to dismiss, a complaint must plead "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is warranted where a complaint fails to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a [claim], supported by

1    mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  And courts do not credit

2    "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

3    *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

4                              **IV.    ARGUMENT**

5            Joby's seven claims against Archer should be dismissed.  Joby's DTSA trade-secret

6    misappropriation claim—the centerpiece of the Complaint—fails at the threshold because it does not

7    identify any trade secrets with the requisite particularity and relies on conclusory allegations and

8    speculation, much of it pleaded only "on information and belief," regarding the alleged acts of

9    misappropriation by Archer.  Joby's state-law claims fare no better: each one depends on the same

10   allegations of misuse of supposed trade secrets or confidential and proprietary information, and each

11   is therefore preempted by CUTSA.  Moreover, each claim is independently subject to dismissal because

12   the Complaint fails to plead their essential elements.

13   **A.    Joby Fails to State a Claim for Trade-Secret Misappropriation.**

14           To plead a misappropriation claim under the DTSA, Joby must plausibly allege (1) existence

15   of a trade secret, (2) knowing "misappropriation" of that trade secret, and (3) damages.  18 U.S.C.

16   §§ 1839(3) & (5), 1836(b)(3)(B); *Hill Phoenix, Inc. v. Classical Refrigeration SoCal, Inc.*, 2020 WL

17   1244354, at *3 (C.D. Cal. Mar. 15, 2020).  Because Joby fails to adequately allege any of these

18   elements, the DTSA claim should be dismissed.

19           **1.    Joby Fails to Plead Any Trade Secret With Sufficient Particularity.**

20           Joby comes nowhere close to pleading the existence of a trade secret.  Even at the pleading

21   stage, a plaintiff must "describe the trade secret with sufficient particularity to separate it from matters

22   of general knowledge in the trade or special knowledge of those persons who are skilled in the trade,

23   and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Invisible

24   Dot, Inc. v. DeDecker*, 2019 WL 1718621, at *4 (C.D. Cal. Feb. 6, 2019) (quotation marks omitted).

25           A plaintiff "may not simply rely upon 'catchall' phrases," *Sun Hong Foods, Inc. v. Future Best

26   Trading Inc.*, 2023 WL 11197084, at *2 (C.D. Cal. Sep. 29, 2023), or "set out its purported trade secrets

27   in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as

28   protectable trade secrets," rather than "listing [out] *particular* trade secrets" that were allegedly

misappropriated.  *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at \*4 (N.D. Cal. Mar. 23, 2018); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at \*5 (C.D. Cal. Apr. 21, 2023) (pleading "long list of general areas of information containing unidentified trade secrets" is "not a substitute for particularized and concrete trade secrets" (cleaned up)).  Nor is it sufficient to allege that certain "broad[] categories of information" "are covered by confidentiality agreements."  *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1145 (N.D. Cal. 2019).

A plaintiff does not satisfy the particularity standard by alleging trade secrets in the form of "research and development information" relating to its business, "product cost and pricing," "customer lists, customer contacts, and customer sales," and "organizational charts and the identity of key employees."  *Race Winning Brands*, 2023 WL 4681539, at \*5.  Neither does a plaintiff alleging misappropriation of categories of trade secrets like "technical specifications."  *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012).  While these describe "types of information that generally *may* qualify as protectable trade secrets," they do not carry a plaintiff's pleading burden because they do not list "*particular* trade secrets."  *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1151–52 (S.D. Cal. 2022) (emphasis added) (rejecting claim of trade secrets in the form of "Army Confidential Presentation Materials and additional Confidential Client Data, the Proposed Product Modifications, the Customer Network, and … Pricing Information").

Joby's Complaint fails to allege a DTSA claim because it does not identify any particular trade secrets that were allegedly misappropriated.  Instead, the Complaint is chock-full of "'catchall' phrases" and "categories" of potential trade secrets that courts routinely hold are insufficient to state a claim.  *Sun Hong Foods*, 2023 WL 11197084, at \*2.  Joby's allegations can be boiled down to the following four categories of purported trade secrets, none of which can survive a motion to dismiss.

*i.  "Commercial and Regulatory Strategy" Materials.*  Joby repeatedly refers to unspecified "commercial and regulatory strategy" (Compl. ¶ 89) and "business and regulatory strateg[y]" materials (*id.* ¶ 1), such as:

- "a cache of highly valuable … business and regulatory strategies" (Compl. ¶ 1);
- files containing "highly valuable trade secret information about … business and regulatory strategy" (*id.* ¶ 8);

- "commercial strategy development" and "regulatory strategies" (*id.* ¶ 45); and

- "commercial and regulatory strategy" materials (*id.* ¶ 89).

Alleging "generic list[s] of different types of information"—including vague references to things like "regulatory strategies" with no "specif[icity] … giv[ing] the defendant fair notice of what the … claim is"—does not state a claim for trade secret misappropriation. *Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019); *Race Winning Brands*, 2023 WL 4681539, at *5 (same); *see also, e.g.*, *Genasys*, 638 F. Supp. 3d at 1152 (referring to "Pricing Information" materials as trade secrets "fails to provide … a roadmap to distill what information may be a trade secret and what may not").

**ii.    "Technical Specifications and Analysis Related to eVTOL Aircraft and Operations."**
Joby's next category of purported trade secrets fares no better, alleging trade secrets in the form of:

- "technical information about Joby's aircraft and operations" (Compl. ¶ 1);

- "highly valuable trade secret information about Joby's aircraft and operations" (*id.* ¶ 8);

- "highly confidential technical specifications, analysis, and know-how developed by Joby" (*id.* ¶ 45); and

- "technical specifications and analysis related to eVTOL aircraft and operations" (*id.* ¶ 89).

