QUINN EMANUEL URQUHART & SULLIVAN, LLP

Alex Spiro (*pro hac vice*)
  alexspiro@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone:   (212) 849-7000
Facsimile:   (213) 849-7100

Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

Sara Pollock (Bar No. 281076)
  sarapollock@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Joby Aero, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Joby Aero, Inc., | **Case No. 5:25-cv-10703-SVK** |
| Plaintiff, | **PLAINTIFF JOBY AERO, INC.'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |
| v. | |
| Archer Aviation Inc., and George Kivork, | [*Request for Judicial Notice and Declaration of Michael LaFond filed currently herewith*] |
| Defendants. | **Judge:**   Hon. Susan van Keulen |
| | Hearing Date: March 24, 2026<br>Hearing Time: 10:00 a.m.<br>Hearing Location: Courtroom 6 – 4th Floor |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................................. 1

II.     ALLEGATIONS IN THE COMPLAINT ........................................................................ 1

III.    LEGAL STANDARD ......................................................................................................... 4

IV.     ARGUMENT ....................................................................................................................... 4

      a.      **Joby Alleges a Violation of the DTSA Against Defendants (Count 3)** ................ 4

          i.      **Joby Identifies Its Trade Secrets** ....................................................... 5

          ii.     **Joby Alleges Misappropriation** ............................................................ 9

      b.      **Joby's Tort Claims Are Not Preempted by CUTSA** ......................................... 12

          i.      **CUTSA Does Not Preempt Claims Arising from Contract, Statute, or Independently Wrongful Conduct** ...................................... 12

          ii.     **Joby's Claim for Inducement of Breach of the PIIA Is Not Preempted (Count 2)** ....................................................................... 14

          iii.    **Joby's CDAFA Claim Is Not Preempted (Count 4)** ............................... 15

          iv.     **Joby's Claims for Breach of Fiduciary and Loyalty Duties, and Aiding and Abetting, Are Not Preempted (Counts 5, 6, 7, 8)** ............... 17

          v.      **Joby's Claims for Tortious Interference with the Developer Agreement Are Not Preempted (Counts 9 and 10)** ............................... 18

          vi.     **Joby's UCL Claim Is Not Preempted (Count 11)** .................................. 20

      c.      **Joby Adequately Alleges All of Its Other Claims** .............................................. 20

          i.      **Kivork's PIIA is not "Unenforceable" (Count 1)** ................................ 20

          ii.     **Joby Adequately Pleads Inducement of Breach of the PIIA Against Archer (Count 2)** ....................................................................... 22

          iii.    **Joby Adequately Pleads Kivork's Breach of California Penal Code Section 502 (Count 4)** ....................................................... 23

          iv.     **Joby Adequately Pleads Breach of Fiduciary and Loyalty Duties Against Kivork (Counts 5 and 7)** ................................................ 26

          v.      **Joby Adequately Pleads Aiding and Abetting Breach of Fiduciary and Loyalty Duties Against Archer (Counts 6 and 8)** .......... 29

          vi.     **Joby Adequately Pleads Tortious Interference with Contract and Prospective Economic Advantage Against Archer (Counts 9 and 10)** ........................................................................................ 30

vii.    **Joby Adequately Pleads Inducement of Breach of Contract as to the Joby-Developer Agreement Against Kivork (Count 9)** ................... 32

viii.    **Joby Adequately Pleads Tortious Interference with Prospective Economic Advantage Against Kivork (Count 10)** ................................. 34

ix.    **Joby Adequately Pleads Archer's UCL Violations (Count 11)** ............. 34

V.    CONCLUSION ......................................................................................................... 35

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*3D Sys., Inc. v. Wynne*,
2024 WL 1099677 (S.D. Cal. Mar. 12, 2024) ................................................................. 23, 30

*Aberin v. Am. Honda Motor Co., Inc.*,
2018 WL 1473085 (N.D. Cal. Mar. 26, 2018) ...................................................................... 35

*Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*,
2019 WL 4137618 (C.D. Cal. Mar. 27, 2019) ........................................................................ 6

*Agfa Corp. v. Richard*,
2018 WL 3078585 (C.D. Cal. June 1, 2018) ........................................................................ 28

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019) ................................................................................. 6

*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*,
28 Cal. App. 5th 923 (2018) ................................................................................................ 21

*Angelica Textile Servs., Inc. v. Park*,
220 Cal. App. 4th 495 (2013) ............................................................... 12, 13, 14, 15, 18, 19

*Arthur J. Gallagher & Co. v. Tarantino*,
498 F. Supp. 3d 1155 (N.D. Cal. 2020) ..................................................................... 8, 18, 28

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................................. 4

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ....................................................................... 17

*Auris Health, Inc. v. Noah Med. Corp.*,
2023 WL 7284156 (N.D. Cal. Nov. 3, 2023) ...................................................................... 23

*Banks.com, Inc. v. Keery*,
2010 WL 727973 (N.D. Cal. Mar. 1, 2010) ........................................................................ 16

*Barker v. Insight Glob., LLC*,
2017 WL 10504692 (N.D. Cal. Nov. 21, 2017) ................................................................... 20

*Beaulieu Grp., LLC v. Bates*,
2015 WL 13950821 (C.D. Cal. Dec. 3, 2015) ......................................................... 19, 20, 32

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 4

*Biden v. Ziegler*,
737 F. Supp. 3d 958 (C.D. Cal. 2024)..................................................................26

*Bladeroom Grp. Ltd. v. Facebook, Inc.*,
2015 WL 8028294 (N.D. Cal. Dec. 7, 2015) ........................................................6

*Brown v. TGS Mgmt. Co., LLC*,
57 Cal. App. 5th 303 (2020)...............................................................................21

*C2 Educ. Sys., Inc. v. Lee*,
2019 WL 3220251 (N.D. Cal. July 17, 2019)......................................................26

*California Grape Control Bd. v. California Produce Corp.*,
4 Cal. App. 2d 242 (1935)..................................................................................35

*Calsoft Labs, Inc. v. Panchumarthi*,
2020 WL 512123 (N.D. Cal. Jan. 31, 2020) ..........................................14, 15, 18

*Canoo Techs., Inc. v. Harbinger Motors, Inc.*,
2024 WL 4329059 (C.D. Cal. Feb. 1, 2024) .........................................................8

*Chaganti v. I2 Phone Intl Inc.*,
2005 WL 679664 (N.D. Cal. Mar. 11, 2005) .......................................................33

*Chodos v. W. Publ'g Co.*,
92 F. App'x 471 (9th Cir. 2004)..........................................................................34

*Christian Research Inst. v. Alnor*,
148 Cal. App. 4th 71 (2007)...............................................................................25

*Cisco Systems, Inc. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ..............................................................15

*CleanFish, LLC v. Sims*,
2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) .....................................................12

*Cole v. LinkedIn Corp.*,
2025 WL 2963221 (N.D. Cal. Oct. 20, 2025).......................................................3

*Compstar Ins. Servs., LLC v. Summit Specialty Ins. Sols. LLC*,
2025 WL 1674414 (C.D. Cal. May 6, 2025)..................................................11, 16

*CTI III, LLC v. Devine*,
2022 WL 1693508 (E.D. Cal. May 26, 2022).......................................................24

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ................................................................26

*Dowell v. Biosense Webster, Inc.*,
179 Cal. App. 4th 564 (2009)..............................................................................21

*EcoHub, LLC v. Recology Inc.*,
2023 WL 6725632 (N.D. Cal. Oct. 11, 2023) ......................................................................... 32

*Edwards v. Arthur Anderson LLP*,
44 Cal. 4th 937 (2008) ........................................................................................................... 21

*In re Elec. Arts, Inc.*,
298 F. App'x 568 (9th Cir. 2008) ............................................................................................ 7

*Elias v. Spotify USA Inc.*,
2020 WL 11884714 (C.D. Cal. Nov. 24, 2020) ...................................................................... 11

*Enreach Tech., Inc. v. Embedded Internet Sols., Inc.*,
403 F. Supp. 2d 968 (N.D. Cal. 2005) .................................................................................... 28

*Erhart v. BofI Holding, Inc.*,
387 F. Supp. 3d 1046 (S.D. Cal. 2019) ................................................................................... 25

*Facebook, Inc. v. Power Ventures, Inc.*,
2010 WL 3291750 (N.D. Cal. July 20, 2010) ......................................................................... 26

*Facility Automation Sys., Inc. v. Heim*,
2007 WL 9776661 (S.D. Cal. Feb. 1, 2007) ........................................................................... 24

*Galderma Lab'ys, L.P. v. Tisckos*,
2024 WL 2208096 (C.D. Cal. Mar. 29, 2024) ........................................................... 21, 22, 25

*Genasys Inc. v. Vector Acoustics, LLC*,
638 F. Supp. 3d 1135 (S.D. Cal. 2022) ............................................................................. 6, 22

*Glob. Tel\*Link Corp. v. JACS Sols. Inc.*,
708 F. Supp. 3d 784 (E.D. Va. 2023) ..................................................................................... 22

*In re Google Android Consumer Priv. Litig.*,
2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) ....................................................................... 26

*Green Crush LLC v. Paradise Splash I, Inc.*,
2018 WL 4940825 (C.D. Cal. May 3, 2018) .......................................................................... 35

*Heieck v. Fed. Signal Corp.*,
2019 WL 6873869 (C.D. Cal. Nov. 4, 2019) .......................................................................... 17

*Henry Schein, Inc. v. Cook*,
2017 WL 783617 (N.D. Cal. Mar. 1, 2017) ...................................................................... 18, 28

*Implicit Conversions, Inc. v. Stine*,
2025 WL 2323354 (N.D. Cal. Aug. 11, 2025) ........................................................................ 14

*Integral Dev. Corp. v. Tolat*,
675 F. App'x 700 (9th Cir. 2017) ................................................................... 12, 14, 18, 19

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
   978 F.3d 653 (9th Cir. 2020) .................................................................... 4, 5, 6, 9

*Invisible Dot, Inc. v. DeDecker*,
   2019 WL 1718621 (C.D. Cal. 2019) .................................................................. 6

*iTalent Corp. v. Kotha*,
   2025 WL 2689264 (N.D. Cal. Sept. 19, 2025) .................................................. 29

*JEB Grp., Inc. v. San Jose III*,
   2020 WL 2790012 (C.D. Cal. Mar. 31, 2020) .................................................. 17

*JPMorgan Chase Bank, N.A. v. Paramount Residential Mortg. Grp., Inc.*,
   2013 WL 12133894 (C.D. Cal. May 30, 2013) .................................................. 35

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
   171 Cal. App. 4th 939 (2009) ..................................................................... 13, 20

*Kovesdy v. Kovesdy*,
   2010 WL 3619826 (N.D. Cal. Sept. 13, 2010) .................................................. 13

*KVC Group, LLC v. Reliable Capital Solutions LLC*,
   2025 WL 2377038 (C.D. Cal. Aug. 8, 2025) ............................................... 10, 11

*Leatt Corp. v. Innovative Safety Tech., LLC*,
   2010 WL 2803947 (S.D. Cal. July 15, 2010) ........................................... 13, 19, 20

*Long v. Playboy Enters. Int'l, Inc.*,
   2012 WL 12869314 (C.D. Cal. Mar. 7, 2012) .................................................. 25

*Los Angeles Mem'l Coliseum Com. v. Insomniac, Inc.*,
   233 Cal. App. 4th 803 (2015) ......................................................................... 27

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*,
   2019 WL 6655274 (C.D. Cal. Sept. 23, 2019) .................................................. 10

*Manchester v. Sivantos GMBH*,
   2018 WL 587849 (C.D. Cal. Jan. 29, 2018) .................................................... 13

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) .......................................................................... 4

*Masimo Corp. v. Apple Inc.*,
   2020 WL 6653652 (C.D. Cal. Oct. 13, 2020) .................................................. 36

*MedioStream, Inc. v. Microsoft Corp.*,
   869 F. Supp. 2d 1095 (N.D. Cal. 2012) ............................................................ 6

*Mintz v. Mark Bartelstein & Assocs. Inc.*,
   906 F. Supp. 2d 1017 (C.D. Cal. 2012) ........................................................... 26

JOBY'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

*Movement Mortg., LLC v. Scrima*,
  2024 WL 3011202 (E.D. Cal. June 11, 2024) ............................................................... 17, 20

*Mu Tech, Inc. v. Yin*,
  2025 WL 2780172 (S.D. Cal. Sept. 29, 2025) ..................................................................... 5

*Nestle USA, Inc. v. Best Foods LLC*,
  562 F. Supp. 3d 626 (C.D. Cal. 2021) ............................................................................... 33

*Neutron Holdings, Inc. v. Hertz Corp.*,
  2023 WL 3919465 (N.D. Cal. June 8, 2023) ........................................................ 5, 6, 7, 8, 9

