UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOBY AERO, INC. and
JOBY AVIATION, INC.,

        Plaintiff and
        Counterclaim-Defendants,

     v.

ARCHER AVIATION INC. and
GEORGE KIVORK,

        Defendants and
        Counterclaim-Plaintiff

Case No.  25-cv-10703-SVK

**ORDER GRANTING IN PART AND
DENYING IN PART PARTIES'
MOTIONS TO DISMISS**

Re: Dkt. Nos. 23, 24, 44

Before the Court is a trade-secret and breach of contract dispute between Plaintiff and Counterclaim-Defendant Joby Aero, Inc. ("Joby" or "Joby Aero")[1] and Counterclaim-Defendant Joby Aviation, Inc. ("Joby Aviation") on the one hand and Defendants and Counterclaimants Archer Aviation, Inc. ("Archer") and employee Mr. George Kivork (together, "Defendants") on the other hand.  *See* Dkt. 13, Exhibit B ("Complaint");  Dkt. 38 at 1-67 ("Counterclaims").  Before the Court are three motions to dismiss:  Mr. Kivork's Motion to Dismiss the claims as insufficiently pleaded and preempted by the California Uniform Trade Secrets Act ("CUTSA"), (Dkt. 23 (the "Kivork MTD"));  Archer's Motion to Dismiss the claims against it on similar grounds, (Dkt. 24 ("Archer's MTD"));  and Joby's joint Motion to Dismiss the Counterclaims as contradicted by the exhibits they rely upon, failing to plead with particularity under Rule 9(b) and

---

[1] In their briefs and the complaint, the Parties refer to Joby Aero simply as "Joby," and the counterclaims refer to Joby Aero and Joby Aviation as "Joby," collectively.  *See* Dkt. 44 at 24-25. For clarity and to match the pleadings and papers, the Court will refer to Joby Aero, individually *or* together with Joby Aviation, as "Joby," except where required to distinguish Joby Aero from Joby Aviation (*e.g.*, when the Court discusses Joby Aero and Joby Aviation's alternative request to dismiss Joby Aviation from this case as not being subject to alter-ego liability).

United States District Court
Northern District of California

otherwise insufficiently pleaded under Rule 12(b)(6), (Dkt. 44 ("Joby's MTD").

All Parties have consented to magistrate judge jurisdiction. Dkts. 15-17, 46. The Court determines that these matters may be resolved without oral argument. Civil L.R. 7-1(b). Having considered the Parties' submissions, the relevant law and the record in this action, the Court **GRANTS IN PART** and **DENIES IN PART** each pending motion.

## I.    BACKGROUND

On a motion to dismiss, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). For a motion to dismiss counterclaims, however, the counterclaims serve as the "operative complaint": "[T]he court must accept all factual allegations in the counterclaims as true, the allegations in the original complaint are not entitled to the presumption of truth, and the court does not consider the complaint or answer." *Allbirds, Inc. v. Giesswein Walkwaren AG*, No. 19-cv-05638-BLF, 2020 WL 6826487, at *3 (N.D. Cal. June 4, 2020) (cleaned up) (internal citations omitted). Thus, for context, the Court begins with basic facts about the Parties that are common to the Complaint and Counterclaims. Thereafter, the Court sets forth the facts relevant to Defendants' motions to dismiss, drawn from Joby's Complaint (taken as true); then, the Court sets forth the facts relevant to Joby's MTD, drawn from Archer's Counterclaims (taken as true).

Joby is a Delaware corporation with its principal place of business in Santa Cruz, California. Compl., ¶ 12; Counterclaims, ¶¶ 32-33. Joby Aviation is "the ultimate parent company" of a group of companies, including wholly-owned subsidiaries Joby Aero and Joby Metal Shenzhen Co., Ltd. ("Joby China"). Counterclaims, ¶ 34. Archer Aviation is a Delaware corporation with its principal place of business in San Jose, California. Compl., ¶ 14; Counterclaims, ¶ 31. Joby and Archer are competitors in the "burgeoning," electric vertical takeoff and landing ("eVTOL") aviation industry, which is developing the "next generation of aviation technology:" "aircraft powered entirely by electricity that would take off vertically like a helicopter, but much quieter, and transition to flying like a traditional airplane." Compl., ¶¶ 2, 4; Counterclaims, ¶¶ 3, 9. Mr. Kivork is a former employee of Joby Aero who was recruited to

United States District Court
Northern District of California

United States District Court
Northern District of California

Archer in the summer of 2025.  Compl., ¶ 1; *see also* Dkt. 38 at 68, ¶ 1.

### A.    The Facts Alleged and Claims Brought by Joby Aero

On July 20, 2025, Mr. Kivork informed Joby that he was "leaving for a position at Archer."  Complaint, ¶¶ 5, 36.  For nearly four years prior to his resignation, Mr. Kivork was Joby's "U.S. State and Local Policy Lead."  *Id.*, ¶ 28. His "core responsibilities included exercising discretion in representing Joby in discussions with local, state and federal government officials, as well as with high-level executive employees working for strategic business partners and other key stakeholders," and he was "responsible for advising Joby's leadership on regulatory strategy."  *Id.*, ¶ 29.  Thus, Mr. Kivork had "access to highly sensitive and valuable Joby information" and in 2021 signed an "Employment Agreement" and a "Proprietary Information and Inventions Agreement ('PIIA')" with Joby Aero.  *Id.*, ¶¶ 30-31.  His last working day was July 22, 2025, although he remained employed by Joby Aero until August 3, 2025.  *Id.*, ¶¶ 5, 37.  During his exit interview on July 22, 2025, Mr. Kivork was also provided with and signed a "Proprietary Information and Continuing Obligations" letter.  *Id.*, ¶¶ 38-39.

On August 5, 2025, "Joby received a troubling communication from one of its strategic partners, a major real estate developer (the 'Developer')."  *Id.*, ¶ 6.  The Developer—who had executed a binding and exclusive agreement with Joby—informed Joby that it had been approached by Archer with a deal proposal.  *Id.*  Especially "troubling" was that the Developer stated that Archer knew "about the existence of Joby's confidential strategic partnership with the Developer" and also "specific[] and highly confidential[] terms of the Developer's agreement with Joby."  *Id.*  "Archer's proposed deal was specifically calibrated to undercut Joby's agreement with the Developer."  *Id.*; *see also id.*, ¶¶ 59-62.

This led Joby to hire "an outside vendor to conduct a forensic investigation of Kivork's now-deactivated Joby accounts and Joby-issued laptop."  *Id.*, ¶ 7.  The investigation found that on July 18, 2025, two days before announcing his resignation, Mr. Kivork "downloaded dozens of files from Joby's systems" and "sent additional files to one of his personal email accounts."  *Id.*, ¶¶ 7, 41-54. Specifically, Joby alleges that Mr. Kivork "secretly downloaded dozens of Joby's files from Joby's electronic Microsoft SharePoint ("SharePoint") repository," (*id.*, ¶ 41), including

3

various files related to Joby's "strategic partnership with the Developer," including a file titled "20250116 – [Developer] - Strategic Partnership Counter Proposal," which contained details of the negotiation between Joby and the Developer, as well as the deal terms. *Id.*, ¶¶ 41-44. Joby also alleges that Mr. Kivork "exfiltrated" "highly confidential technical specifications, analysis, and know-how developed by Joby" related to its eVTOL strategy and technology. *Id.*, ¶ 45. Joby alleges that some of this exfiltration was based on SharePoint downloads, while Mr. Kivork emailed other files to his personal email account and changed the security settings for yet other files, *e.g.*, by adding "his own personal email account as an 'owner' to hundreds of files stored on" Joby's Google Drive repository. *Id.*, ¶¶ 46-53.

On August 21, 2025, the Developer "purported to exercise its right" to terminate the agreement with Joby, citing Mr. Kivork's disclosure as a breach of the agreement's confidentiality provision. *Id.*, ¶ 62. Joby alleges the "Developer reiterated that 'the leak of information about our discussions and [Agreement]' was 'by Joby's employee.'" *Id.*

Based on these allegations, Joby brings various claims against Mr. Kivork. Joby alleges that he breached the PIIA (Count I), misappropriated its trade secrets under the Defend Trade Secrets Act ("DTSA") (Count III), violated California's Comprehensive Data Access and Fraud Act (Cal. Penal Code § 502, the "CDAFA") (Count IV), breached his fiduciary duty and duty of loyalty to Joby which he owed as a senior employee (its U.S. State and Local Policy Lead) (Counts V and VII) and tortiously interfered with Joby's existing contract with the Developer as well as Joby's prospective economic relationship with the Developer (Counts IX-X). *Id.*, ¶¶ 67-77, 88-113, 120-25, 134-53.

Joby also alleges that, because Mr. Kivork had already been planning on joining Archer, he committed misappropriation while intending to "use[] information in those files to advance his career at Archer," thereby benefitting "both himself and Archer." *Id.*, ¶ 54. Based on information and belief grounded on information provided by the Developer, Joby alleges that Archer also misappropriated its trade secrets. *Id.*, ¶¶ 59-61. For example, Joby alleges that "Archer was only able to offer a more lucrative deal because Archer, acting through Kivork, gained illicit knowledge of the Agreement's terms …[.] By exploiting Kivork's theft, Archer was able to skip over the

4

negotiations and unfairly guarantee that its offer would beat Joby's." *Id.*, ¶ 61.

