JOSH KREVITT, SBN 208552
  jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
310 University Avenue
Palo Alto, CA 94301-1744
Telephone:    650.849.5300
Facsimile:    650.849.5333

ORIN SNYDER, *(pro hac vice)*
  osnyder@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone:    212.351.4035

JAMES L. ZELENAY JR., SBN 237339
  jzelenay@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000

*Attorneys for Defendant and Counterclaimant
Archer Aviation Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| JOBY AERO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ARCHER AVIATION INC. and George Kivork.<br><br>Defendants.<br>_____<br><br>ARCHER AVIATION INC.,<br><br>Counterclaimant,<br><br>v.<br><br>JOBY AERO, INC.<br><br>and<br><br>JOBY AVIATION, INC.,<br><br>Counter-Defendants. | Case No.: 5:25-CV-10703-SVK<br><br>**DEFENDANT ARCHER AVIATION INC.'S NOTICE OF MOTION AND MOTION TO DISMISS JOBY'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing:        August 11, 2026<br>Time:            10:00 a.m.<br>Judge:          Hon. Susan van Keulen<br>Trial Date:    Not Set<br>Action Filed:  Nov. 18, 2025 |

Gibson, Dunn &
Crutcher LLP

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS JOBY'S FIRST AMENDED COMPLAINT
CASE NO.: 5:25-CV-10703-SVK

## NOTICE OF MOTION

PLEASE TAKE NOTICE that, on August 11, 2026 at 10:00 a.m., or as soon as the parties may be heard before the Honorable Susan van Keulen of the United States District Court for the Northern District of California, Courtroom 6 on the 4th Floor of the Robert F. Peckham Federal Building and United States Courthouse located at 280 South 1st Street, San Jose, CA 95113, Defendant Archer Aviation Inc. ("Archer") will, and hereby does, move this Court, pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Counts 2, 3, and 4 of Plaintiff Joby Aero, Inc.'s First Amended Complaint (Dkt. 76) against Defendant Archer. As for Count 3, Archer moves to dismiss that count to the extent it is based upon claims or allegations beyond those related to the alleged "Developer" that the Court allowed to proceed in its Order on Archer's Motion to Dismiss.[1]  Dkt. 69 at 19.

This Motion is based upon this notice of motion; the memorandum of points and authorities in support thereof; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters of which the Court may take judicial notice.

DATED: July 6, 2026

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ James L. Zelenay Jr.*

James L. Zelenay Jr.
Josh A. Krevitt
Orin Snyder (*pro hac vice*)

*Attorneys for Defendant Archer Aviation Inc.*

---

[1] The identity of the Developer is under seal pursuant to the Court's order.  *See* Dkt. 85.

i

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   BACKGROUND .................................................................................................3

    A.    Joby's Allegations Regarding Kivork's Actions While Employed at Joby. ......................................................................................................3

    B.    Joby's Allegations Regarding Events After Kivork Left Joby. ...................4

    C.    Joby Admits It Refused to Accept Deletion of the Allegedly "Exfiltrated" Files. ........................................................................................5

    D.    Procedural History and the Operative Complaint. ......................................6

III.  LEGAL STANDARD..........................................................................................6

IV.   ARGUMENT ......................................................................................................7

    A.    Joby Fails to State a Claim for Trade-Secret Misappropriation...................7

    B.    Joby Fails to State a Claim for Inducement of Breach of Contract. ...........17

    C.    Joby Fails to State a Claim Under the UCL (Count 4) ...............................21

V.    CONCLUSION..................................................................................................23

GIBSON, DUNN & CRUTCHER LLP

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS JOBY'S FIRST AMENDED COMPLAINT
CASE NO.: 5:25-CV-10703-SVK

## TABLE OF AUTHORITIES

Page(s)

### Cases

*Arthur J. Gallagher & Co. v. Tarantino*,
498 F. Supp. 3d 1155 (N.D. Cal. 2020) .................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................................6, 7, 17

*Beluca Ventures LLC v. Einride Aktiebolag*,
660 F. Supp. 3d 898 (N.D. Cal. 2023) ..............................................................................16, 17

*Brown v. Adidas Int.*,
938 F. Supp. 628 (S.D. Cal. 1996) .....................................................................................12, 14

*CelLink Corp. v. Manaflex LLC*,
2025 WL 1069893 (N.D. Cal. Apr. 9, 2025) .............................................................................8

*ChromaDex, Inc. v. Elysium Health, Inc.*,
301 F. Supp. 3d 963 (C.D. Cal. 2017).....................................................................................11

*Cisco Sys. Inc. v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ...................................................................................16

*CleanFish, LLC v. Sims*,
2020 WL 1274991 (N.D. Cal. Mar. 17, 2020) ..........................................................................2

*Confluent, Inc. v. Slower, LLC*,
No. 24-CV-04447-SVK, 2026 WL 673582 (N.D. Cal. Mar. 10, 2026) ......................................7

*In re Countrywide Fin. Corp. Mortgage-backed Securities Litig.*,
943 F. Supp. 2d 1035 (C.D. Cal. 2013)...................................................................................21

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014)............................................................................................11, 20

*Farhang v. Indian Inst. of Tech., Kharagpur*,
2010 WL 2228936 (N.D. Cal. June 1, 2010) ........................................................................8, 12

*Genasys Inc. v. Vector Acoustics,LLC*,
638 F. Supp. 3d 1135 (S.D. Cal. 2022).............................................................................15, 16

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)..........................................................................................6, 8, 9

*Green Crush LLC v. Paradise Splash I, Inc.*,
2018 WL 4940825 (C.D. Cal. May 3, 2018) ...........................................................................23

iii

*Haines v. Brand*,
　2012 WL 2237366 (N.D. Cal. June 14, 2012) ....................................................................21, 23

*Hill Phoenix, Inc. v. Classical Refrigeration SoCal, Inc.*,
　2020 WL 1244354 (C.D. Cal. Mar. 15, 2020) .............................................................................7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
　31 F.4th 1180 (9th Cir. 2022)....................................................................................................23

*InteliClear, LLC v. ETC Glob. Holdings, Inc.*,
　978 F.3d 653 (9th Cir. 2020)...............................................................................................15, 16

*M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*,
　400 F. Supp. 3d 867 (N.D. Cal. 2019) ......................................................................................14

*M/A-COM Tech. Sols. Inc. v. Litrinium, Inc.*,
　2019 WL 6655274 (C.D. Cal. Sept. 23, 2019)......................................................................2, 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
　519 F.3d 1025 (9th Cir. 2008).....................................................................................................6

*MedioStream, Inc. v. Microsoft Corp.*,
　869 F. Supp. 2d 1095 (N.D. Cal. 2012) ....................................................................................15

*name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*,
　2013 WL 2151478 (C.D. Cal. Mar. 4, 2013) ............................................................................19

*Pellerin v. Honeywell Int'l, Inc.*,
　877 F. Supp. 2d 983 (S.D. Cal. 2012) .......................................................................................17

*Quinonez v. United States*,
　667 F. Supp. 3d 1015 (N.D. Cal. 2023) ..............................................................................18, 19

*Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*,
　149 F.4th 1081 (9th Cir. 2025)..................................................................................................15

