QUINN EMANUEL URQUHART & SULLIVAN, LLP
Alex Spiro (*pro hac vice*)
  alexspiro@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Sara Pollock (Bar No. 281076)
  sarapollock@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Plaintiff and Counterclaim
Defendant Joby Aero, Inc., and
Counterclaim Defendant Joby Aviation, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| Joby Aero, Inc.,<br><br>              Plaintiff,<br><br>       v.<br><br>Archer Aviation Inc., and<br>George Kivork,<br><br>              Defendants.<br><br>Archer Aviation Inc.,<br><br>              Counterclaimant,<br><br>       v.<br><br>Joby Aero, Inc., and<br>Joby Aviation, Inc.,<br><br>              Counterclaim Defendants. | **Case No. 5:25-cv-10703-SVK**<br><br>**COUNTERCLAIM DEFENDANTS JOBY AERO, INC. AND JOBY AVIATION, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE AND DISMISS COUNTERCLAIMANT ARCHER AVIATION INC.'S AMENDED COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Judge:**    Hon. Susan van Keulen<br><br>Hearing Date:      September 8, 2026<br>Hearing Time:      10:00 AM<br>Hearing Location:      Courtroom 6 – 4th Floor |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................3

INTRODUCTION.............................................................................................................3

ARCHER'S ALLEGATIONS ............................................................................................4

LEGAL STANDARD ........................................................................................................6

ARGUMENT ....................................................................................................................7

I.      ARCHER'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON*. .....................7

II.     ARCHER FAILS TO STATE A LANHAM ACT CLAIM. ..................................9

        A.      Archer Fails to Allege "Commercial Advertising or Promotion."...............9

        B.      Archer's Lanham Act Allegations Fail Rule 9(b). ...................................12

                1.      Archer's Abuse of "On Information and Belief" Allegations.....................12

                2.      Archer Fails to Plead Joby's Allegedly False Statements with Specificity...................................................................................13

        C.      Archer Fails to Allege Proximate Causation............................................16

        D.      Archer's Lanham Act Claim Separately Fails Under Rule 8. .................18

III.    ARCHER FAILS TO STATE A CALIFORNIA UCL CLAIM........................................19

        A.      Archer Does Not Allege "Unfair" Conduct. ............................................19

        B.      Archer's "Fraudulent" Allegations Fail Rule 9(b). .................................20

        C.      Archer's "Unlawful" Allegations Fall with Its Lanham Act Claim.........................21

IV.     THE COURT SHOULD STRIKE ARCHER'S UCL CLAIM AS SLAPP........................21

V.      ARCHER'S COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE..........................................................................................23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AbCellera Biologics Inc. v. Bruker Cellular Analysis*,
  2024 WL 37213 (N.D. Cal. Jan. 2, 2024) ............................................................... 8

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 15

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.
  Publications, Inc.*,
  108 F.3d 1147 (9th Cir. 1997)............................................................................. 20

*AmeriCare MedServices, Inc. v. City of Anaheim*,
  2017 WL 5592892 (C.D. Cal. Apr. 21, 2017), *aff'd*, 735 F. App'x 473 (9th Cir.
  2018)................................................................................................................. 9, 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................... 7, 18

*Aureflam Corp. v. Pho Hoa Phat I, Inc.*,
  375 F. Supp. 2d 950 (N.D. Cal. 2005) ................................................................ 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 6, 7

*Benefield v. Bryco Funding, Inc.*,
  2014 WL 4060252 (N.D. Cal. Aug. 14, 2014)..................................................... 19

*Bjorklund v. Cnty. of Santa Barbara*,
  2024 WL 3009313 (C.D. Cal. Jan. 30, 2024)...................................................... 13

*Bly-Magee v. California*,
  236 F.3d 1014 (9th Cir. 2001)............................................................................. 17

*Brosnan v. Tradeline Sols., Inc.*,
  2009 WL 10695119 (N.D. Cal. Feb. 13, 2009).................................................... 14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  973 P.2d 527 (Cal. 1999) .................................................................................... 19

*Celonis SE v. SAP SE*,
  2025 WL 1810260 (N.D. Cal. June 30, 2025) ..................................................... 11

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013)............................................................................. 18

*Choon's Design, LLC v. ContextLogic Inc.*,
    2020 WL 6891824 (N.D. Cal. Nov. 24, 2020).................................................................. 14

*CoreCivic, Inc. v. Candide Grp., LLC*,
    46 F.4th 1136 (9th Cir. 2022)....................................................................... 21, 22, 23

*Creative Mobile Techs., LLC v. Flywheel Software, Inc.*,
    No. 16-CV-02560-SI, 2017 WL 679496 (N.D. Cal. Feb. 21, 2017)...................................... 19

*Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC*,
    76 Cal. App. 5th 651 (2022).......................................................................... 22, 23

*Deveraux v. Sison*,
    2021 WL 806929 (D. Ariz. Mar. 3, 2021) ............................................................. 11

*Diamond State Ins. Co. v. Marin Mountain Bikes, Inc.*,
    2012 WL 6680259 (N.D. Cal. Dec. 21, 2012) ......................................................... 12

*Dorsey v. Nat'l Enquirer, Inc.*,
    973 F. 2d 1431 (9th Cir. 1992)........................................................................ 12

*E & E Co., Ltd. v. Kam Hing Enters., Inc.*,
    2009 WL 482240 (N.D. Cal. Feb. 25, 2009)....................................................... 14, 21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014)......................................................................... 19

*Franey v. Advanced Micro Devices, Inc.*,
    2025 WL 3281420 (N.D. Cal. Nov. 25, 2025).......................................................... 17

*Genus Lifesciences Inc. v. Lannett Co., Inc.*,
    2019 WL 4168958 (N.D. Cal. Sept. 3, 2019)............................................. 10, 11, 12

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008)......................................................................... 7

*Guardant Health, Inc. v. Natera, Inc.*,
    2025 WL 2106522 (N.D. Cal. July 28, 2025) ......................................................... 21

*Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*,
    2016 WL 304764 (N.D. Cal. Jan. 26, 2016) ........................................................... 6

*Intuit Inc. v. HRB Tax Grp., Inc.*,
    2024 WL 4093918 (N.D. Cal. Sept. 5, 2024)........................................................... 7

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
    299 F.3d 1242 (11th Cir. 2002)....................................................................... 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)........................................................... 7, 12, 15, 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ........................................................................................................ 16

*Marshall v. Procter & Gamble Co.*,
2025 WL 2662863 (N.D. Cal. Sept. 17, 2025) ........................................................... 24

*Neubronner v. Milken*,
6 F.3d 666 (9th Cir. 1993) ............................................................................................. 12

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
2016 WL 2621872 (N.D. Cal. May 9, 2016) .............................................................. 12

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
769 F. Supp. 3d 1067 (N.D. Cal. 2025) ............................................................... 10, 11

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
630 F.3d 866 (9th Cir. 2010) ........................................................................................ 16

*RPost Holdings, Inc. v. Trustifi Corp.*,
2012 WL 12952728 (C.D. Cal. May 11, 2012) ......................................................... 10

*Sanders v. Brown*,
504 F.3d 903 (9th Cir. 2007) ........................................................................................... 8

*Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*,
957 F. Supp. 2d 1189 (S.D. Cal. 2013) ...................................................................... 14

*Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
660 F. Supp. 3d 863 (N.D. Cal. 2023) ........................................................................ 15

*Sosa v. DIRECTV, Inc.*,
437 F.3d 923 (9th Cir. 2006) ........................................................................................... 8

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d
1187 (9th Cir. 2001) ......................................................................................................... 7

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) ...................................................................................... 19

*Synopsys, Inc. v. ATopTech, Inc.*,
No. C 13-2965 MMC, 2015 WL 4719048 (N.D. Cal. Aug. 7, 2015) ..................... 19

*Total Recall Techs. v. Luckey*,
2016 WL 1070656 (N.D. Cal. Mar. 18, 2016) .......................................................... 20

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...................................................................... 21

-iv-    CASE NO. 5:25-CV-10703-SVK

JOBY'S MOTION TO STRIKE AND DISMISS ARCHER'S AMENDED COUNTERCLAIMS

*Ebeid ex rel. U.S. v. Lungwitz*,
  616 F.3d 993 (9th Cir. 2010)...................................................................................... 14

*UCAR Tech. (USA) Inc. v. Yan Li*,
  2018 WL 2555429 (N.D. Cal. June 4, 2018) ............................................................. 20

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)...................................................................................... 7

*Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*,
  2019 WL 9050859 (C.D. Cal. Aug. 5, 2019) ............................................................. 11

**Statutes**

15 U.S.C. § 1125(a)(1)(B)..................................................................................................... 9, 10

Cal. Bus. & Prof. Code § 17200........................................................................................... 3

Cal. Code Civ. Proc. § 425.16............................................................................................ 24

Cal. Code. Civ. Proc. § 425.16(b)(1) ................................................................................ 21

**Other Authorities**

Fed. R. Civ. Proc. 8 ............................................................................................................ 18

Fed. R. Civ. Proc. 9(b) ....................................... 1, 3, 7, 12, 14, 15, 16, 18, 19, 20, 21, 24

Fed. R. Civ. Proc. 12(b)(6)................................................................ 6, 21, 22, 23, 24

## NOTICE OF MOTION AND MOTION

**TO THE CLERK OF THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 8, 2026 at 10:00 AM, or as soon thereafter as the matter may be heard, in Courtroom 6 of the above-entitled court, located at the Robert F. Peckham Federal Building and United States Courthouse, 280 South 1st Street, San Jose, CA 95113, Counterclaim Defendants Joby Aero, Inc., and Joby Aviation, Inc. ("Counterclaim Defendants") will and hereby do respectfully move this Court to strike and dismiss the amended counterclaims filed by Archer Aviation Inc. against Counterclaim Defendants.

The basis for Counterclaim Defendants' motion to strike and dismiss is as follows:

- Counterclaimant Archer Aviation, Inc.'s ("Archer's") claim alleged under California's Unfair Competition Law (the "UCL") is subject to a special motion to strike under California's anti-SLAPP law;

- All of the counterclaims asserted by Archer are barred by the *Noerr-Pennington* doctrine;

- Archer has failed to plead "commercial advertising or promotion," as required to state a Lanham Act false advertising claim;

- Archer has failed to plead its alleged Lanham Act false advertising claim with particularity, as required by Federal Rule of Civil Procedure 9(b);

- Archer has failed to plead its UCL claim, premised on fraud, with particularity, as required by Federal Rule of Civil Procedure 9(b);

- Archer has failed to plead proximate causation, as required to state a Lanham Act false advertising claim;

- Archer has failed to plead conduct that violates the antitrust laws, as required to state a UCL claim premised on unfair conduct; and

- Archer's UCL claim premised on unlawful conduct should be dismissed because it is predicated entirely on Archer's Lanham Act claim, and that claim is subject to dismissal.

This Motion is based on this Notice of Motion and Motion to Strike and Dismiss, Memorandum of Points and Authorities, the pleadings, papers, and records on file in this action, and such oral argument as may be presented at the time of the hearing.

DATED: July 13, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By   */s/ Yury Kapgan*
Yury Kapgan
Alex Spiro
Patrick Schmidt
Sara Pollock
Michael F. LaFond

*Attorneys for Plaintiff and Counterclaim Defendant Joby Aero, Inc., and Counterclaim Defendant Joby Aviation, Inc.*

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Archer Aviation Inc.'s ("Archer's") counterclaims are remarkable for what they do *not* plead. Archer accuses Joby Aero, Inc. and its parent company, Joby Aviation, Inc. (collectively "Joby") of making false and misleading statements to the U.S. Air Force, the Federal Aviation Administration ("FAA") and the White House. But Archer does not plead *what* Joby said (or did not say) that was allegedly false and misleading. In fact, Archer admits that it *does not know* what Joby may (or may not) have said to any of those government entities. In many cases, Archer fails to plead *to whom* Joby made the statements (or possibly omissions), *where* the statements were made, *whether* the statements were written or oral, or even *when* the statements were made. Archer's "allegations" repeatedly invoke "information and belief" to speculate that Joby must have made some unidentified false statements or omissions to some unidentified persons over the course of Joby's working relationship with multiple government entities that spanned over *seven years* on a number of different projects, contracts, and amendments. These accusations ignore the Court's instructions to comply with Rule 9(b).

But the Court need not wade into the ambiguous (and near-universal "information and belief") allegations to resolve Joby's motion. Archer's amendments do make one point clear: Archer's claims are barred by *Noerr-Pennington* because they are based entirely on statements Joby allegedly made in the petitioning process with government agencies to participate in two government programs (AFWERX and eIPP). For that reason alone, Archer's counterclaims should be dismissed outright. Additionally, because Archer has sued Joby over protected petitioning activity, its California state law claim should be stricken under California's anti-SLAPP statute.

But, even if the Court delves into Archer's allegations, dismissal is appropriate for myriad additional reasons. In addition to failing Rule 9(b)'s "who, what, when, where, and how" standard, Archer's overreliance on "information and belief" allegations separately militates for dismissal. Archer's claims also fail for want of necessary elements: Archer's Lanham Act claim fails to allege "commercial advertising or promotion" and proximate cause, and Archer's allegations under California's Unfair Competition Law (California Business and Professions Code section 17200, the

"UCL") fail to plead antitrust violations or antitrust injury.  The Court should strike Archer's UCL claim as SLAPP, dismiss Archer's Lanham Act claim, and both dismissals should be with prejudice.

### ARCHER'S ALLEGATIONS

Archer's amended counterclaims allege that Archer and Joby are competing manufacturers of electric vertical takeoff and landing ("eVTOL") aircraft, and that the market for eVTOL aircraft is "global" and "destined to be highly profitable."  Dkt. 84 ¶¶ 1, 25, 28.  Archer complains that Joby is competing in the eVTOL market unfairly, through an alleged "pattern of false and/or misleading statements to U.S. government decisionmakers concerning Joby's domestic manufacturing, vertical integration, and supply-chain practices."  *Id.* ¶ 1.  Archer alleges Joby "ma[de] false and/or misleading statements regarding [its] supply chain to government regulators with respect to the U.S. Air Force AFWERX Agility Prime program and the White House and FAA's eVTOL Integration Pilot Program ('eIPP') . . . by failing to disclose to those same entities [Joby's purported] pervasive connections to and reliance on China for [its] equipment[] component parts."  *Id.* ¶ 18.

