QUINN EMANUEL URQUHART & SULLIVAN, LLP

Alex Spiro (*pro hac vice*)
  alexspiro@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, New York 10016
Telephone:    (212) 849-7000
Facsimile:    (212) 849-7100

Yury Kapgan (Bar No. 218366)
  yurykapgan@quinnemanuel.com
Patrick Schmidt (Bar No. 274777)
  patrickschmidt@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:    (213) 443-3000
Facsimile:    (213) 443-3100

Sara Pollock (Bar No. 281076)
  sarapollock@quinnemanuel.com
Michael F. LaFond (Bar No. 303131)
  michaellafond@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:    (650) 801-5000
Facsimile:    (650) 801-5100

*Attorneys for Plaintiff and Counterclaim
Defendant Joby Aero, Inc., and
Counterclaim Defendant Joby Aviation, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Joby Aero, Inc.,<br><br>                    Plaintiff,<br><br>          v.<br><br>Archer Aviation Inc., and<br>George Kivork,<br><br>                    Defendants. | Case No. 5:25-cv-10703-SVK<br><br>**JOBY AERO, INC. AND JOBY AVIATION, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE AND DISMISS COUNTERCLAIMANT ARCHER AVIATION INC.'S AMENDED COUNTERCLAIMS**<br><br>**Judge:**    Hon. Susan van Keulen |
| Archer Aviation Inc.,<br><br>                    Counterclaimant,<br><br>          v.<br><br>Joby Aero, Inc., and<br>Joby Aviation, Inc.,<br><br>                    Counterclaim Defendants. | Hearing Date:    September 8, 2026<br>Hearing Time:    10:00 AM<br>Hearing Location:    Courtroom 6 – 4th Floor |

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.     ARCHER'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON*. ...................................1

       A.     There Is No "Commercial Speech" Exception to *Noerr-Pennington* .......................2

       B.     Archer Does Not and Cannot Plead the Sham Exception ...........................................4

       C.     Archer May Not Shift Its Burden to Joby. ...............................................................6

II.    ARCHER FAILS THE 9(B) PLEADING STANDARD. ....................................................6

       A.     Archer Never Pleads Rule 9(b)'s Who, What, When, Where, and How. .................6

       B.     Archer Cannot Avoid Rule 9(b) with "Information and Belief" Allegations. ...........7

III.   ARCHER FAILS TO STATE A LANHAM ACT CLAIM. ................................................9

       A.     Archer Fails to Allege "Commercial Advertising or Promotion."...........................10

       B.     Archer Fails to Allege Proximate Causation..............................................................11

IV.    ARCHER FAILS TO STATE A CALIFORNIA UCL CLAIM.........................................12

       A.     Archer Does Not Allege "Unfair" Conduct. ...........................................................12

       B.     Archer's "Fraudulent" Allegations Fail Rule 9(b). ..................................................14

       C.     Archer's "Unlawful" Allegations Fall with Its Lanham Act Claim.........................14

V.     THE COURT SHOULD STRIKE ARCHER'S UCL CLAIM AS SLAPP........................14

VI.    ARCHER'S COUNTERCLAIMS SHOULD BE DISMISSED WITH
       PREJUDICE.................................................................................................................15

CONCLUSION ..................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Airport Car Rental Antitrust Litig.*,
521 F. Supp. 568 (N.D. Cal. 1981) ........................................................................ 2

*In re Airport Car Rental Antitrust Litig.*,
693 F.2d 84 (9th Cir. 1982) .................................................................................... 2

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) ............................................................................................... 3

*Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro.
Publications, Inc.*,
108 F.3d 1147 (9th Cir. 1997) .............................................................................. 13

*AmeriCare MedServices, Inc. v. City of Anaheim*,
2017 WL 5592892 (C.D. Cal. Apr. 21, 2017) ..................................................... 2, 3

*AmeriCare MedServices, Inc. v. City of Anaheim*,
735 F. App'x 473 (9th Cir. 2018) ......................................................................... 1, 4

*Aventis Pharma S.A. v. Amphastar Pharms., Inc.*,
2009 WL 8727693 (C.D. Cal. Feb. 17, 2009) ....................................................... 5

*Boone v. Redevelopment Agency of City of San Jose*,
841 F.2d 886 (9th Cir. 1988) ............................................................................... 4, 6

*Brosnan v. Tradeline Sols., Inc.*,
2009 WL 10695119 (N.D. Cal. Feb. 13, 2009) ..................................................... 6

*Brown v. City Nat'l Bank*,
2025 WL 860502 (N.D. Cal. Mar. 19, 2025) ....................................................... 15

*Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*,
518 F. Supp. 2d 1182 (C.D. Cal. 2007) ............................................................... 13

*C.B. Trucking, Inc. v. Waste Mgmt., Inc.*,
944 F. Supp. 66 (D. Mass. 1996) ........................................................................... 2

*Celonis SE v. SAP SE*,
2025 WL 1810260 (N.D. Cal. June 30, 2025) ..................................................... 10

*Choon's Design, LLC v. ContextLogic Inc.*,
2020 WL 6891824 (N.D. Cal. Nov. 24, 2020) ...................................................... 6

*City of Columbia v. Omni Outdoor Advertising, Inc.*,
499 U.S. 365 (1991) ............................................................................................... 3

*Clements Family Trust v. Vimmia, LLC*,
   2025 WL 2427782 (C.D. Cal. May 27, 2025)...................................................................9

*Coastal Abstract Service, Inc. v. First American Title Insurance Co.*,
   173 F.3d 725 (9th Cir. 1999)...........................................................................................10

*Continental Ore Co. v. Union Carbide & Carbon Corp.*,
   370 U.S. 690 (1962) ........................................................................................................2, 3

*CoreCivic, Inc. v. Candide Grp., LLC*,
   46 F.4th 1136 (9th Cir. 2022)..........................................................................................15

*Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC*,
   76 Cal. App. 5th 651 (2022).............................................................................................15

*Deveraux v. Sison*,
   2021 WL 806929 (D. Ariz. Mar. 3, 2021) .......................................................................10

*Diamond State Ins. Co. v. Marin Mountain Bikes, Inc.*,
   2012 WL 6680259 (N.D. Cal. Dec. 21, 2012) ..................................................................7

*E & E Co. v. Kam Hing Enters., Inc.*,
   2009 WL 482240 (N.D. Cal. Feb. 25, 2009)..................................................................9, 14