These "broad, categorical terms" merely describe "types of information that generally *may* qualify as protectable trade secrets"—they do not identify particular trade secrets as the DTSA requires. *Genasys*, 638 F. Supp. 3d at 1152.  They are just like the "technical specifications" alleged in *MedioStream*, where the court held the plaintiff failed to identify any trade secrets "with sufficient particularity" to "give defendants reasonable notice of the issues which must be met at the time of trial" and "provide reasonable guidance in ascertaining the scope of appropriate discovery."  869 F. Supp. 2d at 1113; *see also Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, at *3 (N.D. Cal. Dec. 7, 2015) (dismissing claims where "allegations identifying the purported trade secret are vague and conclusory, and consist of a generic list of categories of various types of information").

**iii.    "Infrastructure Strategy" Materials.**  Joby also alleges trade secrets in the form of:

- "infrastructure strategies for vertiports and airport access" (Compl. ¶¶ 1, 45);

- "infrastructure strategy" materials (*id.* ¶ 8);

- "site analysis for potential vertiports and airport access" (*id.*);

- "confidential and proprietary site analysis for potential vertiports and airport access" (*id.* ¶ 46); and

- "high-level land use development strategy" materials (*id.*).

Once again, Joby alleges generalized categories of materials in which trade secrets *could* exist, but fails to allege "how and why 'this array of potential sources' are protected trade secrets." *Genasys*, 638 F. Supp. 3d at 1151–52; *see also, e.g.*, *AlterG*, 388 F. Supp. 3d at 1145 (alleged trade secrets contained in categories like "product strategy," "selection and qualification of components," "engineering and structural technology," explorations of "market alternatives that included positive and negative learnings of low cost mechanical unweighted systems," and "development of anti-gravity rehabilitation products" too vague and conclusory to state a trade-secret misappropriation claim).

*iv. **"Developer Agreement" materials.*** Joby also alleges trade secrets in the form of materials related to the Developer Agreement, including:

- unspecified "confidential partnership terms" (Compl. ¶ 1);

- unspecified "terms of the Developer's agreement with Joby" (*id.* ¶ 6);

- "the existence and [unspecified] terms of the Agreement" (*id.* ¶ 64); and

- "knowledge of the Agreement's existence and [unspecified] key terms" (*id.* ¶ 82).

The Complaint does not even *identify* the "Developer" to which these materials relate—referring to the Developer only as "a major real estate developer" (Compl. ¶ 6), which could be any number of companies or individuals that Archer and Joby have dealt with over the years. For this reason alone, the Complaint fails to include the "specific[s]" necessary to "give the defendant fair notice of what the … claim is." *Acrisure*, 2019 WL 4137618, at *3.

Moreover, Joby's allegations fail to specify any *particular* trade secrets that were included in the terms of the Developer Agreement that Joby alleges was misappropriated; rather, in conclusory fashion, Joby simply asserts that *all* of the Developer Agreement's terms are trade secrets because they are purportedly subject to a confidentiality provision (whose language Joby never provides). Compl. ¶ 62. But a trade-secret plaintiff may not simply allege that certain "broad[] categories of information" are trade secrets because they "are covered by confidentiality agreements." *AlterG*, 388 F. Supp. 3d at

1145. That is especially so here where Joby describes the Developer Agreement as a general commitment to an exclusivity period during which Joby and the Developer would merely *attempt* to negotiate an actual agreement. *See* Compl. ¶¶ 24–25.

### 2. Joby Fails to Plead Any Misappropriation By Archer of a Particular Trade Secret or Damages From Any Such Misappropriation.

Joby's DTSA claim against Archer fails for another reason: Joby does not plausibly allege that Archer misappropriated the purported trade secrets. "Misappropriation" means (1) "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or (2) "disclosure or use of a trade secret of another without express or implied consent." 18 U.S.C. § 1839(5). Joby's claim fails to plausibly allege that Archer did either of these things for any of the four categories of purported trade secrets it identifies.

***First Three Categories of "Trade Secrets."*** As to (i) commercial and regulatory strategy materials; (ii) technical specifications and analysis related to eVTOL aircraft and operations; and (iii) infrastructure strategy materials—Joby does not plead any facts showing that Archer ever accessed or acquired these purported categories of trade secrets, or disclosed or used them in any way. At most, Joby alleges that *Kivork*—while employed by Joby and with Joby's authorization to "access" them (Compl. ¶ 35)—downloaded some of the materials, emailed some to himself, and gave himself access to some. *Id.* ¶¶ 42–54. Joby alleges no specific facts showing that Kivork ever accessed these materials after leaving Joby—let alone any facts showing that he did so at Archer's direction or with Archer's encouragement, that Kivork transmitted the materials to Archer, or that Archer ever used them.

Joby alleges "[o]n information and belief" that when Kivork gave himself access to these materials while employed by Joby (and with authorization to do so), he "was preparing to compete with Joby in the marketplace in an illicit manner" and "in concert with Archer." Compl. ¶ 54. As the court in *M/A-COM Technology Solutions, Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *10 (C.D. Cal. Sep. 23, 2019) held, such "conclusory allegations" are insufficient to plead misappropriation, as they do not explain "how the misappropriation occurred, when it occurred and what was misappropriated." *Id.* Joby's allegations are even more conclusory than those in *M/A-COM*, where the plaintiff alleged that its employee was deeply involved in developing its highly technical trade secrets; left for a

competitor (the defendant); deleted files with purported trade-secret files from his work computer and uploaded other information to a USB device; and then, not long after the employee began his new job, the defendant began marketing products with "the same or similar features" as the plaintiff's products. *Id.* at *8–9. Although the plaintiff maintained this showed the employee must have taken trade secrets and shared them with the defendant, the court held this allegation "remains conclusory," and that allegations that the employee "had knowledge of trade secret information and was then recruited to [a competitor] describes a change in employment, but not wrongful conduct." *Id.* at *9.