*Nifty Techs., Inc. v. Mango Techs., Inc.*,
  2025 WL 1826430 (S.D. Cal. July 1, 2025) ........................................................................ 5

*Nolan Miller Incorporation v. Hees*,
  2018 WL 3533392 (C.D. Cal. July 20, 2018) .................................................................... 16

*Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al*,
  2021 WL 6104163 (C.D. Cal. Aug. 30, 2021) ................................................................... 28

*Paramount Tariff Servs., Inc. v. Ace Tariff Sols., Inc.*,
  2025 WL 3526644 (C.D. Cal. Dec. 9, 2025) ............................................................. 5, 6, 7, 8

*People v. Hawkins*,
  98 Cal. App. 4th 1428 (2002) ...................................................................................... 25, 26

*Philips v. Ford Motor Co.*,
  2015 WL 4111448 (N.D. Cal. July 7, 2015) ...................................................................... 35

*Phoenix Techs. Ltd. v. DeviceVM*,
  2009 WL 4723400 (N.D. Cal. Dec. 8, 2009) ......................................................... 13, 19, 20

*PQ Labs, Inc. v. Yang Qi*,
  2012 WL 2061527 (N.D. Cal. June 7, 2012) ..................................................................... 20

*Qiang Wang v. Palo Alto Networks, Inc.*,
  2013 WL 415615 (N.D. Cal. Jan. 31, 2013) ........................................................................ 9

*Quelimane Co. v. Stewart Title Guar. Co.*,
  19 Cal. 4th 26 (1998) ....................................................................................................... 31

*Quintara Bioscis., Inc. v. Ruifeng Biztech, Inc.*,
  149 F.4th 1081 (9th Cir. 2025) ....................................................................................... 5, 6

*R.R. Donnelley & Sons Co. v. Pappas*,
  2021 WL 3488502 (E.D. Cal. Aug. 9, 2021) ..................................................................... 17

*Rambus Inc. v. Hynix Semiconductor Inc.*,
  629 F. Supp. 2d 979 (N.D. Cal. 2009) .............................................................................. 32

*Regents of the Univ. of Cal. v. Aisen*,
   2016 WL 4097072 (S.D. Cal. Apr. 18, 2016) ...........................................................................17

*Remedi8, LLC v. All. Env't Grp., LLC*,
   2024 WL 1829617 (C.D. Cal. Feb. 5, 2024) ............................................................................15

*Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*,
   2024 WL 3447524 (N.D. Cal. July 16, 2024) ............................................................................7

*Rodriguez v. Google LLC*,
   2024 WL 1486139 (N.D. Cal. Apr. 5, 2024) ............................................................................25

*SASCO v. Rosendin Electric, Inc*.
   207 Cal. App. 4th 837 (2012)....................................................................................................12

*Signal Hill Serv., Inc. v. Macquarie Bank Ltd*.,
   2013 WL 12244056 (C.D. Cal. June 12, 2013).........................................................................31

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010)............................................................................................. 12, 13

*SMC Networks Inc. v. Hitron Techs. Inc.*
   2013 WL 12114104 (C.D. Cal. Nov. 13, 2013) ........................................................................15

*Soil Retention Products., Inc. v. Brentwood Industries, Inc*.
   521 F. Supp. 3d 929 (S.D. Cal. 2021) ............................................................................... 11, 31

*Strayfield Ltd. v. RF Biocidics, Inc.*
   2012 WL 170180 (E.D. Cal. Jan. 19, 2012).............................................................................13

*Sun Hong Foods, Inc. v. Future Best Trading Inc.*,
   2023 WL 11197084 (C.D. Cal. Sept. 29, 2023).........................................................................6

*Symphony Risk Sols. Ins. Servs., Inc. v. Perlite*,
   2024 WL 5112479 (N.D. Cal. Dec. 13, 2024) .........................................................................18

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................................................17

*Theranos, Inc. v. Fuisz Pharma LLC*,
   876 F. Supp. 2d 1123 (N.D. Cal. 2012) ...................................................................................13

*Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*,
   2009 WL 902337 (N.D. Cal. Apr. 1, 2009) .............................................................................13

*TMX Funding, Inc. v. Impero Techs., Inc.*,
   2010 WL 2509979 (N.D. Cal. June 17, 2010) ................................................................... 13, 16

*TRIGO ADR Americas, LLC v. OEM Logistics, LLC*,
   2025 WL 276149 (S.D. Cal. Jan. 23, 2025)..............................................................................18

*UCAR Tech. (USA) Inc. v. Yan Li*,
   2017 WL 6405620 (N.D. Cal. Dec. 15, 2017) ................................................... 28

*United Auto Credit Corp. v. Stewart*,
   2025 WL 2428466 (C.D. Cal. June 23, 2025) .................................................... 17

*Western Air Charter, Inc. v. Schembari*,
   2017 WL 10638759 (C.D. Cal. Oct. 6, 2017) ....................................... 15, 17, 20

*Whiteslate, LLP v. Dahlin*,
   2021 WL 2826088 (S.D. Cal. July 7, 2021) ....................................................... 18

*Wisk Aero LLC v. Archer Aviation Inc*.
   2023 WL 3919469 (N.D. Cal. June 9, 2023) ...................................................... 11

*Wixen Music Uk Ltd. v. Transparence Ent. Grp. Inc.*,
   2023 WL 9004931 (C.D. Cal. Oct. 10, 2023) ....................................................... 7

*Wolf v. Superior Court*,
   107 Cal. App. 4th 25 (2003) .............................................................................. 27

*World Fin. Grp. Ins. Agency v. Olson*,
   2024 WL 730356 (N.D. Cal. Feb. 22, 2024) ...................................................... 22

*Xsolla (USA), Inc. v. Aghanim Inc.*,
   2024 WL 4139615 (C.D. Cal. Sept. 10, 2024) ................................................... 11

*Zarif v. Hwareh.com, Inc.*,
   789 F. Supp. 3d 880 (S.D. Cal. 2025) ............................................................... 27

## Statutes

18 U.S.C. § 1839(5) ................................................................................................. 9, 10

18 U.S.C. § 1839(5)(B)(ii) ............................................................................................ 9

Cal. Civ. Code § 3426.7(a)-(b) .......................................................................... 12, 17, 21

California Penal Code Section 502 ............................................................... 16, 24, 25

Cal. Penal Code § 502(c)(1) ............................................................................... 16, 24

Cal. Penal Code § 502(e)(1) ...................................................................................... 26

## Other Authorities

CACI 1812 ................................................................................................................ 25

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 4

## I.    **INTRODUCTION**

The facts of this case are straightforward.  Two days before resigning from Joby Aero, Inc. ("Joby") to work for its rival Archer Aviation, Inc. ("Archer"), Defendant George Kivork ("Kivork" and together with Archer, the "Defendants") stole dozens of Joby's confidential files—including documents containing the terms of Joby's exclusive strategic partnership with a major real estate developer.  Days later, Archer approached the same developer with a competing proposal custom-tailored to undercut Joby's deal.  The developer itself confirmed Archer knew the confidential terms of Joby's agreement and identified Kivork as the source.  Shortly thereafter, the developer purported to terminate the exclusive agreement with Joby.  These and other allegations in the Complaint detail corporate espionage more than sufficient to support each of Joby's asserted claims.

Defendants respond with kitchen-sink motions that invite this Court to disbelieve Joby's allegations rather than accept them as true.  Defendants argue that Joby has not identified any "trade secrets," yet the Complaint specifies stolen files by name and details the confidential deal terms Archer weaponized—and it is well-established that confidential contractual terms can qualify as trade secrets.  Kivork argues he owed no duties to Joby because his confidentiality agreement is "unenforceable" and he was not a fiduciary.  But the cases he cites discuss *noncompete* and *non-solicit* agreements, not duties to protect confidential information.  Kivork also ignores the factual allegations establishing his prior position of trust at Joby, wherein Joby granted him access to confidential information and gave him discretionary authority to represent Joby in negotiations with third parties—the textbook definition of a fiduciary.

Each of Defendants' arguments suffers from the same fundamental flaw: it ignores the well-pleaded factual allegations.  Moreover, this Court must accept Joby's allegations as true at this stage, drawing all reasonable inferences in Joby's favor.  Under that standard, each of Joby's claims are viable.  Accordingly, the Court should deny Defendants' motions and order them to answer Joby's Complaint.

## II.    **ALLEGATIONS IN THE COMPLAINT**

**The Parties.**  Joby is a leader in the nascent industry for electric vertical takeoff and landing ("eVTOL") aircraft.  Complaint ("Compl.") ¶¶ 20-21.  Founded in 2009, Joby spent 16 years and

billions of dollars developing the technology, regulatory relationships, and commercial partnerships necessary to bring eVTOL aircraft to market. *Id.* ¶¶ 2-3, 21-22. That investment paid off: Joby became the first company to reach the final stage of the FAA's five-stage certification process, completing more than 50,000 miles of test flights. *Id.* ¶ 2.

Archer entered the eVTOL market in 2018—nine years after Joby. It has since attempted to make up for lost time by recruiting employees from established competitors. *Id.* ¶ 4. Kivork is one such recruit. *Id.* ¶ 5.

Kivork served as Joby's U.S. State and Local Policy Lead for four years. *Id.* ¶¶ 28, 31. In that senior position, Kivork represented Joby in negotiations with government officials and strategic business partners, advised leadership on regulatory strategy, and had discretionary authority to make decisions on Joby's behalf. *Id.* ¶¶ 29-30, 35, 107. Because of the trust Joby placed in him, Kivork had access to highly sensitive information, including details of Joby's commercial partnerships, regulatory strategies, technical specifications, and infrastructure plans. *Id.* ¶¶ 29-30, 35, 44-48.

As a condition of employment, Kivork signed a Proprietary Information and Inventions Agreement ("PIIA") on August 19, 2021. *Id.* ¶ 31. The PIIA required Kivork to hold Joby's proprietary information in confidence, prohibited him from using such information outside the scope of his Joby employment, and obligated him to return all proprietary information upon termination. *Id.* ¶¶ 32-33, Ex. A.

**Joby and the Developer.** Beginning in 2022, Joby cultivated a strategic relationship with a major real estate developer (the "Developer"). *Id.* ¶¶ 6, 23. After approximately 18 months of negotiations, Joby and the Developer signed a strategic partnership agreement with binding exclusivity (the "Agreement") dated March 12, 2025. *Id.* ¶¶ 23-25. The terms of the partnership would grant Joby the exclusive right to design, build, and operate skydecks at certain of Developer's properties; the parties further agreed to an 18-month exclusivity period during which they would work out a more comprehensive partnership agreement. *Id.* ¶¶ 24-25. The Agreement's terms were kept strictly confidential—an intentional business decision that prevented competitors from learning the details of Joby's hard-won exclusive deal and attempting to undercut it. *Id.* ¶ 26. Because of his position at Joby, Kivork was given access to the Agreement and its terms, so that he could

represent Joby in related negotiations with local governments.  *Id.* ¶ 35.

**Kivork Breaches His Duties to Joby for Archer's Benefit.**  On July 20, 2025 (a Sunday) Kivork informed Joby he was resigning and had accepted a job with Archer.  *Id.* ¶ 36.  Consistent with Joby's practices to protect its confidential information, Joby set Kivork's last day as August 3, 2025, but it disabled Kivork's access to Joby's company email and other computer systems right away.  *Id.* ¶ 37.  This gap was designed as a two-week "cooling off period": Kivork would remain available if needed, but would no longer have access to Joby's confidential systems.  *Id.*

But Kivork had already taken steps to evade those safeguards.  *See id.* ¶ 41.  On July 18, 2025, the Friday night two days *before* Kivork announced his resignation, Kivork secretly downloaded dozens of files from Joby's electronic repositories.  *Id.*  The downloads included high-value documents that Kivork had no legitimate reason to access—particularly given that he planned to resign two days later.  *Id.* ¶¶ 42-45.[1]  Among these documents was a file entitled "20250116 – [Developer] - Strategic Partnership Counter Proposal," which contained both the details of Joby's negotiations with the Developer and the terms of the Agreement.  *Id.* ¶ 43.  Kivork also emailed confidential Joby files to his personal email account, including site analysis for potential vertiports, land use development strategy, and commercial launch strategies.  *Id.* ¶ 46.

Moreover, before Joby could revoke his access to Joby systems, Kivork altered the security settings for hundreds of files stored on Joby's Google Drive ("Drive") by setting his own personal email account as the "owner" of those files.  *Id.* ¶¶ 49-50, 52.  By changing the ownership settings, Kivork ensured that he would be able to continue accessing those files even after he left Joby to start working at Archer.  *Id.* ¶ 53.  In effect, Kivork created a backdoor that would let him spy on Joby from inside Archer—because as an "owner," he could see new information Joby added to those files after his departure.  *Id.*  Thus Archer would gain the benefits of Kivork's misdeeds.  *Id.* ¶ 54.