Joby also alleges that, after these events, it demanded "that Kivork and Archer cease using and return Joby's proprietary information." *Id.*, ¶ 63. Joby alleges that Archer in particular "stonewalled" its efforts, "refused to provide Joby with any information about its purported [internal] investigation" and did not "provide[] any explanation as to how it learned of the existence and terms of the Agreement." *Id.*, 64.

Based on these allegations, Joby also brings various claims against Archer. Joby alleges that Archer induced Mr. Kivork's breach of contract (Count II), misappropriated its trade secrets under the DTSA (Count III), aided and abetted Mr. Kivork's breach of fiduciary duty and loyalty (Counts VI and VIII), tortiously interfered with Joby's existing contract with the Developer as well as Joby's prospective economic relationship with the Developer (Counts IX-X) and violated California's unfair competition law ("UCL") by engaging in unlawful and unfair business practices. *Id.*, ¶¶ 78-96, 114-19, 126-61.

**B.    The Facts Alleged and Claims Brought by Archer Aviation**

"Archer and Joby are the two leading U.S.-based developers of eVTOL technology," and fierce competitors. Counterclaims, ¶ 9. They are "racing to launch commercial air-taxi services and win programs of record with the U.S. military and its allies to purchase these advanced aircraft for military-use cases." *Id.* The gravamen of Archer's complaint against Joby is that, despite "[w]rapping itself in the American flag and marketing its aircraft as 'Committed to American Innovation'" to win U.S. miliary contracts and position itself favorably in the U.S. market, Joby has deep ties to China and the Chinese government. *Id.*, ¶¶ 1-2. Archer thus appears to allege that Joby has "defraud[ed] the U.S. government, the public, and its main competitor" by falsely presenting itself as "domestically-rooted [and] American-made … while covertly relying on its Chinese manufacturing subsidiary, sourcing critical components from Chinese suppliers— including its own subsidiary—that have apparent Chinese Communist Party ('CCP') ties, and receiving through its Chinese subsidiary technology-development grants directly from the Chinese government." *Id.*, ¶¶ 1-2.

In support of its Counterclaims, Archer broadly sets forth context about the eVTOL

industry and about itself and Joby, including Joby's ties to the U.S. and Chinese governments, to explain how Joby's alleged fraud has occurred and the harm it has allegedly caused. *See, generally*, *id.*, ¶¶ 3-30, 44-177. The allegations are broad in scope and focus generally on Joby's concealment of its Chinese ties and include random instances of alleged misrepresentations or omissions generally categorized as follows:

- Removing references to Joby China from its public webpages and marketing materials, (*id.*, ¶¶ 28, 153-54);
- Removing references to Joby China from its SEC and other U.S.-government reporting, (*id.*, ¶¶ 28, 104, 106, 125, 136, 153-54);
- Intentionally misclassifying imports from China to hide the extent of Joby's reliance on Chinese imports and to "avoid[] higher tariff duties," (*id.*, ¶¶ 12-13, 110-15, 126); and
- Affirmatively "cultivat[ing] a misleading 'Made in the USA' image," through affirmative statements about its U.S. ties and vertical integration (*id.*, ¶¶ 17-18, 23, 28, 104, 107-09, 150, 153-54).

Archer alleges that, in taking the above actions, Joby Aviation "is the parent and alter ego" of Joby Aero thus either "participated in, directed, authorized, ratified, and benefited from the conduct alleged herein" or, in the alternative, was "operated as a single enterprise with respect to the challenged conduct." *Id.*, ¶ 35. Archer alleges that Joby Aviation and Joby Aero, although not alter egos of Joby China, have "acted in concert" with Joby China. *Id.*, ¶ 36.

Based on this course of allegedly fraudulent conduct, Archer sets forth two counterclaims against both Joby entities: (1) violation of California's UCL statute under all three prongs (unlawful, unfair and fraudulent) and (2) false advertising under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(A)(1)(B)). *Id.*, ¶¶ 178-206.

////

////

////

////

6

### C.    Procedural History

Joby filed its suit in California state court on November 18, 2025.  Dkt. 1-1, Ex. B. Defendants removed the case to this district on December 16, 2025 and filed the notice of removal with the state court on December 19, 2025.  Dkts. 1, 13.  On January 23, 2026, Defendants each filed a motion to dismiss.  Dkts. 23-24.  Based on the significant overlap in these motions and upon the stipulation of the Parties, the Court permitted Joby to file a consolidated opposition and permitted Defendants to file a consolidated reply.  Dkt. 28.  Defendants' motions were fully briefed on February 27, 2026.  Dkts. 29, 35.

Shortly thereafter, on March 9, 2026, Archer answered the Complaint and asserted its Counterclaims.  Dkt. 38.  Joby's MTD was filed on April 6, 2026.  Dkt. 44.  Joby's MTD was fully briefed on April 27, 2026, (Dkts. 62-63), and the matters are now ripe for resolution.

## II.    JOBY'S REQUESTS FOR JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Along with the pending motions and oppositions, Joby has also filed two requests for judicial notice.  Dkts. 29-1, 44-16.  The Court discusses each request below.

### A.    Joby's First Request for Judicial Notice is Denied

In the first request, filed in support of Joby's opposition to Defendants' motions to dismiss, Joby requests that the Court take judicial notice of a news article containing a quote from Archer's Chief Legal Officer, as well as two posts from November 2025 authored by Archer's CEO.  Dkt. 29-1.  Defendants object to judicial notice of these documents and the statements contained therein.  Dkt. 36.  Without deciding the merits of the Parties' arguments, the Court notes that it "is not required to take judicial notice of judicially noticeable information."  *In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-cv-06391-BLF, 2020 WL 7664461, at *4 (N.D. Cal. Dec. 24, 2020) (citing *Carson v. Bank of Am. NA*, 611 Fed. App'x 379, 380 n.1 (9th Cir. 2015) (declining to take judicial notice of the requested documents "because the documents are not relevant or necessary to the determination of this case.").  The Court does not consider the materials submitted in Joby's first request for judicial notice and therefore **DENIES** the request.

////

**B.    Joby's Second Request for Judicial Notice and Request for Incorporation by Reference is Granted in Part and Denied in Part**

Joby's second request asks the Court to find that certain materials are incorporated by reference into Archer's Counterclaims or, in the alternative, to take judicial notice of these materials.  Dkt. 44-16.  Archer opposes the request.  Dkt. 62.  Joby objects to Archer's opposition as improper.  Dkt. 63-1.[2]  The Court is persuaded that incorporation by reference and judicial notice are appropriate, but only in part.

"Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute[,]' [*i.e.*,] if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'"  *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)).  Judicial notice, however, is limited at the pleading stage:  A court may not assume that the truth of disputed contents of documents subject to judicial notice.  *Yelp Inc. v. Google LLC*, No. 24-cv-06101-SVK, 2025 WL 1168900, at *2 (N.D. Cal. Apr. 22, 2025) (citing *Khoja*, 899 F.3d at 1001;  *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 834 (N.D. Cal. 2011)).

> Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.

*Khoja*, 899 F.3d at 1002.  However, a document is incorporated by reference in the complaint only "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *Id.* at 1003.

Joby asks this Court to find 13 documents to be incorporated by reference into the

---

[2] Joby objects to Archer's opposition, citing Civil Local Rule 7-3(b) as requiring any "evidentiary and procedural objections" to be contained within Archer's opposition memorandum, rather than broken out separately.  Dkt. 63-1.  While Archer is correct, courts may excuse strict compliance with this rule.  *See, e.g., Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.*, No. 19-cv-03532-DMR, 2019 WL 6716292, at *2 (N.D. Cal. Dec. 10, 2019)).  Here, the Court declines to strike Archer's objections because it largely rejects Archer's arguments, and the objection does not change the outcome of the Court's decision.

United States District Court
Northern District of California

Counterclaims or else subject to judicial notice. These documents consist of two of Joby Aero's Form 10-K Statements filed with the SEC (LaFond Exhibits A-B), four webpages reflecting information or statements made public by Joby Aero, (LaFond Exhibits C-F), results from the United States Harmonized Tarriff Schedule search engine operated by the International Trade Commission showing "the specific codes used by Joby Aero, Inc., its submission of CBP Form 7501s" (LaFond Ex. G), a blank CBP Form 7501 (LaFond Ex. H), four specific CBP Form 7501s submitted by Joby (Bonar Exs. A-D) and Archer's filing in the ITC case *In the Matter of Certain Electric Aircraft, Power Systems for Electric Aircraft, and Components Thereof*, ITC Docket No. 3895 (Mar. 26, 2026).

Archer argues judicial notice and incorporation by reference are both improper. Dkt. 62. As to judicial notice, Archer argues that Joby's requests go too far in asking the Court to consider the truth of the contents of, *e.g.*, Joby's CBP Form 7501s, which it disputes. *Id.* at 4-5. As to incorporation by reference, Archer argues that the documents do not form the basis of any of its claims and are not "extensively" referred to. *Id.* at 5-6. Archer also argues that considering Joby's documents would necessarily require the Court to convert Joby's MTD into one for summary judgment. *Id.* at 6-7.