*Robi v. Five Platters, Inc.*,
　918 F.2d 1439 (9th Cir. 1990).....................................................................................................23

*Soo Park v. Thompson*,
　851 F.3d 910 (9th Cir. 2017)........................................................................................................9

*Space Data Corp. v. X*,
　2017 WL 5013363 (N.D. Cal. Feb. 16, 2017)...........................................................................10

*Swipe & Bite, Inc. v. Chow*,
　147 F. Supp. 3d 924 (N.D. Cal. 2015) ................................................................................18, 19

*Veronica Foods Co. v. Ecklin*,
　2017 WL 2806706 (N.D. Cal. June 29, 2017) ..........................................................................11

*Warner v. Tinder Inc.*,
　105 F. Supp. 3d 1083 (C.D. Cal. 2015).....................................................................................22

iv

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
    724 F. Supp. 3d 948 (N.D. Cal. 2024) ....................................................................18, 20, 23

*x.AI Corp. v. OpenAI, Inc.*,
    821 F. Supp. 3d 1100 (N.D. Cal. 2026) ..................................................................................2, 9

*Xsolla (USA), Inc. v. Aghanim Inc.*,
    2024 WL 4139615 (C.D. Cal. Sept. 10, 2024)......................................................10, 12, 13, 14

*Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*,
    281 F. Supp. 3d 1021 (S.D. Cal. 2017) ........................................................................8, 10, 15

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)...................................................................................................7

**Statutes**

18 U.S.C. § 1836(b)(3)(B) ........................................................................................................7, 17

18 U.S.C. § 1839 (3) ................................................................................................................7, 17

18 U.S.C. § 1839 (5) ................................................................................................................7, 17

Cal. Bus. & Prof. Code § 16600(a) .................................................................................................20

Cal. Bus. & Prof. Code § 17203 .....................................................................................................23

**Other Authorities**

Dodgers Corporate Sponsorships, https://www.mlb.com/dodgers/sponsorship ..........................12

Joby demonstrates potential for emissions-free regional journeys with landmark
    523-mile hydrogen-electric flight, July 10, 2024, *available at*
    https://www.jobyaviation.com/news/joby-demonstrates-potential-for-
    emissions-free-regional-journeys-with-landmark-523-mile-hydrogen-electric-
    flight .................................................................................................................................14

v

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS JOBY'S FIRST AMENDED COMPLAINT
CASE NO.: 5:25-CV-10703-SVK

Gibson, Dunn &
Crutcher LLP

### MEMORANDUM OF POINTS AND AUTHORITIES

#### I.    INTRODUCTION

Rather than narrow its allegations following the Court's Order dismissing the vast majority of Joby Aero, Inc.'s ("Joby") original complaint, Joby's First Amended Complaint ("FAC") seeks to expand.  Joby's FAC suffers from the same fatal flaws as the original complaint as to defendant Archer Aviation Inc. ("Archer"):  it fails to allege any misconduct or misappropriation by Archer.  Armed only with conclusory legal assertions and what at best can be described as speculation, Joby's FAC fails as a matter of law and should be dismissed as to all claims the Court has not already found can proceed.

Archer is quickly becoming the preeminent leader in commercializing air taxis across the world.  Recognizing the peril of its position, Joby apparently tries to regain the ground by alleging in its FAC broad-ranging alleged trade secrets relating to "market analysis," "regulatory strategy," ideas to operate in whole countries, and other vaguely described "secrets."  Joby, however, alleges no facts that point to any use by Archer of these alleged trade secrets, let alone facts sufficient to state a claim for misappropriation against Archer under the Defend Trade Secrets Act ("DTSA").

In fact, for more than half of the alleged trade secrets, Joby offers zero facts that even hint at misappropriation.  For others, Joby simply provides guess-work—such as Joby's claim that Archer's decision to look at Asia as an area for potential growth must mean former Joby employee George Kivork shared some confidential trade secret with Archer.  For all categories at issue, Joby does not allege what that trade secret specifically was, how Kivork allegedly shared it with Archer, or how Archer used it in any decision to proceed.

As this Court previously ruled, allegations that Kivork "took or had access" to materials as part of his ordinary job duties at Joby is not sufficient for Joby to sue Archer for misappropriation absent "facts from which an inference could be drawn that Mr. Kivork disclosed, or that Archer thus acquired or used, such trade secrets."  Dkt. 69 (the "Order") at 18.  The FAC supplies none.

While Joby attempts to claim that Archer must have used trade secret information about

Gibson, Dunn & Crutcher LLP

Joby to contact the Dodgers (perhaps the most famous team in all of sports), talk to the Hawthorne airport (one of a small number of regional airports in the Los Angeles area, where Archer is the official air taxi provider for the 2028 Olympic and Paralympic Games in Los Angeles), consider a hydrogen plane (when such had been publicly discussed by Joby for months), or pursue operations in Japan and South Korea, Joby does not allege facts describing the specific information Archer supposedly received, when it received it, how it used it, or how any alleged use was improper. The law requires that plaintiffs allege and explain exactly that. *M/A-COM Tech. Sols. Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *10 (C.D. Cal. Sept. 23, 2019) (plaintiffs must "explain how the misappropriation occurred, when it occurred, and what was misappropriated"). Accordingly, Joby's claims against Archer fail and must be dismissed. *See x.AI Corp. v. OpenAI, Inc.*, 821 F. Supp. 3d 1100 (N.D. Cal. 2026) (dismissing DTSA claims against corporate defendant where despite alleged exfiltration of information, the plaintiff fails to allege whether or how that information was used by the defendant).

To avoid misusing trade secret litigation for anti-competitive purposes, courts require plaintiffs to advance allegations "that tend to exclude general knowledge or innocuous (i.e., competitive marketplace) explanations." *CleanFish, LLC v. Sims*, 2020 WL 1274991, at *11 (N.D. Cal. Mar. 17, 2020). Joby fails to explain away the obvious market explanations for Archer's conduct—for instance, that Archer may have been interested in pursuing partnerships in Japan because it is one of the major markets in the world.

Joby's other claims continue to fail as well. Joby seeks to revive its previously dismissed claim that Archer "induced" Kivork to breach his agreement with Joby, now alleging Archer induced Kivork to breach the "Item Return" provision of Kivork's contract with Joby. But Joby again includes no facts indicating Archer engaged in any actions to induce a breach. Likewise, Joby reasserts its UCL claim, even though—as the Court already found—it is preempted on account of the California Uniform Trade Secrets Act ("CUTSA") and fails for the same reasons as Joby's other claims, upon which it depends.

At bottom, Joby's claims are not sufficient to survive a motion to dismiss, beyond the lone

2

trade secret claim related to Joby's purported relationship with the "Developer" that the Court has already allowed to proceed. Joby's haphazard pleading throwing all manner of alleged "trade secrets" in the FAC—without actually identifying facts alleging misappropriation by Archer—threatens to turn this case into a broad free-for-all into both companies' worldwide business operations. Joby's case should be focused on the claim related to the "Developer" the Court has allowed to proceed.