Despite alleging a "pattern of false and/or misleading statements," *id.*, Archer goes on to admit that it does not know what Joby may-or-may-not have said to the U.S. Air Force, the FAA, or the White House.  Per Archer, "the exact content of Joby Aero's statements to the U.S. Air [F]orce . . . are known only to Joby and the United States," *id.* ¶ 76, and "the exact details of Joby's submissions [to the FAA and the White House] are known only to Joby and the government."  *Id.* ¶ 91.  In addition to not identifying what, specifically, Joby stated (or omitted) that was "false and/or misleading," Archer's counterclaims are also silent as to (i) *whom* at the U.S. Air Force, the FAA, or the White House Joby made these unknown statements (or omissions), (ii) *when* they were made (spanning over at least seven years from 2020 through 2026), and (iii) *where* these unknown statements (or omissions) may be found.  *See id.* ¶¶ 60-99.  The best Archer can muster is that Joby's "promotional statements had the tendency to deceive a substantial segment of that relevant audience," that "audience" being "multiple government agencies including the U.S. Air Force and the FAA."  *Id.* ¶ 115-16.

Archer tacitly acknowledges that its claims lack the pertinent facts because all of its allegations regarding Joby's (unidentified) false statements and/or omissions are made "on

information and belief." *See id.* ¶¶ 2, 18, 29, 61, 65, 69, 76, 79, 82, 90-92, 95-96, 98, 101-03, 112-14 (repeated allegations of falsity in representations to government entities, all made on "information and belief").  Archer defends its extensive reliance on "information and belief" allegations regarding "falsity" by stating: "Archer's allegations on information and belief are based on specific factual information that makes the inference of falsity plausible, including: [1] Joby's contemporaneous and ongoing operation of Joby China; [2] Joby's documented reliance on China-based suppliers and manufacturing inputs . . . [3] Joby China's receipt of Chinese government grants and CCP-linked designations; and [4] Joby's affirmative, public efforts to conceal its China ties—including taking down the Joby China website—which are irreconcilable with [5] the truthful, complete foreign-affiliation disclosures that AFWERX participation required [and] [6] [f]urthermore, Joby could not simultaneously have made the truthful disclosures the program demanded and been admitted into it on the terms it obtained." *Id.* ¶ 77 (numbering added).  Archer's arguments are internally contradictory. Archer claims it must rely on "information and belief" because the relevant information is "peculiarly within the possession and control of Joby and the United States Government and is not publicly available to Archer." *Id.* ¶ 77. Yet Archer simultaneously points to "documented" evidence and "the terms [Joby] obtained." Information cannot be "documented" and known to Archer—apparently including the terms of Joby's participation in the AFWERX program—and at the same time "peculiarly within the possession and control" of Joby and the government.

With the lone exception of Joby's publicly-disclosed operation of a China-based subsidiary, the "specific factual information" Archer relies on to support its "information and belief" allegation of falsity is *itself* alleged "on information and belief." *Compare id.* ¶ 77, *with id.* ¶¶ 32, 50, 52  (last bullet point) (allegations about [2] Joby's "documented reliance on China-based suppliers and manufacturing inputs" are all made "on information and belief"); *compare id.* ¶ 77, *with id.* ¶¶ 38-40, 50 (allegations about [3] "Joby China's receipt of Chinese government grants and CCP-linked designations" are all made "on information and belief"); *compare id.* ¶ 77, *with id.* ¶¶ 32, 53, 54 (allegations about [4] Joby's "public efforts to conceal its China ties—including taking down the Joby China website" are all made "on information and belief"); *compare id.* ¶ 77, *with id.* ¶ 61

(allegation that [5] Joby was "required to make representations concerning manufacturing practices, supply chains, foreign affiliations, and corporate structure" to participate in AFWERX is made "on information and belief"); *compare id.* ¶ 77, *with id.* ¶¶ 79, 91 (allegations that [6] Joby would not have "been admitted into [the programs] on the terms it obtained" all made "on information and belief"). Thus, Archer's ***only*** factual allegation in support of its "falsity" claim is Joby's operation of a China-based subsidiary. All of Archer's other "facts" are alleged "on information and belief."

In sum, Archer has sued Joby because Joby allegedly made false statements (or possibly omissions) to the U.S. Air Force, the FAA, or the White House; but Archer cannot say what Joby actually told those government departments, who Joby communicated with, when Joby made these statements (or omissions), or where they may be found. *Id.* ¶¶ 76, 91. And the only non-"information and belief" fact supporting Archer's remaining and extensive "on information and belief" allegations of "falsity" is the fact that Joby operates a China-based subsidiary. *Compare id.* ¶ 77, *with id.* ¶¶ 32, 38-40, 50, 52-54, 61, 79, 91. That is insufficient.

In fact, Archer's sole alleged fact—that Joby happens to maintain a subsidiary located in China—undermines Archer's theories more than it helps them. As Joby pointed out in response to Archer's original counterclaim, Joby has expressly disclosed operations in Shenzhen, China in every annual report filed with the Securities and Exchange Commission (SEC) since Joby became publicly traded. Dkt. 44 at 3. Archer then goes on to cite other publicly available information regarding Joby's subsidiary in China including job postings in China (Dkt. 84 ¶ 35) and shipping records of goods (*id.* ¶ 34). But by citing SEC filings and other information publicly available using Google, Archer undermines its own allegations that Joby is "concealing" its China-based subsidiary.

## LEGAL STANDARD

On a motion to dismiss counterclaims under Federal Rule of Civil Procedure 12(b)(6), "the standards that apply to the complaint apply to the counterclaims as well." *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, 2016 WL 304764, at *2 (N.D. Cal. Jan. 26, 2016). Both claims and counterclaims are subject to dismissal under that rule where the claimant does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the Court will generally accept well-pled allegations as true, it need not accept "allegations that contradict matters properly subject to judicial notice or by exhibit.  Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001)). Additionally, claims cannot survive a motion to dismiss when the plaintiff fails to make "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis in original) (internal quotation omitted).

Additionally, Rule 9(b) "applies not only to specific acts of fraud but to any claim based on 'a unified fraudulent course of conduct'" including Archer's Lanham Act claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003)); *see* Dkt. 69 at 30 (citing *Vess*). Put differently, "where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable." *Intuit Inc. v. HRB Tax Grp., Inc.*, 2024 WL 4093918, at *4 (N.D. Cal. Sept. 5, 2024), *cited with approval in* Dkt. 69 at 30. Archer further "ground[s]" or "sound[s]" its UCL claim in fraud, and thus the claim "must satisfy the particularity requirements of Rule 9(b)"). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To comply with Rule 9(b), Archer's complaint must identify "the who, what, when, where, and how of the misconduct alleged." *Kearns*, 567 F.3d at 1126.

<u>**ARGUMENT**</u>

**I.    ARCHER'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON*.**

Despite extensive gaps in Archer's pleading (including Archer's inability to identify any specific "false" statements), one thing is clear: Archer has sued Joby for petitioning the government, and Archer's claims are thus barred by *Noerr-Pennington*.  "The *Noerr–Pennington* doctrine derives from the First Amendment's guarantee of 'the right . . . to petition the Government,'" and "[u]nder the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v. DIRECTV, Inc.*,

437 F.3d 923, 929 (9th Cir. 2006).

"*Noerr–Pennington* immunity protects private actors when they . . . enter contracts with the government," which includes protection from any "liability for negotiating and entering into" those contracts. *Sanders v. Brown*, 504 F.3d 903, 912 (9th Cir. 2007). "This immunity applies to common law and statutory claims under state and federal law, including unfair competition claims under the Lanham Act and California's Unfair Competition Law." *AbCellera Biologics Inc. v. Bruker Cellular Analysis*, 2024 WL 37213, at *4 (N.D. Cal. Jan. 2, 2024) (collecting cases). Thus, *Noerr-Pennington* bars claims under the Lanham Act and UCL that seek to impose liability based on petitioning the government to win a contract or participate in a government program.