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)............................................................................................12

*FilmOn.com Inc. v. DoubleVerify Inc.*,
   7 Cal. 5th 133. (2019)........................................................................................................14

*Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*,
   600 F. Supp. 3d 1082 (N.D. Cal. 2021) ...........................................................................15

*Hakopian v. Mukasey*,
   551 F.3d 843 (9th Cir. 2008).............................................................................................10

*Hankins v. Dentons US LLP*,
   2026 WL 1828663 (N.D. Cal. June 24, 2026) ...................................................................6

*Harbor Performance Enhancement Ctr., LLC v. City of Los Angeles Harbor Dep't*,
   2021 WL 1676281 (C.D. Cal. Mar. 24, 2021) ...................................................................4

*Heck v. Amazon.com, Inc.*,
   2024 WL 248712 (W.D. Wash. Jan. 23, 2024) ..................................................................9

*Hynix Semiconductor Inc. v. Rambus, Inc.*,
   527 F. Supp. 2d 1084 (N.D. Cal. 2007) ..........................................................................2, 3

*Iliya v. United States Marshals Serv.*,
   2024 WL 5190361 (N.D. Cal. Dec. 20, 2024) ...................................................................7

JOBY'S MOTION TO STRIKE AND DISMISS ARCHER'S AMENDED COUNTERCLAIMS

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)..................................................................................................... 7

*Kottle v. Nw. Kidney Centers*,
    146 F.3d 1056 (9th Cir. 1998)................................................................................................ 4, 5

*Lesane v. Hawaiian Airlines, Inc.*,
    2020 WL 1078763 (D. Haw. Mar. 6, 2020) ............................................................................. 4

*Levitt v. Yelp! Inc.*,
    765 F.3d 1123 (9th Cir. 2014).................................................................................................. 13

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ................................................................................................................. 12

*Ludwig v. Superior Ct.*,
    37 Cal. App. 4th 8 (1995)........................................................................................................... 2

*Marina Point Dev. Assocs. v. United States*,
    364 F. Supp. 2d 1144 (C.D. Cal. 2005)................................................................................. 4, 5

*Morning Star Packing Co. v. SK Foods, L.P.*,
    754 F. Supp. 2d 1230 (E.D. Cal. 2010).................................................................................... 13

*Neubronner v. Milken*,
    6 F.3d 666 (9th Cir. 1993)........................................................................................................... 7

*NJOY, LLC v. Imiracle (HK) Ltd.*,
    760 F. Supp. 3d 1084 (S.D. Cal. 2024) .................................................................................... 13

*Norcen Energy Res. Ltd. v. Pac. Gas & Elec. Co.*,
    1994 WL 519461 (N.D. Cal. Sept. 19, 1994)............................................................................ 2

*Openwave Messaging, Inc. v. Open-Xchange, Inc.*,
    2016 WL 2621872 (N.D. Cal. May 9, 2016) ........................................................................... 10

*Practice Management Information Corp. v. American Medical Association*,
    121 F.3d 516 (9th Cir. 1997)....................................................................................................... 3

*Realtek Semiconductor Corp. v. MediaTek, Inc.*,
    769 F. Supp. 3d 1067 (N.D. Cal. 2025) ................................................................................... 10

*Rezner v. Bayerische Hypo-Und Vereinsbank AG*,
    630 F.3d 866 (9th Cir. 2010)..................................................................................................... 12

*RPost Holdings, Inc. v. Trustifi Corp.*,
    2012 WL 12952728 (C.D. Cal. May 11, 2012)........................................................................ 11

*Rubenstein v. Neiman Marcus Grp. LLC*,
    687 F. App'x 564 (9th Cir. 2017) ............................................................................................... 9

*Saldate v. Wilshire Credit Corp.*,
    686 F. Supp. 2d 1051 (E.D. Cal. 2010)..................................................................14

*Sanders v. Brown*,
    504 F.3d 903 (9th Cir. 2007)..................................................................................3

*Sessions Tank Liners, Inc. v. Joor Manufacturing, Inc.*,
    827 F.2d 458 (1987)...............................................................................................3

*Simpson Strong-Tie Co. v. Gore*,
    49 Cal. 4th 12 (2010)...........................................................................................15

*Sugarman v. Benett*,
    73 Cal. App. 5th 165 (2021)..................................................................................14

*TEC Cogeneration Inc. v. Fla. Power & Light Co.*,
    76 F.3d 1560 (11th Cir. 1996)................................................................................2

*Total Recall Techs. v. Luckey*,
    2016 WL 1070656 (N.D. Cal. Mar. 18, 2016) .......................................................13

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011)................................................................................11

*TransFresh Corp. v. Ganzerla & Assoc., Inc.*,
    862 F. Supp. 2d 1009 (N.D. Cal. 2012) ...............................................................14

*Trident E&P, LLC v. HP Inc.*,
    2024 WL 3091969 (N.D. Cal. June 21, 2024) ................................................14, 15

*U.S. Football League v. Nat'l Football League*,
    634 F. Supp. 1155 (S.D.N.Y. 1986)........................................................................2

*UCAR Tech. (USA) Inc. v. Yan Li*,
    2018 WL 2555429 (N.D. Cal. June 4, 2018) ..................................................10, 13

*United States ex rel. University Loft Co. v. Avteq, Inc.*,
    2015 WL 13548950 (W.D. Tex. Dec. 22, 2015)....................................................13

*Upper Deck Co. v. Panini Am., Inc.*,
    533 F. Supp. 3d 956 (S.D. Cal. 2021) ..................................................................14

**Statutes**

California Code of Civil Procedure § 425.16..............................................................15

California Code of Civil Procedure § 425.17..............................................................14

Rule 9(b)......................................................................................1, 6, 7, 9, 14, 15

Rule 12(b)(6) ...........................................................................................................15

**INTRODUCTION**

Archer Aviation, Inc.'s ("Archer's") opposition confirms what its amended counterclaims already showed: Archer's claims against Joby Aviation, Inc. and Joby Aero, Inc. (collectively "Joby") should be dismissed—and its Unfair Competition ("UCL") claim stricken—with prejudice. Unable to deny that its claims are premised on Joby petitioning the government to participate in U.S. Air Force, White House, and FAA programs, and thus subject to dismissal under *Noerr-Pennington*, Archer invents a "commercial speech" exception that the Ninth Circuit and this District have *expressly rejected*. Sensing the problem, Archer alternatively brands Joby's petitions as "sham." But every authority Archer cites involves an adjudicatory proceeding—one with hearings, counsel, and cross-examination—not the discretionary decisions of executive agencies choosing which companies to partner with for technological development. Under the correct standard, *Noerr-Pennington* immunizes Joby's petitioning conduct, and Archer can *never* plead around it.