The same is true here. Joby simply declares, solely on information and belief, that Kivork must somehow have transmitted these trade secrets to Archer, and that Archer necessarily accessed them and/or used them in some unspecified way. But Joby alleges *no facts* supporting the conclusory allegation that Kivork must have disclosed the alleged trade secrets to Archer. Indeed, that these allegations are all made on information and belief demonstrates that Joby "likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation." *Elias v. Spotify USA Inc.*, 2020 WL 11884714, at *3 (C.D. Cal. Nov. 24, 2020).

At most, Joby has alleged that Kivork "had knowledge of trade secret information and was then recruited" to Archer. *M/A-COM*, 2019 WL 6655274, at *8–9. This "describes a change in employment, but not wrongful conduct." *Id.* at *9. Joby's wholly conclusory allegations of misappropriation for these three categories of purported trade secrets are insufficient.

***Developer Agreement "Trade Secrets."*** As to materials regarding the Developer Agreement, Joby likewise fails to plausibly allege misappropriation by Archer. Here too, although Joby alleges that Kivork—while employed by Joby and authorized to access its trade secrets—downloaded some of these materials (including "20250116 – [Developer] – Strategic Partnership Counter Proposal"), emailed other materials to himself, and gave himself access to other materials (Compl. ¶¶ 42–54), Joby does not allege any facts showing that Kivork ever accessed these materials after he left Joby. Nor does Joby allege any facts showing that Kivork took any of these acts at Archer's direction, or that Kivork transmitted the materials to Archer, or that Archer used the materials.

The closest Joby comes is the speculative allegation that an unnamed developer supposedly told Joby that it presumed that Archer must have known of the key terms of the agreement between Joby

12

Gibson, Dunn & Crutcher LLP

and the Developer from Kivork because allegedly Archer had pitched a more lucrative deal to the Developer. Joby alleges, "[o]n information and belief," that "Archer was only able to offer a more lucrative deal because Archer, acting through Kivork, gained illicit knowledge of the [Developer] Agreement's terms and leveraged those terms in its own negotiations." Compl. ¶ 61. Similarly, Joby alleges the Developer "expressed concern" that Archer may have known of "key terms of the [Developer] Agreement." *Id.* ¶ 60. But Joby does not allege any examples of any such terms in the Developer Agreement (or even types of terms) that it claims Archer knew of, let alone any that might constitute trade secrets or support a plausible inference that the *only* way Archer could have pitched a more lucrative deal was to have known Joby's terms with the Developer.

Instead, the Complaint offers just the sort of conclusory and speculative allegations of misappropriation made "on information and belief" that courts frequently hold are insufficient to survive a motion to dismiss. In *Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 4139615, at *2 (C.D. Cal. Sep. 10, 2024), for example, employees of a video game company with access to its trade secrets allegedly "downloaded, copied, and/or forwarded" them before leaving to start a competitor that provided similar services. There, as here, in lieu of actual, specific allegations of the misappropriation of particular trade secrets, the former-employer plaintiff alleged "on information and belief" that the "only way" the competitor could have made "extremely similar" offerings to the plaintiff's customers, but on better terms, was by using the company's trade secrets. *Id.* In fact, the "information and belief" allegations in that case were *more* specific than the few in Joby's Complaint regarding the Developer Agreement, as the complaint there at least identified the relevant information as the plaintiff's "customized pricing and cost structure," including "customer-specific pricing." *Id.* at *10.

The court held that these information-and-belief allegations failed to *plausibly* allege misappropriation, because they were unaccompanied by specific allegations of fact "that make the inference of culpability 'plausible,' rather than 'merely possible.'" *Xsolla*, 2024 WL 4139615, at *10 (internal quotation marks omitted). All that the complaint boiled down to was speculative allegations that a competitor accessed trade secrets, made "eerily identical" offerings at better prices, and developed products "in record time." *Id.* "Without more, these allegations do not support a plausible inference that [the competitor] misappropriated [the company's] trade secrets." *Id.*; *see also, e.g.*,

*Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996) ("Allegations of similarity, without more, do not support a claim of misappropriation of trade secrets.").  And absent well-pleaded allegations of misappropriation, Joby likewise fails to plausibly allege damages; its conclusory mentions of "irreparable injury," "competitive harm," and "significant damages" (Compl. ¶ 96) cannot substitute for the missing factual predicate.

**B.    Joby's State-Law Claims Are Preempted by CUTSA and Should Be Dismissed.**

CUTSA contains an express preemption provision that "supersedes" common-law claims "based on the same nucleus of facts as a misappropriation of trade secrets claim."  *Calsoft Labs, Inc. v. Panchumarthi*, 2020 WL 512123, at *2 (N.D. Cal. Jan. 31, 2020) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009)).  Here, because all of Joby's state-law claims against Archer are "premised on the wrongful taking and use of confidential business and proprietary information," CUTSA preempts them.  *Teva Pharms. USA, Inc. v. Health IQ, LLC*, 2013 WL 12132029, at *5 (C.D. Cal. Apr. 29, 2013).

**1.    CUTSA Preempts Common-Law Claims Based on Misappropriation of Trade Secrets or Other "Confidential and Proprietary Information."**

CUTSA "provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon [trade-secret] misappropriation," including tort claims arising from the same alleged conduct.  *Aavid Thermalloy LLC v. Cooler Master Co., Ltd.*, 2018 WL 11348438, at *2 (N.D. Cal. June 15, 2018) (emphasis added).  Consistent with that rule, a plaintiff may not avoid CUTSA preemption by recasting the same factual allegations under a "different theory of liability."  *Mattel, Inc. v. MGA Entm't, Inc.*, 782 F. Supp. 2d 911, 985 (C.D. Cal. 2010) (quoting *K.C. Multimedia*, 171 Cal. App. 4th at 957).  Nor may a plaintiff evade preemption by "[choosing] not to plead" a CUTSA claim, as Joby has done here.  *Agile Sourcing Partners, Inc. v. Dempsey*, 2021 WL 4860693, at *8 (C.D. Cal. July 15, 2021); *Erhart v. Bofl Holdings*, 612 F. Supp. 3d 1062, 1118 (S.D. Cal. 2020) (tort claims preempted notwithstanding absence of CUTSA or DTSA claims).  Any contrary rule would "defeat preemption by allowing plaintiffs to intentionally omit CUTSA claims in favor of other claims."  *Barker v. Insight Glob., LLC*, 2017 WL 10504692, at *4 (N.D. Cal. Nov. 21, 2017).