**Kivork Discloses Joby's Information to Archer; Archer Uses Joby's Information.**  On August 5, 2025, Joby learned that Archer had approached the Developer about a business

---

[1]  Archer claims "Kivork downloaded these documents to . . . his Joby-issued laptop." Dkt. 24 at 4.  Not only is that inaccurate, it is not in the Complaint and may not be considered on a motion to dismiss.  *E.g., Cole v. LinkedIn Corp.*, 2025 WL 2963221, at *3 (N.D. Cal. Oct. 20, 2025) (denying motion to dismiss that "relies on facts outside the complaint").

relationship.  *Id.* ¶ 60.  The timing was no coincidence: the Developer had gone silent in its communications with Joby in the last few days of Kivork's "cooling off" period and right before Joby and the Developer planned to announce the Agreement publicly.  *Id.* ¶¶ 59-60.

According to the Developer, Archer's pitch reflected knowledge not only about the Agreement with Joby, but also the Agreement's key terms which were highly confidential.  *Id.* ¶ 60. The Developer reported to Joby that Archer's knowledge was so detailed, it must have learned the Agreement's terms from Kivork.  *Id.*  The Developer also stated Archer had used its knowledge of the Agreement's terms to make the Developer a more lucrative offer.  *Id.* ¶ 61.  Shortly thereafter, the Developer declared that Kivork's disclosure to Archer while he was still a Joby agent constituted a breach of the Agreement's confidentiality provision, and purported to terminate the Agreement. *Id.* ¶ 62.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint need only contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.    ARGUMENT

Joby's Complaint asserts eleven causes of action against Kivork and/or Archer.  Each is adequately pleaded.  None is preempted.

### a.    Joby Alleges a Violation of the DTSA Against Defendants (Count 3)

Joby has alleged every element of a claim under the Defend Trade Secrets Act (the "DTSA") against both Defendants: "(1) that [Joby] possessed a trade secret, (2) that the [Defendants] misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to [Joby]."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020).  Joby's

Complaint alleges that it possesses multiple trade secrets, including the confidential and valuable terms of the Agreement, which granted Joby the "exclusive right to design, build, and operate skydecks at certain of the Developer's properties." Compl. ¶¶ 24-26. Kivork misappropriated that trade secret (among others) when he surreptitiously downloaded a file containing the Agreement's terms and then disclosed those terms to Archer, in violation of Kivork's obligations to Joby. *Id.* ¶¶ 43-44, 60-62. Archer used Joby's misappropriated trade secret to undercut Joby's deal with the Developer. *Id.* ¶ 61. This harmed Joby because it led the Developer to cease moving forward with the planned deal, and declare their intention to terminate the Agreement. *Id.* ¶ 62. Defendants' motions ask the Court to ignore those allegations.

> ### i.      Joby Identifies Its Trade Secrets

> #### (1)      Defendants Misstate the Trade Secret Identification Standard

Defendants (Dkt. 24 at 7-11) rely on outdated law decided under the California Uniform Trade Secrets Act ("CUTSA") and *not* the DTSA. In August 2025, the Ninth Circuit clarified that the DTSA differs fundamentally from CUTSA because "unlike CUTSA, the federal DTSA does not require a plaintiff to identify with particularity its alleged trade secrets from the start." *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025). The Ninth Circuit went on to explain that *InteliClear*, 978 F.3d 653, governs trade secret identification under the DTSA. *Quintara*, 149 F.4th at 1087-88.

Relevant here, *InteliClear* sets out three guidelines for pleading trade secrets. ***First***, to overcome a motion to dismiss, a DTSA plaintiff need only plead "one trade secret with sufficient particularity." *Neutron Holdings, Inc. v. Hertz Corp.*, 2023 WL 3919465, at *4 (N.D. Cal. June 8, 2023) (denying motion to dismiss DTSA claim, quoting *InteliClear*); *Nifty Techs., Inc. v. Mango Techs., Inc.*, 2025 WL 1826430, at *7 (S.D. Cal. July 1, 2025) (same, and noting it is "inconsistent with *InteliClear*" to dismiss a claim because "the allegations identified some, rather than all, of the asserted trade secrets"); *Paramount Tariff Servs., Inc. v. Ace Tariff Sols., Inc.*, 2025 WL 3526644, at *4 (C.D. Cal. Dec. 9, 2025) (same, quoting *InteliClear*); *Mu Tech, Inc. v. Yin*, 2025 WL 2780172, at *4 (S.D. Cal. Sept. 29, 2025) (same, citing *InteliClear*). ***Second***, DTSA plaintiffs are allowed to describe trade secrets using "hedging language" that "le[aves] open the possibility of expanding

[the] identifications later."  *InteliClear*, 978 F.3d at 659; *Quintara*, 149 F.4th at 1087 (quoting *InteliClear*).  **Third**, the use of "open-ended wording" to identify *other* trade secrets "does not doom a trade secret claim when other allegations plausibly define at least one trade secret."  *Neutron Holdings*, 2023 WL 3919465, at *4 (citing *InteliClear*); *accord Paramount Tariff Servs.*, 2025 WL 3526644, at *4 (after one trade secret is deemed identified, "the Court need not determine whether [plaintiff] sufficiently identifies any other," citing *InteliClear*).

Tellingly, Defendants' motions ignore *InteliClear* and *Quintara*.  Indeed, most of the authorities they cite were decided *before* the Ninth Circuit handed down *InteliClear* in 2020.  *See* Dkt. 24 at 7-11 (citing six pre-*InteliClear* cases).[2]

Defendants' remaining authorities come from a single line of cases, beginning with *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135 (S.D. Cal. 2022), which examined complaints asserting *both* CUTSA and DTSA claims and thus applied the inapposite pre-*InteliClear* CUTSA standard.  *See* Dkt. 24 at 7-11 (citing *Genasys*, 638 F. Supp. 3d 1135 (examining CUTSA and DTSA claims and citing pre-*InteliClear* case law for the trade secret identification standard); *Sun Hong Foods, Inc. v. Future Best Trading Inc.*, 2023 WL 11197084, at *2 (C.D. Cal. Sept. 29, 2023) (examining CUTSA and DTSA claims and following *Genasys*); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *4 (C.D. Cal., Apr. 21, 2023) (examining CUTSA and DTSA claims and following *Genasys*)).  Defendants do not cite a single case decided after *InteliClear* that examines the DTSA standard without relying on CUTSA authorities.

### (2)    Joby Sufficiently Identifies Multiple Trade Secrets

Courts applying *InteliClear* and *Quintara* have repeatedly found that complaints just like Joby's are more than sufficient when they identify "at least one trade secret" (*InteliClear*, 978 F.3d at 659) at the pleading stage.  For example, in *Paramount Tariff Services*, the court found the "description of 'bond lists'" that identify "'customer bonds, costs, profit margin, and due dates,

---

[2]  *Invisible Dot, Inc. v. DeDecker*, 2019 WL 1718621 (C.D. Cal. 2019); *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133 (N.D. Cal. 2019); *Acrisure of Cal., LLC v. SoCal Com. Ins. Servs., Inc.*, 2019 WL 4137618, at *3 (C.D. Cal. Mar. 27, 2019); *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697 (N.D. Cal. Mar. 23, 2018); *Bladeroom Grp. Ltd. v. Facebook, Inc.*, 2015 WL 8028294, (N.D. Cal. Dec. 7, 2015); and *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1113 (N.D. Cal. 2012).

among other information,'" standing alone, sufficient to identify a trade secret. 2025 WL 3526644, at *3. *See also Neutron Holdings*, 2023 WL 3919465, at *4 (both "confidential performance ratings, product roadmaps and assignments, and pay structure for Lime's entire engineering organization" and "critical business and product and technical development strategy, including slides from Lime's December 2022 C-Suite business health meetings" were independently sufficient to identify trade secrets under the *InteliClear* standard). Consistent with these examples, Joby's Complaint identifies at least the following trade secrets:

**The Terms of Joby's Agreement with the Developer.** The Agreement grants Joby the "exclusive right to design, build, and operate skydecks at certain of the Developer's properties." Compl. ¶ 24. The terms of the Agreement were in a file stolen by Kivork, named "20250116 – [Developer] - Strategic Partnership Counter Proposal." *Id.* ¶ 43. Both Joby and the Developer maintained the terms of the Agreement in confidence. *Id.* ¶ 26. The terms of the Agreement have been identified as trade secrets.

Notably, Defendants do not—and cannot—deny that contract terms may qualify as trade secrets. *E.g.*, *Wixen Music Uk Ltd. v. Transparence Ent. Grp. Inc.*, 2023 WL 9004931, at *9 (C.D. Cal. Oct. 10, 2023) (denying motion for summary judgment that argued "specific contract terms" did not "qualify as trade secrets"); *see also In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (terms in a confidential agreement "plainly fall[] within the [legal] definition of 'trade secrets'"). Instead, Defendants argue that Joby should be required to identify the Developer and specific terms that constitute trade secrets. Dkt. 24 at 10-11. Both arguments fail.

*First*, Archer is already on notice of who the Developer is—the law requires no more. *E.g.*, *Paramount Tariff Servs.*, 2025 WL 3526644, at *3 (complaint need only provide "sufficient detail to put Defendants on notice" of the trade secret). Public comments by both Archer's CLO and CEO[3] confirm Defendants know exactly who the Developer is. *See* Declaration of Michael LaFond

---

[3] As explained in Joby's accompanying Request for Judicial Notice, "public statements by [Archer's] executives are judicially noticeable." *Retail Wholesale Dep't Store Union Loc. 338 Ret. Fund v. Stitch Fix, Inc.*, 2024 WL 3447524, at *4 n.2 (N.D. Cal. July 16, 2024).

("LaFond") at Ex. A (Archer CLO stating, "Joby alleges we used their trade secrets to win a 'deal' with a developer but the reality is that Archer has no deal with this developer"); *id.* Exs. B & C (Archer CEO social medial posts stating, "Let me be clear, Archer has no deal with this developer."). Even if Archer could claim it "does not know" who the Developer is, that is an issue for discovery, not the pleadings. *E.g.*, *Canoo Techs., Inc. v. Harbinger Motors, Inc.*, 2024 WL 4329059, at *3 (C.D. Cal. Feb. 1, 2024) (complaint that identified "[c]arefully compiled and curated list of current and prospective customer names and contact information" sufficiently identified trade secret under the *InteliClear* standard without naming specific customers).

**Second**, Joby's Complaint describes the Agreement's terms, which include "the exclusive right to design, build, and operate skydecks at certain of the Developer's properties." Compl. ¶ 24. Archer and Kivork do not explain why more specificity should be required at the pleading stage. Indeed, the law is to the contrary. *Paramount Tariff Servs.*, 2025 WL 3526644, at *3 ("a plaintiff need not spell out the details of the trade secret" at the pleading stage) (citation and internal quotation marks omitted). Moreover, Defendants ignore Joby's identification of a specific, stolen file containing the Agreement's terms (Compl. ¶ 43) which, standing alone, is enough to overcome a motion to dismiss. *E.g.*, *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1172 (N.D. Cal. 2020) (where plaintiff identified "specific documents" containing trade secrets "there is little doubt here that Defendants have been put on adequate notice").

**Materials Related to the Agreement.** Joby has also identified trade secrets in information related to the Agreement with the Developer. Specifically, Joby alleges that Kivork stole (i) "technical analyses of the projected impact of Joby aircraft operations on the Developer's properties" and (ii) "an internal Joby business and regulatory strategy document related to aircraft operational acoustics at the Developer's properties." Compl. ¶ 44. Defendants' assertion that those are "broad categories" (Dkt. 24 at 10-11) is belied by the specific descriptions of content in the documents, including technical analyses of the projected impact of aircraft operations on Developer's properties and operational acoustics at the Developer's properties. *Compare* Compl. ¶ 44 *with Paramount Tariff Services*, 2025 WL 3526644, at *3 ("bond lists, identifying customer bonds, costs, profit margin, and due dates, among other information"); *Neutron Holdings*, 2023 WL

3919465, at *4 ("confidential performance ratings, product roadmaps and assignments, and pay structure for Lime's entire engineering organization"). Moreover, Joby is permitted to use "hedging language" at the pleading stage to "expand[] its identifications later." *InteliClear*, 978 F.3d at 659.

**Joby's Strategy Documents.** Joby has also identified trade secrets in "commercial strategy development, regulatory strategies, and infrastructure strategy for vertiports and airport access, as well as information about joint activities with high-value Joby partners." Compl. ¶ 45. As with Joby's other allegations, that is no less specific than what the Court accepted in *Neutron Holdings*, 2023 WL 3919465, at *4 ("critical business and product and technical development strategy, including slides from Lime's December 2022 C-Suite business health meetings").