The Court begins by addressing Archer's last and broadest argument. This argument is not well-taken. The very authority cited by Archer holds to the contrary: "[J]udicial notice and incorporation-by-reference do have roles to play at the pleading stage. … Accordingly, a court may take judicial notice of matters of public record **without** converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998-99 (9th Cir. 2018) (emphasis added); *contra* Dkt. 62 at 6.

As to the merits of the Parties' arguments over Joby's requested materials, with regard to the majority of the materials proffered by Joby, the Court does not rely on them and so declines to take judicial notice of or incorporate them by reference in the Counterclaims. *See In Re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2020 WL 7664461, at *4. This applies to LaFond Exhibits A-B (10-K Statements), LaFond Exhibits C-F (Press Releases and Articles on Joby's Website, LaFond Exhibit G (Search Results of ICT Harmonized Tariff Schedule, LaFond

9

Exhibit H (Blank CBP Form 7501), LaFond Exhibit I (Archer's filing in the ITC case *In the Matter of Certain Electric Aircraft, Power Systems for Electric Aircraft, and Components Thereof*, ITC Docket No. 3895 (Mar. 26, 2026)).  With regard to Bonar Exhibits A-D (CBP Form 7501s, alleged to be at issue by Joby), the Court declines to find these documents incorporated by reference into the Counterclaims.  Specifically, although Joby claims that these are the four CBP Form 7501s corresponding to the four shipments that form the basis of one of Archer's UCL counterclaims, (*see* Counterclaims, ¶¶ 179.a)-d)), the forms appear to relate to different goods than alleged by Archer, raising doubts as to Joby's assertion.  At the pleading stage, such doubts must be resolved in Archer's favor.  The Court will, however, take judicial notice of these exhibits as government documents to the extent their contents are not subject to reasonable dispute, and of the fact that Joby has proffered them.

In sum, the Court **GRANTS IN PART** and **DENIES IN PART** Joby's requests for judicial notice and incorporation by reference in support of Joby's MTD.  The Court finds Bonar Exhibits A-D to be properly subject to judicial notice, while the Court declines to consider LaFond Exhibits A-I.

## III.     LEGAL STANDARD

### A.     Rule 12(b)(6) – Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted.  In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061. (9th Cir. 2008).  Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031.  However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion to dismiss, the must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility"

United States District Court
Northern District of California

standard requires the claimant to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, a motion to dismiss on Rule 12(b)(6) grounds "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).  Thus, a court may properly dismiss claims that, taking all well-pleaded factual allegations as true, fail as a matter of law.  *See id.* at 1093-97.

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015).  However, as noted above, "[f]or the purpose of a motion to dismiss counterclaims, the operative 'complaint' in the preceding judicial standard is the counterclaims." *Allbirds, Inc.*, 2020 WL 6826487, at *3.  "Therefore, the Court accepts as true the facts alleged in the counterclaims and gives no presumption of truth to the allegations in the [] complaint, unless the counterclaimant 'endorses or relies' on those allegations." *PharmacyChecker.com LLC v. LegitScript LLC*, No. 22-cv-252-SI, 2026 WL 207250, at *1 (D. Or. Jan. 27, 2026) (cleaned up) (quoting *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989)).  Otherwise, "the court does not consider the complaint or answer." *Allbirds, Inc.*, 2020 WL 6826487, at *3.

### B.    Rule 9(b) – Heightened Pleading Standard for Fraud Claims

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Under Rule 9(b)'s heightened pleading requirements, plaintiffs whose claims sound in fraud must plead "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted).  Rule 9(b) applies not only to specific acts of fraud but to any claim based on "a unified fraudulent course of conduct," such that a claim is "grounded in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Apart from the heighted requirements as to the substance of the pleading, a motion to dismiss "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*  In both cases, "insufficiently pled averments … are

11

disregarded[.]" *Id.* "As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice." *Id.* at 1108.  Thus, "leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Id.* (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 701 (9th Cir.1988)).

## IV.   DISCUSSION

### A.   Defendants' Motions to Dismiss the Complaint Are Granted in Part and Denied in Part

The Kivork MTD and Archer's MTD  include many common or closely related arguments, which Joby opposes in consolidated form and as to which the Defendants submitted a joint reply. Dkts. 23-24, 28, 35.  These arguments are:  (1) Defendants' arguments that Joby's DTSA claim is insufficient for failing to plead any trade secret with sufficient particularity, (Dkt. 23 at 12-13; Dkt. 24 at 14-18);  (2) Mr. Kivork's argument that Joby fails to sufficiently plead misappropriation by him and Archer's closely related argument that Joby's allegations of Archer's misappropriation are insufficient "information and belief" allegations, (Dkt. 23 at 13-14;  Dkt. 24 at 18-21);  and (3) Defendants' arguments that Joby's state-law claims (Counts IV-V, VII and IX-X as to Mr. Kivork; Counts II, VI-VIII and IX-X as to Archer) are preempted by CUTSA, (Dkt. 23 at 16-20;  Dkt. 24 at 21-23).  Mr. Kivork brings separate 12(b)(6) challenges to the specific state-law claims against him, (Dkt. 23 at 14-16, 20-29), and Archer brings separate 12(b)(6) challenges to the specific state-law claims against it, (Dkt. 24 at 24-32).

The Court addresses Defendants' intertwined DTSA arguments first because, as further explained in the Court's preemption analysis, trade secret misappropriation is at the heart of Joby's Complaint.  The Court next addresses Mr. Kivork's independent challenge to Joby's breach-of-contract claim and the status of the related inducement claim against Archer.  Then, the Court turns to Defendants' preemption arguments.  Finally, after finding that most claims are preempted by CUTSA, the Court addresses Defendants' challenges to the remaining claims.

////

////

////

12

**1. Joby Adequately Pleads a DTSA Claim as to the Developer-Agreement Trade Secrets but Not its Other Trade Secret Categories**

**a. Joby Identifies the Developer-Agreement Trade Secrets with Sufficient Particularity at the Pleading Stage**

Among the elements that a trade-secret plaintiff must plead are that "the claimed trade secret has sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." *See Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025) (emphasis omitted) (cleaned up). Defendants argue that Joby has failed to do so, although it relies on both CUTSA and DTSA case law. Dkt. 23 at 12-13; Dkt. 24 at 14-18. Joby, relying on *Quintara*, argues that Defendants rely on "outdated law" that conflated CUTSA requirements with those under the DTSA. Dkt. 29 at 15. Joby submits that *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020), as confirmed by *Quintara*, "governs trade secret identification under the DTSA" and that Joby's Complaint meets that standard. Dkt. 29 at 15-19. Neither Party has the standard quite right[3] but, for the following reasons, the Court agrees that Joby has sufficiently pleaded some of its trade secrets.

"[T]rade secret cases present … a 'delicate problem.'" *Quintara*, 149 F.4th at 1085. "How can plaintiffs plead, discover, and prove whether a trade secret has been misappropriated without giving away the trade secret? On the other hand, how can defendants respond to discovery without giving away their own trade secrets?" *Id.* "Courts have struck a balance in addressing this 'delicate problem' by holding that at the pleading stage, the DTSA does not require a plaintiff

---

[3] Archer is correct that *Quintara* was not a case directly about pleading DTSA claims. Dkt. 35 at 9; *see, e.g.*, *Mattson Technology, Inc. v. Applied Materials, Inc.*, No. 23-cv-06071-SVK, 2026 WL 1303361, at *4 (N.D. Cal. May 12, 2026) ("*Quintara* does not alter the fundamental pleading requirements under Rule 8," which requires that "the complaint to give the defendant fair notice of what the … claim is and the grounds upon which it rests." (internal quotation marks and citations omitted)). However, Joby is correct that *Quintara* is not irrelevant: As this Court has recognized, *Quintara* distinguished between the DTSA's "sufficient particularity" requirement and the CUTSA's "reasonable particularity rule," and made clear that sufficient particularity is a question of fact. *See Tesla, Inc. v. Proception, Inc.*, No. 25-cv-04963-SVK, 2025 WL 3187569, at *5 (N.D. Cal. Nov. 14, 2025). Thus, while it remains the case that plaintiffs must plead their trade secrets with sufficient particularity under Rules 8 and 12, authority that speaks to the "reasonable particularity" requirement under CUTSA is not as instructive as it was pre-*Quintara*.

to 'spell out the details' of every conceivable trade secret." *Mattson Technology, Inc. v. Applied Materials, Inc.*, No. 23-cv-06071-SVK, 2026 WL 1303361, at \*3 (N.D. Cal. May 12, 2026). Yet, at the same time, "[p]laintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial." *InteliClear*, 978 F.3d at 658. Moreover, to survive a Rule 12(b)(6) challenge,[4] Joby's "burden is only to identify at least **one** trade secret with sufficient particularity to create a triable issue." *Id.* at 659 (emphasis added).