## II.     BACKGROUND

### A.     Joby's Allegations Regarding Kivork's Actions While Employed at Joby.

Joby and Archer are competitors developing eVTOL aircraft. FAC ¶ 1. According to the FAC, Joby employed Kivork as its U.S. State and Local Policy Lead for nearly four years. *Id.* ¶ 27. Kivork signed an Employment Agreement and a Proprietary Information and Inventions Agreement ("PIIA") dated August 13, 2021, which Joby says required Kivork to keep certain "Proprietary Information" confidential and to return such information upon termination of his employment. *Id.* ¶¶ 29–34.

Joby pleads that on July 18, 2025, Kivork—while still a Joby employee—"secretly downloaded dozens of Joby's files from Joby's electronic Microsoft SharePoint ('SharePoint') repository" and "emailed certain Joby files to a personal email account." *Id.* ¶ 39. The FAC identifies 27 files that Kivork purportedly "exfiltrated," *id.* ¶ 45, and purports to include categories of purported secrets to which it maps these files, *id.* ¶¶ 47–60. One such file is the "20250116 – [Developer] – Strategic Partnership Counter Proposal.pptx," said to reflect the "details of the negotiation" and "deal terms" of a purported March 12, 2025 exclusive and confidential agreement between Joby and a "major real estate developer" (the "Developer Agreement"). *Id.* ¶¶ 23–25, 45, 57. Beyond the alleged "Developer" trade secret, the other categories Joby claims as trade secrets include customer and contact lists, market and site analyses, infrastructure and vertiport business plans, policy and regulatory strategies, acoustic-mitigation methods, and technical aspects of its vehicles. FAC ¶¶ 48–60.

Gibson, Dunn &
Crutcher LLP

The FAC further claims that Kivork "altered the security settings" for "hundreds" of files on Joby's separate Google Drive repository by adding his "personal email account as an 'owner,'" which supposedly "could have" allowed him, even after leaving Joby, to access those files, as well as information later added to them. *Id.* ¶¶ 40–44. Joby never alleges Kivork actually did this.

On July 20, 2025, Kivork informed Joby that he intended to resign to join Archer. *Id.* ¶ 36. Joby set his last working day as July 22, 2025, cut off his systems access the following morning, and kept him employed until August 3, 2025. *Id.* ¶ 37.

**B.      Joby's Allegations Regarding Events After Kivork Left Joby.**

Joby alleges that on August 5, 2025, the Developer "reported to Joby that Archer had approached the Developer about a business relationship." *Id.* ¶ 78. The Developer purportedly "expressed concern" because Archer's "pitch" suggested that it knew of the "existence" and confidential "key terms" of the Developer Agreement—though Joby never says what those terms were. *Id.* According to the FAC, the Developer "presum[ed]" that Archer learned this information from Kivork. *Id.*

The FAC seeks to expand this case beyond this allegation relating to the Developer. It claims, largely "on information and belief," that Archer also separately engaged in a "pattern" of business decisions—from international market development to technology inquiries—"on the basis of Joby's confidential trade secret information." *Id.* ¶ 69. However, for each of these alleged trade secret categories, Joby does not identify facts as to Archer obtaining any particular trade secret or how Archer allegedly misused any alleged trade secret. For instance, Joby points to Archer's November 2025 acquisition of a long-term lease at the Hawthorne airport. *Id.* ¶¶ 70–71. Joby tries to conjure a connection from the allegations that the deal was signed by a Hawthorne Airport employee who happened to appear on a Joby contact list, and that a Joby strategy document had mentioned the airport, "along with other Southern California airports," among targets Joby was pursuing. *Id.* ¶¶ 70–71. But Joby does not allege that Archer had that information from Joby, let alone used it. Additionally, Joby alleges that Archer contacted the Dodgers about a potential sponsorship, but only points to there being alleged contact information "for a Dodgers executive"

Gibson, Dunn &
Crutcher LLP

in Joby's possession from when Joby also pursued a sponsorship. *Id.* ¶ 72. Joby also alleges Archer made "additional inroads in South Korea and Japan" after hiring Kivork, but identifies no secret information Archer received about those international markets belonging to Joby or how Archer used any such information. *Id.* ¶¶ 73–74. Citing one article without any attribution or quotation from anyone at Archer, Joby alleges Archer was "said to be exploring hydrogen aircraft" after years of pursuing all-electric designs. *Id.* ¶ 75. Joby claims—without any further facts or allegations— that "Archer is planning to develop a program for long-range high-altitude aircraft using confidential technical information from Joby's research and development projects." *Id.* ¶ 109. And Joby tries to blame "regulatory programs . . . reneg[ing] on previous approvals of Joby's applications" on "Kivork['s] abscondment to Archer with confidential regulatory files," without any further detail. *Id.* ¶ 110. From this "pattern," Joby infers that Archer "ha[s] misappropriated all of the trade secrets identified" in the FAC. *Id.* ¶ 84.

**C.    Joby Admits It Refused to Accept Deletion of the Allegedly "Exfiltrated" Files.**

Joby alleges that it demanded that Kivork and Archer "cease using and return Joby's proprietary information." *Id.* ¶ 81. As to Archer, the FAC recounts a demand sent August 11, 2025, and alleges that Archer "stonewalled" in response. Joby cannot avoid, however, the admission that Archer explained its onboarding process to Joby, and how that onboarding process prevents the type of misappropriation Joby claims. *Id.* ¶¶ 82, 97. As Joby alleges, Archer's Chief Legal Officer's August 14, 2025 email to Joby explained Archer's onboarding process and how it provides new hires with independent counsel to advise the new hires and ensure the new hires meet their obligations to former employers. *Id.* ¶¶ 82, 97. As stated in that email, Kivork "completed this process." *Id.* ¶ 97.

Further, per communication on November 12, 2025, Kivork's personal counsel advised Joby that Kivork was willing to delete and destroy any remaining materials from Joby he might have on his personal devices. *Id.* ¶¶ 81–82. Joby refused this offer, thus manufacturing its own claim that Kivork somehow failed to "return" material that Kivork himself offered to destroy. *Id.* ¶ 82.

Gibson, Dunn &
Crutcher LLP

5

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS JOBY'S FIRST AMENDED COMPLAINT
CASE NO.: 5:25-CV-10703-SVK

**D.      Procedural History and the Operative Complaint.**

Joby filed its original 11-count Complaint against Kivork and Archer in the Superior Court of California, County of Santa Cruz, on November 18, 2025, and Archer removed the case to this Court on December 16, 2025.  Dkt. 1.  Kivork and Archer moved to dismiss.  Dkts. 23, 24.  On June 5, 2026, the Court granted in part and denied in part those motions.  Order at 33–34.  The Court dismissed Joby's DTSA claims other than the claim based upon the alleged "Developer"; narrowed Joby's breach-of-contract claim to the PIIA's Item Return provision; dismissed Joby's inducement claim; and dismissed Joby's remaining state-law claims (former Counts IV–XI) as preempted by CUTSA. *Id.*

On June 22, 2026, Joby filed the FAC.  Dkt. 76.  The FAC purports to assert four causes of action:  Breach of Contract against Kivork (Count 1); Inducement of Breach of Contract against Archer (Count 2); Misappropriation of Trade Secrets under the DTSA against Kivork and Archer (Count 3); and Violation of California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, against Archer (Count 4).  The three counts asserted against Archer are the subject of this motion.