Archer's counterclaims attempt to do exactly what *Noerr-Pennington* forbids. Archer seeks to impose liability on Joby because Joby petitioned the U.S. Air Force, the FAA, and the White House for inclusion in the AFWERX Agility Prime program ("AFWERX") and eVTOL Integration Pilot Program ("eIPP"). *See* Dkt. 84 ¶ 18. Archer's amended counterclaims are premised on statements Joby allegedly made during negotiations with "U.S. government decisionmakers," while petitioning to participate in AFWERX and eIPP. *See id.* ¶ 1 ("This action arises from Joby's . . . statements to U.S. government decisionmakers"); *id.* ¶ 95 (alleging "Joby's . . . statements enabled it to obtain and retain AFWERX Agility Prime contracts and related SBIR and OTA awards"); *id.* ¶ 96 (alleging that, because of Joby's statements to decisionmakers, "Joby was allowed to participate in five pilot projects" under the eIPP). For the avoidance of doubt, Archer's complaint makes clear that *both* of its claims—UCL and Lanham Act—are based on Joby's petitioning activity related to AFWERX and eIPP. *See id.* ¶¶ 100-09 (Archer's UCL claim is based on "statements," and "disclosures, to the applicable government agencies in connection with the AFWERX Agility Prime and eIPP programs"); *see also id.* ¶¶ 110-20 (Archer's Lanham Act claim is based on Joby's "representations to U.S. government agencies").

Additionally, Archer's sole injury is premised on the U.S. government *granting* the relief Joby petitioned for—*i.e.*, allowing Joby to participate in the programs and awarding Joby contracts under those programs. *Id.* ¶¶ 106-09, 117-20. Since Archer's claims are entirely premised on statements Joby made while petitioning the government to participate in government programs

(including negotiating contracts awarded under those programs) both of Archer's claims are prohibited by *Noerr-Pennington*.

*AmeriCare MedServices, Inc. v. City of Anaheim* is instructive. 2017 WL 5592892 (C.D. Cal. Apr. 21, 2017), *aff'd*, 735 F. App'x 473 (9th Cir. 2018). In that case, the plaintiff and defendant were competing companies that both provided emergency ambulance services. 2017 WL 5592892 at *1. The defendant successfully petitioned several cities in Orange County, California to enter into exclusive contracts for ambulance services. *Id.* The plaintiff sued, seeking to impose liability over the defendant's ultimately successful negotiations for exclusive contracts, including because the defendant had allegedly used improper means (political contributions) to obtain the contracts. *Id.* at *3. The court dismissed the plaintiff's claims under the *Noerr-Pennington* doctrine, explaining that the defendant had a First Amendment right to petition the cities for exclusive service contracts, and the defendant's actions in petitioning for those contracts were immunized from liability under *Noerr Pennington*. *See id.* at *4 ("[A]ny conduct by CARE to petition the City Defendants to grant it an exclusive contract plainly falls within the scope of *Noerr-Pennington* immunity."). As in *AmeriCare*, Archer's claims run afoul of *Noerr-Pennington* because they are premised on Joby petitioning the government to participate in AFWERX and eIPP. Dkt. 84 ¶¶ 1, 95-96; *AmeriCare*, 2017 WL 5592892 at *4.

## II.    ARCHER FAILS TO STATE A LANHAM ACT CLAIM.

Even assuming *arguendo* that *Noerr-Pennington* did not apply, Archer's Lanham Act claim should still be dismissed because Archer fails to plead multiple, required elements.

### A.    Archer Fails to Allege "Commercial Advertising or Promotion."

Archer's false advertising[1] claim fails at the outset, because Archer does not identify, much less allege, any "commercial advertising or promotion." "A false advertising claim only applies to

---

[1]    Archer's amended counterclaims inexplicably rename its Lanham Act claim from "false advertising" to "false promotion." But that is a distinction without a difference: Section 43(a) of the Lanham Act recognizes a single cause of action for "misrepresentat[ion]" "in commercial advertising *or* promotion." 15 U.S.C. § 1125(a)(1)(B) (emphasis added). Throughout this brief, Joby uses the term "false advertising" because that term appears to be used more commonly by authorities examining 15 U.S.C. section 1125(a)(1)(B).

'commercial advertising or promotion,' 15 U.S.C. § 1125(a)(1)(B), which is defined by the Ninth Circuit as (1) commercial speech by the defendant; (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) that is disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Realtek Semiconductor Corp. v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1095 (N.D. Cal. 2025) (citation omitted).

When determining whether any specific, alleged statement constitutes "commercial advertising or promotion," it must be considered *in isolation* because "Lanham Act claims must be evaluated on a statement-by-statement basis." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 2019 WL 4168958, at *4 (N.D. Cal. Sept. 3, 2019) (rejecting argument that a "combination" of statements, made at different times, could be considered together as "commercial advertising or promotion") (citing *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247-48 (11th Cir. 2002)); *see also Realtek*, 769 F. Supp. 3d at 1096 ("[A] plaintiff must allege the 'who, what, when, where, and how' of *each* alleged misrepresentation." (emphasis added)). Archer's allegations fall short of the Ninth Circuit's requirement for pleading "commercial advertising or promotion."

Archer fails to allege "commercial speech" "for the purpose of influencing consumers to buy [Joby's] goods or services" because Archer fails to allege the actual statements at issue. While Archer's claims are premised on "Joby's . . . statements to U.S. government decisionmakers" (Dkt. 84 ¶ 1), Archer admits it *does not know* what Joby actually said to those "decisionmakers." *See id.* ¶ 76 (admitting "the exact content of Joby Aero's statements to the U.S. Air [F]orce . . . are known only to Joby and the United States"), *id.* ¶ 91 (admitting "the exact details of Joby's submissions are known only to Joby and the government"). By openly admitting that it does not know the content of Joby's statements, Archer concedes its inability to adequately plead commercial speech.

Archer's failure to plead commercial speech is particularly problematic because statements intended to solicit *investments*—as opposed to the sale of products—are not actionable under the Lanham Act. *See, e.g.*, *RPost Holdings, Inc. v. Trustifi Corp.*, 2012 WL 12952728, at *7 (C.D. Cal. May 11, 2012) ("[S]tatements to potential investors . . . were not made for the purpose of influencing consumers to buy defendant's goods or services." (internal quotation omitted)); *see also Genus*

*Lifesciences*, 378 F. Supp. 3d at 834-35 (similar, collecting cases).  This principle squarely applies here since, as Archer pleads, "[t]he federal programs" at issue in its complaint, AFWERX and eIPP, "were not ordinary research grants or regulatory initiatives. They were ***targeted government investments*** intended to accelerate the commercialization of trusted American eVTOL manufacturers."  Dkt. 84 ¶ 94 (emphasis added).  Thus, as pleaded, Joby's alleged petitions to the government decisionmakers are not actionable under the Lanham Act.