Archer's remaining arguments fare no better. Archer cannot identify any false or misleading statement that Joby actually made to any government agency—a concession its counterclaims and its opposition both repeat. Nor can Archer identify when any such statement was made, whether it was oral or written, or to whom it was made. Rule 9(b) requires those particulars, even when they are particularly within the defendants' knowledge (and despite Archer's suggestion to the contrary). Left with nothing, Archer falls back on its extensive "information and belief" allegations, which it now recasts as pleaded "on knowledge." They are not. Stripped of "information and belief," Archer alleges just four facts about a publicly disclosed Chinese subsidiary—and no claim at all.

**ARGUMENT**

**I.      ARCHER'S CLAIMS ARE BARRED BY *NOERR-PENNINGTON*.**

Archer admits, as it must, that its counterclaims are entirely dependent on Joby's "submissions to the U.S. Air Force, the FAA, and the White House in connection with the AFWERX Agility Prime and eIPP programs," which submissions were "made for the purpose of obtaining or inducing government contracts and regulatory approvals." Opp. 19. That admission is dispositive: soliciting government contracts and regulatory approvals is petitioning, and petitioning is immune under *Noerr-Pennington. E.g., AmeriCare MedServices, Inc. v. City of Anaheim*, 735 F. App'x 473,

475 (9th Cir. 2018) ("efforts to obtain or maintain . . . contracts with the [government] fall[] squarely within the scope of *Noerr–Pennington*") (citation omitted); *Norcen Energy Res. Ltd. v. Pac. Gas & Elec. Co.*, 1994 WL 519461, at *5 (N.D. Cal. Sept. 19, 1994) ("regulatory approval" brought activity within *Noerr-Pennington*).  Archer offers three responses.  None save its claims.

**A.      There Is No "Commercial Speech" Exception to *Noerr-Pennington***

Archer first conjures a "commercial speech" exception to *Noerr-Pennington*.  Opp. 19–20. The argument fails on its own terms before it fails as a matter of law:  Archer does not allege that Joby engaged in commercial speech, because Archer admits that it does not know what Joby said to the government.   Dkt. 84 ¶¶ 76, 91.[1]   More fundamentally, there is no "commercial speech" exception to *Noerr-Pennington*.  *In re Airport Car Rental Antitrust Litig.*, 693 F.2d 84, 88 (9th Cir. 1982) ("There is no commercial exception to *Noerr-Pennington*."); *Ludwig v. Superior Ct.*, 37 Cal. App. 4th 8, 21 (1995) (*Noerr-Pennington* "unquestionably applies to commercial speech").  As this District recognized over forty years ago, in *Pennington* the Supreme Court "implicitly rejected any distinction between political or policy-making actions and commercial activities."  *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 580 (N.D. Cal. 1981).  Courts accordingly dismiss claims premised on petitioning the government for private contracts.  *E.g.*, *AmeriCare MedServices, Inc. v. City of Anaheim*, 2017 WL 5592892, at *4 (C.D. Cal. Apr. 21, 2017).[2]

Against these authorities, Archer offers only misread precedent and dead-letter law.  Archer cites *Hynix Semiconductor Inc. v. Rambus, Inc.*, 527 F. Supp. 2d 1084 (N.D. Cal. 2007) and *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690 (1962) for the proposition

---

[1]   Archer's brief characterizes Joby's submissions as "describ[ing] the company and products being offered to the government" and "bald promotional statements" (Opp. 19–20), but Archer's pleading does not actually allege what Joby said, and Archer offers no supporting citations.  *Id*.

[2]    Courts *across the country* have rejected a "commercial speech" exception to *Noerr-Pennington*.  *E.g.*, *TEC Cogeneration Inc. v. Fla. Power & Light Co.*, 76 F.3d 1560, 1573 (11th Cir. 1996) ("The district court's rejection of *Noerr/Pennington* immunity because of a perceived commercial exception was in error."); *U.S. Football League v. Nat'l Football League*, 634 F. Supp. 1155, 1179 (S.D.N.Y. 1986) ("*Pennington* itself involved government purchases of coal—certainly a commercial activity.") (internal quotation omitted); *see also C.B. Trucking, Inc. v. Waste Mgmt., Inc.*, 944 F. Supp. 66, 69 (D. Mass. 1996), *aff'd*, 137 F.3d 41 (1st Cir. 1998) (granting motion to dismiss because *Noerr-Pennington* immunized "the activity of a private party dealing with the state in contractual matters") (collecting cases).

that "private commercial activity" falls outside the scope of *Noerr-Pennington*. Opp. 20. But *Hynix* only quoted *Continental* to explain that *Continental* was inapposite; *Hynix* did not "exclude" commercial speech from *Noerr-Pennington*. 527 F. Supp. 2d at 1090. Meanwhile, *Continental* did not involve communications with any government. *See Continental*, 370 U.S. at 706 (*Noerr* did not apply as "there is no indication that the Controller or any other official within the structure of the Canadian Government" was involved in the complained-of behavior). By contrast, Archer's claims target nothing but Joby's submissions to three government agencies. Dkt. 84 ¶ 18.

Archer misreads *Practice Management Information Corp. v. American Medical Association*, 121 F.3d 516 (9th Cir. 1997), which devotes just three sentences to *Noerr-Pennington* and holds only that because copyright misuse does not require an antitrust violation, *Noerr-Pennington* does not defeat a copyright-misuse defense. It creates no "commercial speech" exception.

Archer's citation to a footnote in *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492 (1988), Opp. 20, is similarly off base. There, the Supreme Court considered whether an antitrust claim could be stated against businesses engaged in a "a private standard-setting process[.]" 486 U.S. at 504, 506. In formulating a test for that situation, the footnote Archer quotes *rejects* a test proposed by the Ninth Circuit in *Sessions Tank Liners, Inc. v. Joor Manufacturing, Inc.*, 827 F.2d 458 (1987). *Id*. at 507 n. 10. But three years later, in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365 (1991), the Supreme Court reversed course and squarely adopted the *Sessions Tank Liners* test. *Id*. at 380. The *Allied Tube* footnote Archer cites has not been the law for over three decades. *Id*. And in any event, Joby's petitions to the Air Force, White House, and FAA bear no resemblance to the private standard-setting association at issue in *Allied Tube*.