Notably, CUTSA supersedes claims "based on the misappropriation of information, regardless

of whether such information ultimately satisfies the definition of trade secret." *SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *7 (N.D. Cal. Dec. 11, 2012) (Koh, J.); *Calsoft Labs*, 2020 WL 512123, at *2 (same).  Joby therefore cannot avoid preemption by arguing that any of the allegedly misappropriated information was "confidential" or "proprietary," even if not trade-secret material.  At bottom, where "the gravamen" of the plaintiff's allegations is that the defendant "wrongfully accessed and took its 'confidential and proprietary information,'" the exclusive avenue for seeking relief under California law is to bring a CUTSA claim.  *Erhart*, 612 F. Supp. 3d at 1118.  Any other claims premised on misappropriation of trade-secret or "confidential and proprietary" information are preempted.

### 2.    Joby's State-Law Claims All Arise From the Allegations Underlying Its Trade-Secret Misappropriation Claim.

The claim for **inducement of breach of contract**—a "species of intentional interference with contractual relations" (*1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 585 (2003))—is preempted.  In *Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024 (N.D. Cal. 2020), plaintiff Cisco alleged an executive at defendant Plantronics had "induced" a former Cisco employee to share "confidential details about Cisco's competitive business" in violation of the employee's Proprietary Information and Inventions Agreement, which in many respects mirrored the PIIA at issue here.  *Id.* at 1034, 1049, 1058.  Cisco maintained its interference claim did not arise from the same nucleus of facts as its trade-secrets claims because the "inducement" to breach the PIIA purportedly "stands irrespective of the trade secret misappropriation"; the alleged "scheme" involved sharing information beyond trade secrets, such as non-public information on upcoming layoffs and names of clients "potentially available for poaching."  *Id.* at 1058.  The court rejected that argument, noting Cisco had relied on the same scheme and "exact same sort of communications" to substantiate its trade-secrets claim.  *Id.*  Here too, because the gravamen of Joby's trade-secrets claim is Kivork's alleged misappropriation of confidential information in violation of the PIIA (*see* Compl. ¶¶ 80–81, 85), "that agreement may not also serve as the object of [an] intentional interference claim" premised on the same "set of facts."  *Id.* at 1059; *see also W. Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *3–4 (C.D. Cal. Oct. 6, 2017) (claim preempted on same grounds); *Calsoft*, 2020 WL 512123, at *6 (same).

The claim for **aiding and abetting breach of fiduciary duty** is preempted.  This claim, like

the underlying breach-of-fiduciary-duty claim against Kivork, rests on Kivork's alleged "downloading, external sharing, disclosure, and use of Joby's confidential information for Archer's benefit," as well as his "adding [of] his personal email address as an owner of documents saved in Joby's Drive repository." Compl. ¶ 115. Because these assertions are "precisely the allegations" that form the foundation of Joby's trade secrets claim, CUTSA preempts them. *Calsoft*, 2020 WL 512123, at *3 (underlying fiduciary-breach claim preempted on these grounds); *Symphony Risk Sols. Ins. Servs., Inc. v. Perlite*, 2024 WL 5112479, at *6 (N.D. Cal. 2024) (same, for aiding-and-abetting breach of fiduciary duty claim); *Whiteslate, LLP v. Dahlin*, 2021 WL 2826088, at *10 (S.D. Cal. July 7, 2021) (same).

The claim for **aiding and abetting breach of the duty of loyalty** is preempted. This claim arises from the same alleged misappropriations by Kivork as all the other claims. *See* Compl. ¶¶ 128–29. CUTSA thus preempts it. *See W. Air Charter*, 2017 WL 10638759, at *5 (CUTSA preempted claim for aiding-and-abetting loyalty breach); *TRIGO ADR Americas, LLC v. OEM Logistics, LLC*, 2025 WL 276149, at *4 (S.D. Cal. Jan. 23, 2025) (same).

The claim for **tortious interference with contract** is preempted. Joby asserts that Archer used "confidential information" allegedly provided by Kivork to interfere with the Developer Agreement. Compl. ¶ 137. But CUTSA preempts contractual interference claims based on allegations of wrongful use of misappropriated confidential information. *See Barker v. Insight Glob., LLC*, 2017 WL 10504692, at *4 (N.D. Cal. Nov. 21, 2017) (holding CUTSA preempted contractual interference claims based on misappropriation); *W. Air Charter*, 2017 WL 10638759, at *3 (same).

The claim for **tortious interference with prospective economic advantage** is preempted. All of Archer's alleged conduct that purportedly interfered with Joby's business relationship with the Developer arises from the same nucleus of facts as its trade secret misappropriation allegations. Compl. ¶¶ 147–48. Accordingly, CUTSA preempts the claim. *See W. Air Charter*, 2017 WL 10638759, at *3 (holding tortious interference with prospective economic advantage claim was preempted).

The **UCL** claim is preempted. Because Joby bases its UCL claim on purported misappropriation of confidential information (*see* Compl. ¶¶ 156–57), CUTSA preempts it. *Movement Mortg., LLC v. Scrima*, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024) (UCL claim preempted); *W. Air Charter*, 2017 WL 10638759, at *7 (same).

**C.     Joby's State-Law Claims Fail for Additional Reasons.**

Joby's state-law claims must also be dismissed because they fail to plead the requisite elements.