### ii.    Joby Alleges Misappropriation

Defendants next argue that Joby "failed to plead misappropriation." Dkts. 24 at 11-14, 23 at 5-7. This argument ignores both the Complaint's allegations and the statute's plain text. Under the DTSA, "misappropriation" includes "disclosure *or* use . . . of a trade secret of another without express or implied consent by a person who . . . knew or had reason to know that the knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy[.]" 18 U.S.C. § 1839(5)(B)(ii). As alleged, Kivork acquired Joby's trade secrets through his work at Joby and knew he had an obligation to keep them secret, because he signed a confidentiality agreement (the PIIA). Compl. ¶¶ 30-35. Nonetheless, Kivork disclosed Joby's trade secrets to Archer. *Id.* ¶¶ 60-61. That is misappropriation. 18 U.S.C. § 1839(5).

Archer likewise knew or had reason to know of Kivork's secrecy obligation. Competitors in the eVTOL industry—including Archer itself (Compl. ¶ 4)—derive competitive advantage from keeping deal structures and terms confidential. *Id.* ¶ 48. Absent misappropriation, Archer "would have had to spend months negotiating with the Developer" before it could make a competitive offer. *Id.* ¶ 61. The inference is inescapable: Archer knew, or should have known, that Kivork was not permitted to disclose the terms of the Agreement. *E.g.*, *Qiang Wang v. Palo Alto Networks, Inc.*, 2013 WL 415615, at *3 (N.D. Cal. Jan. 31, 2013) (denying motion to dismiss where, from context, "it is reasonable to infer that [defendant] should have known" it "had acquired trade secrets"). Archer also would have known that Kivork was not at liberty to divulge that information even after

he ceased working for Joby because it is practice in the eVTOL industry to use confidentiality agreements with continuing, post-employment obligations. Compl. ¶ 79.

Despite this knowledge, Archer used the information Kivork disclosed to extend the Developer a more lucrative offer. *Id.* ¶¶ 59-62. That, too, constitutes misappropriation under the DTSA. 18 U.S.C. § 1839(5). Defendants' arguments simply ignore these allegations.

### (1)    Joby Alleges Misappropriation by Archer

Archer's argument that Joby failed to plead misappropriation by Archer (Dkt. 24 at 11-14) ignores the Complaint's most damaging allegations. On August 5, 2025, the Developer informed Joby that "Archer knew not only of the existence of the Agreement, but also the key terms from the Agreement." Compl. ¶ 60. As noted above, the terms of the Agreement are one of Joby's trade secrets; and Archer then used that trade secret to offer the Developer a more lucrative deal. *Id.* ¶ 61. Those allegations plead misappropriation through both wrongful acquisition and use, *i.e.*, Archer learning of the Agreement's terms and then deploying them to formulate a competing pitch.

*KVC Group, LLC v. Reliable Capital Solutions LLC*, 2025 WL 2377038 (C.D. Cal. Aug. 8, 2025) is instructive. There, the defendants argued the plaintiff failed to allege misappropriation (*id.* at *5) but the court rejected that argument based on the following allegations: (i) the defendants acquired a customer list and "are now utilizing the [l]ist to poach [c]lients within the [l]ist," and (ii) "[d]efendants are offering artificially decreased deals to [plaintiff's] [c]lients or prospective [c]lients, informed by their knowledge of [plaintiff's] trade secrets." *Id.* (internal quotation marks omitted). Joby's allegations are materially identical: Archer learned of trade secret terms of the Agreement and used them to offer the Developer a better deal. Compl. ¶¶ 60-61.

Archer's cited authorities do not change that conclusion. In *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, the plaintiff merely alleged that the defendant began "marketing products with the same features as [p]laintiff's products" shortly after hiring away one of the plaintiff's employees. 2019 WL 6655274, at *9 (C.D. Cal. Sept. 23, 2019). That is not this case, given Joby has alleged that Kivork stole the confidential terms of the Agreement, Archer learned those terms, and the Developer then attributed Archer's knowledge to Kivork. Compl. ¶¶ 59-62.

Archer cites *Elias v. Spotify USA Inc.*, 2020 WL 11884714 (C.D. Cal. Nov. 24, 2020) and

*Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 4139615 (C.D. Cal. Sept. 10, 2024) for the proposition that Joby's misappropriation allegations are insufficient because they are pled "on information and belief." This argument fails for two independent reasons. First, the Complaint's core misappropriation allegations are not alleged "on information and belief" at all. *See* Compl. ¶ 60. Second, as noted in *Xsolla*, Joby is permitted to allege facts on information and belief "where the facts are peculiarly within the possession and control of the defendant." *Xsolla*, 2024 WL 4139615, at *9. Exactly how Archer came to learn the terms of the Agreement (Compl. ¶ 60) and how Archer was able to come up with a more lucrative offer (*id.* ¶ 61) are facts within Archer's possession and control. *See, e.g.*, *Compstar Ins. Servs., LLC v. Summit Specialty Ins. Sols. LLC*, 2025 WL 1674414, at *7 (C.D. Cal. May 6, 2025) (where defendants emailed documents to themselves, misappropriation may be alleged "on information and belief" because only defendants knew how they used the documents).

### (2)    Joby Alleges Misappropriation by Kivork

Kivork's argument that "at most . . . Mr. Kivork accessed certain files during his employment with Joby" (Dkt. 23 at 6-7) ignores the allegations in Joby's Complaint. Kivork's employment with Joby ended on August 3, 2025, and two days later the Developer told Joby that Archer had learned the terms of the Agreement from Kivork. Compl. ¶¶ 37, 60. Moreover, under the PIIA, Kivork was not allowed to keep or retain copies of Joby's files—much less disclose the Agreement's terms to Archer. Compl., Ex. A. That is misappropriation. *E.g.*, *KVC Grp.*, 2025 WL 2377038, at *5.

Kivork's contrary arguments ignore the Complaint's core allegations and rely entirely on inapposite authorities. *See* Dkt. 23 at 6-7. *Wisk Aero LLC v. Archer Aviation Inc.* granted summary judgment on a handful of trade secrets (and *denied* summary judgment on others) only after "extensive discovery, including deposing Archer employees and scouring their computers and devices." 2023 WL 3919469, at *17 (N.D. Cal. June 9, 2023). It does not examine pleadings at all. *Soil Retention Products, Inc. v. Brentwood Industries, Inc.* involved a threadbare allegation of misappropriation devoid of factual support. 521 F. Supp. 3d 929, 966 (S.D. Cal. 2021) (entire allegation of misappropriation consisted of a statement that defendant "improperly used and/or disclosed [plaintiff's] trade secrets"). *SASCO v. Rosendin Electric, Inc.* involved a dismissal where

the plaintiff admitted it *assumed without evidence* that the defendant had taken trade secrets, merely because the plaintiff thought it would be "stupid" not to do so. *See* 207 Cal. App. 4th 837, 842 (2012) (internal quotation marks omitted). And in *CleanFish, LLC v. Sims*, the plaintiff's allegations only showed that the defendant knew *general information* about the industry. 2020 WL 1274991, at *11 (N.D. Cal. Mar. 17, 2020). None of the cases cited by Kivork include the kind of allegations found in Joby's Complaint. *See* Compl. ¶¶ 59-62.

### b. Joby's Tort Claims Are Not Preempted by CUTSA

#### i. CUTSA Does Not Preempt Claims Arising from Contract, Statute, or Independently Wrongful Conduct

CUTSA explicitly provides that it "does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets," and "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(a)-(b).[4] In other words, CUTSA preempts only common law tort claims that are "based on the same nucleus of facts as [the] trade secret misappropriation." *Integral Dev. Corp. v. Tolat*, 675 F. App'x 700, 704 (9th Cir. 2017) (quoting *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 232 (2010)). CUTSA "does not displace noncontract claims that, although related to a trade secret misappropriation, are independent and based on facts distinct from the facts that support the misappropriation claim." *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013).

CUTSA also does not preempt common law tort claims that arise from independent legal theories. *Id.* at 508 (holding CUTSA preemption did not apply where the "theory of liability on these claims was independent of any trade secret claim"). For example, CUTSA does not preempt claims for inventions protected by other intellectual property rights that do not depend on the confidentiality of the information taken. *See Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1138 (N.D. Cal. 2012) (CUTSA does not preempt claims for misappropriation of inventions,

---

[4] Despite saying all Joby's "State-Law Claims [sic]" (Archer Mot. at 15) are preempted, neither Archer nor Kivork argue that Joby's breach of contract claim is preempted.

as opposed to trade secrets); *Strayfield Ltd. v. RF Biocidics, Inc.* 2012 WL 170180, at \*1 (E.D. Cal. Jan. 19, 2012) (CUTSA does not preempt tort claims "that pertain to intellectual property other than trade secrets"). By the same token, CUTSA does not preempt claims arising from confidential information where some other provision of law grants a property right in that information, such as claims for inducement of a breach of a confidentiality provision in a contract. *Leatt Corp. v. Innovative Safety Tech., LLC*, 2010 WL 2803947, at \*6 n.5 (S.D. Cal. July 15, 2010) (holding CUTSA does not preempt claims that "depend on the misappropriation of otherwise confidential or proprietary, but not trade secret, information"); *TMX Funding, Inc. v. Impero Techs., Inc.*, 2010 WL 2509979, at \*4 (N.D. Cal. June 17, 2010) (same); *Phoenix Techs. Ltd. v. DeviceVM*, 2009 WL 4723400, at \*4 (N.D. Cal. Dec. 8, 2009) (same); *Think Vill.-Kiwi, LLC v. Adobe Sys., Inc.*, 2009 WL 902337, at \*2 (N.D. Cal. Apr. 1, 2009) (same). Rather, CUTSA preemption is limited to claims for misappropriation of "confidential information" that derives its value solely from the fact that it is "not generally known to the public." *See Angelica*, 220 Cal. App. 4th at 505; *Silvaco*, 184 Cal. App. 4th at 238-39 (CUTSA does not displace claims based on "the plaintiff's assertion of some other basis in fact or law on which to predicate the requisite property right").

"[T]he determination of whether a claim is based on trade secret misappropriation is largely factual." *Angelica*, 220 Cal. App. 4th at 505 (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009)). A motion to dismiss on CUTSA preemption grounds therefore cannot succeed unless trade secret misappropriation is the only conceivable basis for relief. *See Phoenix Techs.*, 2009 WL 4723400, at \*4. If the complaint alleges any facts that are not "part of the nexus that forms the basis for [a] CUTSA claim," the motion to dismiss should be denied. *Id.* at \*5; *see also Manchester v. Sivantos GMBH*, 2018 WL 587849, at \*6 (C.D. Cal. Jan. 29, 2018); *Kovesdy v. Kovesdy*, 2010 WL 3619826, at \*3 (N.D. Cal. Sept. 13, 2010).

Defendants rely on a handful of district court cases expressing a broader view that CUTSA preempts all claims arising from confidential information, whether or not there is an independent right at issue. *See, e.g., Calsoft Labs, Inc. v. Panchumarthi*, 2020 WL 512123, at \*2 (N.D. Cal. Jan. 31, 2020). These cases are distinguishable on their facts. Unlike the plaintiffs in those cases, Joby does not rest its claims solely on misappropriation of trade secret information. Joby alleges

Defendants engaged in additional, independent misconduct, including Kivork secretly transferring his loyalty to Archer while still employed by Joby (Compl. ¶¶ 54, 59), sabotaging Joby's strategic deal with Developer (*id.* ¶¶ 59-62), accessing and altering Joby's computer systems without authorization (*id.* ¶¶ 49-50, 52-53), and failing to return Joby's proprietary information (*id.* ¶ 63).

In addition, Defendants' cases are inconsistent with the express language of CUTSA to the extent they hold CUTSA preempts statutory rights, independent property rights, or rights that do not depend on the trade-secret status of information. *See Integral Dev. Corp.*, 675 F. App'x at 704 (CUTSA does not preempt claim for breach of fiduciary duty based on sharing confidential information with a competitor because it "does not require that the confidential information qualify as a 'trade secret'"); *Angelica*, 220 Cal. App. 4th at 508 (CUTSA does not preempt claims based on independent legal theories).

### ii.    Joby's Claim for Inducement of Breach of the PIIA Is Not Preempted (Count 2)

Joby's claim that Archer induced Kivork to breach the PIIA rests on independently wrongful conduct and injury to non-trade-secret rights—neither of which are preempted by CUTSA.