The Parties identify several categories of trade secrets at issue in Joby's Complaint: (i) commercial and regulatory strategy materials, (ii) technical information related to eVTOL aircraft and operations, (iii) infrastructure strategies (for "vertiports and airport access") and (iv) materials related to Joby's agreement with the Developer. Dkts. 24 at 15-18; Dkt. 29 at 16-19; Dkt. 35 at 9-11. The Court begins by addressing the fourth category, materials related to Joby's agreement with the Developer, before briefly addressing the remaining categories.

With regard to the fourth category, Defendants' arguments are unpersuasive. Joby does not use "catchall phrases" or rely on mere categorical identifications for these trade secrets. *Contra* Dkt. 24 at 17-18. Rather, Joby identifies two specific trade secrets—the confidential "details of the negotiation between Joby and the Developer" and "the deal terms" ultimately settled upon—as well as a specific file, "20250116 – [Developer] - Strategic Partnership Counter Proposal" containing these trade secrets. *See* Complaint, ¶¶ 41-43. It is true that Joby also alleges further trade secrets by category, *i.e.*, "other files related directly to Joby's strategic partnership with the Developer," (*id.*, ¶ 44), but such a pleading form is squarely protected by *InteliClear*: "[P]articularly where no discovery whatsoever had occurred, it is not fatal to [Plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later. [Plaintiff's] burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." 978 F.3d at 659. With regard to the Developer agreement, Joby has done so because it has identified specific files (*i.e.*, the files, including the named file above, allegedly

_____

[4] However, under Rule 8, Joby must give Defendants fair notice of the trade secret claims asserted against them. *See Mattson*, 2026 WL 1303361, at \*4. The Court may deny discovery into trade secrets that are not fairly within the scope of the Complaint. *Id.* at \*4-6.

14

downloaded by Mr. Kivork on July 18, 2025 from Joby's SharePoint) containing this category of trade secrets. *Tesla, Inc. v. Proception, Inc.*, No. 25-cv-04963-SVK, 2025 WL 3187569, at *6 (N.D. Cal. Nov. 14, 2025) ("Such categories of information become sufficiently particularized for purposes of stating a trade secret claim where the complaint alleges that these categories of information are contained within specific documents." (cleaned up) (internal citation omitted)).[5]

The bulk of Joby's opposition on the "sufficient particularity" issue is focused on the Developer agreement and related materials. Dkt. 29 at 17-19. Joby devotes only one paragraph to defending its identification of the other three categories of alleged trade secrets (commercial/regulatory strategy, technical eVTOL information and infrastructure strategies). *Id.* at 19 (citing ¶ 45). In doing so, Joby argues that its pleading is in line with that permitted in *Neutron Holdings, Inc. v. Hertz Corp.*, 2023 WL 3919465, at *4 (N.D. Cal. June 8, 2023). The Court agrees with Defendants, however, that *Neutron Holdings* is distinguishable on this point. Specifically, in *Neutron Holdings*, the plaintiff identified a specific algorithm at issue and also tethered its identification of "business and product and technical development strategy" to "slides from Lime's December 2022 C-Suite business health meetings," *i.e.*, specific slides. *Id.* Joby cannot rest merely on "catchall" phrases such as "commercial strategy development, regulatory strategies, and infrastructure strategy" or "technical information about Joby's aircraft and operations." *See* Compl., ¶¶ 1, 45. Thus, Joby's identification of trade secrets in categories (i) – (iii) are insufficient even at the pleading stage.

Accordingly, because Joby has identified one group of trade secrets—the "Developer" trade secrets—the Court will not dismiss Joby's DTSA claim on this ground. *See InteliClear*, 978

---

[5] Defendants' ancillary argument that Joby has not identified a specific developer is also misplaced. *See* Dkt. 24 at 17; Dkt. 35 at 10. The details of Joby's Complaint make clear that it has identified a specific developer; that Developer's identity is simply redacted. *See* Compl., ¶¶ 6, 41-44, 59-62. Defendants have not raised a challenge that the identity should not be redacted, although Joby's doing so without court order or an administrative motion violates Civil L.R. 79-5. However, given the scope of the redactions implemented by Joby and the readily apparent competitive harm that would result from disclosure, the Court finds compelling reasons to maintain the identity of the Developer under seal and will excuse Joby's non-compliance in this instance as harmless. *See Viavi v. PTOT*, No. 21-cv-06655-EJD (SVK), Dkt. 24 (finding compelling reasons to seal the identity of a plaintiff's third-party business partner). The Court addresses the sealing of Developer's identity going forward in Section V, below. *See, infra*, § V.

F.3d at 659.  However, because the Court grants Defendants' motions to dismiss part of the DTSA claim on other grounds, the Court simultaneously **grants leave to amend** as to trade secret categories (i) – (iii), as explained further below.  *See, infra* at 18-19.

### b.    Joby Adequately Pleads Misappropriation of the Developer-Agreement Trade Secrets by Mr. Kivork

Mr. Kivork argues that, additionally, Joby has failed to plead that he misappropriated any trade secrets.  Dkt. 23 at 13-14.  Under the DTSA, "misappropriation" means "(A) acquisition of a trade secret ... by improper means; or (B) disclosure or use of [the] trade secret...." 18 U.S.C. § 1839(5).  As to Mr. Kivork, the Parties' appear in agreement that there is no claim of improper acquisition.  *Compare* Dkt. 23 at 13 (arguing that all of Joby's allegations of acquisition occurred during Mr. Kivork's employment, when he was permitted to access the files at issue) *with* Dkt. 29 at 19 (acknowledging that "Kivork acquired Joby's trade secrets through his work at Joby" but arguing that he "disclosed Joby's trade secrets to Archer[.]").  Accordingly, the Court focuses on the disclosure and use prongs as to Mr. Kivork.

Here, too, the Court agrees with Joby.  Joby alleged specific facts from which it is reasonable to infer that Mr. Kivork disclosed the Developer-agreement trade secrets to Archer: Mr. Kivork had access to the specific information, *e.g.*, the deal terms, at issue, he left his employment with Joby on August 3, 2025 and, two days later, the Developer told Joby that Archer had learned of the deal terms.  Compl., ¶¶ 5-6, 37, 41-43, 60.  At the pleading stage, reasonable inferences must be drawn in a plaintiff's favor, and thus the Court must infer that, based on the allegations in the Complaint, Mr. Kivork disclosed the Developer-agreement trade secrets to Archer.  *See, e.g.*, *Autodesk, Inc. v. ZWCAD Software Co.*, No. 5:14-cv-01409-EJD, 2015 WL 2265479, at *6 (N.D. Cal. May 13, 2015) ("there is no requirement that Autodesk plead exactly how Defendants improperly obtained or used the alleged trade secret" if there are adequate allegations to support an inference of wrongful acquisition, disclosure or use);  *Leavitt Great W. Ins. Servs., LLC v. Theriault*, No. 25-cv-24-H-DLC, 2026 WL 926183, at *9 (D. Mont. Apr. 6, 2026) (the "timing and pattern" of a departing employee's conduct may support a plausible inference if intended disclosure and use where the "employee compiles trade secret information …

United States District Court
Northern District of California

'days before departure'" and "departs to a directly competing firm.").

Mr. Kivork's authorities are not to the contrary. *See Soil Retention Prods., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 966 (S.D. Cal. 2021) (cited for the unremarkable proposition that "mere possession of trade secrets is not enough," (*see* Dkt. 23 at 13)); *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848 (2012) (dealing with the standard for a motion for attorney's fees and costs for a bad-faith claim of misappropriation, which examines whether a trade secret claim was brought or maintained in bad faith and concluding that there was "no evidence in the record supporting the claim that defendant misappropriated SASCO's trade secrets."). Accordingly, Joby has sufficiently alleged that Mr. Kivork improperly disclosed the Developer-agreement trade secrets to Archer.

c.      **Joby Adequately Pleads Misappropriation of the Developer-Agreement Trade Secrets by Archer**

As to Archer's misappropriation, Archer divides its arguments into the same two parts, categories (i) – (iii) vs. category (iv), as described above. Dkt. 24 at 18-21. With regard to the fourth category, the Developer-agreement trade secrets, applying the same reasoning as explained above, it is reasonable to infer that Archer improperly acquired (from Mr. Kivork) these trade secrets and then used them to compete with Joby as to the Developer. *See, supa*, § IV.A.1.b. (citing Compl., ¶¶ 5-6, 37, 41-43, 60). Archer's only challenge on this issue not already raised by Mr. Kivork is that Joby's allegations here are improper "information and belief" allegations. *See* Dkt. 24 at 20-21. Archer's argument is unavailing: "Pleading on information and belief is permitted but can be used to defend against a motion to dismiss only 'where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Franey v. Advanced Micro Devices, Inc.*, No. 25-cv-06693-SVK, 2025 WL 3281420, at *4 (N.D. Cal. Nov. 25, 2025) (quoting, *inter alia, Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). The Court finds that both prongs are satisfied here. First, Joby has included specific factual details making culpability plausible (*e.g.*, Joby's relationship with the Developer and the specific things the Developer told Joby). Second, the specific facts of how Archer learned of the details of the deal,

if indeed it did learn of them, would be in Archer's and possibly Mr. Kivork's possession.