### III.      LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But that tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  A claim that pleads facts "merely consistent with" liability "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).  When "the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district

6

court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981,1007 (9th Cir. 2009).

### IV.    ARGUMENT

Joby's FAC suffers from the same flaws as its original complaint.  Joby's DTSA trade-secret misappropriation claim seeks to re-expand the case, but fails to allege facts to support misappropriation by Archer of any of the alleged trade secrets beyond that allegedly related to the Developer that the Court allowed to proceed.  The FAC fails to allege facts as to what specific information Kivork allegedly provided to Archer, how Kivork provided it to Archer, and how Archer allegedly used that information.  Likewise, Joby's repled state-law claims fail to plead essential elements—including that Archer knew of the PIIA or committed any intentional act inducing an alleged breach of that agreement.  For similar reasons, Joby's UCL claim, which is derivative of the inducement claim, fails.  The UCL claim further fails because it is based on a fiduciary duty claim the Court has already dismissed with prejudice as preempted.

### A.    Joby Fails to State a Claim for Trade-Secret Misappropriation.

To plead misappropriation under the DTSA, Joby must plausibly allege (1) the existence of a trade secret, (2) "misappropriation" of that trade secret, and (3) damages.  18 U.S.C. §§ 1839 (3) & (5), 1836(b)(3)(B); *Hill Phoenix, Inc. v. Classical Refrigeration SoCal, Inc.*, 2020 WL 1244354, at *3 (C.D. Cal. Mar. 15, 2020).  Joby fails each of these elements as to Archer.  But the most obvious is (2)—"misappropriation."

#### 1.    Joby Fails to Plead Misappropriation by Archer.

Aside from the Developer claim, Joby fails to "allege any facts from which an inference could be drawn" that Archer "acquired or used" the newly alleged trade secret categories.  Order at 18 (citing *Confluent, Inc. v. Slower, LLC*, No. 24-CV-04447-SVK, 2026 WL 673582, at *12 (N.D. Cal. Mar. 10, 2026)).[2]  Joby must allege "facts providing a reasonable basis for inferring" that Archer "improperly disclosed or used plaintiffs' trade secrets" that "raise a right to relief above the

---

[2] As the Court noted, the Court may "dismiss claims as to some trade secrets and not others where warranted."  Dkt. 69 at 18 (citing *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1047–49, 1057 (S.D. Cal. 2017)).

7

speculative level." *Farhang v. Indian Inst. of Tech., Kharagpur*, 2010 WL 2228936, at *15 (N.D. Cal. June 1, 2010). The Court need not accept conclusory statements and unreasonable inferences. *CelLink Corp. v. Manaflex LLC*, 2025 WL 1069893, at *5 (N.D. Cal. Apr. 9, 2025). Like the bulk of its original complaint, Joby's FAC fails to meet this standard.

The Court allowed the Developer claim to proceed because it found Joby pleaded facts that alleged the trade secret with sufficient particularity and permitted a plausible inference that misappropriation may have occurred. Order at 16. Specifically, the Court found Joby alleged the specific file containing the Developer Agreement's terms was downloaded by Kivork, Kivork left Joby, and a number of days later the Developer told Joby that Archer had learned of the deal terms. *Id.* Joby's new trade secret claims come nowhere close to meeting this standard. Joby pleads no facts alleging acquisition, disclosure, or use of the trade secrets by Archer. Instead, Joby relies on what can, at best, be described as speculation. This is insufficient to proceed past a motion to dismiss. *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Joby's case should be scoped to allegations about the "Developer," which the Court has allowed to proceed. Its scope should not include everything else Joby now tries to put at issue: business in Japan and South Korea, the Dodgers, Hawthorne Airport, "strategic decisions," hydrogen planes, etc.

Joby's new allegations fall into two buckets: (a) those that assert nothing at all connecting the alleged trade secrets to Archer's conduct, and (b) those that do so wholly on speculation. Both fail.

### a.    Joby fails to plead misappropriation by Archer for categories untethered to any alleged Archer conduct.

For the vast bulk of the trade secret categories alleged in the FAC, Joby pleads ***nothing*** connecting Archer to any purported misconduct. The FAC purports to broadly identify the following categories of trade secrets: vertiport infrastructure development (FAC ¶ 50), vertiport business plans (FAC ¶ 51), aircraft manufacturing (FAC ¶ 52), a specific business plan (FAC ¶ 54), policy and regulatory strategies (FAC ¶ 55), acoustic mitigation (FAC ¶ 56), and its powertrain (FAC ¶ 60). For each, Joby merely identifies a purported category of trade secret, cites a handful

of documents that allegedly reflect information regarding the category, and asserts Kivork "exfiltrated" those files. *See* FAC ¶¶ 45–60. But the allegations stop there. Joby never alleges anything further with respect to these categories as to the conduct of Archer. The FAC never offers facts stating that Kivork or Archer accessed any of these files after Kivork left Joby, that Kivork transmitted any of them to Archer, or that Archer used any information they contain.

The FAC simply concludes "on information and belief" that Archer "misappropriated all of the trade secrets." FAC ¶ 84. But this is exactly the type of conclusory pleading the Court should reject. *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Joby's reliance on information and belief pleading must provide "factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017) (citation omitted). Joby does not do that. Joby fails to identify the what, when, and how with respect to any of these claimed trade secrets and alleged misuse by Archer.

*x.AI Corp. v. OpenAI, Inc.*, 821 F. Supp. 3d 1100 (N.D. Cal. 2026), is instructive. There, x.AI alleged that several former employees downloaded x.AI's source code to their personal devices just before departing x.AI, that those employees communicated with an OpenAI recruiter through encrypted messaging around the time of the exfiltration, and that one employee made a presentation on x.AI's confidential information to OpenAI. *Id*. at 1108–09. When x.AI sued OpenAI for misappropriation, the Court found x.AI's claims failed at the pleading stage because the allegations did not "permit a reasonable inference that OpenAI knew that the information was a trade secret, that [the employee] had improperly acquired the information, or that [the employee] was improperly or mistakenly disclosing the information [to OpenAI]." *Id.* at 1109. The same is true here. Joby simply asserts that Kivork downloaded (or had access to) the data allegedly containing the trade secrets; it does not offer facts that Archer itself obtained or used this information. *See also Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1173 (N.D. Cal. 2020) (refusing to allow a trade secret misappropriation claim against a corporate defendant based solely on conclusory allegations with "no specific facts"); *Space Data Corp. v. X*, 2017 WL

9

5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing a DTSA claim that relied on conclusory assertions that "are not supported by adequate factual allegations").

Courts must be cautious to "not permit a plaintiff to conduct a fishing expedition based upon bare allegations of misappropriation." *Yeiser Rsch. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1048 (S.D. Cal. 2017) (citation modified). Joby's FAC is the quintessential example. Joby's new DTSA claims based upon the purported secrets in FAC ¶¶ 50, 51, 52, 54, 55, 56, and 60 should be dismissed.