There is a more fundamental problem with Archer's Lanham Act claim: Archer fails to allege that Joby's statements were "disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry."  *Realtek*, 769 F. Supp. 3d at 1095; *see also Washoutpan.com, LLC v. HD Supply Constr. Supply Ltd.*, 2019 WL 9050859, at *5 (C.D. Cal. Aug. 5, 2019) ("While Plaintiff alleges HD Supply's pans are 'falsely marked' as originating in the United States because they are made in 'South Korea or China' (FAC ¶ 40), Plaintiff fails to allege HD Supply 'advertised' the pans as originating in the United States.").  According to Archer, Joby's alleged statements to the U.S. Air Force, the FAA, and the White House were so narrowly disseminated that Archer itself *does not know what the statements were*.  Dkt. 84 ¶¶ 76, 91.  Where a complaint "alleges only a 'handful of private statements,' and does not include any real detail about them," the complaint inherently fails to allege "that the statements at issue were 'sufficiently disseminated to the relevant purchasing public.'"  *Celonis SE v. SAP SE*, 2025 WL 1810260, at *2 (N.D. Cal. June 30, 2025) (internal citation omitted).

Archer's failure to identify specific, known statements made by Joby to various U.S. government departments is particularly troubling because Archer alleges that the parties compete in a "***global*** eVTOL market."  Dkt. 84 ¶ 25 (emphasis added).  Archer cannot point to a "global" market only to later claim that Joby's unknown statements to a single, domestic entity (*i.e.*, the U.S. government) were "sufficiently disseminated" to be actionable under the Lanham Act.  *See, e.g.*, *Deveraux v. Sison*, 2021 WL 806929, at *2 (D. Ariz. Mar. 3, 2021) (plaintiff failed to allege false statement was sufficiently disseminated where complaint only identified "one specifically alleged instance of misinformation aimed at one market participant" despite allegations that "there is a global market for [the plaintiff's] services"); *see also Openwave Messaging, Inc. v. Open-Xchange,*

*Inc.*, 2016 WL 2621872, at *5 (N.D. Cal. May 9, 2016) (plaintiff who alleged that the relevant market included "telecommunications providers worldwide" could not later claim the "potential purchasers in the market are relatively limited" for the purpose of showing whether a statement was sufficiently disseminated).

As noted above, Archer cannot rehabilitate these defects by attempting to combine other, unrelated statements alleged in its counterclaims, because "Lanham Act claims must be evaluated on a statement-by-statement basis." *Genus Lifesciences*, 2019 WL 4168958, at *4. Archer's failure to allege commercial advertising or promotion is fatal to its Lanham Act claim.

**B.     Archer's Lanham Act Allegations Fail Rule 9(b).**

Aside from failing to allege "commercial advertising or promotion," Archer's Lanham Act claim suffers an additional, fatal defect: Archer does not plead Joby's allegedly false statements with specificity, as required by Federal Rule of Civil Procedure 9(b) and this Court's prior Order. Because Archer predicates its Lanham Act claim on the theory that Joby engaged in knowing and intentional misrepresentations, Rule 9(b) applies. *See* Dkt. 84 ¶¶ 103, 114. Therefore, Archer was required to (but did not) comply with Rule 9(b).

**1.     Archer's Abuse of "On Information and Belief" Allegations.**

Before addressing Rule 9(b)'s "who, what, when, where, and how" standard (*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)), Joby is compelled to address Archer's extensive, improper reliance on "information and belief" allegations. As the Ninth Circuit has explained, "[t]he term 'information and belief' is [a] standard legal term which is used to indicate that [an] allegation is not based on [] firsthand knowledge." *Dorsey v. Nat'l Enquirer, Inc.*, 973 F. 2d 1431, 1437 (9th Cir. 1992) (citation omitted). Accordingly, under Rule 9(b) a party "who makes allegations on information and belief must state the factual basis for the belief." *Diamond State Ins. Co. v. Marin Mountain Bikes, Inc.*, 2012 WL 6680259, at *15 (N.D. Cal. Dec. 21, 2012) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). Dismissal is appropriate where a party "ma[kes] only conclusory allegations, or allegations founded 'upon information and belief,' without providing any factual basis upon which its 'information and belief' is based." *Diamond State*, 2012 WL 6680259, at *15. As discussed *supra* at pp. 4-5, Archer's counterclaims never actually provide a "factual

basis" to support their vast "information and belief" allegations of falsity; instead, Archer *bootstraps* "information and belief" allegations into "information and belief" conclusions.

For example, Archer alleges (i) "on information and belief" that Joby China "received direct technology grants and support from the Chinese government and is listed in Shenzhen's Prospective Technology-Based Small Medium Enterprise Registry—a registry specifically designed to align private enterprises with [Chinese Communist Party ("CCP")]-directed innovation," Dkt. 84 ¶ 38, and (ii) "on information and belief" that "the CCP's Ministry of Industry and Information Technology, Ministry of Commerce, and Ministry of Finance have provided Joby China with multiple monetary grants as well as" other financial incentives. *Id.* ¶ 39. Archer then bootstraps those "information and belief" allegations to reach a further "information and belief" conclusion— its conclusory allegation of falsity—by claiming "Archer's allegations on information and belief are based on specific factual information that makes the inference of falsity plausible, including: . . . Joby China's receipt of Chinese government grants and CCP-linked designations." *Id.* ¶ 77. But, as demonstrated above, Archer does not actually allege that Joby China received "Chinese government grants and CCP-linked designations" *other than* "on information and belief."

Archer's extensive misuse of "information and belief" pleading is grounds for dismissal. As discussed *supra* at pp. 4-5, with the exception of Joby operating a China-based subsidiary, *all* of the "specific factual information" Archer points to in support of its "information and belief" allegation of falsity—the central claim on which its Lanham Act claim (and entire amended pleading) relies, *see* Dkt. 84 ¶ 1—is *also* stated on "information and belief." Archer's failure to support its "information and belief" conclusions with facts *not* stated "on information and belief" is fatal to its claims. *See, e.g.*, *Bjorklund v. Cnty. of Santa Barbara*, 2024 WL 3009313, at *5 (C.D. Cal. Jan. 30, 2024) (dismissing complaint that failed to "allege[] some facts in addition[] to allegations made on information and belief").

### 2. Archer Fails to Plead Joby's Allegedly False Statements with Specificity.

Setting aside Archer's abuse of "information and belief" allegations, Archer's claims separately fail Rule 9(b) because Archer fails to plead the "who, what, when, where, and how of the

misconduct" alleged in the complaint. *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). To begin, Archer openly admits that it has not alleged "what" Joby supposedly said (or did not say) that was false. *See* Dkt. 84 ¶ 76 (admitting "the exact content of Joby Aero's statements to the U.S. Air [F]orce . . . are known only to Joby and the United States"), *id.* ¶ 91 (admitting "the exact details of Joby's submissions are known only to Joby and the government"). That alone is fatal to Archer's claims. For example, in *Aureflam Corp. v. Pho Hoa Phat I, Inc.*, 375 F. Supp. 2d 950 (N.D. Cal. 2005), the court dismissed a claim alleging the defendant had made fraudulent statements in an application to the Patent and Trademark Office because the complaint did not identify any specific, fraudulent statements. *Id.* at 954 ("While [the plaintiff] contends that it has alleged all it can, [the plaintiff] certainly is in a position to allege facts related to the trademark application itself, such as the specific false statements in the application."); *see also E & E Co., Ltd. v. Kam Hing Enters., Inc.*, 2009 WL 482240, at *3-4 (N.D. Cal. Feb. 25, 2009) (dismissing claim sounding in fraud where, "plaintiff ha[d] failed to allege what defendants actually stated to the IRS, and when" that allegedly misled the IRS). Therefore, because Archer alleges that Joby made false statements (or omissions) when petitioning the U.S. Air Force, the FAA, and/or the White House to participate in AFWERX and eIPP, Archer is required to identify what *specifically* Joby allegedly said or did not say. But Archer never does. Dkt. 84 ¶¶ 76, 91.