Archer's attempts to distinguish Joby's authorities do not save its claims. Archer argues that *AmeriCare MedServices, Inc. v. City of Anaheim* is limited to "campaign contributions to members of city government" (Opp. 21); but *AmeriCare* is more expansive. In its own words, *AmeriCare* holds that "*Noerr-Pennington* immunity applies to **any** conduct by [the defendant] to obtain or maintain [a] . . . contract with the City." 2017 WL 5592892, at *4 (C.D. Cal. Apr. 21, 2017) (emphasis added). Archer then reads the application of *Noerr-Pennington* to government contracts in *Sanders v. Brown*, 504 F.3d 903 (9th Cir. 2007) as limited to "court-approved settlement[s]."

Opp. 20–21.  The Ninth Circuit reads *Sanders* more broadly: it cited *Sanders* to affirm *AmeriCare*, a case about a commercial contract for ambulance services.  *See AmeriCare*, 735 F. App'x at 475.  Under that authority, Joby's petitioning of the U.S. Air Force, White House, and FAA for contracts and regulatory approval "falls squarely within the scope of *Noerr–Pennington*."  *Id*.

### B.     Archer Does Not and Cannot Plead the Sham Exception

Unable to find a commercial speech exception to *Noerr-Pennington*—because none exists— Archer falls back on the "sham" exception, pointing to alleged "misrepresentations" by Joby.  Opp. 21.  That fails twice over.  *First*, "misrepresentations will only transform otherwise immune petitioning into unprotected 'sham' petitioning if the petitioning were directed at an 'adjudicatory' process, rather than a 'political' process," *Marina Point Dev. Assocs. v. United States*, 364 F. Supp. 2d 1144, 1147 (C.D. Cal. 2005), because "the scope of the sham exception depends on the type of governmental entity."  *Kottle v. Nw. Kidney Centers*, 146 F.3d 1056, 1060 (9th Cir. 1998).  "[I]ndicia of a true adjudicatory proceeding," include "conduct[ing] public hearings, accept[ing] written and oral arguments, permit[ing] representation by counsel, and allow[ing] affected persons to question witnesses."  *Kottle* 146 F.3d at 1062.

It was Archer's burden to plead that the government programs Joby petitioned bore the hallmarks of an adjudicatory process.  *See Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 896 (9th Cir. 1988) (affirming motion to dismiss under *Noerr-Pennington* because "nowhere in their complaint do the developers specifically allege that the agency and the council were acting as adjudicatory bodies"); *Harbor Performance Enhancement Ctr., LLC v. City of Los Angeles Harbor Dep't*, 2021 WL 1676281, at *9 (C.D. Cal. Mar. 24, 2021) (granting motion to dismiss under *Noerr-Pennington* because "the SAC fails to allege that HPEC was denied access to an *adjudicatory* agency") (emphasis original).  Archer pleads no facts from which the Court can infer that the U.S. Air Force, White House, or FAA were acting as adjudicatory bodies when they reviewed Joby's petitions.  Nor could Archer; courts routinely hold that similar executive agencies are *not* adjudicatory bodies.  *See, e.g.*, *Marina Point*, 364 F. Supp. 2d at 1147 ("the Army Corps of Engineers" was not an adjudicatory body); *Lesane v. Hawaiian Airlines, Inc.*, 2020 WL 1078763, at *6 (D. Haw. Mar. 6, 2020) (when considering a private petition, the FAA does not act as an

adjudicatory body).  Archer has alleged that Joby petitioned political bodies that exercised discretion over contracts and regulatory approvals—and making "misrepresentations" to political bodies does not create a sham.  *See, e.g.*, *Marina Point*, 364 F. Supp. 2d at 1147.  Yet that is all Archer alleges.  Archer's assertion that these agencies applied "defined eligibility rules" (Opp. 21) appears nowhere in its counterclaims, and Archer may not amend through a brief.  *See, infra* Part II.A.

*Second*, even if Joby had participated in an adjudicatory process, Archer's allegations still fall short.  To plead a sham, Archer was required to allege that Joby "so misrepresented the truth" "that the entire [] proceeding was deprived of its legitimacy."  *Kottle*, 146 F.3d at 1063.  In order to meet that standard, Archer was required to allege "[1] how it[] discovered [information] undermin[ing] [Joby's] allegedly false representation and [2] why it is plausible that [the U.S. Air Force, White House, and FAA] cannot detect the alleged false representation[s] [themselves], thereby undermining the . . . petition process."  *Aventis Pharma S.A. v. Amphastar Pharms., Inc.*, 2009 WL 8727693, at *13 (C.D. Cal. Feb. 17, 2009) (sham exception to *Noerr-Pennington* did not apply to adjudicatory petition seeking to overturn FDA drug approval where plaintiff failed to allege why the FDA could not itself detect the allegedly false statements).  Archer pleads neither.  It never explains why the Air Force, White House, or FAA could not detect the alleged falsehoods—and it affirmatively alleges that those agencies "conduct [required] foreign-influence, cybersecurity, ownership, and due-diligence review."  Dkt. 84 ¶ 71.  On Archer's own pleading, then, the agencies were equipped to catch precisely what Archer says Joby hid.

Archer's authorities do not fill the gap.  *Kearney v. Foley & Lardner, LLP*, alleged "suppression of evidence" in a court (*i.e.* adjudicatory) proceeding, wherein the court would not have been able to determine, by itself, that evidence was suppressed.  590 F.3d 638, 647 (9th Cir. 2009).  *B&G Foods North America, Inc. v. Embry*, also examined court proceedings—and found the sham exception inapplicable.  29 F.4th 527, 538–39 (9th Cir. 2022).  And Archer misrepresents *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, by quoting a portion of the opinion relating to antitrust liability, not *Noerr-Pennington*.  690 F.2d 1240, 1261 (9th Cir. 1982) ("fraudulent furnishing of false information to an agency in connection with an adjudicatory proceeding *can be the basis for antitrust liability*.") (emphasis added).  The correct section of

*Clipper Exxpress* states that the sham exception applied because the defendants filed "baseless" claims "automatically and without regard to merit," and *not* because of alleged misrepresentations. 690 F.2d at 1257.  Archer has not pleaded a sham.