### 1.     Joby Fails to State a Claim for Inducement of Breach of Contract.

Joby alleges—on "information and belief"—that Archer induced Kivork to breach his confidentiality obligations under the PIIA by "encouraging or directing him" to use Joby's confidential information "to pursue the [unnamed] Developer" or disclose certain unspecified information to Archer, which Archer allegedly "knew or should have known" Kivork had wrongfully retained. Compl. ¶¶ 78–87.  This claim should be dismissed because Joby fails to plausibly allege the necessary elements: that (1) the PIIA constitutes a "valid and existing contract" between Kivork and Joby; (2) Archer "had knowledge of" the PIIA and "intended to induce its breach"; (3) Kivork "in fact breached" the PIIA; (4) the breach "was caused by" Archer's "unjustified or wrongful conduct"; and (5) Joby suffered damages "as a result." *X Corp. v. Ctr. for Countering Digit. Hate, Inc.*, 724 F. Supp. 3d 948, 985 (N.D. Cal. 2024).  Because inducement is a "species of intentional interference with contractual relations," courts frequently invoke cases involving either claim in assessing inducement claims. *See, e.g.*, *1-800 Contacts*, 107 Cal. App. 4th at 585.  Joby fails to state a claim here for at least three reasons.

*First*, Joby fails sufficiently to plead that Archer had knowledge of the PIIA or its parameters. Its conclusory assertion that Archer "knew or should have known of the standard practice of employee confidentiality agreements in the eVTOL industry" (Compl. ¶ 79) is insufficient as a matter of law, as general knowledge that an agreement *might* exist is not enough to show knowledge of specific agreements (or their terms) with specific persons. *See Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015) (pleading general knowledge of agreements with "contractors, vendors, employees, and customers" insufficient to show "knowledge of the agreements with [the] specific customers").  Likewise insufficient are Joby's naked assertions that Archer "knew" or "had reason to know" that Kivork had improperly retained files, and "knew or should have known" of Kivork's purportedly "ongoing confidentiality obligations" (Compl. ¶¶ 79–80), as these are exactly the sort of conclusory statements that courts need not accept as true on a motion to dismiss. *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal. Mar. 19, 2018).  At base, Joby fails to allege that Archer knew of Kivork's PIIA at all, let alone of its specific scope or limitations. *See Quiñonez v. United*

*States*, 667 F. Supp. 3d 1015, 1032 (N.D. Cal. 2023) (knowledge of plaintiff's shipments insufficient where packages were "nondescript" and did not identify they were subject to a contract).

*Second*, Joby fails to plead facts regarding any "intentional acts" by Archer "designed to induce [Kivork's] breach" of the PIIA. *name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013). Instead, it offers only bare assertions and characterizations—"[o]n information and belief"—that Archer "induce[d]," "direct[ed]," or "[e]ncouraged" Kivork's alleged use of confidential information, without any supporting facts regarding any specific conduct by Archer. Compl. ¶¶ 81–85. Joby's unsupported and "conclusory allegations . . . do not satisfy the *Twombly* standard." *name.space*, 2013 WL 2151478, at *8 (dismissing inducement claim on these grounds). That these allegations are pleaded on information and belief creates the "inference that [Joby] likely lacks knowledge of underlying facts to support the assertion[s], and is instead engaging in speculation to an undue degree." *Elias*, 2020 WL 11884714, at *3. Tellingly, it is not until nearly the end of the Complaint's "Facts Common to All Claims" (¶¶ 20–66) that Joby alleges a single specific action by Archer—and even then, the allegation concerns Archer's purported "approach[]" to the unnamed Developer, not any intentional conduct directed at Kivork, notwithstanding that the alleged interference involves Joby's contract with Kivork. Compl. ¶ 60. Nor does Joby allege how Archer could have induced Kivork to breach his obligations to Joby by *not* taking action ("failing to instruct Kivork to return Joby's information"). In addition to being speculative and made only on "information and belief," these allegations have nothing to do with a purported claim of inducing Kivork to breach his alleged contractual obligations to Joby.

*Third*, Joby fails sufficiently to plead that Archer's alleged, wholly unspecified "inducement" proximately caused any harm. Instead, it speculates "[o]n information and belief" that Kivork "would not have breached his confidentiality obligations absent Archer's [unspecified] inducement," and thus Joby was damaged as a "direct and proximate result of Archer's actions." Compl. ¶¶ 83, 85, 87. Joby has not pleaded any facts regarding specific actions Archer purportedly took to "induce" Kivork's alleged breach of the PIIA, let alone facts suggesting Archer proximately caused Kivork to breach it.

### 2.    Joby Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty.

Joby alleges that Kivork violated fiduciary duties of good faith and fair dealing by

1   misappropriating Joby's purported categories of trade secrets.    Joby further maintains—"[o]n

2   information and belief"—that Archer "reached a conscious decision to participate in Kivork's" breach,

3   that Archer "knew" Kivork's breach "was for the purpose of wrongfully providing Archer with Joby's

4   confidential information so that Archer could interfere with the [Developer] Agreement" and "obtain

5   competitive advantage," and that Archer's (unspecified) "assistance and encouragement to Kivork to

6   breach his fiduciary duties" was "willful" and "deliberate." Compl. ¶¶ 114–19.  This claim should be

7   dismissed because Joby fails to plead the required elements: that (1) Kivork breached "fiduciary duties

8   owed to [Joby]"; (2) Archer had "actual knowledge of [Kivork's] breach"; (3) Archer "substantial[ly]

9   assist[ed] or encourage[d]" that breach; and (4) Archer's conduct was a "substantial factor in causing

10  [Joby] harm."  *Mula v. Mula-Stouky*, 2022 WL 1188867, at *3 (N.D. Cal. Apr. 21, 2022).

11          *First*, for the reasons stated in Kivork's simultaneously-filed motion to dismiss, Joby has failed

12  sufficiently to plead that Kivork owed Joby any fiduciary duty.  *See* Kivork Motion at 16–17.  Archer

13  cannot be liable for "aiding and abetting" breach of a duty that did not exist.  *Acres Bonusing, Inc. v.