Archer induced Kivork to breach the PIIA in at least three ways that do not depend on the confidentiality of any information. ***First***, Kivork breached his obligation not to "engage in any activity that is in any way competitive" with Joby's business while employed. Compl. ¶¶ 34, 54. Breach of a contractual agreement not to compete during the course of employment is "entirely independent" from a trade secret misappropriation claim, and thus inducing that breach cannot be preempted by CUTSA. *Angelica*, 220 Cal. App. 4th at 508. ***Second,*** Kivork altered the security settings for hundreds of Joby files to add his own personal email address as an "owner" of these files so that he could access them after his departure. Compl. ¶¶ 49-54. Altering Joby's computer systems is wrongful regardless of whether any confidential or trade secret information is implicated. *Implicit Conversions, Inc. v. Stine*, 2025 WL 2323354, at *5 (N.D. Cal. Aug. 11, 2025) (claims for unauthorized access to protected computer systems not preempted by CUTSA); *Race Winning Brands*, 2023 WL 4681539, at *3 (similar). ***Third***, Kivork breached his obligation to return all "Proprietary Information" to Joby upon termination of his employment. Compl. ¶ 33. He kept both

confidential ***and non-confidential*** documents belonging to Joby, including the files he downloaded on Sharepoint and the Google Drive documents, and was evasive when Joby asked him to cease using and return them. Compl. ¶¶ 41-54, 63. Again, Archer's liability for this claim does not depend on the confidentiality of any of the information Kivork took.

Moreover, inducing breach of contract is wrongful regardless of what the underlying obligations are—and whether or not the breach also constitutes trade secret misappropriation. *See, Angelica*, 220 Cal. App. 4th at 508 (CUTSA does not preempt independent legal theories). Thus, district courts have repeatedly held that CUTSA does not preempt claims for inducement of breach of employment contracts. *Remedi8, LLC v. All. Env't Grp., LLC*, 2024 WL 1829617, at *4 (C.D. Cal. Feb. 5, 2024) (denying motion to dismiss and holding claim for new employer's inducement of breach of employment contract was not preempted by CUTSA); *see also SMC Networks Inc. v. Hitron Techs. Inc.* 2013 WL 12114104, at *11 (C.D. Cal. Nov. 13, 2013) (CUTSA does not preempt claim for "tortious interference with employer/employee relationships").

Archer's cases are readily distinguishable because none involved alteration of the employer's security settings, unauthorized access to the employer's computer systems, or retention of non-confidential information. *See Cisco Systems, Inc. v. Chung*, 462 F. Supp. 3d 1024 (N.D. Cal. 2020); *Western Air Charter, Inc. v. Schembari*, 2017 WL 10638759, at *3-4 (C.D. Cal. Oct. 6, 2017); *Calsoft Labs*, 2020 WL 512123, at *6. Here, Defendants' misconduct goes far beyond simply taking and using confidential information. Kivork began competing with Joby while still on its payroll, altered Joby's computer systems to maintain covert access, and refused to return proprietary materials—all in addition to misappropriating trade secrets.[5]

### iii.    Joby's CDAFA Claim Is Not Preempted (Count 4)

Joby's claim under California Penal Code Section 502 (the "Comprehensive Computer Data Access and Fraud Act" or "CDAFA") is not preempted for two reasons.

***First***, Joby's CDAFA claim does not depend on the "same nucleus of facts" as its DTSA

---

[5]  Moreover, to the extent Archer's cases held that CUTSA can preempt claims for inducing a breach of contract—and particularly a breach of a pre-termination noncompetition agreement—they are inconsistent with the California Court of Appeal's decision in *Angelica* and the Ninth Circuit's decision in *Integral Development Corp.*

claim.  CUTSA preemption "asks whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action." *Compstar Ins. Servs.*, 2025 WL 1674414, at \*8 (citation and internal quotation marks omitted).  As discussed below, Joby alleges a violation of CDAFA section 502(c)(1), which penalizes "[k]nowingly access[ing] and without permission alter[ing] . . . any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data."  Critically, section 502(c)(1) does *not* require misappropriating data or information.  *E.g.*, *Nolan Miller Incorporation v. Hees*, 2018 WL 3533392, at \*6 (C.D. Cal. July 20, 2018) (Section 502(c)(1) violation occurred where defendant "knowingly altered and deleted a significant portion of Plaintiff's website content in order to both extort money from Plaintiff and to wrongfully control said content by deletion").

Here, Joby alleges that (i) its Google Drive system is a "network" as defined in the CDAFA, (ii) Kivork altered that network's security settings, and (iii) Kivork did so to obtain control over data, including data that did not yet exist when he left Joby's employ; in effect, Kivork altered a network so that he could "spy" on Joby.  Compl. ¶¶ 49-53, 98-103; *see also id.* ¶ 53 ("Kivork gave himself a method to learn new information developed by Joby that did not exist at the time Kivork left Joby.").  Altering a network so as to spy on the plaintiff states a violation of section 502(c)(1) even when stripped of any taking, use, or disclosure of information, meaning preemption does not apply.  *E.g.*, *Banks.com, Inc. v. Keery*, 2010 WL 727973, at \*3 (N.D. Cal. Mar. 1, 2010) (CUTSA did not preempt claim that included "allegations . . . separate and distinct from the allegations relating to [defendant's] alleged wrongful use of confidential, proprietary, and trade-secret information").  Additionally, the CDAFA does not require any "data" at issue qualify as a trade secret; thus, Joby states a CDAFA claim even if its Complaint is stripped of facts identifying a trade secret.  *See TMX Funding* , 2010 WL 2509979, at \*7 (rejecting preemption argument because "information need not be a trade secret for purposes of" the CDAFA).  Either way, Joby's CDAFA claim does not depend on its DTSA allegations.

***Second***, by its own terms, CUTSA cannot preempt the CDAFA.  CUTSA does not preempt "any *statute* relating to misappropriation of a trade secret, or any statute otherwise regulating trade

secrets" nor does it preempt any "*criminal* remed[y]." Cal. Civ. Code § 3426.7(a)-(b) (emphasis added). The CDAFA is a criminal statute, adopted by the California legislature after CUTSA was passed. Given the preemption carve outs found in CUTSA, "it is illogical to think that the California legislature enacted a computer crime provision and deliberately included a civil remedy that would in turn be preempted by other legislation authorizing civil protection for trade secrets." *Regents of the Univ. of Cal. v. Aisen*, 2016 WL 4097072, at *8 (S.D. Cal. Apr. 18, 2016); *see also Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1074 (N.D. Cal. 2018) (CUTSA would not "preempt a *statutory* claim arising under the California Penal Code") (emphasis in original); *JEB Grp., Inc. v. San Jose III*, 2020 WL 2790012, at *4 (C.D. Cal. Mar. 31, 2020); *Race Winning Brands*, 2023 WL 4681539, at *7 (C.D. Cal. Apr. 21, 2023); *Heieck v. Fed. Signal Corp.*, 2019 WL 6873869, at *4-5 (C.D. Cal. Nov. 4, 2019). To the extent that there is a split of authority on this issue, the better course is to "err[] on the side of caution and . . . not find that the claim is preempted." *R.R. Donnelley & Sons Co. v. Pappas*, 2021 WL 3488502, at *3 (E.D. Cal. Aug. 9, 2021).

Kivork's cited authorities do not change this outcome, because none examined a claim alleged under 502(c)(1) and supported by additional facts that do not require the taking, disclosure, or use of information. Dkt. 23 at 10-11 (citing *United Auto Credit Corp. v. Stewart*, 2025 WL 2428466, at *4 (C.D. Cal. June 23, 2025) (plaintiff admitted no additional facts supported the CDAFA claim); *Movement Mortg., LLC v. Scrima*, 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024) (CDAFA claim alleged defendant "took its confidential and proprietary information"); *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015) (CDAFA claim alleged "use [of] plaintiff's trade secrets"); *Western Air Charter*, 2017 WL 10638759, at *6 (CDAFA claim alleged "misappropriat[ion] [of] confidential information")).

### iv.    Joby's Claims for Breach of Fiduciary and Loyalty Duties, and Aiding and Abetting, Are Not Preempted (Counts 5, 6, 7, 8)

Joby alleges that Kivork breached his fiduciary duty and duty of loyalty by, among other things, actively helping Archer compete with Joby and altering security settings on hundreds of Joby's files stored on Drive—conduct that goes well beyond the taking of confidential documents to using them to benefit Archer. Compl. ¶¶ 54, 59-62, 109-111. Joby alleges that Archer aided and

abetted those breaches by hiring Kivork and knowingly encouraging his misconduct. *Id.* ¶¶ 116-118.

Breach of fiduciary duty is a "theory of liability . . . independent of any trade secret claim," and thus is "not displaced by [C]UTSA." *Angelica*, 220 Cal. App. 4th at, 508; *Integral Dev. Corp.*, 675 F. App'x at 704 (holding CUTSA does not preempt claim for breach of fiduciary duty based on sharing confidential information with a competitor because it "does not require that the confidential information qualify as a 'trade secret'"); *Arthur J. Gallagher & Co.*, 498 F. Supp. 3d at 1175 (competing with employer on behalf of competitor "is a clear-cut breach of fiduciary duty, regardless of whether Defendants used any trade secrets to do so"); *Henry Schein, Inc. v. Cook*, 2017 WL 783617, at *3 (N.D. Cal. Mar. 1, 2017) (similar). Critically, Joby's allegations that Kivork breached his duties by competing with Joby while employed and altering security settings on Joby's documents do not depend on the confidentiality of any information. *See Henry Schein*, 2017 WL 783617, at *3.

Defendants cite no case to the contrary. Dkt. 23 at 11-12; Dkt. 24 at 16. Every case Defendants cite involved only allegations of misappropriating confidential information—none involved a defendant who competed with his employer while still on the payroll, or who altered his employer's computer systems.[6] To the extent those cases suggest otherwise, they are inconsistent with binding Ninth Circuit and California Court of Appeal precedent recognizing breach of fiduciary duty as an independent cause of action that does not depend on confidentiality of any information. *Angelica*, 220 Cal. App. 4th at 508; *Integral Dev. Corp.*, 675 F. App'x at 704.

> **v.      Joby's Claims for Tortious Interference with the Developer Agreement Are Not Preempted (Counts 9 and 10)**

Similarly, Joby's allegations that Defendants interfered with its Agreement and business relationship with the Developer are not preempted because they are based on facts and rights

---

[6]   *See Calsoft Labs*, 2020 WL 512123, at *3 (distinguishing *Angelica* on the grounds that the *Angelica* plaintiff "relied on conduct other than the misappropriation of confidential client and business information to assert its breach of fiduciary duty claim" – specifically the defendant's pre-termination competition with the plaintiff employer); *Symphony Risk Sols. Ins. Servs., Inc. v. Perlite*, 2024 WL 5112479, at *5 (N.D. Cal. Dec. 13, 2024) (similar); *Whiteslate, LLP v. Dahlin*, 2021 WL 2826088, at *9-10 (S.D. Cal. July 7, 2021) (similar); *TRIGO ADR Americas, LLC v. OEM Logistics, LLC*, 2025 WL 276149, at *4 (S.D. Cal. Jan. 23, 2025) (similar).

independent of trade secret misappropriation.

CUTSA does not preempt tortious interference claims based on allegations that "separate and apart from the misappropriation of confidential and proprietary information and trade secrets, Defendant engaged in activities designed to interfere with or disrupt Plaintiff's business relationships" including "using Defendant's knowledge of Plaintiff's business relationships to 'divert such relationships.'" *Beaulieu Grp., LLC v. Bates*, 2015 WL 13950821, at *6 (C.D. Cal. Dec. 3, 2015) (cleaned up); *see also Angelica*, 220 Cal. App. 4th, at 508 (tortious interference claims for recruiting customers not preempted); *Leatt*, 2010 WL 2803947, at *6 (tortious interference claim "based upon knowledge of Plaintiffs' prospective business relationships (which may or may not be a trade secret) as well as violation of Plaintiffs' common law rights *in addition to* any trade secret misappropriation" was not preempted) (emphasis in original); *Phoenix Techs.*, 2009 WL 4723400, at *5 (N.D. Cal. Dec. 8, 2009) (similar).

That is exactly the case here. Joby alleges Defendants interfered with Joby's relationship with Developer by, among other things, (1) offering Developer a deal that undercut Joby, (2) encouraging Developer to negotiate with Archer in violation of the exclusivity agreement, and (3) causing the Developer to believe Joby had breached its confidentiality obligations. Compl. ¶¶ 60-62. Defendants' interference is unlawful regardless of the confidentiality of any information. For example, even if Defendants did not actually have any of Joby's confidential information, but nonetheless caused the Developer to believe Joby had breached its confidentiality obligations, that would still be actionable interference. Indeed, Joby specifically alleges that "even if Archer did not use confidential information about Joby's strategic partnership with the Developer . . . it nonetheless interfered with Joby's contract by inducing the Developer to breach the contract's exclusivity term by negotiating with Archer." *Id.* ¶ 138.

Defendants' argument that the tortious interference claims are preempted because the "sequence of events depended on Mr. Kivork's alleged misappropriation" (Dkt. 23 at 12) misapplies the preemption standard. "But for" causation is not the test for CUTSA preemption. Rather, Joby's allegations are based on Defendants' affirmative interference with Joby's relationship with Developer in addition to trade secret misappropriation. *Leatt*, 2010 WL 2803947, at *6.