Accordingly, the Court draws the complementary inference—that Archer improperly acquired and used the Developer-agreement trade secrets—at the pleading stage. *See, supa*, § IV.A.1.b. (citing Compl., ¶¶ 5-6, 37, 41-43, 60).

As to the other three categories of trade secrets, however, Archer's arguments are more persuasive, and Joby's allegations are lacking. Specifically, the Court agrees with Archer that although Joby alleges that Mr. Kivork took or had access to various "commercial strategy development, regulatory strategies, and infrastructure strategy" and "technical information about Joby's aircraft and operations," Joby does not allege any facts from which an inference could be drawn that Mr. Kivork disclosed, or that Archer thus acquired or used, such trade secrets. *See, e.g.*, *Confluent, Inc. v. Slower, LLC*, No. 24-CV-04447-SVK, 2026 WL 673582, at *12 (N.D. Cal. Mar. 10, 2026) (noting, as here, that the Court must draw reasonable inferences in the claimant's favor and citing *Autodesk*, 2015 WL 2265479, at *6, as the Court does above, but distinguishing *Autodesk* because the claimant "includes no details from which the Court could draw inferences as to how Confluent made use of the [alleged trade secret]."). Accordingly, to the extent Joby claims misappropriation based on trade secret categories (i) – (iii), it has failed to plausibly allege that these trade secrets were misappropriated.

* * *

In sum, Joby's DTSA claim is adequately pleaded as to the Developer-agreement trade secrets, which are alleged with sufficient particularity and for which misappropriation is sufficiently pleaded. This is sufficient as to the "sufficient particularity" requirement for Joby's claim as a whole. *See InteliClear*, 978 F.3d at 659. However, courts in this Circuit can and do dismiss claims as to some trade secrets and not others where warranted. *E.g.*, *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1047-49, 1057 (S.D. Cal. 2017) (permitting trade secrets based on the related to plaintiff's "compact hose concept and designs" to proceed but dismissing misappropriation claim "to the extent it concerns YRD's alleged marketing ideas, sales information, and business strategy."). Accordingly, because Joby has failed to allege misappropriation as to the other three categories of trade secrets ((i) commercial and regulatory

18

strategy materials, (ii) technical information related to eVTOL aircraft and operations and (iii) infrastructure strategies), the Court **GRANTS IN PART** Defendants' motions and **DISMISSES with leave to amend** Count III of the Complaint insofar as it is based on misappropriation of these three categories of trade secrets.

### 2. Joby's Breach of Contract Claim Against Mr. Kivork May Proceed Only as to the PIIA's "Item Return" Provision

Section 16600(a) of the California Business & Professions Code provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600(a). This provision "shall be read broadly in accordance with *Edwards v. Arthur Andersen LLP* (2008) 44 Cal. 4th 937," which explained that "section 16600 represents a strong public policy of the state." *Id.* § 16600(b)(1); *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 949 (2008). My. Kivork argues that the PIIA, on which Joby's breach of contract claim is based, is such an unlawful restraint of trade. Dkt. 23 at 14-16.

Joby's primary argument in opposition attempts to avoid application of Section 16600(a) by arguing that the PIIA is not a formal noncompete agreement. Dkt. 29 at 31. This argument is unpersuasive; indeed, Joby concedes that California courts of appeals have applied Section 16600(a) to confidentiality provisions in the trade secret context. *See id.* (admitting that *Brown v. TGS Mgmt. Co.*, LLC, 57 Cal. App. 5th 303 (2020) "involved a confidentiality provision" but arguing that it was distinguishable for other reasons). Thus, the question, on which the Parties appear to agree, is whether the specific provisions of the PIIA "operate as a de facto noncompete provision." *Brown*, 57 Cal. App. 5th at 319. The Court may "determine the [PIIA's] validity under section 16600 as a matter of law" and, if it "determine[s] that the clauses [are] *facially void* under section 16600, [is] not required to undertake any further analysis." *Id.* at 315 (emphasis in original). For the following reasons, the Court determines that the confidentiality provision is an unenforceable de facto noncompete clause, but the Item Return provision may not be.

////

////

19

United States District Court
Northern District of California

### a.      The Confidentiality Provision of the PIIA Is Unenforceable

The PIIA is attached to the Complaint as Exhibit A thereto (and thus as Exhibit B-A to the Notice at Dkt. 13).  Dkt. 13.  It includes several sections not at issue on Mr. Kivork's motion.  PIIA, §§ 1-3, 5-7, 9-10.  The disputed provision, upon which Joby's claim is based, is Section 4 (and Section 8 to the extent it supplies the length of the term for Section 4).  They provide:

> 4. I agree that all Inventions and all other business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees) I develop, learn or obtain during the term of my employment that relate to Company or the business or demonstrably anticipated business of Company or that are received by or for Company in confidence, constitute "Proprietary Information." I will hold in confidence and not disclose or, except within the scope of my employment, use any Proprietary Information. ….

> 8. I agree that my obligations under paragraphs 2, 3, 4 and 5 of this Agreement shall continue in effect after termination or expiration of my employment[.]…

PIIA, §§ 4, 8.  The Court finds that the confidentiality provision of the PIIA is not meaningfully distinguishable from the one at issue in *Brown*:  By its plain terms, it prohibits Mr. Kivork from using any "Proprietary Information," and defines such information as, *inter alia*, "all other business, technical and financial information … [he] develop[s], learn[s] or obtain[s] during the term of [his] employment that relate[s] to … the business or demonstrably anticipated business of [Joby]…."  PIIA, § 4.  In other words, it is not limited to information related to Joby but includes all information Mr. Kivork learned during his time at Joby that relates to Joby's business, *i.e.*, the eVTOL industry.  *Id.*  It is active in perpetuity according to Section 8 and even purports to bind Mr. Kivork's heirs.  Thus, the provision "operate[s] as a de facto noncompete provision":  It bars Mr. Kivork from doing any work in the eVTOL industry in perpetuity.  *Brown*, 57 Cal. App. 5th at 316-17, 319 (invalidating provision that protected "information, in whatever form, used or usable in, or originated, developed or acquired for use in, or about or relating to, the Business," wherein "the Business" did not mean the company but rather "the securities industry.").

Joby offers two authorities that distinguish *Brown*, but neither is helpful to Joby here.  The first distinguishes *Brown* because, "[u]nlike the confidentiality provision in *Brown*, … the Confidentiality Provision here is tailored to personally identifiable information or confidential

20

information 'created by or on behalf of' or 'belonging to' [the company]." *World Fin. Grp. Ins. Agency v. Olson*, No. 24-cv-00480-EJD, 2024 WL 730356, at *9 (N.D. Cal. Feb. 22, 2024). By contrast, the PIIA reaches all business and technical information Mr. Kivork *learns*, not merely develops or creates, *during the term of employment* at Joby. PIIA, § 4. This is in stark contrast to *World Financial Group* and highlights that the PIIA appears to reach even independent learning in the eVTOL industry that Mr. Kivork undertook on his own time. The second case, *Galderma Lab'ys, L.P. v. Tisckos*, is also narrower than the provisions of the PIIA because it reaches only "business information," not technical information, "disclosed or made available to Employee by the Company … which was developed by the Company at its expense." No. 21-cv-05522-FLA (SKX), 2024 WL 2208096, at *1, *7 (C.D. Cal. Mar. 29, 2024). Neither case supports Joby and, indeed, each case highlights the extreme breadth of the confidentiality provision of the PIIA.

Accordingly, the Court finds that the confidentiality provision of the PIIA is void *ab initio* and unenforceable pursuant to Section 16600(a).

### b. Mr. Kivork Has Not Met His Burden for Dismissal of Joby's Contract Claim Based on the "Item Return" Provision

In its opposition, Joby also raises an ancillary argument that "Kivork's failure to return Joby's information is a separate breach that Kivork does not even address." Dkt. 29 at 31-32 (*Genasys Inc. v. Vector Acoustics, LLC*, No. 22-cv-152 TWR (BLM), 2023 WL 4414222, at *9 (S.D. Cal. July 7, 2023). Section 4 of the PIIA provides, in relevant part:

> … Upon termination of my employment, I will promptly return to Company all items containing or embodying Proprietary Information (including all copies), except that I may keep my personal copies of (i) my compensation records, (ii) materials distributed to shareholders generally and (iii) this Agreement. …

PIIA, § 4. Joby argues that no court has struck down such a "surrender of materials" provision and that, to the extent such a provision does not "improperly squelch[] competition or halt[] employee mobility," it is enforceable. Dkt. 29 at 31-32 (citing *Genasys*, 2023 WL 4414222, at *9). Defendants do not address Joby's argument on reply, nor does Mr. Kivork address the "Item Return" provision in the Kivork MTD. Dkt. 23 at 14-16.35 at 18-19. Thus, Mr. Kivork has waived any counterargument at this juncture and has failed to meet his burden to dismiss this part

21

of Joby's breach of contract claim.[6]

* * *

Accordingly, the Kivork MTD is **GRANTED IN PART** and **DENIED IN PART** as to Joby's breach of contract claim (Count I).  Count I is **DISMISSED with prejudice** to the extent it is based on the PIIA's confidentiality clause but may proceed to the extent it is based on the narrower "Item Return" provision.