    **b.    Joby's "pattern" allegations do not state a plausible claim of misappropriation by Archer.**

Joby also has a hodgepodge of other new trade secret claims. These fare no better. Joby points to Archer's lease of a local airport, announcements of partnerships in South Korea and Japan, pursuit of sponsorship of the Dodgers, and a speculative line in a trade publication not attributed to Archer. Joby points to these items to try to claim Archer must have misappropriated a wide variety of other alleged Joby trade secrets, apparently with the assistance of Kivork—from target markets, to site analyses, to APAC flight demonstration blueprints, to contact lists, to technical aspects of a hydrogen aircraft. But, again, Joby does not plead facts to support a claim of misappropriation by Archer. *See Xsolla (USA), Inc. v. Aghanim Inc.*, 2024 WL 4139615, at *10 (C.D. Cal. Sept. 10, 2024) (plaintiff must plead "facts that make the inference of culpability 'plausible,' rather than 'merely possible'").

**Hawthorne Airport** – Joby claims Archer must have misappropriated an (unidentified) Joby trade secret with respect to the Hawthorne Airport because Archer signed a lease with the Hawthorne airport in November 2025, after Kivork left Joby for Archer in August 2025 and after Joby was apparently interested in the same airport. Joby, however, points to nothing in support of this leap of speculation other than that a Joby contact list purportedly included the name of a contact at the Hawthorne airport, that the airport was mentioned in a Joby document "along with other Southern California airports that could host vertiports," and that Archer got the lease and Joby did not. FAC ¶¶ 70–71. This is not enough to sue Archer for misappropriation. For one, contact

10

information alone is not protectable as a trade secret because it is readily ascertainable. *See ChromaDex, Inc. v. Elysium Health, Inc.*, 301 F. Supp. 3d 963, 971 (C.D. Cal. 2017) (dismissing trade secret claims for customer contact information where the plaintiff failed to plead that the information was not "readily ascertainable through public sources"). More importantly, Joby does not allege any facts as to misappropriation—any facts as to any information that Kivork actually provided to Archer, how Archer allegedly obtained that information, or what Archer purportedly did with that information. Joby's allegations are wholly unsupported and do not survive Rule 8's pleading requirements.

Joby must eliminate equally plausible innocent explanations. *Veronica Foods Co. v. Ecklin*, 2017 WL 2806706, at *14 (N.D. Cal. June 29, 2017) (plaintiff "must allege facts that are not merely consistent with both a theory of innocent market entry and the theory that [defendant] used [the plaintiff's trade secrets], but rather tend to exclude an innocent explanation"); *accord Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) ("[P]laintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation."). Joby does not do that. The equally plausible explanation for Archer's alleged conduct (signing a lease with the Hawthorne Airport) is that Archer was interested in having a location for its eVTOL vehicles in Los Angeles, particularly in light of being named the official air taxi provider for the LA28 Olympics. Joby does nothing to dispel this equally plausible, obvious explanation. Indeed, even the Archer document Joby alleges as supporting its allegation—a 2024 Archer press release—evidences Archer's well-known interest in the Los Angeles market dating back years, including Archer having relationships with the University of Southern California, United Airlines, Southwest Airlines, and the Los Angeles Rams. FAC ¶ 71 n.6. Joby alleges nothing that pushes Archer's signing a lease with an available airport in the Los Angeles area over and beyond common competitive business pursuits, into misappropriation of specific trade secret information.

Joby pleads less than did the plaintiff in *M/A-COM Technology Solutions, Inc. v. Litrinium, Inc.*, 2019 WL 6655274, at *9–10 (C.D. Cal. Sept. 23, 2019), whose allegations were found

11

insufficient. There, M/A-COM alleged its former employee was involved with developing technical trade secrets for M/A-COM, uploaded information to a USB device, and then, shortly after he joined the defendant, the defendant started marketing competing products that had similar features. *Id*. at *9. The court found that this, by itself, was not enough to allege trade secret misappropriation against the defendant. *Id*. There needed to be more facts pled, as these facts standing alone do "not plausibly allege that the competitor's product must have been created with trade secrets." *Id*.; *see also Xsolla*, 2024 WL 4139615, at *10 (holding that allegations of a competitor producing a similar product after exfiltration of alleged trade secrets without more are insufficient to state a claim for trade secret misappropriation); *Brown v. Adidas Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996) ("Allegations of similarity, without more, do not support a claim of misappropriation of trade secrets."). Joby's allegations merely describe the acts of a competitor.

**Los Angeles Dodgers** – Joby claims Archer must have committed trade secret misappropriation with respect to the Dodgers because Archer, like Joby, pursued a possible sponsorship with the Dodgers—perhaps the most famous of all sports organizations. Again, the FAC does not plead facts supporting misappropriation by Archer of anything, let alone a trade secret. FAC ¶ 72. Joby's only allegation is that there was "confidential contact information for a Dodgers executive" on "one of the contact lists" allegedly used by Kivork. But Joby does not allege facts indicating that Kivork provided this contact information to Archer, that Archer used this contact information, or even that this specific executive was involved in the Archer negotiations. *Farhang* , 2010 WL 2228936, at *15 (claim for relief must rise beyond the speculative level). And contact information itself—including for Dodgers Corporate Sponsorships (which is publicly available, see https://www.mlb.com/dodgers/sponsorship)—is not a trade secret. Joby's allegations do not plead away the obvious business explanation—Archer approached the Dodgers because it is a famous sports team, aligned with Archer's sponsorship with other sports ventures, such as Archer's serving as the eVTOL provider for the 2028 LA Olympics. *Xsolla (USA), Inc.*, 2024 WL 4139615, at *10 (allegations must make "the inference of culpability plausible, rather than merely possible"). Joby alleges nothing to place this allegation into the realm of misappropriation.

Gibson, Dunn & Crutcher LLP

DEFENDANT ARCHER AVIATION INC.'S MOTION TO DISMISS JOBY'S FIRST AMENDED COMPLAINT
CASE NO.: 5:25-CV-10703-SVK

**Japan and South Korea** – Joby claims Archer must have utilized Joby trade secrets because Archer has reportedly sought to expand its business to Asia. Joby notes a partnership agreement announced by Archer in South Korea and another in Japan. FAC ¶ 74. But Joby does nothing to justify the leap from Archer having partnership arrangements in South Korea and Japan to claiming Archer misappropriated Joby trade secrets. Indeed, what Joby omits from the very press release it cites is that Archer had been working with Japan Airlines and Sumitomo Corporation through a joint venture that was announced in November 2024—more than six months before Kivork left Joby. FAC ¶ 74 n.10. Nothing Joby alleges justifies proceeding with a trade secret claim as to Archer's entire business operations in South Korea and Japan. While Joby claims the alleged trade secret category is "navigat[ing] the regulatory field in South Korea and Japan, as well as plan, organiz[ing], and successfully put[ting] on flight demonstrations in the region," *id.* ¶ 53, Joby alleges nothing showing what information Archer allegedly obtained from Joby nor how Archer used that information.