Nor is Archer's failure to identify specific false statements the only fatal flaw in its Lanham Act claim: Archer *also* fails to identify to whom the allegedly false statements were made, when they were made, or even where they may be found. *See Brosnan v. Tradeline Sols., Inc.*, 2009 WL 10695119, at *4 (N.D. Cal. Feb. 13, 2009) (dismissing Lanham Act false advertising claim because, in addition to other flaws, "[n]or has Plaintiff alleged when the allegedly misleading statements were made and to whom"); *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020) (granting motion to dismiss Lanham Act false advertising claim where "the complaint is devoid of specifics about when and where the [allegedly false] statements were made"); *see also Seoul Laser Dieboard Sys. Co. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013) ("District courts in the Ninth Circuit have held that the heightened pleading standard of Federal Rule of Procedure 9(b) applies to false advertising claims and requires the plaintiff to plead

the 'time, place, and specific content of the false representations,' the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading.") (collecting cases).

It is also worth noting that Rule 9(b)'s heightened pleading requirements "appl[y] regardless of whether the statements at issue are misleading because they are affirmative misrepresentations or because they contain material omissions." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 564 (N.D. Cal. 2019). To the extent Archer's reliance on omissions (as opposed to affirmative misrepresentations) may be a "semantical attempt to evade the requirement of Rule 9(b)," Archer's claims are nonetheless "functionally equivalent to [] affirmative misrepresentation allegations." *Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F. Supp. 3d 863, 875-77 (N.D. Cal. 2023) ("It is fundamental that every affirmative misrepresentation of fact works [as] a concealment of the true fact.").

Archer's failure to plead the "what, when, where, and to whom" of its false advertising claim is not a mere technical defect. The entire purpose of the Rule 9(b) particularity standard is to require that parties alleging fraud "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (cleaned up). That concern is front-and-center here, because Archer's counterclaims allege that Joby's work with AFWERX and eIPP encompasses multiple government agencies, contracts, amendments, and projects, and spans the course of at least seven years: 2020 through 2026. *See* Dkt. 84 ¶ 68 ("In or about October 2020, the U.S. Air Force, through AFWERX and the Agility Prime program, first selected Joby Aero" and "The AFWERX agreements . . . have been amended several times through at least 2025"); *id.* ¶ 70 (referencing "Joby's 2022 SBIR Phase III Agreement and 2025 amendment of that agreement"); *id.* ¶ 89 ("On or about March 9, 2026, the FAA announced the selection of participants in the eIPP" including Joby."). Archer's allegations that Joby has made unidentified false statements (or maybe omissions), to unidentified persons, at one or more of three different government departments (the U.S. Air Force, FAA, and White House), in unidentified communications—maybe oral, maybe written (Archer does not say)—at some unidentified time between 2020 and 2026, provides no meaningful notice to Joby at all. Faced with those sorts of allegations, Joby is unable to defend

itself beyond "just deny[ing] that [it] ha[s] done anything wrong." *Kearns*, 567 F.3d at 1124. Archer's Lanham Act counterclaim fails Rule 9(b).

### C.    Archer Fails to Allege Proximate Causation.

Archer's Lanham Act claim separately fails because Archer does not plausibly allege proximate causation. Specifically, the counterclaims fail to allege that any purported harm to Archer was *caused* by Joby's supposedly false statements (or omissions), as opposed to the independent actions of "U.S. government decisionmakers," Dkt. 84 ¶ 1, who decided not to award contracts and projects to Archer for reasons *unrelated* to Joby's petitions. Under the Lanham Act, "[t]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132-33 (2014); *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 874 (9th Cir. 2010) (where "the United States, not [Plaintiff], was the immediate victim of [the] fraud and better situated to sue . . . we hold that [Plaintiff] cannot show proximate causation based on [] fraud against the United States"). That principle applies here. Archer's theory of causation is zero-sum: where Joby received contracts, awards, or attention from government decisionmakers, Archer supposedly lost out. *See, e.g.*, Dkt. 84 ¶¶ 2, 62, 95, 98, 107. But Archer does not—and seemingly cannot— allege that it would have received the relevant contracts, awards, or attention if Joby had not.

To begin with, Archer makes no allegations that it even applied to participate in the specific AFWERX contracts that Joby was awarded—or that the Air Force was authorized to offer any awards or contracts from that program to Archer.[2] *See* Dkt. 84 ¶¶ 66-82. Similarly, Archer acknowledges there were "three [eIPP] projects in which Archer was included as a partner," *id.* ¶ 89, while at the same time making no allegation to support the inference that Archer sought to partner in or was eligible (or qualified) to participate in, the additional eIPP projects in which Joby is

---

[2]  A more plausible explanation—one that Archer may be reluctant to address—is that Archer trails Joby in the technical advancement of its aircraft and flight program. Accordingly, it is entirely possible, if not more likely, that this would have precluded Archer's selection regardless.

participating, *id.* ¶¶ 89, 96.[3]

Archer also improperly relies on "information and belief" to allege "Joby consumed governmental attention, technical assistance, operational support, and institutional resources [from the government] that otherwise would have been available to Archer." *Id.* ¶ 98; *id.* ¶ 65. That is insufficient because "[p]leading on information and belief . . . can be used to defend against a motion to dismiss only 'where the facts are peculiarly within the possession and control of the defendant.'" Dkt. 69 at 17 (quoting *Franey v. Advanced Micro Devices, Inc.*, 2025 WL 3281420, at *4 (N.D. Cal. Nov. 25, 2025)). Specific information about the allocation of attention from the U.S. Air Force, the FAA, or the White House is inherently "peculiarly within the possession and control" of those government departments and *not* Joby. Thus, Archer's "information and belief" allegations provide no basis that makes an "inference of culpability plausible." *Franey*, 2025 WL 3281420, at *4. This is particularly true because any allegation that resources were "divert[ed]" away from Archer is attenuated by Archer's admission that there were *other* companies vying for the same programs, contracts, awards, and attention. *See* Dkt. 84 ¶ 94 ("[A] small number of companies qualified for [the AFWERX and eIPP] programs" and *not* just Joby and Archer). Indeed, Archer itself states that "funds allocated to Joby meant they were no longer available to other parties *__like__* Archer," *id.* ¶ 95 (emphasis added)—admitting that the funds would not have necessarily even gone to Archer, but just other companies *like* Archer. Moreover, eIPP projects were not necessarily limited to one private partner per project; indeed, multiple industry partners will support several of the selected programs.