### C.     Archer May Not Shift Its Burden to Joby.

Archer's last resort is to shift its own burden to Joby.  Archer argues "*Noerr-Pennington* is an affirmative defense."  Opp. 22.  That misstates the law: *Noerr-Pennington* may be raised as an affirmative defense, but "it is important that a plaintiff's complaint contain specific allegations demonstrating that the *Noerr–Pennington* protections do not apply."  *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988); *see also Hankins v. Dentons US LLP*, 2026 WL 1828663, at *7 (N.D. Cal. June 24, 2026) ("the Ninth Circuit has required a plaintiff seeking to establish the sham exception to *Noerr-Pennington* to plead around the defense with specificity").  Archer had to plead around *Noerr-Pennington* with specificity; it did not.

## II.     ARCHER FAILS THE 9(B) PLEADING STANDARD.

Archer argues that it pleaded everything Rule 9(b) requires and that, in any event, it may rely on "information and belief."  Opp. 11–13.  Archer is wrong on both counts.  And Archer's footnoted suggestion that Rule 9(b) does not apply to Lanham Act claims at all (Opp. 10 n.1) is foreclosed by this Court's Order.  Dkt. 69 at 30.

### A.     Archer Never Pleads Rule 9(b)'s Who, What, When, Where, and How.

At the outset, Archer has failed to comply with Rule 9(b) because its counterclaims never identify *when*, *where*, or *to whom* Joby allegedly made misrepresentations.  *See Brosnan v. Tradeline Sols., Inc*., 2009 WL 10695119, at *4 (N.D. Cal. Feb. 13, 2009) (granting motion to dismiss where "Plaintiff [has not] alleged when the allegedly misleading statements were made and to whom"); *Choon's Design, LLC v. ContextLogic Inc.*, 2020 WL 6891824, at *5 (N.D. Cal. Nov. 24, 2020) (granting motion to dismiss where "the complaint is devoid of specifics about when and where the [allegedly false] statements were made").  Archer's opposition addresses neither *Brosnan* nor *Choon*.  Nor does Archer identify specific false or misleading statements made at specific times.  Instead, Archer merely points to executed contracts that Joby was awarded, allegedly as a result of false or misleading statements.  *See* Opp. 11 (discussing signed agreements *without* identifying the

purported misleading statements that allegedly led to those agreements).  And while Archer identifies the Joby employees who signed those contracts, it never alleges that those employees made *any* false statement, and it never identifies *to whom*—among three different agencies (the Air Force, White House, and FAA)—any misrepresentation was supposedly made.  *See* Opp. 11.  Archer thus asks the Court to *assume* that Joby made some misrepresentation, at some point between 2020 and 2026 (*see* Opp. 11), in some unidentified written or oral statement, to some unidentified person at one or more of three different agencies.  That is not particularity.  It is an undefined placeholder.

Archer also asks the Court to *infer* that Joby made misrepresentations because, supposedly, Joby was not subject to any "foreign-risk review that was prescribed" and there was no "alter[ation] of the scrutiny, terms, timing, level, or continuation of Joby's government support."  Opp. 11.  But those allegations do not appear in Archer's counterclaims.  *See id.*; Dkt. 84.  Even assuming Archer *could* make those allegations, Archer "cannot amend [its] complaint through an opposition brief." *Iliya v. United States Marshals Serv.*, 2024 WL 5190361, at *10 (N.D. Cal. Dec. 20, 2024).  So too with Archer's assertion that Joby has "refused to provide" its submissions in discovery.  Opp. 12. That allegation appears nowhere in the counterclaims and has no place on a motion to dismiss.

Archer's opposition also side-steps its failure to plead the "what" and the "how," as this Court expressly required.  *See* Dkt. 69 (Order) at 31–32 (requiring Archer allege "the 'how'" of "the misleading of these government entities.").  Archer's admissions that it does not know what Joby said, or to which entity (*see, e.g.*, Dkt. 84 ¶¶ 76, 91), leave Archer alleging only that Joby made *some* misrepresentation—without alleging *what* or *how* it misled.  *See* Opp. 11; Mot. 14–15.  That is not particularity Rule 9(b) demands.  *See* Mot. 15 (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  That is grounds to dismiss both Archer's Lanham Act claim, and any attempt by Archer to proceed under the "fraudulent" prong of its UCL claim.  *Id*.

**B.     Archer Cannot Avoid Rule 9(b) with "Information and Belief" Allegations.**

Archer argues that "information and belief" allegations excuse it from Rule 9(b).  Opp. 12–13.  But, under Rule 9(b) a party may not rely on "information and belief" allegations without "stat[ing] the factual basis for the belief." *Diamond State Ins. Co. v. Marin Mountain Bikes, Inc*., 2012 WL 6680259, at *15 (N.D. Cal. Dec. 21, 2012) (quoting *Neubronner v. Milken*, 6 F.3d 666,

672 (9th Cir. 1993)).  Archer falls short.

To defend its "information and belief" pleading, Archer argues its "core, load-bearing facts are pleaded on knowledge," citing paragraphs 30 through 36, 45, and 52 through 54 in its counterclaims.  Opp. 12.  But the facts that actually matter in those paragraphs are *still pled on information and belief*.  In many instances, Archer's "load-bearing" paragraphs directly state they are pled on information and belief.  *E.g.*, Dkt. 84 ¶ 30 (alleging Joby "deceptively failed to disclose" information "*based on information and belief*"); ¶ 32 (alleging Joby took down a website "*based on information and belief* in an attempt to obscure Joby China's presence"); ¶ 36 (alleging "Joby China is also actively developing intellectual property . . . *based on information and belief*"); ¶ 52 ("*Based on information and belief*, Joby imports critical components from China-based suppliers . . .") (emphasis added).  In other instances, Archer's "load-bearing facts" are actually mere *conclusions* supported by nothing more than "information and belief" allegations.  For example, in Paragraph 52, Archer alleges "Joby imports critical components from China-based suppliers, including those with [Chinese Communist Party ("CCP")] ties."  *Id*. ¶ 52.  But every single "fact" supporting the conclusion that Joby imports goods from suppliers with "CCP ties" is alleged on information and belief.  *See id*. ¶¶ 38–40, 50 (all allegations supporting conclusion of "CCP ties" are alleged "on information and belief").  As another example, all of Archer's allegations that Joby relies on China for "essential" or "critical" imports are also made "on information and belief."  *See id* ¶¶ 32, 50, 52 (allegations about Joby's reliance on China-based suppliers all made "on information and belief," including allegation that "vital components of Joby's eVTOL aircraft" are imported from China).