14  Ramsey*, 2022 WL 17170856, at *9 (N.D. Cal. Nov. 22, 2022) (dismissing on these grounds).

15          *Second*, a defendant "can only aid and abet another's tort" if it "knows what [the] tort is."

16  *Namer v. Bank of Am.*, 2017 WL 1180193, at *5 (S.D. Cal. 2017).  Here, as with its inducement claim,

17  Joby pleads no facts showing Archer had actual knowledge of any alleged fiduciary-duty breach by

18  Kivork.   Joby proclaims on "information and belief" that Archer "made a conscious decision to

19  participate in Kivork's" alleged breaches, which Archer supposedly "knew . . . was for the purpose of

20  wrongfully providing Archer with Joby's confidential information."  Compl. ¶ 117.  But "boilerplate

21  allegations" that Archer "knew of [Kivork's] alleged wrongful conduct," *Namer*, 2017 WL 1180193,

22  at *5, and that Kivork allegedly possessed "confidential information for Archer's benefit," Compl.

23  ¶ 115, "fail[] to plausibly establish" that Archer had "actual knowledge" of Kivork's alleged breach.

24  *Namer*, 2017 WL 1180193, at *5 (dismissing aiding-and-abetting-breach-of-fiduciary-duty claim).

25          *Third*, again much like its inducement claim, Joby fails to allege "any particular act" that Archer

26  "purportedly took to aid or abet any [fiduciary-duty] breach" by Kivork.  *See Laborers' Local v.

27  Intersil*, 868 F. Supp. 2d 838, 851 (N.D. Cal. 2012) (dismissing on these grounds).  Joby alleges that

28  Archer "reached a conscious decision to participate in Kivork's tortious breach of fiduciary duty" and

"gave [unidentified] substantial assistance and encouragement" to him.  Compl. ¶¶ 116–18.  Such boilerplate recitations of the claim's elements are insufficient as a matter of law.  In *Vox Network Solutions, Inc. v. Gage Technologies, Inc.*, 2025 WL 929939, at *6 (N.D. Cal. Mar. 27, 2025), for example, the unadorned assertion that defendant "knew" its employees were formerly plaintiff's and "provided substantial assistance and/or encouragement to the [employees] to breach [their] duty" was insufficient to survive a motion to dismiss.  So too here.

*Fourth*, Joby fails to plead that any conduct by Archer proximately caused Joby any harm, "an essential element of an aiding and abetting claim."  *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161, 1167 (9th Cir. 2016).  As with its inducement claim, Joby simply declares it was harmed "[a]s a direct and proximate result of Archer's actions."  *Compare* Compl. ¶ 77 *with* ¶ 119.  That assertion is not supported by any well-pleaded facts, particularly given Joby's failure to plead Archer's knowledge of Kivork's alleged breach or any encouragement or assistance of it.

### 3.    Joby Fails to State a Claim for Aiding and Abetting Breach of Duty of Loyalty.

Joby's aiding-and-abetting claim based on an alleged breach of the duty of loyalty rests on the same boilerplate, largely copy-and-pasted allegations—again pleaded "on information and belief"—as its aiding-and-abetting-breach-of-fiduciary-duty claim.  Joby repeats (nearly verbatim) assertions that Archer supposedly knew of Kivork's duties (Compl. ¶¶ 128–30), that Kivork breached them (*id.* ¶ 128), that Archer "inten[ded]" to induce the breach (*id.* ¶ 129), that Archer provided unspecified "substantial assistance and encouragement" of Kivork's breach (*id.* ¶ 131), and that Joby was harmed "[a]s a direct and proximate result" of that alleged assistance (*id.* ¶ 133).  Unsurprisingly, this recycled claim fails for the same reasons.  *Compare id.* ¶¶ 114–19 *with id.* ¶¶ 126–33.

To state a claim for aiding and abetting breach of the duty of loyalty, Joby must sufficiently plead the same elements regarding *Archer's* conduct as it must for aiding and abetting breach of fiduciary duty.  *Fields v. QSP, Inc.*, 2011 WL 1375286, at *3 (C.D. Cal. Apr. 8, 2011) (elements "virtually identical").  The claim thus fails for the reasons stated above, including Joby's insufficient allegations of Archer's actual knowledge of any breach by Kivork, Archer's substantial assistance or encouragement, or Archer's playing a substantial factor in causing harm.  *See supra* at 18–19; *see also First-Citizens Bank & Tr. Co. v. HSBC Holdings PLC*, 2024 WL 3364016, at *14 (N.D. Cal. July 9,

2024) (dismissing aiding-and-abetting claim where "predicate" breach-of-loyalty claim failed).

### 4. Joby Fails to State a Claim for Tortious Interference with Contract.

Joby's tortious-interference-with-contract claim rests on the allegation that Archer induced the unnamed Developer to breach the Developer Agreement. "On information and belief," Joby claims "Archer knew of the [Developer] Agreement," and that "Archer's conduct prevented performance of [it], or made performance more expensive or difficult," either by leveraging "confidential information about Joby's strategic partnership" to offer "more favorable terms" and "negotiate a competing arrangement during the [purported] exclusivity period," or by "inducing the Developer to breach the contract's exclusivity term by negotiating with Archer." Compl. ¶¶ 134–43. Joby fails to plead the necessary elements of its claim: that (1) the Developer Agreement is a "valid and existing contract"; (2) Archer had "knowledge" of it; (3) Archer took "an intentional act designed to induce a breach or disrupt[]" it; and (4) the contract was "actual[ly] breach[ed]," which (5) directly resulted in damage. *Soil Retention Prods., Inc. v. Brentwood Indus.*, Inc., 521 F. Supp. 3d 929, 960 (S.D. Cal. 2021).