Once again, Defendants' cases are distinguishable. *K.C. Multimedia*, 171 Cal. App. 4th 939, 961 (2009) and *Barker v. Insight Glob., LLC*, 2017 WL 10504692, at *5 (N.D. Cal. Nov. 21, 2017) both involved allegations of interference with at-will employment relationships, not an enforceable exclusivity contract with a business partner. *PQ Labs, Inc. v. Yang Qi*, 2012 WL 2061527, at *6 (N.D. Cal. June 7, 2012) and *Western Air Charter*, 2017 WL 10638759, at *7 did not involve allegations of any breach of contract beyond the use of the plaintiff's confidential information of alterations of security settings, as is the case here. And in *First-Citizens Bank & Tr. Co. v. HSBC Holdings plc*, 2024 WL 115933, at *12 (N.D. Cal. Jan. 10, 2024), the court could not discern any allegations independent of trade secret misappropriation because "the complaint lumps defendants together, muddles the time frame for the alleged bad acts, and does not provide individual defendants with fair notice of the claims."

### vi.     Joby's UCL Claim Is Not Preempted (Count 11)

CUTSA does not displace unfair competition claims grounded in misconduct independent of trade secret misappropriation. *See Leatt*, 2010 WL 2803947, at *6-7; *Phoenix Techs.*, 2009 WL 4723400, at *5; *Beaulieu*, 2015 WL 13950821, at *6. As discussed above, Joby alleges Defendants engaged in several different acts of non-confidential information-related misconduct, each of which can support an unfair competition claim. Among other things, Joby alleges Archer induced breaches of contract and fiduciary duty and tortiously interfered with Joby's Agreement. Compl. ¶¶ 156-57. Archer's cases agree that CUTSA only displaces unfair competition claims based on misappropriation of trade secrets. *See Movement Mortg.,* 2024 WL 3011202, at *5; *Western Air Charter*, 2017 WL 10638759, at *7.[7]

### c.     Joby Adequately Alleges All of Its Other Claims

Defendants challenge each of Joby's remaining claims. Every challenge fails.

### i.     Kivork's PIIA is not "Unenforceable" (Count 1)

Kivork argues that the PIIA is unenforceable as an "illegal contract in restraint of trade."

---

[7] Moreover, these cases were incorrectly decided to the extent they hold that CUTSA can preempt statutory UCL claims based on allegations that do not depend on the confidentiality of any information. *See* Cal. Civ. Code § 3426.7(a)-(b).

Dkt. 23 at 7-9. This argument confuses confidentiality obligations with noncompete restrictions—a distinction that is fatal to Kivork's position.

Kivork relies on three decisions that invalidated non-compete and employee non-solicitation contract provisions. *Id.* (citing *Edwards v. Arthur Anderson LLP*, 44 Cal. 4th 937 (2008) (non-compete); *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923 (2018) (non-solicit); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564 (2009) (non-compete and non-solicit provisions)). Those cases are irrelevant because Joby does not allege that Kivork violated a non-compete or non-solicitation provision. Instead, Joby alleges Kivork violated (i) a provision requiring him to keep Joby's confidential information secret, and (ii) a provision requiring him to surrender all such information upon departure. Compl. ¶¶ 75-76. Other courts have consistently refused to apply *Edwards*, *AMN*, and *Dowell* where, as here, there is no non-compete or non-solicit provision at issue. *E.g.*, *Galderma Lab'ys, L.P. v. Tisckos*, 2024 WL 2208096, at *7 (C.D. Cal. Mar. 29, 2024) (refusing to invalidate confidentiality provision based on cases "concern[ing] non-competition or non-solicitation provisions," including *Dowell*).

Separately, the only case Kivork cites that involved a confidentiality provision, *Brown v. TGS Mgmt. Co., LLC*, 57 Cal. App. 5th 303 (2020), is distinguishable because the contract term in that case extended to "*all* information" that was "'usable in'" an entire industry and thus effectively operated as a non-compete. *Id.* at 317 (emphasis in original). Kivork's PIIA contains no similar language; it only reaches "[i]nventions and all other business, technical, and financial information [he] develop[ed], learn[ed],or obtain[ed] during the term of [his] employment" with Joby. Compl. Ex. A ¶ 4. Courts examining similar provisions have found them distinguishable from the contract at issue in *Brown*. *E.g.*, *Galderma*, 2024 WL 2208096, at *1, 7 (provision encompassing "Inventions . . . and confidential and proprietary information of the Company, including . . . business information disclosed or made available to Employee by the Company" was distinguishable from *Brown*); *World Fin. Grp. Ins. Agency v. Olson*, 2024 WL 730356, at *9 (N.D. Cal. Feb. 22, 2024) (finding similar provision distinguishable from *Brown*). Kivork's failure to return Joby's information is a separate breach that Kivork does not even address. *See Genasys*, 2023 WL 4414222, at *9 (refusing to follow *Brown* because "a provision requiring [] employees to surrender

company materials at the termination of their employment" was distinguishable from *Brown*). Kivork has not cited a single case invalidating a confidentiality agreement like the PIIA.

> **ii.    Joby Adequately Pleads Inducement of Breach of the PIIA Against Archer (Count 2)**

Archer argues that Joby inadequately alleged (i) Archer's awareness of the PIIA, (ii) intentional acts by Archer, and (iii) causation. Dkt. 24 at 17-18. Each argument fails.

*First*, Archer argues "Joby fails to allege that Archer knew of Kivork's PIIA at all, let alone of its specific scope or limitations." Dkt. 24 at 17. But Joby does allege Archer's awareness of "the standard practice of employee confidentiality agreements in the eVTOL industry." Compl. ¶ 79. Archer cannot credibly claim ignorance of standard protections that Joby, like any competitor in the "race to create and commercialize eVTOL air taxis" to serve a "total global addressable market for urban air mobility [that] could be conservatively valued at $1 trillion dollars by 2040" employs to protect intellectual property. Compl. ¶¶ 20-21. Archer's reliance on *Swipe & Bite, Inc. v. Chow* is misplaced. There, plaintiff alleged that defendant knew "agreements [it] had with 'contractors, vendors, employees, and customers,'" generally, but not the "specific" ones at issue. 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015). Here, Joby's allegations provide the basis to infer Archer's knowledge of Kivork's PIIA as matter of common practice in a first-to-market "race." *Id.*; *see also Glob. Tel\*Link Corp. v. JACS Sols. Inc.*, 708 F. Supp. 3d 784, 802 (E.D. Va. 2023) (holding plaintiff plausibly pled intentional interference due to "plead[ing] that NDAs are common in the tablet manufacturing industry").

*Second*, Archer argues that Joby failed to plead "any 'intentional acts' by Archer" to induce Kivork's breach, instead offering "bare assertions and characterizations—'[o]n information and belief.'" Dkt. 24 at 18. The Complaint includes factual allegations which provide the basis for the reasonable inference that Archer acquired and used Joby's files and other material subject to the PIIA via Kivork's breach—regardless of trade secret qualification. *See supra* §§ II, IV.2.b. Again, the reasonable inference from the well-pled allegations is that Archer induced Kivork's conduct. The timing—Kivork stealing Joby's files on a Friday night, resigning that Sunday, and disclosing confidential deal terms to his new employer immediately thereafter—is not happenstance. Compl.

¶¶ 5, 36, 41-46, 59-62.

Further, the "plausibility standard permits allegations on information and belief" when "the facts are peculiarly within the possession and control of the defendants." *3D Sys., Inc. v. Wynne*, 2024 WL 1099677, at *4 (S.D. Cal. Mar. 12, 2024) (quoting *Auris Health, Inc. v. Noah Med. Corp.*, 2023 WL 7284156, at *4 (N.D. Cal. Nov. 3, 2023)). The exact arrangement between Kivork and Archer—including how much Archer is paying Kivork, whether there were any bonuses involved, and whether he was made any promises contingent upon diverting his loyalty to Archer—are fully within Defendants' possession and control. Joby's pleadings, all of them, are properly considered by this Court. *See* Compl. ¶¶ 83-85.

***Third***, Archer contends that Joby failed to plead any "facts suggesting Archer proximately caused Kivork to breach." Dkt. 24 at 18. Here too, Archer's argument depends on ignoring well-pled allegations. As stated above, the Complaint sufficiently alleges that Archer's intentional conduct—including (i) acquiring information subject to the PIIA by inducing Kivork's breach and (ii) the use of that information to approach and pitch the Developer by undercutting Joby—was the proximate cause of the Developer purporting to terminate its contract with Joby. Compl. ¶¶ 59-62. Joby is not required to divine the specific mechanics of Archer's inducement of its employee and that information is not in its control. Joby need only provide sufficient surrounding facts to warrant an inference of culpability. *3D Sys*, 2024 WL 1099677 at *4.

### iii. Joby Adequately Pleads Kivork's Breach of California Penal Code Section 502 (Count 4)

Section 502(c)(1) of the CDAFA creates a cause of action against anyone who "[k]nowingly accesses and without permission alters . . . or otherwise uses any data, computer, computer system, or computer network in order to . . . wrongfully control or obtain money, property, or data." Cal. Penal Code § 502(c)(1); *see also id.* § 502(e) (creating private right of action). The Complaint alleges a violation of CDAFA section 502(c)(1) because Joby's Google Drive is a network (Compl. ¶ 98), Kivork "altered" that network and its data by adding his personal email address as an "owner" to hundreds of files on that network (*id.* ¶ 103), and Kivork did so for the purpose of obtaining control over Joby's data—specifically to allow him to spy on (and thus obtain or control) Joby's

data even after he left the company. *Id.* ¶¶ 53, 102. Joby was harmed by Kivork's actions because it had to expend resources investigating his activity and resetting the security settings he changed. *Id.* ¶ 105. Joby also was harmed because Kivork's actions—changing security settings—may have had the effect of making Joby's information less secure overall. *Id.* Those facts allege a CDAFA violation; Kivork's three arguments to the contrary fail.

### (1)    Joby Identifies How Kivork Violated Section 502(c)

Kivork first argues Joby did not identify "which of the fourteen different subparts of Section 502(c) were purportedly violated." Dkt. 23 at 13-14. No such specificity is required. *See Facility Automation Sys., Inc. v. Heim*, 2007 WL 9776661, at *3 (S.D. Cal. Feb. 1, 2007) (denying motion to dismiss CDAFA claim that "fails to identify the specific subsection alleged to have been violated"). Indeed, Kivork cites a Fair Labor Standards Act case to support this argument, and *not* a case examining the CDAFA. Dkt. 23 at 13-14.

Moreover, courts have found CDAFA claims well-pled where the complaint "mirror[s] the language" found in the CDAFA subsection at issue. *E.g.*, *CTI III, LLC v. Devine*, 2022 WL 1693508, at *4 (E.D. Cal. May 26, 2022). Here, the Complaint mirrors the language of CDAFA Section 502(c)(1). *Compare* Compl. ¶ 104 ("Kivork altered both data (the files) and a computer system or network ([Google] Drive) in order to wrongfully control Joby information even after Kivork left Joby's employ.") *with* Cal. Penal Code § 502(c)(1) (violation requires "[k]nowingly accesses and without permission alters . . . or otherwise uses any data, computer, computer system, or computer network in order to . . . wrongfully control . . . data.").

### (2)    Joby Alleges Kivork's Mental State

Kivork next asserts that Joby fails to allege "Kivork *knew* that he was not permitted" to share Google Drive documents with his personal account. Dkt. 23. at 14 (emphasis in original). Kivork is attempting to conflate two, separate elements of the CDAFA—"knowingly accesses" and "without permission"—into a new, combined element.

Judicial Council of California ("CACI") Civil Jury Instruction 1812,[8] states that the CDAFA has five elements, of which the intent element is "knowingly accesses," which is *separate* from the "without permission" element. *See Galderma Lab'ys*, 2024 WL 2208096, at \*15 (whether defendant acted "knowingly" and whether defendant "acted without [plaintiff's] permission" were separate elements of CDAFA claim, citing CACI 1812); *see also Rodriguez v. Google LLC*, 2024 WL 1486139, at \*4 (N.D. Cal. Apr. 5, 2024) ("whether Google knowingly accessed the data" was a separate element from "[w]hether Google had 'permission' to collect the data"). Joby alleged that Kivork knowingly accessed Joby's network and data because he had to follow a multi-step process that could not have been performed by accident. Compl. ¶ 103. And Joby separately alleged (because it is a separate element) that Kivork did so without permission because he violated Joby's employment policies. *Id.* ¶¶ 52, 102. That is sufficient to state the "without permission" element. *See, e.g.*, *Erhart v. BofI Holding, Inc.*, 387 F. Supp. 3d 1046, 1058 (S.D. Cal. 2019) (party acted "without permission" where his actions "were not committed within the scope of his lawful employment" and "were not reasonably necessary to the performance of his work assignments").