### 3.    Joby's Related Inducement Claim Against Archer Fails

> Inducement of a breach of contract "protects against intentional acts designed to produce an actual breach and requires that a plaintiff prove: (1) he had a valid and existing contract [with a third party]; (2) ... defendant had knowledge of the contract and intended to induce its breach; (3) the contract was in fact breached by the contracting party; (4) the breach was caused by ... defendant's unjustified or wrongful conduct; and (5) ... damage[s] [were suffered as a result."

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 985 (N.D. Cal. 2024). Archer argues that Joby has failed to plead facts sufficient to state a claim for inducement.  The Court agrees, in part.

As explained above, Joby's breach of contract claim against Mr. Kivork rests on two parts: various breaches of confidentiality and breach of the Item Return provision.  *See* Compl., ¶¶ 69-70, 75-76.  Joby alleges complementary inducement by Archer.  *Id.*, ¶¶ 81, 85.  Joby's claim against Archer cannot proceed to the extent it is based on inducement of breach of the confidentiality provision of the PIIA, because that provision is not valid.  *See, supra*, § IV.A.2. Joby's claim against Archer could proceed for inducement of breach of the Item Return provision, but here the Court agrees with Archer that the claim is insufficiently pleaded as to Archer.  Joby's Complaint is devoid of any factual allegations that Archer committed any intentional acts designed to induce Mr. Kivork to fail to return items containing or embodying the Proprietary Information. *Contrast, e.g.*, Compl., ¶¶ 63 (detailing Mr. Kivork's alleged refusal to cooperate and return files) *with* ¶ 64 (merely stating that "Archer stonewalled" and "refused to provide Joby with any information about its purported investigation.").  Accordingly, the Court **GRANTS** Archer's

---

[6] The Court does not decide the ultimate issue of enforceability of the Item Return provision at this juncture.

United States District Court
Northern District of California

MTD Count II **with leave to amend**.

Because the Court grants leave to amend as to this claim, it also briefly addresses the other deficiencies raised by Archer. First, the Court agrees with Archer that Joby's allegations of Archer's knowledge of the PIIA are insufficient. Specifically, there are insufficient allegations to infer that Archer had specific knowledge of the PIIA and, contrary to Joby's arguments, "generalized awareness" of confidentiality agreements is insufficient. *See* Dkt. 35 at 19 (citing *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015); *Quinonez v. United States*, 667 F. Supp. 3d 1015, 1032 (N.D. Cal. 2023)). Second, however, the Court agrees with Joby that proximate cause is sufficiently pleaded: Joby has pleaded facts from which it is reasonable to infer that the alleged inducement (if it occurred) was a proximate cause of "the Developer purporting to terminate its contract with Joby." Dkt. 29 at 33 (citing Compl., ¶¶ 59-62).

#### 4. Joby's Remaining State Law Claims Are Dismissed as Preempted by CUTSA with Limited Leave to Amend

Next, the Court addresses Defendants' arguments that Joby's remaining state-law claims (Counts IV-V, VII and IX-X as to Mr. Kivork; Counts VI-VIII and IX-X as to Archer) are preempted by CUTSA.[7] "Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017). Specifically, with the exception of contractual claims, CUTSA preempts state law claims that "are based on the same nucleus of facts as the misappropriation of trade secrets claim for relief."[8] *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1006 (N.D. Cal. 2018),

---

[7] As Joby points out, despite saying at times that "all of Joby's state-law claims" are preempted, Defendants do not bring a preemption challenge to Joby's breach of contract claim (Count I). *See* Dkt. 23 at 16-20; Dkt. 24 at 21-23. The Court also does not address Joby's inducement claim against Archer (Count II) at this juncture because, to the extent it survives, it may only be based on the breach of the Item Return provision, not the acquisition, disclosure, or use of trade secrets. *See, supra*, § IV.A.3.

[8] This case arises in the unusual posture where Joby has pleaded only a DTSA claim and no CUTSA claim. *See* Complaint. However, Joby does not argue that this prevents the application of CUTSA preemption, and the Court thus assumes for the purposes of this case that CUTSA preemption may be applied. *But see Confluent, Inc. v. Slower, LLC*, No. 24-CV-04447-SVK, 2026 WL 673582, at *14 (N.D. Cal. Mar. 10, 2026) (granting counterclaimant leave to amend to proceed on a breach-of-contract or CUTSA theory, "but not both.").

*aff'd,* 815 F. App'x 117 (9th Cir. 2020) (internal citations and quotation marks omitted).

The Court addresses the application of CUTSA preemption to the causes of action in related groups, below.

### a.    Count IV:  California Penal Code § 502

The Comprehensive Computer Data Access and Fraud Act ("CDAFA") "was enacted to expand the degree of protection to individuals, businesses and government agencies from 'tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems.'" *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 715 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014).  Joby argues that preemption is inappropriate both because Count IV is based on a criminal statutory provision and because, substantively, Joby's Section 502 claim is distinct from its trade secret misappropriation allegations.  Dkt. 29 at 26-27.

There is a split of authority in the district courts, including in this District, as to whether CUTSA may preempt claims based on Section 502.  As some courts have explained, "it is illogical to think that the California legislature enacted a computer crime provision and deliberately included a civil remedy that would in turn be preempted by [CUTSA]." *Regents of the Univ. of Cal. v. Aisen*, No. 15-cv-1766-BEN (BLM), 2016 WL 4097072, at *8 (S.D. Cal. Apr. 18, 2016); *see also Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1074 (N.D. Cal. 2018); *JEB Grp., Inc. v. San Jose III*, No. 19-cv-04230-CJC (AGRx), 2020 WL 2790012, at *4 (C.D. Cal. Mar. 31, 2020).  Yet, as other Courts have explained, Section 502 grants "civil *remedies*" despite being a criminal statute and thus is not "outside of CUSTA's preemptive reach." *Movement Mortg., LLC v. Scrima*, No. 23-cv-02904-DJC (CSK), 2024 WL 3011202, at *5 (E.D. Cal. June 11, 2024) (emphasis in original);  *see also Henry Schein, Inc. v. Cook*, No. 16-cv-03166-JST, 2017 WL 783617, at *5 (N.D. Cal. Mar. 1, 2017);  *United Auto Credit Corp. v. Stewart*, No. 25-CV-00065-RGK, 2025 WL 2428466, at *4 (C.D. Cal. June 23, 2025).  The Court agrees with the latter category of cases and notes that in at least some of the cases in the former category, the plaintiff had "disavow[ed] any claim of misappropriation," making preemption inappropriate in any case. *See Regents of the Univ. of California v. Aisen*, 2016 WL 4097072, at *8.

On the substance of the CDAFA claim, Mr. Kivork's allegedly wrongful conduct is that he

altered Joby's Google Drive settings for various files so that he could continue to access these files after his employment.  Compl., ¶¶ 46-53, 98, 102-04.  Here, the Court finds this is based on the same nucleus of facts as misappropriation of trade secrets, because as Joby alleges, it was done "in order to wrongfully control Joby information even after Kivork left Joby's employ."  *Id.*, ¶ 104.  In opposition, Joby argues that Mr. Kivork's conduct would be wrongful even if he did not take, disclose, or use the information he gained access to and even if the information did not consist of trade secrets.  *See* Dkt. 29 at 26.  Neither argument is persuasive.  As to the former, even if "taking, use or disclosure" are stripped from the claim, as Joby argues they should be, "spying" on Joby via unauthorized access to its Google Drive remains fundamentally misappropriation-based conduct because it would implicate Mr. Kivork's improper acquisition of such information.  *Contra* Dkt. 29 at 26.  As to the latter, courts—including this Court—have held that "CUTSA serves to preempt all claims premised on the wrongful taking and use of confidential business and proprietary information, <u>even if that information does not meet the statutory definition of a trade secret</u>."  *Sylabs, Inc. v. Rose*, No. 23-cv-00849-SVK, 2024 WL 2059716, at *9 (N.D. Cal. May 8, 2024) (emphasis in original) (citations omitted).

Accordingly, the Kivork MTD is **GRANTED** as to Joby's Section 502 claim.

### b.    Counts V-VIII:  Alleged Breach of Loyalty and Fiduciary Duty and Aiding and Abetting Such Breaches

Joby does not argue that CUTSA is inapplicable to claims for breach of loyalty and breach of one's fiduciary duty.  *See* Dkt. 29 at 27-28.  The Parties dispute, however, whether the breaches alleged here arise from the same conduct as the alleged trade secret misappropriation claim.  *Compare id. with* Dkt. 23 at 18-19, Dkt. 24 at 23 and Dkt. 35 at 16.  Joby points out that, in some cases, a breach of loyalty or a fiduciary duty may be "based on conduct that does not implicate trade secret misappropriation.  For example, … [c]ompeting with [Plaintiff] on behalf of a competitor while still employed with [Plaintiff] is a clear-cut breach of fiduciary duty, regardless of whether Defendants used any trade secrets to do so."  *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1175 (N.D. Cal. 2020).  Joby argues that Mr. Kivork "breached his duties by competing with Joby while employed and altering security settings on Joby's documents."