*Xsolla (USA), Inc.* provides another good comparison. In *Xsolla*, employees of a video game company with access to its trade secrets allegedly "downloaded, copied and/or forwarded" them to start a competitor that provided similar services. 2024 WL 4139615, at *2. The plaintiffs there alleged on "information and belief" that the only way the competitor could have made "extremely similar" offerings was by using the company's trade secrets. *Id.* at *2. The plaintiffs alleged that the competitor must have exfiltrated trade secrets, as evidenced by making "eerily identical" offerings at better prices and "in record time." *Id.* at *10. The court found these allegations did not plausibly allege misappropriation because they were unaccompanied by specific allegations of fact "that make the inference of culpability 'plausible,' rather than 'merely possible.'" *Id.* Joby makes even less specific allegations: Kivork allegedly exfiltrated purported trade secrets about regulatory information in the Asia Pacific region, FAC ¶ 53, and Archer announced partnerships in South Korea and Japan, *id.* ¶ 73–74. As the *Xsolla* court found, "[w]ithout more, these allegations do not support a plausible inference that [the competitor] misappropriated [the company's] trade secrets." *Xsolla (USA), Inc.*, 2024 WL 4139615, at *10.

13

Gibson, Dunn &
Crutcher LLP

**Hydrogen Technology** – Joby cites one sentence in a trade publication not even attributable to anyone at Archer to claim Archer also misappropriated Joby trade secret information about hydrogen aircraft technology. FAC ¶ 75. From this, Joby alleges "on information and belief" that "Archer is planning to develop a program for long-range high-altitude aircraft using confidential technical information from Joby's research and development projects." *Id.* ¶ 109. This is speculation run amok. Joby does not allege any facts about any information that Kivork allegedly provided to Archer as to hydrogen technology (Kivork, for what it is worth, is a policy employee; not an engineer). FAC ¶ 1. Nor does Joby advance any allegations as to how Archer misused or misappropriated that unidentified information. The article Joby cites says nothing other than: "Joby Aviation is also applying the hydrogen propulsion technology developed by its H2FLY subsidiary to develop long range drones for military applications. A path that rival eVTOL developer Archer Aviation is also said to be exploring." *Id.* This does not state a misappropriation claim. *M.A. Mobile Ltd. v. Indian Inst. of Tech. Kharagpur*, 400 F. Supp. 3d 867, 893 (N.D. Cal. 2019) (rejecting trade secret claims that "rely on speculation rather than reasonable inference"). Moreover, Joby ignores that it publicized its development of hydrogen technology long before Kivork left Joby in July 2025.[3]

Even if Archer was pursuing a hydrogen aircraft, that fact alone is not a plausible basis to bring a misappropriation claim because pursuing a similar business without more does not state a plausible claim of misappropriation. *See Xsolla (USA), Inc.*, 2024 WL 4139615, at *10; *Brown*, 938 F. Supp. at 634 ("Allegations of similarity, without more, do not support a claim of misappropriation of trade secrets.").

**"Government Incentive Programs"** – Most vague of all, Joby claims "on information and belief" that "since Kivork['s] abscondment to Archer with confidential regulatory files (which include technical data and analyses), regulatory programs such as government incentive programs

---

[3] *See* Joby demonstrates potential for emissions-free regional journeys with landmark 523-mile hydrogen-electric flight, July 10, 2024, *available at* https://www.jobyaviation.com/news/joby-demonstrates-potential-for-emissions-free-regional-journeys-with-landmark-523-mile-hydrogen-electric-flight.

14

have suddenly reneged on previous approvals of Joby's applications and abridged the scope of Joby's projected and consequential gain." FAC ¶ 110. Joby does not allege any other facts. Joby does not allege what "government incentive programs" it is referring to, what confidential "technical data and analyses" Archer allegedly used, or how it did so.

For these reasons, Joby's new DTSA claims against Archer must be dismissed. While this case should be limited to what the Court previously allowed to proceed, Joby seeks to expand the case into a fishing expedition about Archer's work with sports teams, technologies, and whole geographic areas. The Court should "not permit a plaintiff to conduct a fishing expedition based upon . . . bare allegations of misappropriation." *Yeiser Rsch. & Dev. LLC*, 281 F. Supp. 3d at 1048.

### 2.  Joby's Trade Secrets Are Not Pleaded with Sufficient Particularity.

Joby's new trade secret claims also fail because Joby cannot meet the "sufficient particularity" standard. *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025). Joby must plead more than "broad, categorical terms" that merely describe "types of information that generally may qualify as protectable trade secrets," *Genasys Inc. v. Vector Acoustics, LLC*, 638 F. Supp. 3d 1135, 1152 (S.D. Cal. 2022). The descriptions must "describe the trade secret with sufficient particularity to give defendants reasonable notice of the issues which must be met at the time of trial" and "provide reasonable guidance in ascertaining the scope of appropriate discovery." *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 113 (N.D. Cal. 2012). Joby cannot "rely upon 'catchall' phrases or identify categories of trade secrets they intend to pursue at trial." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 658 (9th Cir. 2020).

Joby's descriptions of its alleged trade secrets remain insufficient. For instance, Joby attempts to assert trade secrets based upon broad, generic categories, such as vertiport infrastructure development (FAC ¶ 50), vertiport business plans (FAC ¶ 51), policy and regulatory strategies (FAC ¶ 55), and "technical specifications and analysis related to eVTOL aircraft and operations; commercial, regulatory, and infrastructure strategy" (FAC ¶ 108). These broad descriptions do not satisfy Joby's pleading requirement.

15

In *Beluca Ventures LLC v. Einride Aktiebolag*, 660 F. Supp. 3d 898 (N.D. Cal. 2023), for example, the court limited the trade secret claim to those contained within a specific consultant report that was allegedly misappropriated. *Id.* at 909. It rejected other trade secrets beyond the report as "lack[ing] factual specificity" because they were defined in "broad, categorical terms that are merely descriptive of the types of information that generally may qualify as protectable trade secrets." *Id.* (quoting *Cisco Sys. Inc. v. Chung*, 462 F. Supp. 3d 1024, 1048 (N.D. Cal. 2020)). The *Genasys* court similarly found a plaintiff's trade secret description lacking because it was vague and conclusory despite claiming a set of documents contained the trade secrets. *Genasys*, 638 F. Supp. 3d at 1151–52 (rejecting a trade secret claim where plaintiff pled information in Army Confidential Presentation Materials but relied on "conclusory buzzwords" to describe the trade secrets contained therein).

Nor does it solve the problem that Joby attempts to tie these alleged trade secrets to documents, as Joby does not explain the parameters of the alleged secrets from those documents. It just points to the documents themselves (often themselves generically titled), without examining what particularly within the document is a trade secret. As *InteliClear* found: "It is inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information.'" 978 F.3d at 658 (citation omitted). Joby identifies 27 documents, but also says there are "hundreds of files" that contain the various trade secrets. FAC ¶ 45.

The *Beluca Ventures* court allowed the claim to proceed because the plaintiff specified which contents of the identified documents were the claimed trade secret. The consultant report there "discussed the elements of [plaintiff's] technology stack that gave it a competitive advantage" and mentioned "specific features." *Beluca Ventures LLC*, 660 F. Supp. 3d at 908–09. The court rejected plaintiff's attempt to advance broader trade secrets about "the market for autonomous electric vehicles, potential competitors" and "product development and business strategies." *Id.*

Joby only ties one purported trade secret to a document with any even arguable factual specificity—the Developer Agreement—which allegedly held the terms of the agreement and upon

16

which the Court has allowed Joby to proceed.  FAC ¶ 57.  For others, Joby does not describe the trade secrets with sufficient particularity to determine "the boundaries within which the secret lies," *Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (citation omitted), including what the alleged trade secret actually is and what within any given document allegedly embodies it.