With no plausible allegation that the relevant U.S. government decision makers would have given any more projects, contracts, or attention to Archer, *regardless* of Joby's actions, Archer's claims do not support a reasonable inference that Joby caused any damage to Archer. *See Bly-*

---

[3] Indeed, Archer has publicly announced that it purports *to have* an AFWERX contract further undermining its claim that Joby robbed Archer of opportunities with AFWERX. https://investors.archer.com/news/news-details/2024/Archer-Delivers-First-Midnight-Aircraft-To-The-United-States-Air-Force/default.aspx#:~:text=Last%20month%2C%20the%20U.S.%20Department,at%20up%20to%20%20%24142M*

*Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Beyond AFWERX and eIPP, Archer asserts that it "lost business," forfeited "partnership opportunities," and was deprived of "commercial opportunities." *Id.* ¶¶ 2, 106, 108. Yet Archer fails to identify a single specific deal or name a single company or opportunity that it purportedly lost, much less allege facts demonstrating that it would have secured any such opportunity but for Joby's conduct. And Archer's invocation of lost "investor credibility" is offered without any factual support whatsoever. *Id.* ¶ 106.

### D.    Archer's Lanham Act Claim Separately Fails Under Rule 8.

Even if Rule 9(b) did not apply, Archer's Lanham Act claim would still fail because Archer has failed to meet the Rule 8 pleading standard. Under Rule 8, Archer was required to allege facts that "state a claim to relief that is plausible," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. As further explained by the Ninth Circuit, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are '***merely consistent with***' their favored explanation but are also consistent with the alternative explanation . . . . [s]omething more is needed." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (emphasis added) (quoting *Iqbal*, 556 U.S. at 678). Yet, by its own admission, Archer only alleges facts "merely consistent with" its favored explanation that Joby made misrepresentations.

Archer alleges that, "Joby [made] misrepresentations and omissions to the government" "based on information and belief" because that would be "***consistent with*** the actions Joby has taken writ large to promote itself as an 'American' company and obfuscate its connections to and reliance on China." Dkt. 84 ¶ 51 (emphasis added). But, since Archer admits that it does not actually know what Joby said, Dkt. 84 ¶¶ 76, 91, Archer cannot exclude another possibility: that Joby made no "misrepresentations and omissions" at all. That falls below the Rule 8 standard. *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d at 1108.

Even assuming that Joby made misrepresentations (or omissions), Archer does not plausibly allege that they were material. Instead, Archer only offers *conclusory* "information and belief" allegations that Joby's unidentified "false statements and omissions" were what swayed U.S.

government actors. *See, e.g.*, Dkt. 84 ¶ 113 ("Based on information and belief, the U.S. Air Force relied on Joby Aero's false statements and omissions, as it selected Joby Aero for Agility Prime . . ."). Archer omits any and all facts that could back up this allegation; its claims fail to rule out the possibility that the government would approve of Joby's petitions to join AFWERX and eIPP *despite* having a subsidiary located in China. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (allegations are plausible when pleaded facts "tend[] to exclude the possibility that the [innocuous] explanation is true"). Thus, even if Rule 9(b) did not apply (and it does), Archer's claims would still fail.

## III.    ARCHER FAILS TO STATE A CALIFORNIA UCL CLAIM.

To state a California UCL claim, Archer was required to "allege facts . . . showing that the defendant engaged in a specific business practice that was 'unlawful' (violated a law), that was 'unfair' (significantly threatened or harmed competition) or that was 'fraudulent' (had a tendency to deceive the public)." *Benefield v. Bryco Funding, Inc.*, 2014 WL 4060252, at *4 (N.D. Cal. Aug. 14, 2014). But Archer fails to allege any unfair, unlawful, or fraudulent conduct. Accordingly, Archer fails to state a claim under California's UCL.

### A.    Archer Does Not Allege "Unfair" Conduct.

Archer has not alleged any "unfair" conduct, because Archer's complaint does not allege an antitrust claim or antitrust injury. As explained by the California Supreme Court, "[w]hen a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes [the California UCL], the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law . . . ." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 544 (Cal. 1999); *see also Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008) (same). Here, Archer alleges that Joby is its competitor, *see* Dkt. 84 ¶ 62, and thus Archer should identify actions tantamount to an incipient violation of an antitrust law. But Archer makes no such allegations. *See, e.g.*, *Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-2965 MMC, 2015 WL 4719048, at *10 (N.D. Cal. Aug. 7, 2015) (quoting *Cel-Tech*, 973 P.2d at 546); *Creative Mobile Techs., LLC v. Flywheel Software, Inc.*, No. 16-CV-02560-SI, 2017 WL 679496, at *6 (N.D. Cal. Feb. 21, 2017).

Instead, Archer offers only the conclusory allegation that Joby's conduct "violated the policy and spirit of antitrust laws by distorting the information environment in [the] government-contracting field." Dkt. 84 ¶ 105. That comes nowhere near the relevant test. In order to allege an antitrust claim premised on false statements, Archer was required to allege "that the [allegedly false] representations were [1] clearly false, [2] clearly material, [3] clearly likely to induce reasonable reliance, [4] made to buyers without knowledge of the subject matter, [5] continued for prolonged periods, and [6] not readily susceptible of neutralization or other offset by rivals." *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152 (9th Cir. 1997). Archer pleads none of those elements. At a minimum, it does not allege that the relevant U.S. government departments were "without knowledge of the subject matter," nor that Joby's alleged misrepresentations were "not readily susceptible of neutralization." *See id.*

Even then, Archer would still be required to allege that Joby possessed sufficient "market power" such that its false statements created the possibility of creating a monopoly. *Id.* at 1154. But Archer's complaint says nothing about market power—including the factors the Ninth Circuit considers when analyzing barriers to entry (a necessary component of market power analysis). *See id.* at 1154 ("(1) legal license requirements; (2) control of an essential or superior resource; (3) entrenched buyer preferences for established brands; (4) capital market evaluations imposing higher capital costs on new entrants; and, in some situations, (5) economies of scale."). Archer has not alleged anything approaching a violation of the antitrust laws based on false statements.

But there is a further problem: Archer alleges no antitrust injury. To allege an antitrust injury, Archer must allege "harm to *competition*, which is distinct from a harm to a *competitor*." *Total Recall Techs. v. Luckey*, 2016 WL 1070656, at *5 (N.D. Cal. Mar. 18, 2016) (dismissing UCL claim for failure to allege antitrust injury); *see also UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *7 (N.D. Cal. June 4, 2018) (same). Archer nowhere alleges harm to competition, only that Joby's conduct "worked to the material detriment and harm of Archer" or "damaged Archer." Dkt. 84 ¶¶ 82, 95, 96. Archer has not alleged any "unfair" conduct for UCL purposes.

**B.     Archer's "Fraudulent" Allegations Fail Rule 9(b).**

Allegations of "fraudulent" conduct under the UCL must be alleged with particularity under

Rule 9(b). *See, e.g.*, *E & E Co.*, 2009 WL 482240, at *3 (dismissing UCL claim based on allegations that defendants made false statements that was not pled with requisite particularity); *see also TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017-18 (N.D. Cal. 2012) (dismissing UCL claim under Rule 9(b) because claim "sound[s] in fraud" where plaintiff alleged defendants' conduct was intentional). For the same reasons discussed in the Lanham Act section above, *see supra* at pp. 12-16, Archer has not alleged false and/or misleading statements (or omissions) by Joby under the Rule 9(b) standard.