Far from being "load-bearing," Archer's allegations are a house of cards.  Archer's only *non-*information and belief allegations are (i) Joby owns a China-based subsidiary (*id*. ¶ 31), (ii) Joby took down a website related to that subsidiary (*id*. ¶ 32), (iii) Joby's China-based subsidiary exports products to Joby, with no indication the products are "critical" (*id*. ¶¶ 33, 34, 45), and (iv) Joby's China-based subsidiary has sought to hire employees with technical skills.  *Id*. ¶ 35.[3]  *All* of Archer's other allegations are either made on "information and belief" or are conclusions supported solely by

---

[3] As Joby pointed out, each of these facts is either publicly disclosed by Joby in SEC and other regulatory filings, or easily accessible on the Internet; there has been no concealment.

"information and belief" allegations (such as the conclusion about "CCP ties," discussed *supra*). From the above four facts alone, Archer asks the Court to infer that Joby *must* have made misrepresentations in unidentified communications, made at unidentified times, to unidentified employees of the U.S. Air Force, White House, and/or FAA. That is not an inference; it is a template. On Archer's theory, any company with both a China-based subsidiary and a federal contract is one "information and belief" pleading away from a fraud claim.

Archer's authorities do not change this conclusion. In *Rubenstein v. Neiman Marcus Grp. LLC*, the plaintiff had alleged *exactly* where the false statements had been made, what they were, and to whom they had been made: fictitious "compare to" price tags, on merchandise at select outlet stores, visible to consumers. 687 F. App'x 564, 566 (9th Cir. 2017). Likewise, in *Heck v. Amazon.com, Inc.* the plaintiff alleged exactly where the false statement had been made and when: on Amazon's website (images of which were attached to the complaint), at the time of checkout, when clicking on an option for "FREE No-rush shipping." 2024 WL 248712, at *1, *6 (W.D. Wash. Jan. 23, 2024). And in *Clements Family Trust v. Vimmia, LLC*, the complaint identified specific statements made by two named individuals ("Afshin 'Ardy' Raminfar and Alex Raminfar") by "telephon[ing] and email[ing] showrooms and customers such as The Rose Garden and L&R Showroom." 2025 WL 2427782, at *3 (C.D. Cal. May 27, 2025). None of Archer's authorities permits a party to plead false advertising and fraud without knowing the statement, the speaker, the audience, the manner, or the timing. That is no accident. The law demands these specifics even where the information lies solely within the defendant's control. For example, in *E & E Co. v. Kam Hing Enterprise., Inc*., the court dismissed a competitor's claim that the defendant lied to the IRS because the plaintiff "fail[ed] to allege what defendants actually stated to the IRS, and when" as well as "what the content of any such statement was, when any such statement was made, or to whom." 2009 WL 482240, at *4 (N.D. Cal. Feb. 25, 2009). And that was so even though tax filings are private, and thus exclusively within the defendant's control.

## III.    ARCHER FAILS TO STATE A LANHAM ACT CLAIM.

Even if Archer's claims could survive *Noerr-Pennington* and Rule 9(b), its Lanham Act claim should still be dismissed because Archer fails to plead multiple, required elements.

### A. Archer Fails to Allege "Commercial Advertising or Promotion."

Two of Archer's admissions defeat the Lanham Act's "commercial advertising or promotion" requirement for false advertising claims. *First*, per Archer, Joby's statements were disseminated so narrowly that Archer itself does not know what Joby said. Dkt. 84 ¶¶ 76 (the "content of Joby Aero's statements to the U.S. Air [F]orce . . . are known only to Joby and the United States"), 91 (similar); *see Celonis SE v. SAP SE*, 2025 WL 1810260, at *2 (N.D. Cal. June 30, 2025) (a "handful of private statements" pleaded without "any real detail" fails the dissemination requirement for "commercial advertising or promotion"). Archer responds that a plaintiff in a small market need not show broad dissemination. Opp. 8 (citing *Coastal Abstract Service, Inc. v. First American Title Insurance Co.*, 173 F.3d 725, 735 (9th Cir. 1999)). But that rule still requires a specific statement to a specific customer. *See Coastal Abstract*, 173 F.3d at 735. By contrast, Archer admits that it does not know what Joby said to any government agency. Dkt. 84 ¶¶ 76, 91.

*Second*, even if the small-market rule could apply, Archer pleaded that the eVTOL market is *global*, and it cannot discard that allegation to survive dismissal. *Openwave Messaging, Inc. v. Open-Xchange, Inc.*, 2016 WL 2621872, at *5 (N.D. Cal. May 9, 2016); *accord Deveraux v. Sison*, 2021 WL 806929, at *2 (D. Ariz. Mar. 3, 2021). Yet that is precisely what Archer attempts to do by opportunistically recharacterizing the market as "global in *ambition*" but "presently dominated by a handful of U.S. government buyers." Opp. 9 (emphasis in original). That is not what Archer's counterclaims allege. *See* Dkt. 84 ¶ 25 (alleging a "new global eVTOL market" *not* an "ambition" for such a market).[4] Archer may not reframe the market size in opposition to a motion to dismiss. *See Openwave*, 2016 WL 2621872, at *5; *Deveraux v. Sison*, 2021 WL 806929, at *2.

Separately, Archer cannot satisfy the requirement that the challenged speech be "for the purpose of influencing consumers to buy [Joby's] goods or services." *Realtek Semiconductor Corp.*

---

[4] Moreover, Archer's prior pleading contained *expansive* admissions about the global nature of the eVTOL market. *See, e.g.*, Dkt. 38 ¶ 51 (alleging that the parties compete to sell aircraft to "the U.S. military *and its allies*") (emphasis added); ¶ 59 (Archer's plans to "launch its air-taxi operations in the United Arab Emirates, India, Japan, and Korea."). The "[a]llegations in [Archer's prior] complaint are considered judicial admissions," (*Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008)) and "[j]udicial admissions may be considered by the court when ruling on a motion to dismiss." *UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *7 n. 9 (N.D. Cal. June 4, 2018).