*First*, Joby fails to adequately plead existence of a valid contract capable of supporting its claim. The Complaint describes the Developer Agreement as an agreement to *attempt to negotiate* an exclusive partnership agreement in the future. Specifically, Joby alleges only that the Developer Agreement "*involve[s]*" an "exclusive strategic partnership" (without alleging that it established one) and that the parties would work to negotiate a "comprehensive partnership agreement" (without alleging the Agreement constituted one). Compl. ¶¶ 24–25 (emphasis added). On Joby's own allegations, the Developer could lawfully disengage from negotiations entirely, including by exercising a "right to terminate." *Id.* ¶ 62. And although Joby claims the Agreement "contained the key economic terms" of a "planned project," it does not allege the parties actually agreed to any such terms.

California courts have made clear that such preliminary agreements do not support tortious-interference-with-contract claims because they provide no legal assurance of continuing relations. Joby's interest in the Developer Agreement is, at most, an "interest in future relations between the parties" with "no legal assurance of" continuation—the kind of interest protected, if at all, under a "interference with prospective contractual relations" theory. *Pech v. Doniger*, 75 Cal. App. 5th 443, 482 (2022); *see also Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1147 (2020) (same).

*Second*, Joby fails sufficiently to plead that the Developer *actually breached* the Agreement. Instead, Joby dances around the issue by saying the Developer "*purported to* exercise its right to terminate the Agreement" upon suspecting Kivork had disclosed its terms.  Compl. ¶ 62 (emphasis added), 84 ("purported to terminate").  It is unclear whether the alleged agreement-to-try-to-reach-an-"exclusive strategic partnership" has in fact been terminated or remains in place.  Compl. ¶ 24.  Joby has not pleaded, for example, that the Developer breached any purported obligation under the Agreement to actually develop (unnamed) "planned projects" with Joby.  *Id.*  Nor does the Complaint allege the Developer breached any purported grant to Joby of an "exclusive right to design, build, and operate skydecks at certain of the Developer's properties."  *Id.*  Instead, Joby simply proclaims—without detail—that "performance of the Agreement" was "prevented" or made "more expensive or difficult."  *Id.* ¶ 137.  How?  Joby does not say.  Such obfuscation does not plausibly state a claim.

To the extent Joby rests its claim on the allegation that the Developer "breach[ed] the [Agreement's] exclusivity term by [merely] negotiating with Archer," it likewise fails.  Compl. ¶ 138.  While Joby never quotes the actual language of the "exclusivity provision," Joby claims it prevents the Developer from "enter[ing] into any similar agreements or arrangements with other participants in the eVTOL market without Joby's consent."  Compl. ¶¶ 25, 135.  But Joby never alleges the Developer entered any similar agreement or arrangement.  Nor does Joby allege the Developer breached its purported obligation to "work together exclusively" for 18 months "to negotiate a more comprehensive partnership agreement" between it and Joby.  *Id.*  At most, Joby alleges Archer "approached the Developer about a business relationship" (*id.* ¶ 60) and "offered a more lucrative deal" (*id.* ¶¶ 64, 65, 137); Joby does not allege that Archer actually negotiated any deal with the Developer.  The Complaint thus does not plausibly plead the Developer breached any ill-defined obligation to "work together exclusively" on a "more comprehensive" partnership with Joby.  This failure to plead any "actual breach or disruption" of the Agreement requires dismissal of the intentional-interference claim.  *Honey Bum, LLC v. Fashion Nova, Inc.*, 63 F.4th 813, 824–25 (9th Cir. 2023).

*Third*, Joby does not adequately plead that Archer took any intentional acts to "prevent[] performance of the Agreement" or to induce the Developer to "breach the [Agreement]'s exclusivity term."  Compl. ¶¶ 137–38.  The Complaint does not explain how "performance of the Agreement" has

been prevented or made more expensive. And the alleged "exclusivity provision" is so ill-defined as to make it impossible to plausibly plead Archer induced its breach. To the extent Joby claims Archer's intentional acts involve its alleged use of "confidential information" in presenting a proposal to the Developer, the notion that Archer used any such information is speculative, unsupported by any facts, and thus "does not tend to exclude a plausible and innocuous alternative explanation"—such as Archer's ability to present better terms without any knowledge of the Agreement. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998 (9th Cir. 2014).

*Fourth*, Joby does not plausibly plead that it suffered any harm from Archer's alleged inducement—much less any harm proximately caused by Archer. Its single-sentence assertion that "Archer's conduct resulted in disruption of Joby and the Developer's performance under the Agreement" (Compl. ¶ 142) is "conclusory and fails to plead actual damages adequately under *Iqbal*." *Mariano v. U.S. Bank Nat'l Ass'n*, 2013 WL 12138730, at *6 n.37 (C.D. Cal. Sep. 11, 2013); *Vested Hous. Grp., LLC v. Principal Real Est. Invs., LLC*, 648 F. App'x 646, 648 (9th Cir. 2016) (affirming dismissal for failure to plead misconduct proximately caused damage).

Moreover, in a breach-of-contract action arising from an agreement to negotiate a *prospective* contract, courts have been clear that recoverable damages are not the plaintiff's "lost expectations under the prospective contract," but rather "damages caused by reliance on the agreement to negotiate." *Rambus Inc. v. Hynix Semiconductor Inc.*, 629 F. Supp. 2d 979, 1016 (N.D. Cal. 2009). It follows that for a tortious-interference claim predicated on such an agreement, any recoverable damages likewise must arise from reliance on the agreement *to negotiate*, not from the hoped-for benefits of an unconsummated future deal. *See In re Tamen*, 22 F.3d 199, 205 (9th Cir. 1994) (same rule for damages applies to breach of contract claim and tortious interference with contract claim). Here, the Complaint contains *no allegations* of reliance damages, let alone specific facts sufficient to state a claim.