Indeed, Kivork's argument was rejected by the very case he cites. In *People v. Hawkins*, 98 Cal. App. 4th 1428 (2002), the court stated it was *error* to instruct the jury that "a violation of section 502 . . . involves the 'specific intent to take, copy or make use of data without permission.'" *Id.* at 1439 n.3. But that is what Kivork argues here: Joby was required to allege a specific intent—that Kivork "knew" he lacked permission. Dkt. 23. at 14. Kivork's unsupported conflation of the two elements should be rejected.

### (3)    Joby Alleges Harm Caused by Kivork

Kivork separately argues that Joby "does not allege a cognizable injury." Dkt. 23 at 14-15. That argument ignores the statute and the Complaint alike. A CDAFA injury may include "any

---

[8]    "[I]t [is] appropriate to rely on CACI as persuasive authority, because CACI is 'designed to accurately reflect the law,' and because California courts rely on CACI instructions as reliable expressions of California law." *Long v. Playboy Enters. Int'l, Inc.*, 2012 WL 12869314, at \*3 n.1 (C.D. Cal. Mar. 7, 2012) (quoting *Christian Research Inst. v. Alnor*, 148 Cal. App. 4th 71, 82 (2007) and collecting California appellate cases relying on CACI instructions).

expenditure reasonably and necessarily incurred by the owner or lessee to verify that a computer system, computer network, computer program, or data was or was not altered, damage[d], or deleted by the [plaintiff's] access." *Biden v. Ziegler*, 737 F. Supp. 3d 958, 976 (C.D. Cal. 2024) (quoting Cal. Pen. Code § 502(e)(1)). Even *de minimis* harm is sufficient to state a claim. *E.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 2010 WL 3291750, at *4 (N.D. Cal. July 20, 2010) (refusing to dismiss CDAFA claim even though plaintiff's harm consisted of "a few clicks of a mouse . . . and ten keystrokes"); *C2 Educ. Sys., Inc. v. Lee*, 2019 WL 3220251, at *4 (N.D. Cal. July 17, 2019) (CDAFA "sets no threshold level of damage or loss . . . any amount of damage or loss may be sufficient") (citation and internal quotation marks omitted).

Here, Kivork altered the settings on Joby's Google Drive to make himself the "owner" of hundreds of files. Compl. ¶ 52. He did this without Joby's permission or knowledge. *Id.* Joby thus had to spend time and resources investigating Kivork's actions and re-setting his changes. *Id.* ¶ 105. That is sufficient. *See, e.g.*, *Mintz v. Mark Bartelstein & Assocs. Inc.*, 906 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) (plaintiff harmed under the CDAFA where he had to "spen[d] some time restoring his Gmail password and investigating who had hacked the Gmail account").

None of Kivork's cited authorities changes that conclusion. As noted above, *Mintz* granted summary judgment *in the plaintiff's favor* on a CDAFA claim. 906 F. Supp. 2d at 1032. Meanwhile, *Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) and *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236 (N.D. Cal. Mar. 26, 2013) rejected novel theories of harm that did not include investigating and resetting security settings. *See Doe I*, 741 F. Supp. 3d at 846 (rejecting theory of harm based on "lost storage, disk space, and performance"); *In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236 at *11 (rejecting theory of harm based on "diminished value of Plaintiffs'" personally identifiable information). And *Zarif v. Hwareh.com, Inc.*, 789 F. Supp. 3d 880 (S.D. Cal. 2025) alleged a theory of unjust enrichment—not resources expended. *Id.* at 900 ("The only theory of loss Plaintiff identifies is that 'Defendant was unjustly enriched.'").

### iv.   Joby Adequately Pleads Breach of Fiduciary and Loyalty Duties Against Kivork (Counts 5 and 7)

The Complaint plausibly alleges both that Kivork owed fiduciary and loyalty duties to Joby

and that he breached them.

***First,*** as U.S. State and Local Policy Lead, Kivork owed a fiduciary duty to Joby, including because he represented Joby's interests in negotiations with third parties, and exercised significant discretion in that capacity.  Compl. ¶¶ 29-30, 107-108.  A "fiduciary relationship" is "any relation existing between parties . . . wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party."  *Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003).  Thus, employees act as fiduciaries where they are empowered to exercise discretion when negotiating on behalf of their employers.  *Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal. App. 4th 803, 834 (2015) (employee's "relationship with plaintiffs was fiduciary in nature because he had voluntarily undertaken to act on their behalf and for their benefit in negotiating the rental agreements with defendants").

That is what Joby alleges here: Kivork's "core responsibilities included exercising discretion in representing Joby in discussions with local, state, and federal government officials," as well as in discussions with "high-level executive employees working for strategic business partners and other key stakeholders."  Compl. ¶¶ 29, 107.  Specifically, "[a]s part of his position at Joby, Kivork was involved in Joby's early negotiations with the Developer."  *Id.* ¶ 35.  "As one of Joby's representatives, Kivork was tasked with developing strategy for government affairs matters relevant to Joby's exclusive agreement with the Developer, including site permitting."  *Id.*  He has an obligation to "act with the utmost good faith" for Joby's benefit.  *Id.* ¶¶ 29-30, 107-108.

Even setting aside his role in negotiations, Joby separately granted Kivork the "responsibl[ity] for advising Joby's leadership on regulatory strategy, which is critical to a company's success in the eVTOL market."  *Id.* ¶¶ 29, 107.  Kivork offers no explanation for why his performance of this critical responsibility did not create a fiduciary relationship.

Kivork's cited authorities are not to the contrary, because none examined an employee empowered to exercise discretion when representing a company in negotiations with third parties.  *See* Dkt. 23 at 16-17; *Orthobiologics, LLC, et al. v. CTM Biomedical, LLC, et al*, 2021 WL 6104163, at *5 (C.D. Cal. Aug. 30, 2021) ("senior vice president" responsible for "maintaining existing sales and sales growth" was not a fiduciary without allegations showing discretionary authority); *Agfa*

*Corp. v. Richard*, 2018 WL 3078585, at *3 (C.D. Cal. June 1, 2018) (mere allegation that defendant had "access to confidential and proprietary information" did not show fiduciary relationship); *UCAR Tech. (USA) Inc. v. Yan Li*, 2017 WL 6405620, at *6 (N.D. Cal. Dec. 15, 2017) (naked allegation that employees "were given a high degree of autonomy and trust" did not show fiduciary relationship); *Enreach Tech., Inc. v. Embedded Internet Sols., Inc.*, 403 F. Supp. 2d 968, 976 (N.D. Cal. 2005) (at summary judgment, employee was not fiduciary where evidence showed that the employees he "managed" in fact reported to someone else).

***Second,*** Joby adequately alleges Kivork's breach of both his fiduciary duty and duty of loyalty. Contrary to Kivork's assertion, *see* Dkt. 23 at 16-17, the Complaint makes a series of allegations that support the reasonable inferences that "Kivork disclosed proprietary information to Archer" and that "he did so *while a Joby employee*." Dkt. 23 at 16-17 (emphasis in original); *see also Arthur J. Gallagher*, 498 F. Supp. 3d at 1175 (competing with employer while employed "is a clear-cut breach of fiduciary duty, regardless of whether Defendants used any trade secrets to do so"); *Henry Schein*, at *3 (similar). In addition to the allegations related to Kivork's improper taking of proprietary files before he left Joby for Archer—allegations that Kivork acknowledges (Compl. ¶¶ 41-46; Dkt. 23 at 16-17)—the Complaint contains a set of factual allegations that point squarely to Kivork acting against Joby's interests for Archer's benefit while he was still employed at Joby:

- Joby alleged that on "Friday evening," July 18, 2025, "Kivork secretly downloaded dozens of Joby files," including those with "details of the negotiation between Joby and the Developer" and "deal terms." Compl. ¶¶ 41-43.

- Two days later, on Sunday, July 20, 2025, "Kivork informed Joby that he . . . had already accepted an offer . . . at Archer." *Id.* ¶ 36.

- Two days later, "Kivork countersigned the Proprietary Information and Continuing Obligations letter . . . that reads: 'I confirm that I have not taken any documents, records, information, software, or any other property of [Joby].'" *Id.* ¶ 40.

- In response to Joby's demands that Kivork and Archer cease using and return Joby's proprietary information, Kivork provided contradictory responses, first claiming he did not have Joby's files, then offering to "delete" the files he supposedly did not have. *Id.* ¶ 63.

- When Kivork finally provided Joby with a list of files he intended to delete, "the list was obviously incomplete: at a minimum, it omitted Kivork's downloads from SharePoint." *Id.*

- Against this backdrop, and in the final days of Kivork's "cooling off period" at Joby, and while "Joby and the Developer were preparing to publicly announce" their partnership, the Developer's representatives "suddenly went silent." *Id.* ¶¶ 37, 59.

- Just two days after Kivork's employment with Joby formally ended, the Developer told Joby "that Archer had approached" and "offered a more lucrative deal." *Id.* ¶¶ 60-61.

- "Had Archer competed fairly, it would have had to spend months negotiating with the Developer to build an agreement from scratch, just as Joby did . . . By exploiting Kivork's theft, Archer was able to skip over the negotiations and unfairly guarantee that its offer would beat Joby's." *Id.* ¶ 61.

- To the Developer, "Archer's pitch indicated that Archer knew . . . the key terms from the Agreement." From those facts, the Developer concluded, "presumably" Kivork was the source of the leak. *Id.* ¶¶ 60-61.

The reasonable inference from Archer's unexpected and highly favorable offer—coming on the heels of Kivork's eleventh hour file theft while still a Joby employee—is that Kivork conveyed Joby's confidential information to Archer and breached his duties while still employed by Joby. Courts have found allegations detailing similar but even less suspicious circumstances sufficient to support pleading breach. *See, e.g.*, *iTalent Corp. v. Kotha*, 2025 WL 2689264, at *5 (N.D. Cal. Sept. 19, 2025) (finding "serious questions" sufficient to grant a preliminary injunction in connection with a breach of fiduciary duty claim where defendant "emailed himself confidential client contracts before resigning."). Joby has more than adequately alleged that Kivork breached his fiduciary duty and duty of loyalty.

> **v.    Joby Adequately Pleads Aiding and Abetting Breach of Fiduciary and Loyalty Duties Against Archer (Counts 6 and 8)**

Archer contends Joby's aiding-and-abetting claims fail for want of allegations supporting: (1) a fiduciary duty, (2) Archer's actual knowledge of Kivork's breach, (3) substantial assistance or encouragement, and (4) causation. *See* Dkt. 24 at 18-21. All of Archer's contentions fail.

**First,** as to the pleading of Kivork's fiduciary duty to Joby, Archer relies entirely on Kivork's arguments rebutted in Section IV.3.d above. *See* Dkt. 24 at 19. For those foregoing reasons, Joby has sufficiently pleaded the existence of a fiduciary relationship.

**Second,** Joby has alleged Archer's actual knowledge of a breach of the PIIA by Kivork. Here, Archer acknowledges it offers the same argument it made about inducement of the breach of the PIIA. *See* Dkt. 24 at 19 ("Here, as with its inducement claim . . . ."). But, as discussed fully in Section IV.3.b above (Count 2 against Archer), in addition to sufficient allegations based on information and belief, Joby has alleged Archer's awareness of "the standard practice of employee

confidentiality agreements in the eVTOL industry."  Compl. ¶ 79.

**Third,** Joby has offered sufficient allegations of Archer's substantial assistance and encouragement of Kivork's breach.  Again, Archer relies on the same argument as to this element that it made about inducement of breach of the PIIA itself.  *See* Dkt. 24 at 19-20.  As discussed fully in Section IV.3.b above, the Complaint includes factual allegations, including those based on information and belief, which provide the bases for the reasonable inference that Archer engaged in particular acts to aid and abet Kivork's breach of fiduciary duty.  Compl. ¶¶ 34, 49-54.

**Fourth,** Joby has satisfied the pleading standard for causation.  *See* Dkt. 24 at 20.  As discussed in Section IV.3.b above, the Complaint sufficiently alleges Archer's intentional conduct was the proximate cause of the Developer's subsequent notification that it was exercising "its right to terminate the Agreement."  Compl. ¶ 62.  These facts are sufficient to infer that Archer's conduct was a substantial factor in causing Joby harm.  *See 3D Sys*, 2024 WL 1099677 at *4.

### vi.    Joby Adequately Pleads Tortious Interference with Contract and Prospective Economic Advantage Against Archer (Counts 9 and 10)

#### (1)    Tortious Interference with Contract

Archer argues the allegations do not show a binding agreement, the Developer's breach, its intentional conduct, causation, or harm.  Dkt. 24 at 21-23.  Each is addressed in turn.