Dkt. 29 at 28.

However, neither argument defeats CUTSA preemption. The latter charge is the subject of Joby's Section 502 claim and is preempted for the reasons stated in subsection a., above. *See, supra*, § IV.A.4.a. The former charge, while theoretically cognizable, is not supported by Joby's allegations; rather, Joby alleges that Mr. Kivork's "competition" with Joby, *i.e.*, the undermining of the Developer agreement, occurred via his disclosure of information to Archer after his departure. *See* Compl., ¶¶ 5-6, 41-43, 59-61. This is exactly the same conduct underlying Joby's claim of misappropriation. Accordingly, Counts V and VII (against Mr. Kivork) are preempted.

Counts VI and VIII for aiding and abetting Mr. Kivork in his breaches (against Archer) necessarily rely on the same underlying conduct by Mr. Kivork. Joby does not argue to the contrary or address these claims separately. Accordingly, they are preempted by CUTSA to the same extent as Counts V and VII against Mr. Kivork.

Thus, Defendants' motions to dismiss Counts V-VIII are **GRANTED**.

c.       **Counts IX-X:  Tortious Interference with the Developer Agreement and with Prospective Economic Advantage**

As with Joby's breach-of-duty claims, above, Joby argues that tortious interference claims based on allegations "separate and apart from the misappropriation of confidential and proprietary information and trade secrets" escape preemption and that its claims at bar are so pleaded. Dkt. 29 at 29-30 (citing, *inter alia*, *Beaulieu Grp., LLC v. Bates*, 2015 WL 13950821, at *6 (C.D. Cal. Dec. 3, 2015)). Again, the Court agrees in principle but disagrees that Joby has alleged such claims here. Rather, misappropriation of the Developer-agreement trade secrets is at the heart of Joby's tortious interference claims. Joby alleges that Mr. Kivork disclosed its information, including the deal terms, to Archer, that Archer used this information to make a superior offer to the Developer, that "Archer was *only* able to" do so because of the information it gained and "the Developer purported to exercise its right to terminate the Agreement effective immediately[] *because*" of Mr. Kivork's alleged disclosure." Compl., ¶¶ 5-6, 41-43, 59-62. The Court agrees with Archer that, as pleaded, Joby's tortious interference claims necessarily rely on the same conduct as its misappropriation claim. *See W. Air Charter, Inc. v. Schembari*, No. 17-cv-00420-

26

AB (KSX), 2017 WL 10638759, at *3 (C.D. Cal. Oct. 6, 2017) (tortious interference claim for inducing customers to terminate their agreements with the plaintiff preempted where the misuse of confidential information supplied the only "affirmative act" and was thus necessary to the tortious interference claim).

Accordingly, Defendants' motions to dismiss Counts IX-X are **GRANTED**.

### d.    Count XI:    Alleged Violation of the UCL

UCL claims are preempted by CUTSA to the extent they are grounded in misappropriation claims but not to the extent they are grounded in independent misconduct. *See, e.g.*, *Movement Mortg.*, No. 23-cv-02904-DJC (CSK), 2024 WL 3011202, at *5. Here, Joby's UCL claim is derivative of its other claims; it does not allege, for example, any independent fraud (which would require pleading with particularity. *See* Compl., ¶¶ 154-61. However, the Court has dismissed Counts IV-X on preemption grounds and dismissed the only other non-trade-secret claim against Archer, Count II, with leave to amend.

Accordingly, the Court **GRANTS** Archer's MTD Count XI as preempted to the extent it is based on Count III (the DTSA claim) or Counts IV-X. *See Movement Mortg.*, 2024 WL 3011202, at *5 ("The UCL claim is derivative of the other claims already analyzed by the Court, and so it too is preempted."). This claim is **DISMISSED with leave to amend** to the extent it is based on alleged inducement of alleged breach of the Item Return provision. *See, supra*, § IV.A.3.

* * *

In sum, Counts IV-XI are **DISMISSED**. CUTSA preemption is a legal conclusion that is not always susceptible to being cured amendment. *See Sylabs*, 2024 WL 2059716, at *10. However, because it depends on the underlying misconduct alleged and whether that misconduct is the same as the alleged trade secret claim, leave to amend may be granted. *E.g.*, *Sylabs, Inc. v. Rose*, 2023 WL 8813517, at *10 (N.D. Cal. Dec. 19, 2023). Further still, a plaintiff cannot "amend pleadings to directly contradict an earlier assertion made in the same proceeding." *Flickinger v. Castillo*, No. 24-cv-02915-NW (SVK), 2025 WL 3255026, at *12 (N.D. Cal. Aug. 27, 2025) (quoting *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014)). Accordingly, leave to amend is appropriate as to only some of Joby's

United States District Court
Northern District of California

state-law claims.  Counts IV and XI are dismissed **with leave to amend**, while Counts V-X are dismissed **without leave to amend**.

### 5.     Defendants' Remaining Challenges Are Either Moot or Better Resolved After any Amendment by Joby

The Court has dismissed the following claims without leave to amend:  Count I to the extent it relies on the confidentiality provision (but not Item Return provision) of the PIIA; Counts V-X as preempted by CUTSA and Count XI to the extent it is based on any of the above. *See, supra*, §§ IV.A.2-4.  Accordingly, Defendants' remaining Rule 12(b)(6) challenges to these claims are **DENIED as moot.**  As to the remainder of Count I, *i.e.*, the Item Return provision, Mr. Kivork does not raise, and therefore has waived, any challenge at this stage.  *See* Dkt. 23 at 2-3.

As to Counts II, IV and the remainder of Count XI, the Court has dismissed these claims with leave to amend as indicated above.  *See, supra*, §§ IV.A.3, 4.a., 4.d.  The Court has already ruled on Archer's separate Rule 12(b)(6) challenges to Count II, (*see, supra*, § IV.A.3.), and the Court now **DENIES without prejudice** Mr. Kivork's separate Rule 12(b)(6) challenge to Count IV and Archer's separate Rule 12(b)(6) challenge to Count XI because these claims, if they may be properly brought at all, must be based on conduct distinct from Joby's trade secret misappropriation allegations and, thus, are likely to be significantly changed.  Defendants may re-raise their challenges to these claims to the extent they are not moot in a subsequent response.

### B.     Joby's Motion to Dismiss the Counterclaims

Next, the Court turns to Joby's MTD.  Joby raises the following challenges:  (1) Archer fails to state a claim as to "scrubbed" SEC filings and "misrepresentations" because the relevant SEC documents and websites contradict the Counterclaims, (Dkt. 44 at 14-17);  (2) Archer fails to state a claim as to tariff misrepresentations because the alleged misrepresentations are contradicted by the relevant tariff documents, (*id.* at 17-18);  (3) Archer's tariff-misrepresentation allegations fail under Rule 9(b), (*id.* at 18-20);  (4) all of Archer's claims fail because they fail to identify anyone who was misled under Rule 9(b), (*id.* at 20-22);  (5) failure to plead various elements required by the Lanham Act, (*id.* at 22-26);  and (6) failure to plead various elements required by the UCL, (*id.* at 26-32).  Separately, Joby argues that Joby Aviation must be dismissed because

28

Archer's alter-ego/veil-piercing allegations are insufficient.  *Id.* at 32-33.

As evident from the Parties' arguments and the background recounted by the Court, Archer's presentation of its Counterclaims is muddled:  At times, Archer suggests that it states several distinct Lanham Act and UCL claims, while at others it suggests that there are just two claims (one Lanham Act, one UCL) all tying to Joby's "large-scale practice of consistently minimizing and obscuring its ties to China … and [that] the customs documentation is part of a broader body of allegations and information." *See, e.g.*, Dkt. 61 at 10, 14.  As described in the Background section above, the Court reads the Counterclaims as alleging broad factual context supporting Archer's overall accusation of Joby's "large-scale" deceptive/fraudulent practices, with a subset of random instances of alleged misrepresentations or omissions." *See, supra*, § I.B. Archer's Counterclaims are an example of shotgun pleadings that, while sometimes permissible under Rule 10, "becomes a shortcut by counsel that violates Rule 8" when they "make it difficult, if not impossible, for the opposing party to formulate a response." *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026).

As the Ninth Circuit has made clear, "district courts do not have to accept such shotgun pleadings." *Id.* at 1289.  "Whether the parties have raised the issue or not, the district court has 'inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b).'" *Id.*  The Court is not required to do so, however;  whether to dismiss a shotgun pleading is a matter of "judgment on the part of the district courts[.]" *Id.* at 1289-90. Here, considering Archer's Counterclaims and the arguments of the Parties, it appears that Archer attempts to state somewhere between two and five Lanham Act and UCL claims, but the bases of these claims and their contours are not apparent.  *See, e.g.*, Counterclaims, ¶¶ 28, 153-54, 193-98 (possibly stating a Lanham Act claim for false advertising to the public);  *id.*, ¶¶ 183-85 (possibly stating a UCL claim for the same);  *id.*, ¶¶ 28, 104, 106, 125, 136, 153-54, 197, 201-04 (possibly stating a Lanham Act claim for false advertising to the U.S. Government);  *id.*, ¶¶ 28, 104, 106, 125, 136, 153-54, 184-185 (possibly stating a UCL claim for the same);  *id.*, ¶¶ 12-13, 110-15, 126, 179-83 (clearly stating a distinct UCL claim for unfair competition via alleged

misclassification of tariff imports).  Accordingly, the Court can neither discern the alleged claims nor resolve the majority of the Parties' arguments, therefore Archer's Counterclaims are **DISMISSED with leave to amend** for Archer to "make [itself] understood" by setting forth its claims clearly.  *See Gibson*, 165 F.4th 1265, 1290 (9th Cir. 2026).