### 3.    Joby Has Not Pleaded Damages.

Joby's non-Developer DTSA claims also fail because Joby does not plausibly plead damages.  18 U.S.C. §§ 1839 (3) & (5), 1836(b)(3)(B).  Joby asserts that it suffered "severe competitive harm, irreparable injury, and significant damages" and seeks double damages.  FAC ¶¶ 121, 131.  But beyond this wholly conclusory claim, Joby does not allege any damages or harm as a result of anything Archer has allegedly done.  FAC ¶ 110.  The FAC does not allege *any* conduct by Archer that plausibly implicates alleged losses.  Without a factual predicate, Joby's conclusory claim of damages does not meet the plausibility standard.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### B.    Joby Fails to State a Claim for Inducement of Breach of Contract.

The Court previously dismissed Joby's inducement claim against Archer.  Order at 22–23.  As the Court found, Joby's Complaint was "devoid of any factual allegations that Archer committed any intentional acts designed to induce Mr. Kivork to fail to return items containing or embodying the Proprietary Information."  *Id.* at 22.  The Court further agreed that Joby's inducement claim against Archer needed to be dismissed because Joby had not adequately alleged that Archer had knowledge of the terms of Kivork's agreement with Joby:  "Joby's allegations of Archer's knowledge of the PIIA [were] insufficient," as "generalized awareness" of a confidentiality agreement does not suffice.  *Id.* at 23 (citing *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935 (N.D. Cal. 2015); *Quinonez v. United States*, 667 F. Supp. 3d 1015, 1032 (N.D. Cal. 2023)).  Joby has not cured these deficiencies in the FAC.  The inducement claim against Archer should be dismissed again, this time with prejudice.

Gibson, Dunn & Crutcher LLP

**1.     Joby Fails to Adequately Plead That Archer Knew of the Applicable Terms of the PIIA.**

A plaintiff alleging inducement of breach of contract must plead that the "defendant had knowledge of the contract and intended to induce its breach." *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 985 (N.D. Cal. 2024). Knowing that an employee might owe duties to a former employer is not enough; the plaintiff must allege that the defendant knew of the particular provision said to have been breached. *Swipe & Bite*, 147 F. Supp. 3d at 935; *Quinonez*, 667 F. Supp. 3d at 1032.

Joby does not add allegations that solve for the Court's earlier ruling that Joby fails to allege knowledge by Archer of the applicable Kivork-Joby agreement provision. Joby does nothing to allege that Archer was aware of a particular provision in Kivork's agreement with Joby that Joby sues on—e.g., the Item Return provision. Instead, all that Joby now adds is a block quotation from an August 14, 2025 email by Archer's Chief Legal Officer to Joby's counsel. FAC ¶ 97. But that email does not show that Archer knew of Joby's PIIA Item Return provision.

Instead, Archer's Chief Legal Officer's email describes the care Archer takes when it onboards all new employees: Archer's procedures "ensure that the proprietary interests of the former employers of Archer's employees are protected"; an independent law firm "conducts independent confidential interviews" with incoming employees; and the purpose of the process is to "assist onboarding employees in understanding any post-employment obligations they may have." *Id.* The email states "George completed this process." *Id.* There is nothing in this email about Kivork having independent counsel to suggest Archer knew of the specific terms of the Item Return provision, as Joby must allege to assert an inducement claim against Archer. *Swipe & Bite*, 147 F. Supp. 3d at 935; *Quinonez*, 667 F. Supp. 3d at 1032.

Joby recycles its generalized-awareness argument, asserting that "because Archer has hired employees from Joby previously, Archer knew or should have known of terms of Joby's PIIA, including the item return provision." FAC ¶ 97. The Court already rejected this argument. Order at 23 ("[T]here are insufficient allegations to infer that Archer had specific knowledge of

18

the PIIA and, contrary to Joby's arguments, 'generalized awareness' of confidentiality agreements is insufficient.").  That a competitor has previously hired a rival's employees is precisely the "generalized awareness" that *Swipe & Bite* and *Quinonez* held does not plead knowledge of the terms of a competitor's employment agreements.  *See Swipe & Bite*, 147 F. Supp. 3d at 935; *Quinonez*, 667 F. Supp. 3d at 1032.

### 2.    Joby Pleads No Acts of Inducement by Archer.

Joby's inducement claim again must be dismissed because Joby still has not cured the primary defect the Court identified—that Archer engaged in any act that induced Kivork's alleged breach of the Item Return provision.  Order at 22.

The Item Return provision is one that purportedly required Kivork to return certain information to Joby upon termination of his employment.  Joby does not allege *any* facts to indicate that Archer induced Kivork's breach.

Paragraph 100 is the core of Joby's claim, and it does nothing to supply the information the Court identified as missing.  It rests entirely on "information and belief" and merely alleges in conclusory fashion that "Archer intended to induce and did induce Kivork to breach the PIIA by encouraging or directing him not to return Joby's confidential information . . . as well as by accepting and using information Archer knew or should have known was not returned in breach of the PIIA; by failing to instruct Kivork to return Joby's information; and by using Joby's unreturned confidential and trade secret information."  FAC ¶ 100.  These are conclusory allegations insufficient to survive a motion to dismiss.  *See name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013) (dismissing inducement claims on the grounds that conclusory allegations do not satisfy the *Twombly* standard).

Joby provides no factual allegations in support of its conclusory claim that Archer "encourag[ed] or direct[ed]" Kivork not to return documents.  FAC ¶ 100.  To survive on "information and belief" allegations, Joby must plead corroborating facts that make Archer's culpability plausible.  *See* Order at 17; *Eclectic Properties E., LLC*, 751 F.3d at 998 (allegations must "tend to exclude [] plausible and innocuous alternative explanations").  Joby fails to do that.

19

Gibson, Dunn &
Crutcher LLP

In fact, Joby's allegations—outlining Archer's standard practices for employee onboarding—demonstrate the opposite.  FAC ¶ 97.

Joby's argument that Archer induced a breach by "failing to instruct Kivork to return Joby's information" also does not have support.  Not only does Joby fail to allege facts supporting this assertion, but the tort of inducement reaches only "intentional acts designed to [induce]" a breach.  *X Corp.*, 724 F. Supp. 3d at 985.  "Failing to instruct" an employee to return materials does not constitute the intentional tort of inducing breach.  *See id.* at 986 (dismissing inducement claim because the plaintiff "d[id] not allege that [the defendant] got [the contracting party] to do anything at all.").  As this Court found, the original Complaint's contrast between Kivork's "alleged refusal to cooperate and return files" and Archer's alleged "stonewalling" did not supply the missing element of intentional conduct by Archer directed at inducing a breach.  Order at 22.  Were it otherwise, a company that hires a competitor's former employee would always face an inducement claim the moment that employee fails to comply with any prior employer's obligation—a rule that would "restrain[] . . . engaging in a lawful profession" in precisely the manner California policy forbids.  Cal. Bus. & Prof. Code § 16600(a).