### C.    Archer's "Unlawful" Allegations Fall with Its Lanham Act Claim.

The sole basis Archer offers for its allegation that Joby's conduct was "unlawful" is that Joby allegedly "violated the Lanham Act." Dkt. 84 ¶ 105. A UCL claim predicated on a Lanham Act violation rises and falls with the Lanham Act claim. *See Guardant Health, Inc. v. Natera, Inc.*, 2025 WL 2106522, at *7 (N.D. Cal. July 28, 2025) ("Ninth Circuit has held that common law, UCL, and FAL claims rise and fall with a parallel Lanham Act claim."). For the same reasons that Archer has failed to plead a Lanham Act claim, *see supra* Part II, Archer fails to plead "unlawful" conduct under the UCL.

### IV.    THE COURT SHOULD STRIKE ARCHER'S UCL CLAIM AS SLAPP.

Joby requests that the Court strike Archer's UCL claim pursuant to California's anti-SLAPP law, California Code of Civil Procedure section 425.16(b)(1).[4] The anti-SLAPP statute, authorizes "a special motion to strike" causes of action that seek to impose liability for acts performed "in furtherance of the [defendant's] right of petition or free speech." Federal courts analyze anti-SLAPP motions to strike using a two-step inquiry. *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022). "The first step requires the defendant to make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Id.* (internal quotation omitted). "At the second step, if, as here, the anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id.*

---

[4] For the avoidance of doubt, Joby is also requesting, in the alternative, that the Court dismiss Archer's UCL claim pursuant to Rule 12(b)(6).

(internal quotation omitted).  "If the special motion succeeds, the defendant is entitled to attorney's fees and costs."  *Id.*

Here, the Court should apply the anti-SLAPP statute because Archer has brought its UCL claim for an improper purpose: to chill Joby's First Amendment right to petition the government to participate in programs such as AFWERX and eIPP and to attempt to disrupt Joby's relationship and standing with the US government.  Accordingly, Archer's lawsuit is classic strategic litigation against public participation ("SLAPP") and an anti-SLAPP motion to strike is appropriate.  Moreover, Joby has made an initial showing that Archer's counterclaims arise from an act in furtherance of Joby's right to free speech as required by *CoreCivic*.  *See* 46 F.4th at 1140.  As discussed in the *Noerr-Pennington* section, *supra* at pp. 7-9, Joby has a First Amendment right to petition the government to participate in programs such as AFWERX and eIPP.  Indeed, Archer's entire suit is based on Joby's petitioning activity—as the California Court of Appeal has held under similar circumstances.  *Id.*

For example, in *Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC*, 76 Cal. App. 5th 651 (2022) the plaintiff and defendant were competitors in the market for United States Army Corps of Engineers dredging contracts.  *Id.* at 658.  The defendant won two contracts, and the plaintiff sued, alleging the defendant was not entitled to the contracts because "its vessel was not 'entirely' built in the United States, a violation of the federal Merchant Marine Act."  *Id.*  The plaintiff then argued its lawsuit did not target protected "petitioning" activity because "the act of performing a contract cannot be categorized as an act in furtherance of the right of petition or free speech"; but the Court of Appeal rejected that argument, affirming the trial court's finding that "the gravamen of [the plaintiff's] allegations are that [the defendant] lied . . . and consequently obtained and performed the contract[ ] as a result of the lie."  *Id.*  at 667.  Thus, the gravamen of the complaint was that the defendant lied to the government in order to qualify for bidding on a contract, which is protected petitioning activity.  *Id.*

Archer's UCL claim is remarkably similar to the UCL claim stricken as SLAPP in *Curtin*.  Archer alleges Joby "ma[de] false and/or misleading statements regarding [its] supply chain to government regulators with respect to the U.S. Air Force AFWERX Agility Prime program and the

White House and FAA's eVTOL Integration Pilot Program ('eIPP') . . . by failing to disclose to those same entities [its] pervasive connections to and reliance on China." Dkt. 84 ¶ 18. Archer then further alleges that, because of Joby's alleged misrepresentations about its relationship to China, "Joby secured at least $131 million in AFWERX Agility Prime contracts and selection for the White House eIPP." *Id.* ¶ 106. Thus, to paraphrase *Curtin*, "the gravamen of [Archer's] allegations are that [Joby] lied . . . and consequently obtained and performed [AFWERX] contract[s] as a result of the lie." 76 Cal. App. 5th at 667. That is protected petitioning activity for anti-SLAPP purposes. *See id.*

Turning to the second step of the anti-SLAPP analysis: where, "as here, the anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *CoreCivic*, 46 F.4th at 1140. Where claimant fails to state a claim under the 12(b)(6) standard, the anti-SLAPP motion to strike should be granted. *Id.* at 1143-45. As discussed *supra* at pp. 7-9 & 19-21, Archer fails to state a UCL claim under the 12(b)(6) standard, because (i) the *Noerr-Pennington* doctrine precludes Archer's UCL claim, and (ii) even if it did not, Archer has failed to plead unfair, fraudulent, or unlawful conduct—including because its "unlawful" allegations fall with its Lanham Act claim. Archer's UCL claim should be stricken.

## V.    ARCHER'S COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Lastly, the Court should dismiss Archer's counterclaims with prejudice, because the errors in Archer's claims cannot be cured. To begin with, this is the second time Archer has confirmed that its claims target Joby's alleged statements to government—not private—officials. *See* Dkt. 69 at 32 (in Archer's original counterclaims "Archer does not point to any private (*i.e.*, non-U.S.-government) person or entity who was the target of or misled by Joby's alleged false advertising"); *see also* Dkt. 84 ¶ 18 (alleging that Archer's amended counterclaims are premised entirely on statements to government officials). That means Archer's claims will always be barred by *Noerr-Pennington*, and should be dismissed with prejudice. *See, e.g.*, *AmeriCare*, 2017 WL 5592892, at *4 (dismissing claims barred by *Noerr-Pennington* with prejudice, because they cannot be cured).

And even if that were not the case, Archer could never overcome Rule 9(b) because Archer has affirmatively pled that it can identify no specific, false statements (or omissions) that Joby allegedly made to the U.S. government.  Dkt. 84 ¶¶ 76, 91.  Archer is not permitted to contradict that allegation in a further amended complaint, rendering any attempt at amendment futile.  *See, e.g.*, *Marshall v. Procter & Gamble Co.*, 2025 WL 2662863, at *6 (N.D. Cal. Sept. 17, 2025) (granting motion to dismiss with prejudice "[b]ecause a party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding," and the plaintiff could not cure defects in the pleading without making contradictions).  Dismissal with prejudice is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should strike Archer's UCL claim as SLAPP, pursuant to California Code of Civil Procedure section 425.16 and dismiss Archer's Lanham Act claim pursuant to Federal Rule of Civil Procedure 12(b)(6); or, in the alternative, the Court should dismiss both Archer's UCL and Lanham Act Claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: July 13, 2026           Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Yury Kapgan*
　　Yury Kapgan
　　Alex Spiro
　　Patrick Schmidt
　　Sara Pollock
　　Michael F. LaFond

*Attorneys for Plaintiff and Counterclaim Defendant Joby Aero, Inc., and Counterclaim Defendant Joby Aviation, Inc.*