*v. MediaTek, Inc.*, 769 F. Supp. 3d 1067, 1095 (N.D. Cal. 2025). Archer's own pleading describes the AFWERX and eIPP programs as "targeted government investments." Dkt. 84 ¶ 94. Statements made to obtain investment, rather than to sell goods or services, are not actionable for false advertising under the Lanham Act. *See RPost Holdings, Inc. v. Trustifi Corp.*, 2012 WL 12952728, at *7 (C.D. Cal. May 11, 2012). Archer's attempt to relabel those "investments" as purchases cannot rewrite the allegation Archer chose to plead. Archer cannot have it both ways: even as its opposition disclaims any suit "over Joby's solicitation of capital" (Opp. 9), its own counterclaims allege that Joby's conduct "improperly influenced investors" (Dkt. 84 ¶ 3) and "captured investor credibility" "that would have instead gone in whole or in part to Archer." Dkt. 84 ¶ 106. Nor can Archer save the claim by pointing to Joby's public "American company" marketing: the injury Archer pleads— lost AFWERX awards and eIPP slots—turns entirely on the confidential submissions Archer concedes it cannot describe. On Archer's own allegations, Joby's statements are not commercial advertising or promotion, and Archer's Lanham Act claim fails at the threshold.

> **B.    Archer Fails to Allege Proximate Causation.**

Archer argues that because the parties are direct competitors, injury and causation are presumed. Opp. 13. But Archer concedes that "a small number of companies qualified for [the AFWERX and eIPP] programs[,]" not only Joby and Archer (Dkt. 84 ¶ 94), and that "funds allocated to Joby meant they were no longer available to **other parties** like Archer[.]" *Id.* ¶ 95 (emphasis added). By Archer's own account, then, the awards Joby received would not necessarily have gone to Archer. That concession is fatal to proximate causation.

Archer's authorities do not support a contrary conclusion; in those decisions, those plaintiffs alleged diversion of sales *away from the plaintiff* and to a direct competitor. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826–27 (9th Cir. 2011) (inference of injury available from evidence of head-to-head competition and a likelihood of consumer deception); *ThermoLife Int'l, LLC v. Compound Sols.*, Inc., 848 F. App'x 706, 708–09 (9th Cir. 2021) (proximate cause satisfied where the plaintiff alleged customers had replaced its product with the defendant's). That is precisely Joby's point: Archer never alleges that a single contract was diverted *from Archer to Joby*.

In any event, the presumption Archer invokes goes to injury, not to proximate cause, and it

cannot displace the requirement that Archer's injury "flow[] directly from the deception." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Where the alleged injury runs through the government's award decisions, a competitor cannot establish proximate cause premised on statements directed at the government. *See Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866, 874 (9th Cir. 2010) (where "the United States, not [Plaintiff], was the immediate victim of [the] fraud . . . we hold that [Plaintiff] cannot show proximate causation based on [] fraud against the United States"). And Archer did not allege that it applied for the AFWERX awards Joby received. Archer insists otherwise, claiming it "pleads that it competed for the same AFWERX awards[.]" Opp. 13 (citing ¶¶ 89, 95–96). But the cited paragraphs say no such thing: for example, paragraph 95 alleges only that funds awarded to Joby were "no longer available to other parties like Archer"—not that Archer sought the awards Joby received. Dkt. 84 ¶ 95.

Archer also has no answer on the eIPP program, where participation was not even zero-sum as between Archer and Joby. In the FAA announcement cited at footnote 84 of Joby's counterclaims,[5] Joby and Archer were selected to participate *together* in multiple projects—demonstrating that just because Joby was selected does not mean Archer would have been automatically rejected. *See also* Dkt. 84 ¶¶ 89, 96 (acknowledging Archer's selection).

Archer's answer—that whether "the government decided on the merits" is a fact question for discovery—is a non-sequitur. Opp. 14. Archer's concession that it may not have received the awards regardless of Joby's actions defeats any claim of proximate causation. Whether Joby was selected on the merits is an alternative, non-culpable explanation that Archer's own allegations make just as plausible as its "misrepresentation" theories—which is insufficient to state a claim. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014).

## IV.    ARCHER FAILS TO STATE A CALIFORNIA UCL CLAIM.

### A.    Archer Does Not Allege "Unfair" Conduct.

Archer concedes it has pleaded no antitrust claim but argues it need not do so because *Cel-Tech* is satisfied by conduct that "otherwise significantly threatens or harms competition." Opp. 15.

---

[5] *See* https://www.faa.gov/newsroom/future-aviation-here-trumps-transportation-secretary-sean-p-duffy-and-faa-unveil-eight.

But Archer does not allege harm to competition (threatened or otherwise). Archer alleges only that Joby's conduct "worked to the material detriment and harm of **Archer**" and "damaged **Archer**." Dkt. 84 ¶¶ 82, 95, 96 (emphases added). Harm to a *competitor* is not harm to *competition*. *Total Recall Techs. v. Luckey*, 2016 WL 1070656, at *5 (N.D. Cal. Mar. 18, 2016); *UCAR Tech. (USA) Inc. v. Yan Li*, 2018 WL 2555429, at *7 (N.D. Cal. June 4, 2018). Archer's unfair-prong claim fails.

Archer's remaining arguments supply no allegation of harm to competition. Archer cites *NJOY, LLC v. Imiracle (HK) Ltd.*, 760 F. Supp. 3d 1084 (S.D. Cal. 2024), for the proposition that unfair practices are "not limited to violations of existing antitrust laws[.]" Opp. 17. But Archer must still plead a threat to competition rather than a single rival. *See Cel-Tech*, 20 Cal. 4th at 186–87 (competitor-context unfairness requires proof of an actual or threatened impact on competition); *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136 (9th Cir. 2014) (affirming dismissal where the plaintiffs generally alleged that the defendant's conduct harmed competition by favoring some competitors over others). Archer's "corrupting the bidding process" theory rests on cases involving bid-rigging conspiracies and restraints that distorted the competitive bidding market—not the unilateral misrepresentation Archer alleges here. Opp. 17 (citing *United States ex rel. University Loft Co. v. Avteq, Inc.*, 2015 WL 13548950, at *12 (W.D. Tex. Dec. 22, 2015); *Morning Star Packing Co. v. SK Foods, L.P.*, 754 F. Supp. 2d 1230, 1235–36 (E.D. Cal. 2010)).