### 5.    Joby Fails to State a Claim for Tortious Interference with Prospective Economic Advantage.

Much like its tortious-interference-with-contract claim, Joby tries to plead tortious interference with prospective economic advantage by alleging, on "information and belief," that "Archer knew of the [Developer] Agreement" and its terms through Kivork, "knowingly us[ed]" Joby's confidential

1    information "to attempt to steal [the unnamed] strategic partner from Joby," and "attempt[ed] to

2    interfere with the [Developer] Agreement during the contractual exclusivity period."  Compl. ¶ 148.

3    Joby has not sufficiently pleaded this claim, which requires plausibly alleging: (1) "an economic

4    relationship between [Joby] and [the unnamed Developer] with the probability of future economic

5    benefit to [Joby]"; (2) Archer's "knowledge of the relationship"; (3) "intentional acts" by Archer—

6    "*apart from the [alleged] interference itself*"—"designed to disrupt the relationship"; and (4) "actual

7    disruption of the relationship" that (5) "proximately caused" "economic harm."  *Republican Nat'l*

8    *Comm. v. Google LLC*, 742 F. Supp. 3d 1099, 1120 (E.D. Cal. 2024).

9          *First*, for the reasons stated above with respect to the intentional-interference-with-contract

10   claim, Joby fails sufficiently to plead any "actual disruption of the relationship" between Joby and the

11   Developer that proximately caused Joby "economic harm."  *W. Air Charter*, 2017 WL 10638759, at

12   *3.  Instead, it offers boilerplate assertions of unexplained "disruption" and unspecified damages that

13   purportedly came as a "direct and proximate result" of Archer's conduct.  Compl. ¶¶ 151, 153.  Such

14   assertions are insufficient to state a claim.  *See Soil Retention Prods.*, 521 F. Supp. 3d at 963

15   (dismissing claim alleging defendant "disrupted" relationship and, "[a]s a direct, foreseeable, and

16   proximate result," plaintiff "incurred and will continue to incur … losses, costs, damages, and

17   expenses"); *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1141, 1158 (S.D. Cal. 2014)

18   (similar).

19         *Second*, the Complaint does not plausibly allege any intentional acts "apart from the [alleged]

20   interference itself" intended to disrupt any economic relationship between Joby and the Developer.  *See*

21   *Republican Nat'l Comm.*, 742 F. Supp. 3d at 1120; *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983

22   F. Supp. 1303, 1311 (N.D. Cal. 1997).  Instead, the Complaint identifies as the purportedly

23   "independent[] wrongful conduct" Archer's "attempt[] to interfere with the Agreement during the

24   contractual exclusivity period" and "attempt to steal a strategic partner" through alleged use of

25   confidential information.  Compl. ¶ 148.  Joby also tries to rely on Archer's alleged inducement of

26   Kivork's purported breaches of duty as the independently wrongful act (*id.*), but this fails both because

27   the inducement allegations are insufficiently pleaded (*supra* at 17–18) and because the alleged

28   inducement is not conduct "apart from" the interference—it is inextricably tied to it.

1   At bottom, Joby has failed to plead that Archer engaged in independently wrongful conduct and

2   "intentionally acted to disrupt" the Developer Agreement or Joby's relationship with the Developer.

3   In fact, Joby fails even to plead that the Agreement "was actually disrupted" at all.  *AlterG*, 388 F.

4   Supp. 3d at 1152 (dismissing claim on these grounds).  Because Joby has not come close to pleading

5   "whether it was reasonably probable" that Archer deprived Joby of any economic advantage, its claim

6   fails.  *See id.* (noting it was "impossible" to "determine whether it was reasonably probable that the

7   prospective economic advantage would have been realized but for Defendants' interference").

8   **6.     Joby Fails to State a Claim for Violations of California's UCL.**

9   Joby states that the conduct it alleges against Archer in its earlier counts amounts to "unlawful"

10   and "unfair" conduct in violation of the UCL.  Compl. ¶¶ 154–61.  Joby's UCL claim should be

11   dismissed for at least three reasons.

12   *First*, this claim fails because Joby has not sufficiently pleaded that any allegedly wrongful

13   conduct by Archer harmed it.  *See HomeLight, Inc. v. Shkipin*, 2024 WL 940089, at *3 (N.D. Cal. Mar.

14   5, 2024) (UCL requires loss "as a result of the unfair competition").

15   *Second*, Joby bases its UCL claim on the same conduct underlying its other claims against

16   Archer.  *See* Compl. ¶¶ 154–61.  Because "the predicate claims on which [Joby's] UCL claim are based

17   fail, the UCL claim [also] fails."  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015);

18   *Metricolor LLC v. L'Oreal S.A.*, 2018 WL 5099496, at *6 (C.D. Cal. Aug. 15, 2018) (dismissing claim).

19   *Third*, Joby has an "adequate remedy at law" if it prevails on its other claims.  *Green Crush*

20   *LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at *6 (C.D. Cal. May 3, 2018) (dismissing

21   "duplicative" claim).  "Apart from civil penalties, which are not at issue in this case, the UCL provides

22   only the equitable remedies of restitution and injunctive relief."  *Philips v. Ford Motor Co.*, 2015 WL

23   4111448, at *16 (N.D. Cal. July 7, 2015).  Plaintiffs seeking these equitable remedies "must establish

24   that there is no adequate remedy at law available."  *Id.*  Joby brought claims that provide legal remedies

25   for everything it complains about; its UCL thus claim fails.  *Green Crush*, 2018 WL 4940825, at *6.

26   **V.     CONCLUSION**

27   The Court should grant the motion and dismiss Counts 2, 3, 6, 8, 9, 10, and 11 of the Complaint.

28

1    DATED: January 23, 2026

2                                                 Respectfully submitted,

3                                                 GIBSON, DUNN & CRUTCHER LLP

4                                                 By: */s/ James L. Zelenay Jr.*
                                                       James L. Zelenay Jr.
5                                                      Josh A. Krevitt
                                                       Orin Snyder (admitted *pro hac vice*)
6                                                      Elizabeth K. McCloskey

7                                                 *Attorneys for Defendant Archer Aviation Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28