**First,** Archer argues that "Joby fails to adequately plead existence of a valid contract" because "preliminary agreements do not support tortious-interference-with-contract claims because they provide no legal assurance of continuing relations."  *Id.* at 21.  Archer misreads the Complaint. Joby alleges that it "and the Developer executed an agreement dated March 12, 2025 involving an exclusive strategic partnership (the 'Agreement')."  Compl. ¶ 24.  That Agreement imposed binding obligations on both parties: "The Agreement's exclusivity term provided that Joby and the Developer ***shall work together exclusively*** for 18 months" wherein "Developer shall not enter into any similar agreements or arrangements with" anyone else without consent.  *Id.* ¶ 25.

Further, Archer's assertion that "the Developer could lawfully disengage" misconstrues both the Agreement and California law.  Dkt. 24 at 21.  As stated in the Complaint, the Developer could only terminate the Agreement in the event of a breach—which the Developer claimed to have

occurred as a result of Kivork and Archer's conduct. Compl. ¶ 62; *see also id*. ¶¶ 59-61. And in California, inducing a breach of contract is "a wrong in and of itself" that does not require any further bad acts. *Quelimane Co. v. Stewart Title Guar. Co*., 19 Cal. 4th 26, 55-56 (1998). Thus, Kivork and Archer inducing the Developer to (i) cease moving forward with Joby, and (ii) declare its intention to terminate the Agreement is tortious conduct.

*Second*, Archer argues that "Joby fails sufficiently to plead that the Developer actually breached," because "Joby does not allege that Archer actually negotiated any deal with the Developer." Dkt. 24 at 22. This misses the point. Joby alleges that Archer's actions caused the Developer to declare its intention to terminate the Agreement due to a breach. Compl. ¶ 62. Under California law, that is sufficient. *E.g.*, *Signal Hill Serv., Inc. v. Macquarie Bank Ltd*., 2013 WL 12244056, at *35 (C.D. Cal. June 12, 2013) ("[I]nduc[ing] the termination of a contract that can be legally terminated can [still] support an interference with contractual relations claim.").

*Third*, Archer argues that Joby failed to "plead that Archer took any intentional acts to prevent performance . . .or to induce the Developer to breach" and that there is no showing of "any harm proximately caused by Archer." Dkt. 24 at 22-23 (cleaned up). The factual allegations detail Archer's intentional conduct and what it caused. For example, Archer "approached" the Developer with a pitch that "indicated that [it] knew . . . the key terms from the Agreement." Compl. ¶¶ 37, 59-61. By the same means Archer was aware of those key terms, it was aware of Joby's active exclusivity period—only six months into an 18-month term. The reasonable inference is that Archer knew its conduct was wrong when it approached and knew the likely result: the Developer's subsequent notification that it intended "to terminate the Agreement." *Id.* ¶ 62.

Archer's conduct amounts to a successful effort to "divert" and "disrupt" Joby's relationship with the Developer. *Beaulieu*, 2015 WL 13950821 at *6; *cf. Soil Retention Prods.*, 521 F. Supp. 3d 929, 962-64 (S.D. Cal. 2021) (dismissing tort claims due to missing allegations concerning, *i.e.*, "which entities, if any, it was negotiating with, what the terms were, when the contracts were being negotiated (*e.g.*, whether those contracts fell through before, during, or after Defendant's alleged [] acts)"). The resulting loss of the remaining duration of exclusive dealings—already years-in-progress—is redressable harm. Compl. ¶¶ 23-25.

***Fourth***, Archer's assertion that Joby fails to plead "recoverable damages" (Dkt. 24 at 23-24) misconstrues the law.  The remedy for Archer's interference may include "plaintiff's out-of-pocket costs" and "lost opportunity costs." *Rambus Inc. v. Hynix Semiconductor Inc.*, 629 F. Supp. 2d 979, 1016 (N.D. Cal. 2009) (citation omitted).  Joby's allegations thus properly identify the loss of "the exclusive opportunity negotiated between Joby and the Developer as well as expenses incurred in responding to Archer's wrongful conduct." *E.g.*, Compl. ¶¶ 159, 152.

**(2)     Tortious Interference with Prospective Economic Advantage**

For the same reasons as tortious interference with contract, discussed above, the Court should reject Archer's argument that "Joby fails sufficiently to plead 'any actual disruption of the relationship' between Joby and the Developer."  Dkt. 24 at 23-25.

Separately, to the extent Archer argues that Joby failed to plead an independently wrongful act, separate from the interference, that misconstrues the Complaint.  As discussed above, Joby has alleged that Archer aided and abetted Kivork's breach of his fiduciary duty and duty of loyalty to Joby; and those are independently wrongful acts sufficient to sustain a claim for intentional interference.  *See, e.g.*, *EcoHub, LLC v. Recology Inc.*, 2023 WL 6725632, at *13 (N.D. Cal. Oct. 11, 2023) (denying motion to dismiss intentional interference claim where plaintiff alleged aiding and abetting breach of fiduciary duty as independent wrongful act).

**vii.     Joby Adequately Pleads Inducement of Breach of Contract as to the Joby-Developer Agreement Against Kivork (Count 9)**

Kivork challenges the sufficiency of Joby's allegations as to (1) a valid contract, (2) breach or disruption, and (3) resulting damages.  Dkt. 23 at 18-20.  Each challenge fails.

As an initial matter, Joby expressly alleges that the Agreement is a legally binding contract.  Compl. ¶ 135.  That is all Joby needs to allege at the pleading stage.  *See Chaganti v. I2 Phone Intl Inc.*, 2005 WL 679664, at *4 (N.D. Cal. Mar. 11, 2005) (denying motion to dismiss and noting "[i]f defendants believe there was no valid contract, summary judgment or trial will provide an appropriate forum to make that determination.").

Additionally, because "[t]he Agreement's exclusivity term provided that Joby and the Developer *shall work together exclusively for 18 months to negotiate* a more comprehensive

partnership agreement" (Compl. ¶ 25 (emphasis added)), it follows that the exclusivity term was a "legal assurance of [business relations]" as to conduct during the 18-month period. *See Ixchel Pharma, LLC v. Biogen*, Inc., 9 Cal. 5th 1130, 1147 (2020). In other words, the exclusivity term itself is a binding agreement as to Joby's right to negotiate with the Developer, which agreement Kivork and Archer intentionally and wrongfully interfered with. Compl. ¶¶ 59-62, 135-143.[9]

Moreover, the Complaint squarely alleges how Kivork and Archer disrupted the Agreement by inducing the Developer to cease moving forward and declare an intention to terminate it. *Id.* ¶ 62 ("On August 21, 2025, the Developer purported to exercise its right to terminate the Agreement effective immediately, because the Developer claimed that the disclosure attributed to Kivork was a breach of the Agreement's confidentiality provision."); *see also id.* ¶¶ 59-62, 134-143. The Developer would not have purported to terminate the Agreement absent Kivork and Archer's intentional acts designed to induce breach or disruption. *Id.* ¶ 84.[10] Likewise, Kivork's contention that "[i]t is well-settled that an agreement to negotiate can be fully performed even if no binding contract results," Dkt. 23 at 19, does not address the Agreement granting *exclusive* rights to Joby, which rights the Developer later desired to terminate. Compl. ¶¶ 24-25, 62.

*Finally,* Joby's allegations of damage from Kivork and Archer's tortious interference with contract are more than sufficient at the pleading stage. The Agreement granted Joby "the exclusive right to design, build, and operate skydecks at certain of the Developer's properties" (*id.* ¶ 24) but Joby lost the opportunity to build and operate those skydecks on the timeframe and terms contemplated in the Agreement because of Kivork and Archer's interference. *Id.* ¶ 62. "Lost business opportunities are normally categorized as a form of reliance damages under California law." *Chodos v. W. Publ'g Co.*, 92 F. App'x 471, 473 n.3 (9th Cir. 2004). Joby has thus alleged cognizable contract damages, in the form of lost business opportunities resulting from interference.

---

[9] Kivork's argument focuses solely on breach despite, as he recognizes, disruption being a sufficient showing for a claim for tortious interference with contract. *See* Dkt. 23 at 18-20 (quoting *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626, 633 (C.D. Cal. 2021)).

[10] The Complaint alleges both that Archer's offer to the Developer was "more lucrative" for the Developer than Joby's offer and provides factual allegations as to the Developer's subsequent communications to Joby. Compl. ¶¶ 60-62. Kivork is incorrect when he asserts that Joby "fails to allege what this alleged offer from Archer consisted of, or how, if at all the Developer responded to it." Dkt. 23 at 19.

**viii.    Joby Adequately Pleads Tortious Interference with Prospective Economic Advantage Against Kivork (Count 10)**

Kivork contends Joby has failed to allege (1) an independently wrongful act and (2) that Joby had a reasonable probability of realizing the strategic partnership in the absence of Kivork and Archer's interference.  *See* Dkt. 23 at 21-22.  Kivork is wrong on both points.

*First,* Kivork's tortious interference with the Joby-Developer strategic partnership arises from his independently wrongful breach of his valid PIIA, as well as the breach of his fiduciary duty and duty of loyalty.  *See supra* §§ IV.3.a & d.  Kivork's cursory argument on this point, which relies entirely on earlier sections of his motion, effectively concedes that if any of those underlying claims survives dismissal, Joby has established an independently wrongful act sufficient to support this claim.  *See* Dkt. 23 at 21.

*Second,* contrary to Kivork's assertions, the Complaint identifies future economic benefits in the form of Joby's strategic partnership with the Developer.  By working with the Developer, Joby anticipated both "potential use of existing facilities" and "the possibility of developing vertiports at those facilities."  Compl. ¶¶ 6, 23.  Those benefits would have been "extremely valuable to any eVTOL company."  *Id.* ¶ 23.  Because of this value, Joby had secured 18 months to negotiate the details whereby Joby would have "the exclusive right to design, build, and operate skydecks at certain of the Developer's property."  *Id.* ¶ 24.  Continuing that strategic partnership would have been extremely lucrative for Joby.  Indeed, Kivork and Archer came to the same conclusion, deciding not only that the Developer's business was worth pursuing, but that pursuit was worth both engaging in various knowingly wrongful acts and offering a more favorable deal to the Developer.  *Id.* ¶¶ 60-61.

**ix.    Joby Adequately Pleads Archer's UCL Violations (Count 11)**

Archer's three, flawed arguments for dismissal of Joby's Section 17200 ("UCL") claim are easily disposed of.  *First*, Archer's argument that Joby did not plead "Archer harmed it" (Dkt. 24 at 25) ignores—among many other allegations—the Complaint's statement that Archer's interference with the Agreement caused Joby to lose a business opportunity to "to design, build, and operate skydecks at certain of the Developer's properties" on the timeline and according to the terms

originally contemplated in the Agreement. *E.g.*, Compl. ¶¶ 24, 159 (Joby's UCL claim is based on Archer's interference with the Joby's contract with the Developer).

**Second**, Archer argues that because Joby's "predicate claims" fail, the UCL claim fails too (Dkt. 24 at 25), but Joby's predicate claims do not fail for the reasons explained above.

**Third**, Archer cites two cases—*Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825 (C.D. Cal. May 3, 2018) and *Philips v. Ford Motor Co.*, 2015 WL 4111448 (N.D. Cal. July 7, 2015)—for the proposition that the UCL claim can be dismissed because Joby has an adequate remedy at law. Dkt. 24 at 25. As an initial matter, Joby may not have an adequate remedy at law if Archer is not enjoined from continuing to interfere with Joby's relationship with the Developer. *See, e.g.*, *California Grape Control Bd. v. California Produce Corp.*, 4 Cal. App. 2d 242, 244 (1935) (affirming injunction against continued interference with contract). But, more fundamentally, "[a]t the pleading stage, the Court is not in a position to determine whether an adequate remedy at law exists" (*JPMorgan Chase Bank, N.A. v. Paramount Residential Mortg. Grp., Inc.*, 2013 WL 12133894, at \*5 (C.D. Cal. May 30, 2013)), and thus Joby is permitted to seek remedies in the alternative—as numerous courts in this District have found when refusing to follow the cases Archer cites. *E.g.*, *Aberin v. Am. Honda Motor Co., Inc.,* 2018 WL 1473085, at \*9 (N.D. Cal. Mar. 26, 2018) (refusing to follow *Philips* and "join[ing] the many other courts" that "find[] no bar to the pursuit of alternative remedies at the pleadings stage") (collecting cases).

## V.    CONCLUSION

Defendants' motions to dismiss should be denied in their entirety.[11]

---

[11]    To the extent the Court is inclined to grant any part of either motion, Joby respectfully requests that any dismissal be granted with leave to amend. *Masimo Corp. v. Apple Inc.*, 2020 WL 6653652, at \*5 (C.D. Cal. Oct. 13, 2020) ("In the absence of an 'apparent or declared reason,' such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendments, prejudice to the opposing party, or futility of amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint.").

DATED: February 13, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Yury Kapgan*
    Yury Kapgan
    Alex Spiro
    Patrick Schmidt
    Sara Pollock
    Michael F. LaFond

*Attorneys for Plaintiff Joby Aero, Inc.*