Notwithstanding the vague bases and contours of the Counterclaims, the Court can discern that they are deficient in several respects.  Archer must address the deficiencies identified below, to the extent it is able to do so, in any forthcoming amendment.

First, and perhaps foremost, Archer's Counterclaims must comply with the heightened pleading requirements of Rule 9(b).  "[W]here a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable." *Intuit Inc. v. HRB Tax Grp., Inc.*, 2024 WL 4093918, at *4 (N.D. Cal. Sept. 5, 2024). Although the Ninth Circuit has not squarely decided this question, (*see id.*), it is in accord with the Ninth Circuit's guidance, which this Court adopts, that Rule 9(b) applies not only to specific acts of fraud but to any claim based on "a unified fraudulent course of conduct" such that a claim is "grounded in fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). Archer's Counterclaims appear to be grounded in an alleged "unified fraudulent course of conduct."  *See, e.g.*, Counterclaims, ¶¶ 1-2 (alleging that "This action arises from a calculated, years-long scheme by Joby … to defraud the U.S. government, the public, and its main competitor" by falsely presenting itself as "domestically-rooted [and] American-made … while covertly relying on its Chinese manufacturing subsidiary, sourcing critical components from Chinese suppliers—including its own subsidiary—that have apparent Chinese Communist Party ('CCP') ties, and receiving through its Chinese subsidiary technology-development grants directly from the Chinese government.").  Consequently, , in examining the underlying allegations supporting Archer's Counterclaims, the Court agrees with Joby as to the following deficiencies:

- Archer's Counterclaim(s) based on alleged tariff misclassifications only particularly identify the "what" of the fraud with regard to four shipments.  *See* Counterclaims, ¶¶ 179.a)–d).  The touchstone of Rule 9(b) is notice." *Freedline v. O Organics LLC*, 445 F. Supp. 3d 85, 90 (N.D. Cal. 2020).  These statements, even

United States District Court
Northern District of California

United States District Court
Northern District of California

though they do not identify the particular CBP Form 7501s at issue, are specific enough that Joby was able to search for and find what it believes to be the corresponding forms. *See* Bonar Exhibits A-D. However, to the extent Archer's Counterclaims are directed to tariff misclassifications beyond the specific ones set forth in paragraphs 179 a) through d), the Court agrees with Joby that Archer's Counterclaim fails the requirements of Rule 9(b).

- Archer's Counterclaims broadly fail to allege with particularity who made the alleged false statements. When Rule 9(b) is applied to false advertising claims against corporations, a claimant cannot allege the entire corporation or its agents generally as the "who." Rather, there must be some specific facts alleged, such as "the 'titles and/or job responsibilities' of the employees 'who purportedly made the fraudulent representations.'" *Celonis SE v. SAP SE*, No. 25-cv-02519-VC, 2025 WL 1810260, at *2 (N.D. Cal. June 30, 2025). Of course, Rule 9(b) only "requires that plaintiffs specifically plead those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). Even so, merely pleading that "Joby and/or its agents knowingly submitted these false statements," (*e.g.*, Counterclaims, ¶¶ 1, 112, 180), is insufficient – especially without any attempt to allege conduct as to Joby Aero versus Joby Aviation.

- Archer's Counterclaims also broadly fail to allege either who was misled with specificity or fails to allege *how* identified entities were misled. Joby argues that Archer's Counterclaims do not "identify any specific person who was allegedly misled." Dkt. 44 at 20-22. Archer responds that it has specifically identified two such persons:  (1) the U.S. Air Force's AFWERX Agility Prime Program ("AFWERX"), a program under the "innovation arm" of the U.S. Air Force, (*see* Counterclaims, ¶¶ 5, 48, 118-24, 128-135, 161, 201), as well as (2) NASA (*id.*, ¶¶

31

137-39, 155-56).[9] Archer does not point to any private (*i.e.*, non-U.S.-government) person or entity who was the target of or misled by Joby's alleged false advertising. *See* Dkt. 61 at 18. Accordingly, Archer tacitly concedes that Joby's argument is correct as to any private persons. But even with regard to AFWERX and NASA, Archer's Counterclaims fail to allege the "how." Specifically, Archer does not sufficiently plead a connection from the alleged false advertising, other public statements (*e.g.*, SEC filings) or tariff misclassifications to the misleading of *these* government entities. *See, e.g.*, *E & E Co., Ltd. v. Kam Hing Enterprises, Inc.*, 2009 WL 482240, at *3-4 (N.D. Cal. Feb. 25, 2009) (dismissing a fraud-based UCL claim where, although identification of the "IRS" as an entity satisfied the "to whom" requirement, "plaintiff ha[d] failed to allege what defendants actually stated to the IRS, and when" so as to mislead *the IRS*).

Secondly, and related to the final bullet point above, the Court briefly addresses the Parties' arguments that Joby Aviation must be dismissed whether or not the claims against Joby Aero survive. Joby argues that "Archer asks the Court to impute the actions of Joby Aviation's foreign subsidiary to Joby Aviation, and then further impute those actions to Joby Aero," and that Archer has not met the requirements for corporate veil-piercing. Dkt. 44 at 32-33. Archer fails to address this argument in opposition and, accordingly, concedes it. Instead, however, Archer points out that Joby's MTD does not address Archer's alternative theory that Joby Aviation is directly liable for the alleged misconduct, "without any need to pierce the corporate veil." Dkt. 61 at 30. Joby's attempt to address this argument into its reply fails, because the Court does not consider arguments made for the first time in reply. *E.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). Nonetheless, because Archer's failure to plead the "who" with particularity under Rule 9(b) makes it impossible for this Court to separate the allegations against Jobe Aero from those against Joby Aviation, Archer's reliance on direct liability does not save its claims here.

---

[9] *See, generally,* https://afwerx.com/about-us/.

* * *

In sum, the Court **DISMISSES** Archer's Counterclaims **with leave to amend** for failure to comply with Rule 8 and Rule 9(b).  Joby's MTD is **GRANTED IN PART** with respect to the 9(b) arguments identified above and, relatedly, with respect to the dismissal of Joby Aviation, but is otherwise **DENIED IN PART as moot**.

V.    **CONCLUSION**

For the reasons set forth in Section IV.A., above, Defendants' motions to dismiss are **GRANTED IN PART** and **DENIED IN PART** and **leave to amend is granted** as follows:

- Joby's DTSA claim (Count III) against both Defendants is **DISMISSED** to the extent it is based on Joby's assertion of trade secret categories (i) – (iii), for which Joby has not sufficiently pleaded misappropriation, **with leave to amend**.

- Joby's breach of contract claim (Count I) against Mr. Kivork is **DISMISSED IN PART with prejudice** to the extent it is based on breach of his confidentiality provision;  it may proceed to the extent it is based on the "Item Return" provision.

- Joby's inducement of breach of contract claim (count II) against Archer is **DISMISSED**.  The dismissal is **with prejudice** as to inducement of Mr. Kivork's breach of his confidentiality provision but **without prejudice and with leave to amend** as to the "Item Return" provision.

- Joby's remaining state law claims (Counts IV-XI) are **DISMISSED**:
  - Counts IV and XI, alleging violations of California Penal Code § 502 and the UCL, respectively, are **DISMISSED with leave to amend**;
  - Counts V-X are **DISMISSED without leave to amend** as preempted by CUTSA in such a way that amendment would be futile.

For the reasons set forth in Section IV.B., above, Joby's MTD is **GRANTED IN PART** and **DENIED IN PART** and **leave to amend is granted** as follows:

- Archer's Counterclaims are **DISMISSED with leave to amend** as impermissible shotgun pleadings that do not comport with Rule 8;  and

////

33

- Archer's Counterclaims are **DISMISSED with leave to amend** for failure to plead with particularity under Rule 9(b);  and

- Joby Aviation is **DISMISSED with leave to amend** as to Archer's direct liability theory.

Finally, the Court sets the following expedited deadlines for the Parties' forthcoming pleadings.  Joby may amend its complaint consistent with this Order **no later than June 22, 2026**. Archer may amend its counterclaims **no later than June 29** but may file its answer or other response to Joby's amended complaint or, if no amendment is made, to the remainder of Count III against it, **no later than July 6**.  Mr. Kivork shall respond to the amended complaint or, if no amendment is made, to the remainder of Counts I and III against him, **no later than July 6**. Finally, Joby shall respond to Archer's amended counterclaims, if any, **no later than July 13**.

**SO ORDERED.**

Dated: June 5, 2026

_____
SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

34