Finally, Joby's allegation that Archer somehow "induced" a breach by "accepting and using information" fails.  The Court already dismissed with prejudice Joby's inducement claim based upon Archer's alleged "acceptance and use" of information.  Order at 22.  The Court found such a claim was based upon the unenforceable, anticompetitive and illegal confidentiality term in Joby's PIIA with Kivork.  *Id.*  Joby cannot attempt to repackage that claim under the Item Return provision.  Order at 23 n.7 (finding Joby's inducement claim is limited to "the Item Return provision, not the acquisition, disclosure, or use of trade secrets").  Moreover, Joby alleges no facts to support a claim that Archer induced Kivork to not "promptly return to [Joby] all items containing or embodying Proprietary Information."  PIIA § 4.  There are no factual allegations of any misconduct on Archer's part.

Gibson, Dunn &
Crutcher LLP

**3.     Joby's Other Allegations of Inducement Were Not Allowed by the Court and Are Misplaced.**

Even though the Court granted Joby leave to amend on the narrow claim of inducement relating to the "'Item Return' provision," Order at 33, Joby now attempts to shoehorn into the case other theories under its "inducement" claim. These were not allowed by the Court, making them improper. *In re Countrywide Fin. Corp. Mortgage-backed Securities Litig.*, 943 F. Supp. 2d 1035, 1062 (C.D. Cal. 2013) (noting that plaintiffs "are not free to amend their complaint where this Court has rejected [the] legal theory"); *see also Haines v. Brand*, 2012 WL 2237366, at *7 (N.D. Cal. June 14, 2012) (dismissing a claim that was previously dismissed with prejudice where plaintiff did not seek leave to replead). Moreover, Joby's new allegations do not withstand scrutiny.

Specifically, Joby now attempts to allege that "Archer induced Kivork to breach the PIIA and other obligations by adding his personal email address as an owner to hundreds of documents stored on Drive, which Kivork did while still employed by Joby." FAC ¶ 104. For this claim, Joby now invokes "the PIIA and other obligations," and it draws on the non-competition provision in the PIIA (PIIA § 5, quoted at FAC ¶¶ 35, 89)—a provision that did *not* appear in Joby's original complaint and was not the subject of the Court's leave. This makes Joby's attempt improper.

Moreover, the allegation simply fails. Joby again cites no facts to suggest that Archer induced Kivork to breach these provisions, let alone at the time Kivork was working at Joby. Joby alleges no facts indicating that Archer directed or in any way suggested that Kivork should "add[] his personal email address" to documents, or anything else in support of this claim.

**C.     Joby Fails to State a Claim Under the UCL.**

Joby's UCL claim fails as well. It is derivative of Joby's inducement claim and cannot survive for the same reasons. Joby also impermissibly attempts to revive its fiduciary-duty claim that the Court dismissed under the UCL's unfairness prong. And Joby's request for equitable relief is foreclosed because Joby has an adequate remedy at law.

21

Gibson, Dunn &
Crutcher LLP

### 1.   Joby's UCL Claim Falls with the Inducement Claim.

Joby's UCL claim is derivative of its inducement claim.  By its own terms, it rises or falls on whether Archer induced Kivork to breach the PIIA.  Joby's claim for "unlawful" conduct rests on Archer allegedly having "violated other laws, including inducing Kivork to breach his contractual obligations."  FAC ¶ 125.  And Joby's "unfair" prong claim rests on the same conduct, said to "violate[] public policy against inducing breaches of contract."  FAC ¶ 126.  The UCL claim, in short, alleges no wrong independent of the inducement Joby has tried and failed to plead.

Joby's failure to plead an inducement claim dooms the UCL claim.  When "the predicate claims on which [a] UCL claim [is] based fail, the UCL claim [also] fails."  *Warner v. Tinder Inc.*, 105 F. Supp. 3d 1083, 1095 (C.D. Cal. 2015).

### 2.   Joby Also Improperly Attempts to Use the UCL to Replead a Claim the Court Dismissed with Prejudice.

The Court earlier dismissed with prejudice Joby's Counts V through VIII of its original complaint—breach of loyalty, breach of fiduciary duty, and aiding and abetting—as preempted by CUTSA.  Order at 25–28.  The Court held amendment would be futile, and dismissed these claims without leave to amend.  *Id*.  The Court further held that the UCL count was "preempted to the extent it is based on [the DTSA claim] or Counts IV–X."  *Id.* at 27.

Joby improperly attempts to bring back these claims through its UCL claim.  Joby's FAC alleges that Archer's conduct was "unfair" not only because it "violates public policy against inducing breaches of contract" (see discussion above), but also because it constitutes a breach of "fiduciary duty."  FAC ¶ 126.  This appears to be an improper attempt to revive the fiduciary duty claim—and derivative UCL claim—that the Court dismissed.  Because the Court earlier dismissed with prejudice Joby's UCL claim based upon "fiduciary duty," it is barred by law of the case.  *Haines*, 2012 WL 2237366, at *7.  Moreover, Joby does not plead any "breach of fiduciary duty" as to Archer.

Gibson, Dunn & Crutcher LLP

**3.    Joby Has an Adequate Remedy at Law.**

Finally, even a well-pleaded UCL claim would fail here, because the equitable relief Joby seeks is unavailable when an adequate legal remedy exists.  The UCL authorizes only equitable relief—injunction and restitution—not damages.  *See* Cal. Bus. & Prof. Code § 17203.  Where the plaintiff has an adequate remedy at law, relief under the UCL is foreclosed.  *Green Crush LLC v. Paradise Splash I, Inc.*, 2018 WL 4940825, at *6 (C.D. Cal. May 3, 2018).

Joby has such relief here.  Its inducement (Count 2) claim reaches the same alleged conduct and offers the full range of legal relief—actual damages, exemplary damages, and an injunction.  *See X Corp.*, 724 F. Supp. 3d at 985 (inducing breach of contract is a species of intentional interference with contractual relations); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1194 (9th Cir. 2022) (showing tortious interference with contract claim was "sufficient to support an injunction"); *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1442–43 (9th Cir. 1990) (affirming compensatory and punitive damages award on intentional interference claim under California law).  Because that claim affords Joby a complete legal remedy, there is no room for the UCL's equitable relief.  *Green Crush*, 2018 WL 4940825, at *6.

### V.    CONCLUSION

The Court should grant the motion and dismiss Count 2 in its entirety, dismiss Count 3 as to all trade secret categories other than the "Developer" related claim, and dismiss Count 4 in its entirety.  Moreover, because this is Joby's second attempt to plead these matters, following an Order from the Court specifically identifying prior deficiencies, dismissal should be with prejudice.

Dated: July 6, 2026                                          GIBSON, DUNN & CRUTCHER LLP

                                                             By:    */s/ James L. Zelenay Jr.*
                                                                     James L. Zelenay Jr.
                                                                     Josh A. Krevitt
                                                                     Orin Snyder (*pro hac vice*)

                                                             *Attorney for Defendant and Counterclaimant
                                                             Archer Aviation Inc.*

23