Moreover, where a competitor grounds an antitrust theory on false statements, it must allege that the statements were "clearly false," "clearly material," "clearly likely to induce reasonable reliance," "made to buyers without knowledge of the subject matter," "continued for prolonged periods," and "not readily susceptible of neutralization or other offset by rivals," as well as market power. *Am. Pro. Testing Serv., Inc. v. Harcourt Brace Jovanovich Legal & Pro. Publications, Inc.*, 108 F.3d 1147, 1152, 1154 (9th Cir. 1997). Archer pleads none of these. And having itself pointed to Joby's publicly available SEC filings, job postings, and shipping records, Archer cannot plausibly allege that the Air Force, White House, or FAA were "without knowledge of the subject matter." Dkt. 84 ¶¶ 32, 34, 35. Archer's own authority proves the deficiency: the plaintiff in *Bulletin Displays* was actually excluded from the market, *Bull. Displays, LLC v. Regency Outdoor Advert., Inc.*, 518 F. Supp. 2d 1182, 1191 (C.D. Cal. 2007), whereas Archer received three eIPP projects, Dkt. 84 ¶

89, and purports to have its own AFWERX contract.  Dkt. 89 at 17.

### B.    Archer's "Fraudulent" Allegations Fail Rule 9(b).

Archer concedes that its "fraudulent" UCL claim depends on the same particularity showing as its Lanham Act claim.  Opp. 17.  Archer has not made that showing.  For the reasons set out *supra* Part II, Archer has failed to satisfy Rule 9(b)'s particularity requirements.  *See TransFresh Corp. v. Ganzerla & Assoc., Inc.*, 862 F. Supp. 2d 1009, 1017–18 (N.D. Cal. 2012); *E & E Co. v. Kam Hing Enters., Inc.*, 2009 WL 482240, at *3 (N.D. Cal. Feb. 25, 2009). Archer's alternative argument— that Joby's statements "harmed the public interest" because the programs served national-security goals—does not rescue Archer's claim, because the fraudulent prong still requires a deceptive act, which Archer admits it cannot identify.  Dkt. 84 ¶¶ 76, 91; *see Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1067 (E.D. Cal. 2010).

### C.    Archer's "Unlawful" Allegations Fall with Its Lanham Act Claim.

Archer concedes that its "unlawful" UCL claim "rises and falls with the Lanham Act claim." Opp. 19.  Because Archer fails to state a Lanham Act claim (*see supra* Part III), its "unlawful" UCL claim fails with it.  *Upper Deck Co. v. Panini Am., Inc.*, 533 F. Supp. 3d 956, 968 (S.D. Cal. 2021).

## V.    THE COURT SHOULD STRIKE ARCHER'S UCL CLAIM AS SLAPP.

Archer misapplies the "commercial speech" exemption from California's Anti-SLAPP statute, California Code of Civil Procedure § 425.17.  In 2019, the California Supreme Court explained that "section 425.17, subdivision (c) . . . exempts 'only a subset of commercial speech'— specifically, *comparative advertising*." *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 147. (2019) (emphasis added).  Following *FilmOn*, both California and federal courts have held that the "commercial speech" Anti-SLAPP exemption is limited to comparative advertising.  *See, e.g.*, *Sugarman v. Benett*, 73 Cal. App. 5th 165, 177 (2021) ("statements to investors and potential investors" were not exempt from SLAPP because "[a]s *FilmOn* and other cases tell us, the exemption covers only a subset of commercial speech: comparative advertising."); *Trident E&P, LLC v. HP Inc.*, 2024 WL 3091969, at *6 (N.D. Cal. June 21, 2024) (exemption limited to "comparative advertising.'") (quoting *FilmOn*).    Where, as here, a complaint challenges communications with government departments, "sent in response to the [government's] inquiry and

in the context of other agency action," the communications are not "comparative advertising." *Trident*, 2024 WL 3091969, at *6; *see also Glob. Plasma Sols., Inc. v. IEE Indoor Env't Eng'g*, 600 F. Supp. 3d 1082, 1090 (N.D. Cal. 2021) (the claimant bears the burden of pleading facts sufficient to support the commercial speech exemption). Indeed, both cases cited by Archer, *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12 (2010) and *United Tactical Sys., LLC v. Real Action Paintball*, Inc., 143 F. Supp. 3d 982 (N.D. Cal. 2015), predate *FilmOn*. Archer's effort to cabin *Curtin Maritime* fails for the same reason. The gravamen there, as here, was that a competitor "lied . . . and consequently obtained and performed [a] contract[] as a result of the lie." *Curtin Maritime Corp. v. Pacific Dredge & Construction, LLC*, 76 Cal. App. 5th 651, 667 (2022). That Archer relabels the same conduct "marketing" does not change what its counterclaims allege.

Archer's remaining answer is that the anti-SLAPP motion rises and falls with Joby's 12(b)(6) arguments. Opp. 24. Joby agrees. Those arguments succeed, the UCL claim should be stricken, and Joby is entitled to its fees and costs. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022).

## VI.    ARCHER'S COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

Archer argues that it should be granted leave to amend because "Archer could cure any perceived deficiency with additional factual allegations." Opp. 25. But Archer never says what those allegations would be—and that silence is fatal where the Court has already granted leave to amend once. *See, e.g.*, *Brown v. City Nat'l Bank*, 2025 WL 860502, at *3 (N.D. Cal. Mar. 19, 2025) (granting dismissal, with prejudice, where claimant "failed to identify additional facts she would allege in a second amended complaint"). Archer's remaining futility arguments—that *Noerr-Pennington* does not apply and that it has satisfied Rule 9(b) (*see* Opp. 24–25)—fail for the reasons stated above. Archer has now had two opportunities to say what Joby told the government. It cannot. Dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Archer's claims with prejudice.

DATED: August 3, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ *Yury Kapgan*
  Yury Kapgan
  Alex Spiro
  Patrick Schmidt
  Sara Pollock
  Michael F. LaFond

*Attorneys for Plaintiff and Counterclaim Defendant Joby Aero, Inc., and Counterclaim Defendant Joby Aviation, Inc.*

JOBY'S MOTION TO STRIKE AND DISMISS ARCHER'S AMENDED COUNTERCLAIMS